# EXHIBIT A

## SEPARATION AND RELEASE AGREEMENT

## TRANSMITTAL FORM

To:   Unisys Human Resources Service Center
      Fax: 651-635-3620
      Email: HRSC@unisys.com
      Phone: 888-560-1782
      Address:  PO Box 5593, Bismarck ND 58506

Attached is my signed Separation and Release Agreement.  If you need to contact me in the future, my home address and contact information are as follows:

Name: _ANTHONY CACCAVALE_

REDACTED

Employee ID Number: _____

REDACTED

Home Telephone Number: _____

REDACTED

Cell Phone Number: _____

REDACTED

Email Address: _____ @AOL.COM_

REDACTED

Home Street Address: __

REDACTED

City/State/Zip Code:

Separation Date: _2/28/19_

NOTE: The entire signed Separation and Release Agreement initially can be sent via fax or email along with this transmittal form.
You will receive a confirmation from Unisys when the signed agreement is received; you may also send it via certified mail with proof of delivery.
ATTACHMENT: **Signed Separation and Release Agreement (all pages)**

## <u>SEPARATION AND RELEASE AGREEMENT</u>

This Separation and Release Agreement ("<u>Agreement</u>") is entered into between the undersigned employee, Anthony Caccavale ("<u>Associate</u>") and Unisys Corporation ("<u>Company</u>"), who agree as follows:

**1.      Supplemental Unemployment Benefits**.  In exchange for the release and promises set forth in this Agreement, the Company agrees to pay Associate, pursuant to and subject to the provisions of the Unisys Supplemental Unemployment Benefits Plan ("<u>SUB Plan</u>") (including, but not limited to, the provisions related to continued eligibility for payments and the need to periodically report eligibility status to the SUB Plan's record keeper, etc.), supplemental unemployment benefits ("SUB Payments") in an amount equal to Associate's weekly base rate of pay, less the amount of your initial weekly state unemployment compensation benefits and other applicable deductions and withholdings, for 2 weeks ("SUB Payment Period") **(**or a lesser number of weeks if Associate ceases to continue to meet the SUB Plan's eligibility rules) pursuant to Employer's normal payroll practices relating to SUB Payments.

**2.      Unemployment Compensation.**  In connection with Associate's employment termination, the Company agrees it will not dispute or contest any claim for unemployment compensation filed by Associate to the extent permitted by applicable law.

**3.      Outplacement Assistance.**  Associate will be entitled to participate in outplacement assistance in accordance with the Company's agreement with Right Management.

**4.      Employment Termination and Separation.**  The parties agree that Associate's employment with the Company is terminated effective on 3/14/2019 ("<u>Separation Date</u>").  Associate also agrees that, separate and apart from any  benefits provided pursuant to this Agreement, Associate is not entitled to any payments, bonuses, incentives or other benefits of any kind from the Company except for the following: (i) wages earned based on work performed to and including the Separation Date; (ii) any vested and unused paid vacation time to and including the Separation Date; and (iii) reimbursement for any reasonable and necessary business travel or entertainment expenses incurred on behalf of the Company through the Separation Date to the extent that these expenses are subject to reimbursement under the Company's policies, practices and/or procedures.  Associate agrees that the benefits provided pursuant to this Agreement are in addition to what he/she would otherwise be entitled to receive.

**5.      Return of Company Property**.  Associate has returned all Company property to the Company, including all documents and materials created or received by Associate in the course of employment with the Company, except for employment or benefits documents pertaining specifically to Associate's employment (including, but not limited to, documents reflecting his/her compensation rate, payments, benefits, or Associate's separation).

**6.      General Waiver and Release**.  Associate waives and releases any and all claims arising on or before the date of Associate's execution of this Agreement, whether or not now known, that Associate has or might have against the Company, its parents, subsidiaries, affiliated companies, predecessors and assigns, and all of their past and present officers, directors, employees, benefit and compensation plan fiduciaries, agents, successors, and assigns (collectively "<u>Releasees</u>"), subject only to the exceptions identified in Section 7 below.  These waived and released claims include, but are not limited to, the following:

(a)          any and all claims arising from or relating to Associate's recruitment, hire, employment, terms and conditions of employment, and termination of employment with the Company;

(b)          any and all claims of wrongful discharge, emotional distress, defamation, misrepresentation, fraud, detrimental reliance, breach of contractual obligations, promissory estoppel, negligence, assault and battery, or violation of public policy;

(c)          any and all claims of unlawful discrimination, harassment and retaliation under any applicable federal, state and/or local laws and regulations, including, but not limited to, the federal Age Discrimination in Employment Act, as amended (the "ADEA");

(d)          any and all claims of violation(s) of any federal, state and local law relating to recruitment, hiring, employment, terms and conditions of employment, and termination of employment;

(e)          any and all claims for monetary damages and any other form of personal recovery or relief, including, but not limited to, claims for costs, expenses, and attorneys' fees;

(f)          to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits of Section 1542 of the Civil Code of the State of California, which reads as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor"; and

(g)          to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits conferred by any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542.

**7.     Claims Not Being Waived**.  The only claims not waived and released by Associate under Section 6 are those involving:

(a)          unemployment and/or state disability benefits pursuant to the terms of applicable state law;

(b)          any benefit entitlements that are vested as of the Separation Date pursuant to the terms of a Company-sponsored employee benefit plan governed by the federal  Employee Retirement Income Security Act of 1974, as amended ("ERISA");

(c)          any claim that, by operation of law, cannot under any circumstances be waived; and

(d)          any claim arising after the date that Associate signs this Agreement.

**8.     Arbitration**.  In exchange for the consideration described herein, the parties agree to be bound by the Mutual Arbitration Agreement attached hereto as Attachment B and incorporated by reference herein.

**9.     Confidentiality of this Agreement**.  Associate agrees not to disclose the terms of this Agreement to anyone else, except for Associate's spouse or partner, Associate's attorney and/or accountant, provided that any individuals covered within these exceptions from confidentiality agree not to disclose the terms of this Agreement to anyone else.

**10.        Other Confidential and Proprietary Information/Non-Competition Agreements**. Associate agrees to be bound by the Unisys Employee Proprietary Information, Invention and Non-Competition Agreement attached as Attachment A, which is incorporated into and made part of this Agreement, as well as any prior invention, confidentiality and trade secret agreements and any stock/incentive compensation agreements Associate has signed during employment with the Company.

**11.        Non-Solicitation.**  Associate agrees that Associate shall not, for a period of one (1) year from and after the Effective Date (as defined below in Section 16), directly or indirectly, hire, employ, solicit for employment, or advise or recommend to any other person that they employ or solicit for employment, any individual who is an employee of the Company.

**12.        Cooperation.**  Associate agrees upon request to fully cooperate with the Company before and after Associate's Separation Date in relation to any business, operational, regulatory, litigation or compliance issues.

**13.        Non-Disparagement.**  Subject to Section 14 below, on and after the Effective Date Associate will not take any action, or play any role in any communication, written or otherwise, that disparages, criticizes, or otherwise reflects adversely on or encourages any adverse action against the Releasees and/or the Releasees' products or services.

**14.        Investigations and Related Proceedings**.  Nothing in this Agreement, including the Release, Confidentiality, Cooperation and Non-Disparagement Clauses herein, shall affect or interfere with Associate's right to participate, cooperate, initiate, assist in and make truthful statements in an investigation or proceeding involving or conducted by the Company or by any government agency(including the Equal Employment Opportunity Commission, National Labor Relations Board and Securities and Exchange Commission) , oversight board, commission, court or other regulatory or investigative body. However, Associate waives any right to receive any individual monetary relief based on claims asserted in such charge, regardless of whether Associate, a government agency or another party has filed it.

**15.        Non-Admissions.**  Nothing in this Agreement shall be regarded as an admission of any wrongdoing, fault, liability, or unlawful activity by Associate, the Company or any Releasee.

**16.        Consideration and Revocation Periods and Effective Date.**  The parties agree as follows:

(a)        Associate has been given forty-five (45) calendar days after the date he/she receives the Informational Disclosures described below ("45-day Consideration Period") to review and consider whether or not to sign this Agreement.  The parties agree that changes in this Agreement, whether material or immaterial, do not restart the running of the 45-day Consideration Period.

(b)        During a period of seven (7) calendar days after the date Associate signs this Agreement ("Revocation Period"), Associate may revoke this Agreement by providing written notice of his/her revocation to the Company by hand delivery, overnight service, fax or e-mail transmission, during the Revocation Period, using the contact information for the Company stated in Section 19 below.

(c)        This Agreement will not become effective and enforceable until the eighth (8th) day after the date Associate has signed and returned it to the Company, provided that Employee has not revoked this Agreement during the Revocation Period (the "Effective Date").

(d)     To the extent this Agreement purports to waive any claims against the Releasees pursuant to the Minnesota Human Rights Act:

(i)     the Revocation Period referenced in Section 16(b) shall be fifteen (15) calendar days after the date Associate signs this Agreement, rather than seven (7); and

(ii)     the Effective Date of this Agreement referenced in Section 16(c) shall be the sixteenth (16th) day after the date Associate has signed and returned it to the Company, provided that Employee has not revoked this Agreement during the Revocation Period.

**17.     Informational Disclosures**.  Associate acknowledges he/she received the Attachment C to this Agreement on the same date this Agreement was received by him/her which identifies:

(a)     the decisional unit, which means the class, unit, or group of individuals covered by the employment termination and separation program (the "Program"); and

(b)     the eligibility factors used to determine who is eligible or selected for the Program; and

(c)     the time limits applicable to the Program; and

(d)     the job titles and ages of all Company employees eligible or selected for the Program; and

(e)     the ages of all individuals in the same job classification or organizational unit as the Associate who are not eligible or selected for the Program.

**18.     Consultation with Attorney**.  The Company hereby advises Associate in writing to consult with an attorney prior to signing this Agreement.

**19.     Notice to the Company**.  Associate can enter into this Agreement, on or before the last date of the 45-day Consideration Period, by signing this Agreement and returning the original signed Agreement to the Company by hand delivery or overnight service postage prepaid, facsimile or email at the following address and directed to the person identified below. In the case of return by overnight service, the signed Agreement will be considered timely if it is received one day following the final day of the 45-day Consideration Period.

> Unisys Corporation
> Attn: HR Service Center
> P.O. Box 9953
> Bismarck, ND  58506
> Phone: 888-560-1782
> Fax: 651-635-3620
> Email: HRSC@unisys.com

Any notice of revocation must be provided to the Company in writing by hand delivery, overnight service postage prepaid, email or facsimile on or before the last day of the Revocation Period, and directed to the HRSC identified above (in the case of return by overnight service, any notice of revocation will be considered timely if it is received one day following the final day of the Revocation Period).  The parties agree that this Agreement may be executed in counterparts with

Separation and Release Agreement

conventional or electronic signatures, and an electronic copy of the executed Agreement, whether created in hard copy form or by electronic or facsimile transmission, shall be enforceable to the same degree as a conventional hard copy original.

20.      **Severability.**  In the event that any portion of this Agreement is held to be invalid, unlawful, or unenforceable for any reason, the invalid, unlawful, or unenforceable portion shall be construed or modified in a manner that gives force and effect to the release set forth in Section 6 above and the remainder of this Agreement to the fullest extent possible.  If the invalid, unlawful or unenforceable portion cannot be construed or modified to render it valid, lawful, and enforceable, that portion shall be construed as narrowly as possible and shall be severed from the remainder of this Agreement, and the remainder of this Agreement, including but not limited to the Mutual Arbitration Agreement attached hereto as Attachment B, shall remain in effect and be construed as broadly as possible, as if the invalid, unlawful, or unenforceable portion had never been contained in this Agreement. Accordingly, even if this Separation Agreement is deemed to be invalid, in part or in whole, the consideration described herein will continue to be separately sufficient for enforcement of the Mutual Arbitration Agreement attached hereto as Attachment B.


21.      **Section 409A of the Internal Revenue Code**. To the extent applicable, the Company shall administer this Agreement in a manner that is consistent with the requirements of section 409A of the federal Internal Revenue Code of 1986, as amended (the "Code"), and this Agreement shall be interpreted to avoid any penalty sanctions under section 409A of the Code. In no event may Associate, directly or indirectly, designate the calendar year of any payment under this agreement. Further, to the maximum extent permitted under section 409A of the Code, all benefits payable under this Agreement are intended to not be deferred compensation subject to the requirements of section 409A of the Code in reliance on the "short-term deferral exception" under Treas. Reg. Section 1.409A-1(b)(4), and any remaining amount is intended to comply with the "separation pay exception" under Treas. Reg. Section 1.409A-1(b)(9)(iii). However, to the extent that any payment under this Agreement is deferred compensation subject to section 409A of the Code ("Deferred Compensation"), (i) if the time of Associate's signing of the Agreement could affect whether any installment of Deferred Compensation is made in one taxable year or the subsequent taxable year, any such installment of Deferred Compensation shall be paid in the subsequent taxable year; and (ii) if Associate is a "specified employee" as defined in section 409A of the Code and the rules adopted by Unisys, any installments of Deferred Compensation that would have been paid to Associate during the first six (6) months following his/her separation from service will be delayed and paid in a lump sum on the first day of the seventh (7th) month following his/her separation from service.  Each payment under this Agreement and the SUB Plan is deemed to be a separate payment for purposes of section 409A of the Code, and the right to a series of installment payments shall be treated as the right to a series of separate payments. While the benefits provided to Associate under this Agreement are intended to be exempt from the requirements of section 409A of the Code to the extent possible, neither the Company nor any of its affiliates makes or has made any representation, warranty or guarantee of any federal, state or local tax consequences of Associate's receipt of any benefit or payment hereunder, including, but not limited to, under section 409A of the Code, and Associate is solely responsible for all taxes that may result from his/her receipt of the amounts payable to Associate under this  Agreement

22.      **Governing Law.**  Federal or state law within the Commonwealth of Pennsylvania shall govern the validity, performance, enforcement, interpretation and any other aspect of this Agreement, notwithstanding any state's choice of law provisions to the contrary.

23.      **Complete Agreement**.  This Agreement, including the Attachments hereto,

constitutes the parties' entire agreement and cancels, supersedes, and replaces any and all prior agreements (written, oral or implied) between Associate and the Company regarding all of the subjects covered by this Agreement, with the exception of the agreements signed by Associate as described in Section 10.  Neither Associate nor the Company is relying on any representation or promise that is not expressly stated in this Agreement.  No changes to this Agreement can be effective except by another written agreement signed by Associate and by the Company's Senior Vice President of Human Resources.


Date Given to Associate: 2/28/2019          Signed by *Darryl Hoffman*_____
                                            Business Unit HR
                                            Unisys Corporation



THE UNDERSIGNED ASSOCIATE HAS READ AND UNDERSTANDS THIS SEPARATION AND RELEASE AGREEMENT, INCLUDING THE ATTACHMENTS, AND KNOWINGLY AND VOLUNTARILY SIGNS AND ENTERS INTO THIS AGREEMENT.

Date Signed: ___3/1/19_____          _____
                                         Anthony Caccavale

**ATTACHMENT B**
**to Separation And Release Agreement**

**MUTUAL ARBITRATION AGREEMENT**

The parties agree that:

a)  Except (i) as expressly set forth in the section, "Claims Not Covered by this
    Agreement," all disputes, claims, complaints, or controversies ("Claims") that
    Associate now has or in the future may have against the Company and/or any of its
    parents, subsidiaries, affiliates, current and former officers, directors, employees,
    and/or agents (collectively and individually the "Company"), or that the Company now
    has or in the future may have against Associate, including contract claims; tort claims;
    discrimination and/or harassment claims; retaliation claims; claims for overtime,
    wages, compensation, penalties or restitution; and any other claim under any federal,
    state, or local statute, constitution, regulation, rule, ordinance, or common law, arising
    out of and/or directly or indirectly related to Associate's application for employment
    with the Company, and/or Associate's employment with the Company, and/or the
    terms and conditions of Associate's employment with the Company, and/or
    termination of Associate's employment with the Company (collectively "Covered
    Claims"), are subject to arbitration pursuant to the terms of this Agreement and will be
    resolved by Arbitration and NOT by a court or jury.  The parties hereby forever waive
    and give up the right to have a judge or a jury decide any Covered Claims.

b)  To the maximum extent permitted by applicable law, the parties agree that:

    (i)    No Covered Claims may be initiated or maintained on a class action, or
           collective action either in court or arbitration;

    (ii)   A court of competent jurisdiction, not an arbitrator, must resolve issues
           concerning the enforceability or validity of the class and collective action
           waiver set forth above;

    (iii)  If, for any reason, the class action and collective action waiver is held
           unenforceable or invalid in whole or in part, then a court of competent
           jurisdiction, not an arbitrator, will decide the type of claim as to which the
           waiver was held unenforceable or invalid and all other claims will remain
           subject to arbitration;

c)  All claims must be brought in a party's individual capacity and unless the parties
    expressly agree in writing, Covered Claims may not be joined or consolidated in court
    or arbitration with other individuals' claims, and no damages or penalties may be
    sought or recovered on behalf of other individuals; and

d)  Although Associate has the right to file a charge or complaint with the Equal
    Employment Opportunity Commission, the National Labor Relations Board ("NLRB"),
    the Department of Labor, the Occupational Safety and Health Commission, or any
    other federal, state, or local administrative agency, if any federal, state or local

administrative agency proceeding does not finally resolve the Covered Claim, the parties must submit the claim to arbitration under this Agreement.

e)   Associate also has the right to challenge the validity of the terms and conditions of this Mutual Arbitration Agreement on any grounds that may exist in law and equity, and the Company shall not engage in any retaliatory actions against Associate in the event the Associate chooses to do so.  The Company, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

f)   The following are "Claims Not Covered by this Agreement":

    (i)   Claims for workers' compensation benefits, unemployment compensation benefits, benefits under a plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and claims that are subject to the exclusive jurisdiction of the NLRB; and

    (ii)   Any claim that is expressly precluded from arbitration or a pre-dispute arbitration agreement by a governing federal law or by a state law that is not preempted by the Federal Arbitration Act ("FAA").

g)   Arbitration Procedures

    (i)   Except as provided below, the parties will use the Judicial Arbitration and Mediation Services ("JAMS"), subject to its then-current employment arbitration rules and procedures (and the then-existing emergency relief procedures contained in the JAMS comprehensive arbitration rules and procedures if either party seeks emergency relief prior to the appointment of an Arbitrator), available at www.jamsadr.com, unless those rules and/or procedures conflict with any express term of this Agreement, in which case this Agreement is controlling;

    (ii)   If, and only if, there is no JAMS Resolution Center within 100 miles of Associate's last place of employment with the Company, unless both parties agree otherwise, the parties will use the American Arbitration Association (AAA), subject to its then-current employment arbitration rules and procedures (and the then-existing emergency relief procedures, if any, contained in the AAA comprehensive arbitration rules and procedures if either party seeks emergency relief prior to the appointment of an Arbitrator), available at www.adr.org, unless those rules and/or procedures conflict with any express term of this Agreement, in which case this Agreement is controlling;

    (iii)   No arbitration under this Agreement shall be subject to the JAMS or AAA Class Action Procedures;

    (iv)   The arbitration will be heard by a single Arbitrator in the State or Territory where Associate last worked for the Company;

    (v)   Any party shall have the right to file a motion to dismiss and/or a motion for summary judgment, which the Arbitrator shall have the authority and obligation to decide by application of the Federal Rules of Civil Procedure governing such motions; and

(vi) The Arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the FAA. The award shall have no preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

h) Arbitration Fees and Costs

(i) The Company will pay all JAMS or AAA filing or administrative fees, and any additional fees unique to arbitration.

(ii) Associate will pay Associate's own attorneys' fees and all other costs and fees that Associate incurs in connection with the Arbitration, except those covered by the Company under Paragraph (h)(i). The Company will pay its own attorneys' fees and all other costs and fees that it incurs in connection with the Arbitration. The Arbitrator will not otherwise have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the applicable prevailing party, in which case the Arbitrator shall have the authority to make an award of attorneys' fees to the full extent permitted by applicable law. If there is a dispute as to who is the prevailing party, the Arbitrator will decide this issue.

**ATTACHMENT C**
**to Separation and Release Agreement**

02/28/2019 - DATE OF NOTICE

**Decisional Unit**. The class, unit, or group of individuals covered by the separation pay and employment termination program (the "Program") of Unisys Corporation (the "Company") consists of employees of Field Services Enterprise HPE MA,NH,VT,NYC,ME within the Enterprise Solutions business unit whose employment will terminate 03/14/2019- 03/18/2019 as a result of the workforce reduction which employees were notified on 02/28/2019 – 03/04/19.

**Eligibility Factors**. A person is eligible for the Program if he or she was employed as a Field Engineer (1, 2, 3, or 4) or Network Design Engineer (4) by Field Services Enterprise HPE MA,NH,VT,NYC,ME within the Enterprise Solutions business unit excluding associates who are subject to certain contractual obligations between Unisys and its client(s) or who are filling roles as Deployment Services Engineers. His or her employment will terminate on 14 Mar 2019 as a result of the workforce reduction which employees were notified of on 28 Feb 2019, and if the person fails to secure employment elsewhere in the Company, and if the person signs and returns (and does not revoke in a timely manner) the Separation and Release Agreement ("Agreement"). The selection of employees for employment termination resulted from the Company's consideration of several factors, including but not limited to, continuing operations of business units/departments and product lines/services, employee salary/pay, qualifications, performance, experience and training in relation to the Company's forward-looking business requirements.

**Time Limits**. The time limits applicable to this program are as follows:
i)   eligible employees have 45 calendar days after receiving both the Agreement and this Attachment to sign and return the Agreement (in the manner described in the Agreement);

j)   eligible employees, after signing and returning the Agreement, have 7 calendar days (15 days in Minnesota) thereafter to revoke the Agreement (in the manner described in the Agreement);

k)   other details, including but not limited to, the manner in which the Agreement can be signed, returned and revoked are set forth in the Agreement.

**Employees Selected and Not Selected – Job Titles and Ages**.  The following is a list of the job titles and ages of employees within the decisional unit who were selected for the Program (employment termination and the offer of separation pay and/or benefits for signing a release and the Agreement), and the ages of all individuals in the same job classification or organizational unit who were not selected for the Program:

| Role (Age) | Selected Y | N |
|---|---|---|
| **Field Engineer 2** | | |
| 47 | | 2 |
| 51 | 1 | |
| 54 | | 1 |
| 56 | | 1 |
| 58 | | 1 |
| 59 | | 2 |
| 60 | | 2 |
| 61 | 1 | |
| 62 | 1 | 1 |
| 65 | 1 | |
| 66 | | 1 |
| **Field Engineer 3** | | |
| 47 | | 1 |
| 53 | | 1 |
| 65 | | 1 |
| 71 | 1 | |
| **Network Design Engineer 4** | | |
| 58 | | 1 |
| 64 | | 1 |

end Disclosure_Grid

## SEPARATION AND RELEASE AGREEMENT

## TRANSMITTAL FORM

To:   Unisys Human Resources Service Center
Fax: 651-635-3620
Email: HRSC@unisys.com
Phone: 888-560-1782
Address:  PO Box 5593, Bismarck ND 58506

Attached is my signed Separation and Release Agreement.  If you need to contact me in the future, my home address and contact information are as follows:

Name: _____ANTHONY   MANGELLI_____

Employee ID Number: _____REDACTED_____

Home Telephone Number: __REDACTED_____

Cell Phone Number: _____REDACTED_____

Email Address: _REDACTED_____   @GMAIL.COM

Home Street Address: _REDACTED_____

City/State/Zip Code: _REDACTED_____

Separation Date: _____3-14-2019_____

NOTE: The entire signed Separation and Release Agreement initially can be sent via fax or email along with this transmittal form.
You will receive a confirmation from Unisys when the signed agreement is received; you may also send it via certified mail with proof of delivery.
ATTACHMENT: **Signed Separation and Release Agreement (all pages)**

## SEPARATION AND RELEASE AGREEMENT

This Separation and Release Agreement ("Agreement") is entered into between the undersigned employee, Anthony Mangelli ("Associate") and Unisys Corporation ("Company"), who agree as follows:

**1.        Supplemental Unemployment Benefits**.  In exchange for the release and promises set forth in this Agreement, the Company agrees to pay Associate, pursuant to and subject to the provisions of the Unisys Supplemental Unemployment Benefits Plan ("SUB Plan") (including, but not limited to, the provisions related to continued eligibility for payments and the need to periodically report eligibility status to the SUB Plan's record keeper, etc.), supplemental unemployment benefits ("SUB Payments") in an amount equal to Associate's weekly base rate of pay, less the amount of your initial weekly state unemployment compensation benefits and other applicable deductions and withholdings, for 2 weeks ("SUB Payment Period") (or a lesser number of weeks if Associate ceases to continue to meet the SUB Plan's eligibility rules) pursuant to Employer's normal payroll practices relating to SUB Payments.

**2.        Unemployment Compensation.**  In connection with Associate's employment termination, the Company agrees it will not dispute or contest any claim for unemployment compensation filed by Associate to the extent permitted by applicable law.

**3.        Outplacement Assistance.**  Associate will be entitled to participate in outplacement assistance in accordance with the Company's agreement with Right Management.

**4.        Employment Termination and Separation.**  The parties agree that Associate's employment with the Company is terminated effective on 3/14/2019 ("Separation Date"). Associate also agrees that, separate and apart from any  benefits provided pursuant to this Agreement, Associate is not entitled to any payments, bonuses, incentives or other benefits of any kind from the Company except for the following: (i) wages earned based on work performed to and including the Separation Date; (ii) any vested and unused paid vacation time to and including the Separation Date; and (iii) reimbursement for any reasonable and necessary business travel or entertainment expenses incurred on behalf of the Company through the Separation Date to the extent that these expenses are subject to reimbursement under the Company's policies, practices and/or procedures.  Associate agrees that the benefits provided pursuant to this Agreement are in addition to what he/she would otherwise be entitled to receive.

**5.        Return of Company Property**.  Associate has returned all Company property to the Company, including all documents and materials created or received by Associate in the course of employment with the Company, except for employment or benefits documents pertaining specifically to Associate's employment (including, but not limited to, documents reflecting his/her compensation rate, payments, benefits, or Associate's separation).

**6.        General Waiver and Release**.  Associate waives and releases any and all claims arising on or before the date of Associate's execution of this Agreement, whether or not now known, that Associate has or might have against the Company, its parents, subsidiaries, affiliated companies, predecessors and assigns, and all of their past and present officers, directors, employees, benefit and compensation plan fiduciaries, agents, successors, and assigns (collectively "Releasees"), subject only to the exceptions identified in Section 7 below.  These waived and released claims include, but are not limited to, the following:

Separation and Release Agreement

(a)         any and all claims arising from or relating to Associate's recruitment, hire, employment, terms and conditions of employment, and termination of employment with the Company;

(b)         any and all claims of wrongful discharge, emotional distress, defamation, misrepresentation, fraud, detrimental reliance, breach of contractual obligations, promissory estoppel, negligence, assault and battery, or violation of public policy;

(c)         any and all claims of unlawful discrimination, harassment and retaliation under any applicable federal, state and/or local laws and regulations, including, but not limited to, the federal Age Discrimination in Employment Act, as amended (the "ADEA");

(d)         any and all claims of violation(s) of any federal, state and local law relating to recruitment, hiring, employment, terms and conditions of employment, and termination of employment;

(e)         any and all claims for monetary damages and any other form of personal recovery or relief, including, but not limited to, claims for costs, expenses, and attorneys' fees;

(f)         to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits of Section 1542 of the Civil Code of the State of California, which reads as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor"; and

(g)         to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits conferred by any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542.

**7.         Claims Not Being Waived**.  The only claims not waived and released by Associate under Section 6 are those involving:

(a)         unemployment and/or state disability benefits pursuant to the terms of applicable state law;

(b)         any benefit entitlements that are vested as of the Separation Date pursuant to the terms of a Company-sponsored employee benefit plan governed by the federal  Employee Retirement Income Security Act of 1974, as amended ("ERISA");

(c)         any claim that, by operation of law, cannot under any circumstances be waived; and

(d)         any claim arising after the date that Associate signs this Agreement.

**8.         Arbitration**.  In exchange for the consideration described herein, the parties agree to be bound by the Mutual Arbitration Agreement attached hereto as Attachment B and incorporated by reference herein.

**9.         Confidentiality of this Agreement**.  Associate agrees not to disclose the terms of this Agreement to anyone else, except for Associate's spouse or partner, Associate's attorney and/or accountant, provided that any individuals covered within these exceptions from confidentiality agree not to disclose the terms of this Agreement to anyone else.

10.      **Other Confidential and Proprietary Information/Non-Competition Agreements**. Associate agrees to be bound by the Unisys Employee Proprietary Information, Invention and Non-Competition Agreement attached as Attachment A, which is incorporated into and made part of this Agreement, as well as any prior invention, confidentiality and trade secret agreements and any stock/incentive compensation agreements Associate has signed during employment with the Company.

11.      **Non-Solicitation.** Associate agrees that Associate shall not, for a period of one (1) year from and after the Effective Date (as defined below in Section 16), directly or indirectly, hire, employ, solicit for employment, or advise or recommend to any other person that they employ or solicit for employment, any individual who is an employee of the Company.

12.      **Cooperation.** Associate agrees upon request to fully cooperate with the Company before and after Associate's Separation Date in relation to any business, operational, regulatory, litigation or compliance issues.

13.      **Non-Disparagement.** Subject to Section 14 below, on and after the Effective Date Associate will not take any action, or play any role in any communication, written or otherwise, that disparages, criticizes, or otherwise reflects adversely on or encourages any adverse action against the Releasees and/or the Releasees' products or services.

14.      **Investigations and Related Proceedings**. Nothing in this Agreement, including the Release, Confidentiality, Cooperation and Non-Disparagement Clauses herein, shall affect or interfere with Associate's right to participate, cooperate, initiate, assist in and make truthful statements in an investigation or proceeding involving or conducted by the Company or by any government agency(including the Equal Employment Opportunity Commission, National Labor Relations Board and Securities and Exchange Commission) , oversight board, commission, court or other regulatory or investigative body. However, Associate waives any right to receive any individual monetary relief based on claims asserted in such charge, regardless of whether Associate, a government agency or another party has filed it.

15.      **Non-Admissions.** Nothing in this Agreement shall be regarded as an admission of any wrongdoing, fault, liability, or unlawful activity by Associate, the Company or any Releasee.

16.      **Consideration and Revocation Periods and Effective Date.** The parties agree as follows:

(a)      Associate has been given forty-five (45) calendar days after the date he/she receives the Informational Disclosures described below ("45-day Consideration Period") to review and consider whether or not to sign this Agreement. The parties agree that changes in this Agreement, whether material or immaterial, do not restart the running of the 45-day Consideration Period.

(b)      During a period of seven (7) calendar days after the date Associate signs this Agreement ("Revocation Period"), Associate may revoke this Agreement by providing written notice of his/her revocation to the Company by hand delivery, overnight service, fax or e-mail transmission, during the Revocation Period, using the contact information for the Company stated in Section 19 below.

(c)      This Agreement will not become effective and enforceable until the eighth (8th) day after the date Associate has signed and returned it to the Company, provided that Employee has not revoked this Agreement during the Revocation Period (the "Effective Date").

Separation and Release Agreement

(d)         To the extent this Agreement purports to waive any claims against the Releasees pursuant to the Minnesota Human Rights Act:

(i)      the Revocation Period referenced in Section 16(b) shall be fifteen (15) calendar days after the date Associate signs this Agreement, rather than seven (7); and

(ii)      the Effective Date of this Agreement referenced in Section 16(c) shall be the sixteenth (16th) day after the date Associate has signed and returned it to the Company, provided that Employee has not revoked this Agreement during the Revocation Period.

**17.        Informational Disclosures**.  Associate acknowledges he/she received the Attachment C to this Agreement on the same date this Agreement was received by him/her which identifies:

(a)         the decisional unit, which means the class, unit, or group of individuals covered by the employment termination and separation program (the "Program"); and

(b)         the eligibility factors used to determine who is eligible or selected for the Program; and

(c)         the time limits applicable to the Program; and

(d)         the job titles and ages of all Company employees eligible or selected for the Program; and

(e)         the ages of all individuals in the same job classification or organizational unit as the Associate who are not eligible or selected for the Program.

**18.        Consultation with Attorney**.  The Company hereby advises Associate in writing to consult with an attorney prior to signing this Agreement.

**19.        Notice to the Company**.  Associate can enter into this Agreement, on or before the last date of the 45-day Consideration Period, by signing this Agreement and returning the original signed Agreement to the Company by hand delivery or overnight service postage prepaid, facsimile or email at the following address and directed to the person identified below. In the case of return by overnight service, the signed Agreement will be considered timely if it is received one day following the final day of the 45-day Consideration Period.

> Unisys Corporation
> Attn: HR Service Center
> P.O. Box 9953
> Bismarck, ND  58506
> Phone: 888-560-1782
> Fax: 651-635-3620
> Email: HRSC@unisys.com

Any notice of revocation must be provided to the Company in writing by hand delivery, overnight service postage prepaid, email or facsimile on or before the last day of the Revocation Period, and directed to the HRSC identified above (in the case of return by overnight service, any notice of revocation will be considered timely if it is received one day following the final day of the Revocation Period).  The parties agree that this Agreement may be executed in counterparts with

conventional or electronic signatures, and an electronic copy of the executed Agreement, whether created in hard copy form or by electronic or facsimile transmission, shall be enforceable to the same degree as a conventional hard copy original.

**20.**     **Severability.**  In the event that any portion of this Agreement is held to be invalid, unlawful, or unenforceable for any reason, the invalid, unlawful, or unenforceable portion shall be construed or modified in a manner that gives force and effect to the release set forth in Section 6 above and the remainder of this Agreement to the fullest extent possible.  If the invalid, unlawful or unenforceable portion cannot be construed or modified to render it valid, lawful, and enforceable, that portion shall be construed as narrowly as possible and shall be severed from the remainder of this Agreement, and the remainder of this Agreement, including but not limited to the Mutual Arbitration Agreement attached hereto as Attachment B, shall remain in effect and be construed as broadly as possible, as if the invalid, unlawful, or unenforceable portion had never been contained in this Agreement. Accordingly, even if this Separation Agreement is deemed to be invalid, in part or in whole, the consideration described herein will continue to be separately sufficient for enforcement of the Mutual Arbitration Agreement attached hereto as Attachment B.

**21.**     **Section 409A of the Internal Revenue Code**. To the extent applicable, the Company shall administer this Agreement in a manner that is consistent with the requirements of section 409A of the federal Internal Revenue Code of 1986, as amended (the "Code"), and this Agreement shall be interpreted to avoid any penalty sanctions under section 409A of the Code. In no event may Associate, directly or indirectly, designate the calendar year of any payment under this agreement. Further, to the maximum extent permitted under section 409A of the Code, all benefits payable under this Agreement are intended to not be deferred compensation subject to the requirements of section 409A of the Code in reliance on the "short-term deferral exception" under Treas. Reg. Section 1.409A-1(b)(4), and any remaining amount is intended to comply with the "separation pay exception" under Treas. Reg. Section 1.409A-1(b)(9)(iii). However, to the extent that any payment under this Agreement is deferred compensation subject to section 409A of the Code ("Deferred Compensation"), (i) if the time of Associate's signing of the Agreement could affect whether any installment of Deferred Compensation is made in one taxable year or the subsequent taxable year, any such installment of Deferred Compensation shall be paid in the subsequent taxable year; and (ii) if Associate is a "specified employee" as defined in section 409A of the Code and the rules adopted by Unisys, any installments of Deferred Compensation that would have been paid to Associate during the first six (6) months following his/her separation from service will be delayed and paid in a lump sum on the first day of the seventh (7th) month following his/her separation from service.  Each payment under this Agreement and the SUB Plan is deemed to be a separate payment for purposes of section 409A of the Code, and the right to a series of installment payments shall be treated as the right to a series of separate payments. While the benefits provided to Associate under this Agreement are intended to be exempt from the requirements of section 409A of the Code to the extent possible, neither the Company nor any of its affiliates makes or has made any representation, warranty or guarantee of any federal, state or local tax consequences of Associate's receipt of any benefit or payment hereunder, including, but not limited to, under section 409A of the Code, and Associate is solely responsible for all taxes that may result from his/her receipt of the amounts payable to Associate under this  Agreement

**22.**     **Governing Law.**  Federal or state law within the Commonwealth of Pennsylvania shall govern the validity, performance, enforcement, interpretation and any other aspect of this Agreement, notwithstanding any state's choice of law provisions to the contrary.

**23.**     **Complete Agreement**. This Agreement, including the Attachments hereto,

Separation and Release Agreement

constitutes the parties' entire agreement and cancels, supersedes, and replaces any and all prior agreements (written, oral or implied) between Associate and the Company regarding all of the subjects covered by this Agreement, with the exception of the agreements signed by Associate as described in Section 10.  Neither Associate nor the Company is relying on any representation or promise that is not expressly stated in this Agreement.  No changes to this Agreement can be effective except by another written agreement signed by Associate and by the Company's Senior Vice President of Human Resources.


Date Given to Associate: 2/28/2019          Signed by Darryl Hoffman
                                                    Business Unit HR
                                                    Unisys Corporation



THE UNDERSIGNED ASSOCIATE HAS READ AND UNDERSTANDS THIS SEPARATION AND RELEASE AGREEMENT, INCLUDING THE ATTACHMENTS, AND KNOWINGLY AND VOLUNTARILY SIGNS AND ENTERS INTO THIS AGREEMENT.

Date Signed:    3 - 7 - 2019          _anthony Mangelli_
                                               Anthony Mangelli

**ATTACHMENT B**
**to Separation And Release Agreement**

**MUTUAL ARBITRATION AGREEMENT**

The parties agree that:

a) Except (i) as expressly set forth in the section, "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that Associate now has or in the future may have against the Company and/or any of its parents, subsidiaries, affiliates, current and former officers, directors, employees, and/or agents (collectively and individually the "Company"), or that the Company now has or in the future may have against Associate, including contract claims; tort claims; discrimination and/or harassment claims; retaliation claims; claims for overtime, wages, compensation, penalties or restitution; and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to Associate's application for employment with the Company, and/or Associate's employment with the Company, and/or the terms and conditions of Associate's employment with the Company, and/or termination of Associate's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury.  The parties hereby forever waive and give up the right to have a judge or a jury decide any Covered Claims.

b) To the maximum extent permitted by applicable law, the parties agree that:

    (i)   No Covered Claims may be initiated or maintained on a class action, or collective action either in court or arbitration;

    (ii)   A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the class and collective action waiver set forth above;

    (iii)   If, for any reason, the class action and collective action waiver is held unenforceable or invalid in whole or in part, then a court of competent jurisdiction, not an arbitrator, will decide the type of claim as to which the waiver was held unenforceable or invalid and all other claims will remain subject to arbitration;

c) All claims must be brought in a party's individual capacity and unless the parties expressly agree in writing, Covered Claims may not be joined or consolidated in court or arbitration with other individuals' claims, and no damages or penalties may be sought or recovered on behalf of other individuals; and

d) Although Associate has the right to file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board ("NLRB"), the Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency, if any federal, state or local

administrative agency proceeding does not finally resolve the Covered Claim, the parties must submit the claim to arbitration under this Agreement.

e) Associate also has the right to challenge the validity of the terms and conditions of this Mutual Arbitration Agreement on any grounds that may exist in law and equity, and the Company shall not engage in any retaliatory actions against Associate in the event the Associate chooses to do so. The Company, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

f) The following are "Claims Not Covered by this Agreement":

    (i)    Claims for workers' compensation benefits, unemployment compensation benefits, benefits under a plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and claims that are subject to the exclusive jurisdiction of the NLRB; and

    (ii)    Any claim that is expressly precluded from arbitration or a pre-dispute arbitration agreement by a governing federal law or by a state law that is not preempted by the Federal Arbitration Act ("FAA").

g) Arbitration Procedures

    (i)    Except as provided below, the parties will use the Judicial Arbitration and Mediation Services ("JAMS"), subject to its then-current employment arbitration rules and procedures (and the then-existing emergency relief procedures contained in the JAMS comprehensive arbitration rules and procedures if either party seeks emergency relief prior to the appointment of an Arbitrator), available at www.jamsadr.com, unless those rules and/or procedures conflict with any express term of this Agreement, in which case this Agreement is controlling;

    (ii)    If, and only if, there is no JAMS Resolution Center within 100 miles of Associate's last place of employment with the Company, unless both parties agree otherwise, the parties will use the American Arbitration Association (AAA), subject to its then-current employment arbitration rules and procedures (and the then-existing emergency relief procedures, if any, contained in the AAA comprehensive arbitration rules and procedures if either party seeks emergency relief prior to the appointment of an Arbitrator), available at www.adr.org, unless those rules and/or procedures conflict with any express term of this Agreement, in which case this Agreement is controlling;

    (iii)    No arbitration under this Agreement shall be subject to the JAMS or AAA Class Action Procedures;

    (iv)    The arbitration will be heard by a single Arbitrator in the State or Territory where Associate last worked for the Company;

    (v)    Any party shall have the right to file a motion to dismiss and/or a motion for summary judgment, which the Arbitrator shall have the authority and obligation to decide by application of the Federal Rules of Civil Procedure governing such motions; and

(vi) The Arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the FAA. The award shall have no preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

h) Arbitration Fees and Costs

(i) The Company will pay all JAMS or AAA filing or administrative fees, and any additional fees unique to arbitration.

(ii) Associate will pay Associate's own attorneys' fees and all other costs and fees that Associate incurs in connection with the Arbitration, except those covered by the Company under Paragraph (h)(i). The Company will pay its own attorneys' fees and all other costs and fees that it incurs in connection with the Arbitration. The Arbitrator will not otherwise have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the applicable prevailing party, in which case the Arbitrator shall have the authority to make an award of attorneys' fees to the full extent permitted by applicable law. If there is a dispute as to who is the prevailing party, the Arbitrator will decide this issue.

**ATTACHMENT C**
**to Separation and Release Agreement**

02/28/2019 - DATE OF NOTICE

**Decisional Unit**.  The class, unit, or group of individuals covered by the separation pay and employment termination program (the "Program") of Unisys Corporation (the "Company") consists of employees Field Services Enterprise HPE E PA,DE,NY,CT within the Enterprise Solutions business unit whose employment will terminate 03/14/2019-03/18/2019 as a result of the workforce reduction which employees were notified on 02/28/2019 – 03/04/19.

**Eligibility Factors**  A person is eligible for the Program if he or she was employed as a Field Engineer (1, 2, 3, or 4) or Network Design Engineer (4) by Field Services Enterprise HPE E PA,DE,NY,CT within the Enterprise Solutions business unit excluding associates who are subject to certain contractual obligations between Unisys and its client(s) or who are filling roles as Deployment Services Engineers. His or her employment will terminate on 14 Mar 2019 as a result of the workforce reduction which employees were notified of on 28 Feb 2019, and if the person fails to secure employment elsewhere in the Company, and if the person signs and returns (and does not revoke in a timely manner) the Separation and Release Agreement ("Agreement"). The selection of employees for employment termination resulted from the Company's consideration of several factors, including but not limited to, continuing operations of business units/departments and product lines/services, employee salary/pay, qualifications, performance, experience and training in relation to the Company's forward-looking business requirements.

**Time Limits**.  The time limits applicable to this program are as follows:
i)  eligible employees have 45 calendar days after receiving both the Agreement and this Attachment to sign and return the Agreement (in the manner described in the Agreement);

j)  eligible employees, after signing and returning the Agreement, have 7 calendar days (15 days in Minnesota) thereafter to revoke the Agreement (in the manner described in the Agreement);

k)  other details, including but not limited to, the manner in which the Agreement can be signed, returned and revoked are set forth in the Agreement.

**Employees Selected and Not Selected – Job Titles and Ages**.  The following is a list of the job titles and ages of employees within the decisional unit who were selected for the Program (employment termination and the offer of separation pay and/or benefits for signing a release and the Agreement), and the ages of all individuals in the same job classification or organizational unit who were not selected for the Program:

| Role (Age) | Selected | |
|---|---|---|
| | Y | N |
| **Field Engineer 1** | | |
| 60 | 1 | |
| **Field Engineer 2** | | |
| 29 | | 1 |
| 55 | | 1 |
| 56 | | 1 |
| 58 | | 1 |
| 59 | | 1 |
| 60 | | 2 |
| 61 | | 2 |
| 63 | | 1 |
| 64 | | 2 |
| **Field Engineer 3** | | |
| 30 | | 1 |
| 44 | | 1 |
| 50 | 1 | |
| 56 | 1 | |
| 59 | 1 | |
| 61 | | 1 |
| 63 | 1 | |
| **Network Design Engineer 4** | | |
| 56 | | 1 |
| 58 | | 2 |
| 59 | | 1 |