UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TONY CACCAVALE, ANTHONY MANGELLI, and          Case No.: 20-cv-00974(GRB)(AKT)
DOUGLAS SORBIE, individually and on behalf of all
others similarly situated,

                                Hon. Gary R. Brown, USDJ

                    Plaintiffs,

        -against-

HEWLETT-PACKARD COMPANY A/K/A HP INC.,
HEWLETT PACKARD ENTERPRISE COMPANY and
UNISYS CORPORATION,

                    Defendants.
-----------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFFS' FIRST CAUSE OF ACTION OF PLAINTIFFS'
FIRST AMENDED COMPLAINT**

Paul A. Pagano, Esq.
Steven J. Moser, Esq
MOSER LAW FIRM, P.C.
*Attorneys for Plaintiffs*
5 East Main Street
Huntington, NY 11743
(516) 671-1150

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY ............................. 3

ARGUMENT ........................................................................................................ 4

I.      MOTION TO DISMISS STANDARD .................................................................. 4

II.     THE HIGHEST NEW YORK STATE COURT TO CONSIDER THE PRECISE ISSUES
        AT HAND HAS EXPRESSLY HELD THAT PLAINTIFFS' FIRST CAUSE OF
        ACTION IS VALID .............................................................................................. 5

III.    PERSUASIVE CASE LAW FROM THE EASTERN DISTRICT ESTABLISHES THAT
        PLAINTIFFS' FIRST CAUSE OF ACTION IS VALID ................................................ 15

IV.     CASELAW ON WHICH DEFENDANTS RELY HAS BEEN OVERTURNED IN
        FAVOR OF *VEGA* AND *SCOTT* .......................................................................... 23

V.      THE NEW YORK STATE COURT OF APPEALS AND THE U.S. SUPREME COURT
        HAVE HELD THAT UNPAID WAGES MEANS WAGES NOT PAID BY A
        CERTAIN DATE AND HAVE HELD THAT LIQUIDATED DAMAGES ARE
        PROPER IN SUCH CIRCUMSTANCES ................................................................... 26

VI.     THE PLAIN LANGUAGE OF NYLL § 198 AUTHORIZES EMPLOYEES TO BRING
        A CLAIM FOR "LATE PAID WAGES" ................................................................... 28

CONCLUSION ...................................................................................................... 32

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Brooklyn Sav. Bank v O'Neil*,
324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) ........................................................ 7, 27

**Second Circuit Opinions**

*Arciello v. Cnty. of Nassau*,
2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. Sept. 20, 2019) .................................................. 21

*Belizaire v. Rav Investigative & Sec. Servs.*,
61 F. Supp. 3d 336 (S.D.N.Y. 2014) .............................................................................. 21, 22

*City of N.Y. v. Mickalis Pawn Shop, L.L.C.*,
645 F.3d 114 (2d Cir. 2011) .............................................................................................. 5

*Coley v. Vannguard Urban Improvement Ass'n*,
No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 27, 2018) . 22

*Cuzco v. Orion Builders, Inc.*,
2010 U.S. Dist. LEXIS 51622 (S.D.N.Y. May 26, 2010) ......................................... 12, 16, 18

*Duverny v. Hercules Med. P.C.*,
No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020) .................. 9

*Guaman v. Krill Contr. Inc.*,
No. 14-CV-4242 (FB) (RER), 2015 U.S. Dist. LEXIS 74567 (E.D.N.Y. May 20, 2015) .... 26

*Hussain v. Pak. Int'l Airlines Corp.*
(VVP), No. 11-CV-932 (ERK) (VVP), 2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23,
2012) ........................................................................................................................ 9, 22, 23

*Mayes v. Summit Ent. Corp.*,
287 F. Supp. 3d 200 (E.D.N.Y. 2018) .................................................................................. 5

*Muhammed Chowdhury v. Hamza Express Food Corp.*,
666 F. App'x 59 (2d Cir. 2016) ......................................................................................... 26

*Perez v. Comhar Grp. L.L.C.*,
No. 19-CV-0964 (FB) (JO), 2020 U.S. Dist. LEXIS 41771 (E.D.N.Y. Mar. 6, 2020) .... 18-19

*Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*,
434 F. Supp. 3d 4 (E.D.N.Y. 2020) ...................................................................................... 5

*Rana v Islam*,
887 F3d 118 (2d Cir 2018] ................................................................................................... 7

*Scott v. Whole Foods Mkt. Grp., Inc.*,
    No. 18-CV-0086 (SJF) (AKT), 2019 U.S. Dist. LEXIS 61726 (E.D.N.Y. Apr. 9, 2019) ........
    ........................................................................................................4, 15, 16, 17, 18, 19

*Urtubia v. B.A. Victory Corp.*,
    857 F. Supp. 2d 476 (S.D.N.Y. 2012) ................................................................. 16

*Yuquilema v. Manhattan's Hero Corp.*,
    No. 13-CV-461 (WHP) (JLC), 2014 U.S. Dist. LEXIS 120422 (S.D.N.Y. Aug. 26, 2014) . 20

**Federal Court Opinions**

*Biggs v. Wilson*,
    1 F.3d 1537 (9th Cir. 1993) ............................................................... 31

*McGrath v. City of Somerville*,
    419 F. Supp. 3d 233 (D. Mass. 2019) ........................................................ 32

**United States Code**

29 U.S.C. § 216(a) ................................................................................ 21
29 U.S.C. § 216(b) ................................................................................ 7
33 U.S.C. § 914 ................................................................................... 27
46 U.S.C. § 596 ................................................................................... 27

**State Cases**

*Bynog v. Cipriani Grp., Inc.*,
    1 N.Y.3d 193, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003) ............................................ 15-16

*Gottlieb v. Kenneth D. Laub & Co.*,
    82 N.Y.2d 457, 605 N.Y.S.2d 213, 626 N.E.2d 29 (1993) ............................................ 6, 29

*Hunter v. Planned Bldg. Servs., Inc.*,
    2018 N.Y. Slip Op. 31541(U), 2018 N.Y. Misc. LEXIS 2896 (2018) ............................. 9, 12

*IKEA U.S. v. Indus. Bd. of Appeals*,
    660 N.Y.S.2d 585 (2d Dep't 1997) ............................................................ 13

*Konkur v. Utica Acad. of Sci. Charter Sch.*,
    181 A.D.3d 1271 (4th Dep't 2020) ........................................................... 20

*Kruty v. Max Finkelstein, Inc.*,
    2019 N.Y. Slip Op. 52021(U), 65 Misc. 3d 1236(A), 119 N.Y.S.3d 831 (Cty. Ct. 2019) .... 24

*N. Marion Sch. Dist. # 15 v. Acstar Ins. Co.*,
    205 Or. App. 484 (2006) ....................................................................... 32

*O'Neil v. Brook. Sav. Bank*,
   293 N.Y. 666, 56 N.E.2d 259 (1944) .......................................................................... 26, 27

*Pachter v. Bernard Hodes Grp., Inc.*,
   2008 N.Y. Slip Op. 5300, 10 N.Y.3d 609, 861 N.Y.S.2d 246, 891 N.E.2d 279 (N.Y. June 10,
   2008) ............................................................................................................................... 6, 16

*Phillips v. Max Finkelstein, Inc.*,
   115 N.Y.S.3d 866 (Cty. Ct. 2019) ..................................................................... 12, 13, 14

*Rojas v. Hi-Tech Metals, Inc.*,
   2019 N.Y. Slip Op. 32755(U), 2019 N.Y. Misc. LEXIS 5046 ......................................... 9, 12

*Rosner v Metropolitan Prop. & Liab. Ins. Co.*,
   96 NY2d 475, 479-480, 754 N.E.2d 760, 729 N.Y.S.2d 658 [2001] ..................................... 7

*Vega v. CM & Assoc. Constr. Mgt., L.L.C.*,
   2019 N.Y. Slip Op. 06459, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't Sept. 10, 2019) ..
   ...........................................................................................................................*passim*

**State Statutes**

N.Y. CPLR § 6312 ......................................................................................................... 14

N.Y. Labor Law § 162 .................................................................................................... 20

N.Y. Labor Law § 191 .............................................................................................*passim*

N.Y. Labor Law § 195 .................................................................................................... 20

N.Y. Labor Law § 196 .................................................................................................... 27

N.Y. Labor Law § 198 .............................................................................................*passim*

N.Y. Labor Law § 218 ............................................................................... 10, 11, 13, 20

iv

## PRELIMINARY STATEMENT

Plaintiffs Tony Caccavale ("Caccavale"), Anthony Mangelli ("Mangelli") and Douglas Sorbie ("Sorbie")(collectively "Plaintiffs") worked/work for Defendants Hewlett-Packard Company a/k/a HP Inc. ("HPI"), Hewlett Packard Enterprise Company ("HPE") and Unisys Corporation ("Unisys")(collectively "Defendants") as field service engineers, *to wit*, manual workers. New York Labor Law ("NYLL") § 191(1)(a) expressly requires that manual workers like Plaintiffs be paid "weekly and not later than seven calendar days after the end of the week in which the wages are earned [.]" It is undisputed that Defendants paid Plaintiffs bi-weekly. Every week that Plaintiffs did not receive a paycheck, Defendants violated NYLL § 191(1)(a) and, pursuant to NYLL § 198(1-a), in each instance, Plaintiffs were entitled to the amount of their unpaid/underpaid wages that were due that week, liquidated damages, reasonable attorneys' fees, and interest. When Defendants paid the balance of the unpaid/underpaid wages that were due weekly in the following weeks' paychecks, such payments satisfied Defendants' obligation to pay Plaintiffs the unpaid/underpaid wages that were due, but did not vitiate Plaintiffs' statutory right to liquidated damages, reasonable attorneys' fees and interest.

By way of concrete illustration, Plaintiff Sorbie still works for Defendant Unisys as a manual worker and is still being paid on a bi-weekly basis. Assume Unisys was required by NYLL § 191(1)(a) to pay Plaintiff Sorbie $2,500 in wages no later than August 26, 2020, but paid him those wages on August 31, 2020. As of August 27, 2020, there would be a "wage claim," "underpayment," and "wages found to be due" of $2,500. Plaintiff Sorbie could then file a wage claim in court under NYLL § 198(1-a), to recover his $2,500 in underpaid wages, $2,500 in liquidated damages, interest and attorneys' fees. If Unisys satisfies part of Plaintiff Sorbie's

damages by paying him the $2,500 in outstanding wages on August 31, 2020, it does not mean that the rest of his damages (i.e. liquidated damages, interest, and attorneys' fees) disappear.

In an attempt to avoid the remedies imposed by NYLL § 198(1-a), the Defendants argue that Plaintiffs do not have a valid cause of action as there was allegedly no underpayment/non-payment of wages/wages found to be due.[1]  Defendants are incorrect.  As illustrated above, every time Defendants failed to pay Plaintiffs timely, said failure constituted an underpayment/non-payment of wages that were due which triggered the remedies provided by NYLL § 198(1-a). The highest New York State Court to rule on the precise issues in question, the First Department of the Appellate Division, has expressly held, on facts that are effectively identical to those at bar, that there is a valid cause of action for violation of NYLL § 191(1)(a) where an employer pays manual workers bi-weekly instead of weekly and that such violation invokes the remedies provided by NYLL § 198(1-a).  Furthermore, persuasive case law out of the Eastern District establishes that Plaintiffs' cause of action for violation of NYLL § 191(1)(a) is valid.  More particularly, Judge Feuerstein, on facts effectively identical to those at bar, has expressly held that there is a valid cause of action for violation of NYLL § 191(1)(a) where an employer pays manual workers bi-weekly instead of weekly and that such violation invokes the remedies provided by NYLL § 198(1-a).  Moreover, both the U.S. Supreme Court and the New York State Court of Appeals have held, in the context of the Fair Labor Standards Act ("FLSA"), that liquidated damages are proper when wages are not paid on time.  The only meaningful difference between the FLSA and NYLL § 191(1)(a) is that the latter *has a more specific due date*, namely manual workers are to be paid *weekly and not later than 7 days after the end of the week in which the wages are earned.*

---

[1] On August 5, 2020, Defendants served a joint memorandum of law in support of their instant motions ("Joint MOL").  *See generally* Joint MOL, p. 2-7.

For these reasons, Plaintiffs' first cause of action, for violations of NYLL § 191(1)(a) and NYLL § 198, should not be dismissed.

## STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

The facts of the instant action are simple. Over the years, Plaintiffs worked for each of the Defendants with Plaintiff Sorbie continuing to work for Defendant Unisys to this day. *See* First Amended Complaint ("FAC"), Docket Entry ("D.E.") 11, p. 3, 5, 6, ¶ 14-16, 31-37, 45-50. During their employment with Defendants, Plaintiffs worked as field service engineers. D.E. 11, p. 3, 5, 6, ¶ 17, 38, 51. While working for each of the Defendants, Plaintiffs' duties included, but were not limited to, physically fixing various pieces of hardware and software, picking up parts, driving to various customers, and utilizing a hand truck and tools (including screw drivers, Allen wrenches, hex tools and a digital volt meter). D.E. 11, p. 3, 4, 5, 6, ¶ 18, 20, 22, 23, 24, 26, 39, 52. Given the foregoing, Plaintiffs were unquestionably manual workers. D.E. 11, p. 4, 5, 6, ¶ 27-29, 40-42, 53-55. NYLL § 191(1)(a) requires that Plaintiffs, as manual workers, be paid "weekly and not later than seven calendar days after the end of the week in which the wages are earned[.]" Defendants willfully paid Plaintiffs bi-weekly instead of weekly. D.E. 11, p. 4, 6, 7, 11, ¶ 30, 43, 56, 82-88. As a result, Plaintiffs are entitled to liquidated damages, reasonable attorneys' fees, and interest pursuant to NYLL § 198(1-a). D.E. 11, p. 11, ¶ 89.[2]

---

[2] Defendants' preliminary statement is incorrect in the following non-exhaustive ways. Joint MOL, p. 1-2. Initially, contrary to Defendants' position, Plaintiffs do allege that they were paid less than the amount of wages that were owed. Indeed, each week that the Plaintiffs were not paid they were paid less than what they were owed. Further, Plaintiffs do not claim that "they are entitled to recover under NYLL § 198 liquidated damages in the amount of *each paycheck they received during a six year period* [.]" Joint MOL, p. 1 (emphasis added). Rather, pursuant to NYLL § 198(1-a), generally speaking, Plaintiffs are entitled to liquidated damages in the amount of half of each paycheck they received during a six year period. Moreover, as borne out by the hypothetical situation set forth *supra* and as more fully established *infra*, Defendants' interpretation of underpayment and its alleged implications for the applicability of NYLL § 198(1-a) are incorrect. Finally, as a point of clarification, as set forth in Plaintiffs' opposition to Defendant Unisys' letter request for a pre-motion conference, Plaintiffs Caccavale and Mangelli are willing to discontinue their claims against Unisys without prejudice. D.E. 31, p. 2.

On May 5, 2020, Plaintiffs filed the FAC.  D.E. 11.  On June 19, 2020, Defendants filed letters requesting a pre-motion conference.  D.E. 27 and 29.  On July 6, 2020, Plaintiffs filed their letters in opposition to Defendants' requests.  D.E. 30 and 31.[3]  On July 15, 2020, the Court held a pre-motion conference with the parties and directed that they brief the viability of Plaintiffs' first cause of action.  Defendants served their motions on August 5, 2020.  The instant memorandum of law is submitted in opposition to Defendants' motions.

## ARGUMENT

### I.    MOTION TO DISMISS STANDARD

When analyzing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "[t]he court must accept the factual allegations in the complaint[] as true and draw all reasonable inferences in favor of the plaintiff."  *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2019 U.S. Dist. LEXIS 61726, at *3-4 (E.D.N.Y. Apr. 9, 2019).  More particularly, "[t]he court determines whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief."  *Scott*, 2019 U.S. Dist. LEXIS 61726, at *4 (internal quotations omitted).  Moreover, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* Here, Plaintiffs' allegations more than sufficiently set forth a cause of action for violations of NYLL § 191(1)(a) and NYLL § 198.

---

[3] Plaintiffs respectfully request that said letters be considered by the Court in connection with Defendants' instant motions.

II.   **THE HIGHEST NEW YORK STATE COURT TO CONSIDER THE PRECISE
      ISSUES AT HAND HAS EXPRESSLY HELD THAT PLAINTIFFS' FIRST
      CAUSE OF ACTION IS VALID**

As a general matter, federal courts are required to apply New York State's law as

interpreted by the New York State Court of Appeals.  *City of N.Y. v. Mickalis Pawn Shop, L.L.C.*,

645 F.3d 114, 152 (2d Cir. 2011).  Where the Court of Appeals has not ruled, a state intermediate

appellate court ruling is "a basis for ascertaining state law which is not to be disregarded by a

federal court unless it is <u>convinced</u> by other persuasive data that the highest court of the state

would decide otherwise."  *Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d 4,

10 (E.D.N.Y. 2020) (emphasis added).  Indeed, "[a] federal court may not choose to ignore

substantive state law if there is no indication that state courts have abandoned their precedent on

the matter."  *Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 207 (E.D.N.Y. 2018).

*Vega v. CM & Assoc. Constr. Mgt., L.L.C., 20*19 N.Y. Slip Op. 06459, 175 A.D.3d 1144,

107 N.Y.S.3d 286 (1st Dep't Sept. 10, 2019), from the Appellate Division First Department, is

the <u>only</u> Appellate Division decision on point for this matter and it establishes that Plaintiffs'

first cause of action is valid.

In *Vega*, as here, plaintiff Irma Vega alleged that she was employed by defendant as a

manual worker, and that, during her employment, she was paid her wages on a bi-weekly basis in

violation of NYLL § 191(1)(a) which requires weekly payment of manual workers.  *Vega*, 175

A.D.3d at 1144; D.E. 11, p. 11, ¶ 82-88.  Also, as here, as a result of defendant's unlawful

actions, Ms. Vega sought liquidated damages, interest, and attorneys' fees pursuant to NYLL §

198(1-a).  *Vega*, 175 A.D.3d at 1144-45; D.E. 11, p. 11, ¶ 89.

In *Vega*, as here, defendant, in seeking to dismiss plaintiff's complaint, argued that

NYLL § 198(1-a) does not provide a remedy for late payment, but only for non-payment.  *Vega*,

175 A.D.3d at 1145; Joint MOL, p. 2-14.  The Court in *Vega* thoroughly rejected defendant's

argument and held that failure to pay a manual worker timely is a violation of NYLL § 191(1)(a) which entitles said manual worker to liquidated damages, attorneys' fees and interest pursuant to NYLL § 198(1-a).  First, the Court held:

> The purpose of section 198(1-a) is 'enhancing enforcement of the Labor Law's substantive wage enforcement provisions' (*id.* at 463; *see generally Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609, 615, 891 N.E.2d 279, 861 N.Y.S.2d 246 [2008]), and **contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages), the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer. The remedies provided by section 198(1-a) apply to 'violations of article 6'** (*Gottlieb*, [4] 82 NY2d at 463), **and section 191(1)(a) is a part of article 6.**

*Vega*, 175 A.D.3d at 1145 (emphasis added).

In reaching the aforesaid holding, the *Vega* Court relied on, *inter alia*, the New York State Court of Appeals case of *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 605 N.Y.S.2d 213, 626 N.E.2d 29 (1993).  In particular, the *Vega* Court was persuaded by the fact that the Court of Appeals held that the remedies provided by NYLL § 198(1-a) apply to violations of article 6 (and that a failure to timely pay wages in violation of NYLL § 191(1)(a) is a violation of article 6). *Gottlieb*, 82 N.Y.2d at 463, 605 N.Y.S.2d 213, 626 N.E.2d 29.

The *Vega* Court further cemented its holding by providing that:

> [C]ontrary to defendant's argument, the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action.  'In the absence of any controlling statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts' in determining the meaning of a word or phrase

---

[4] *Pachter v. Bernard Hodes Grp., Inc.*, 2008 N.Y. Slip Op. 5300, 10 N.Y.3d 609, 861 N.Y.S.2d 246, 891 N.E.2d 279 (N.Y. June 10, 2008) and *Gottlieb v. Kenneth D. Laub & Co., 82* N.Y.2d 457, 605 N.Y.S.2d 213, 626 N.E.2d 29 (1993), on which the *Vega* Court relied, both come from the New York State Court of Appeals, the decisions of which are binding on this Court.

> (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479-
> 480, 754 N.E.2d 760, 729 N.Y.S.2d 658 [2001]).  The word
> underpayment is the noun for the verb underpay; underpay is
> defined as 'to pay less than what is normal or required' (Merriam-
> Webster's Collegiate Dictionary 1364 [11th ed 2012]). The
> moment that an employer fails to pay wages in compliance with
> section 191(1)(a), the employer pays less than what is required.

*Vega*, 175 A.D.3d at 1145 (emphasis added).

The Court went on to further reject defendant's argument by providing:

> We reject defendant's implicit attempt to read into section 198(1-a)
> an ability to cure a violation and evade the statute by paying the
> wages that are due before the commencement of an action. The
> employer may assert an affirmative defense of payment if there are
> no wages for the 'employee to recover' (Labor Law § 198[1-a]).
> However, payment does not eviscerate the employee's statutory
> remedies.

*Vega*, 175 A.D.3d at 1145.

The Court further supported its holdings by analogy to the FLSA as follows:

> In interpreting the liquidated damages provisions of the Fair Labor
> Standards Act of 1938 (FLSA), the Supreme Court has held that,
> regardless of whether an employee has been paid wages owed
> before the commencement of the action, the statute provides a
> liquidated damages remedy for the 'failure to pay the statutory
> minimum on time,' in order to provide 'compensation for the
> retention of a workman's pay which might result in damages too
> obscure and difficult of proof for estimate other than by liquidated
> damages' (*Brooklyn Sav. Bank v O'Neil*, 324 U.S. 697, 707, 65 S.
> Ct. 895, 89 L. Ed. 1296 [1945]). Labor Law § 198(1-a), although
> not identical to the FLSA liquidated damages provision (29 USC §
> 216[b]), has 'no meaningful differences, and both are designed to
> deter wage-and-hour violations in a manner calculated to
> compensate the party harmed' (*Rana v Islam*, 887 F.3d 118, 123
> [2d Cir 2018] [internal quotation marks omitted]). Accordingly,
> liquidated damages may be available under Labor Law § 198(1-a)
> to provide a remedy to workers complaining of untimely payment
> of wages, as well as nonpayment or partial payment of wages.

*Vega*, 175 A.D.3d at 1145-46 (emphasis added).

In support of its determination that liquidated damages are available under NYLL §

198(1-a) for untimely payment of wages as well as nonpayment or partial payment of wages the

Court provided

> The legislative history of the 1967 amendment to section 198 reflects that in addition to imposing 'stronger sanctions' to compel employer compliance, '[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled' (Governor's Approval Mem, Bill Jacket, L 1967, ch 310; 1967 NY Legis Ann at 271). The employee loses the use of money whether he or she is never paid, partially paid, or paid late.

*Vega*, 175 A.D.3d at 1146, fn. 2.

The foregoing holdings in *Vega* establish that Plaintiffs' first cause of action, for

violation of NYLL § 191(1)(a) is valid.  Indeed, as set forth above, the Court in *Vega* specifically

held that paying a manual worker bi-weekly instead of weekly is a violation of NYLL §

191(1)(a) and that a violation of NYLL § 191(1)(a) invokes the remedies available under NYLL

§ 198(1-a).  *Vega*, 175 A.D.3d at 1145.

The Court in *Vega* also analyzed whether a private right of action exists for violation of

NYLL § 191(1)(a) and found that there are both explicit *and* implicit private rights of action for

violation of NYLL § 191(1)(a).  Initially, the Court specifically stated, "Labor Law § 198(1-a)

expressly provides a private right of action for a violation of Labor Law § 191.  Defendant's

position that no private right of action exists is dependent on its erroneous assertion that the late

payment of wages is not an underpayment of wages."[5]  *Vega*, 175 A.D.3d at 1146 (emphasis

added).  The Court then took the issue one step further and provided that even if an express

private right of action doesn't exist, which it does, there is an implied private right of action

given that plaintiff was one of the class for whose particular benefit the statute was enacted

---

[5] Throughout their Joint MOL the Defendants advocate the exact position the *Vega* Court rejected.  *See e.g.* Joint MOL, p. 2-7.

(namely a manual worker), the recognition of a private right of action would promote the legislative purpose of the statute (protecting workers who are generally dependent upon their wages) and the creation of such a right would be consistent with the legislative scheme (NYLL § 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so).  *Vega*, 175 A.D.3d at 1146-1147.

On the state court level, Vega has been relied upon by *Rojas v. Hi-Tech Metals, Inc.*, 2019 N.Y. Slip Op. 32755(U), 2019 N.Y. Misc. LEXIS 5046, at *5-7 (2019) (Queens County Sup. Ct. 2019).  In *Rojas*, the Court rejected both *Hunter v. Planned Bldg. Servs., Inc.*, 2018 N.Y. Slip Op. 31541(U), 2018 N.Y. Misc. LEXIS 2896 (2018) (Queens County Sup. Ct. 2018) and *Hussain v. Pak. Int'l Airlines Corp.* (*VVP*), No. 11-CV-932 (ERK) (VVP), 2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012), relied upon by Defendants herein and distinguished below, and, expressly relying on the holdings of *Vega* and *Gottlieb*, denied defendant's motion to dismiss plaintiff's claims pursuant to NYLL § 191(1)(a) and NYLL § 198.  *Rojas*, 2019 N.Y. Misc. LEXIS 5046, at *5-7.  On the federal court level, *Vega* has been relied upon by *Duverny v. Hercules Med. P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020).  In *Duverny*, the Court, in denying defendants' motion for summary judgment on plaintiff's failure to timely pay wages in violation of NYLL § 191 claim, relied on *Vega* and *Gottlieb* and held that "[t]he remedies available through § 198(1-a) apply to employees bringing claims under § 191[,]" and that "[a] plaintiff's entitlement to statutory damages pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action."  *Duverny*, 2020 U.S. Dist. LEXIS 37547, at *13.

Defendants' attempts to undermine *Vega* are unsuccessful.  First, Defendants argue that while the *Vega* Court recognized that statutory interpretation principles require it to remain

faithful to the commonly understood meaning of words and quoted the Merriam-Webster definition of "underpay," the Court allegedly ignored that definition and treated the phrases "less than" and "later than" as having the same meaning. Joint MOL, p. 11. There is no support for Defendants' argument. As set forth above, the *Vega* Court specifically noted

> The word underpayment is the noun for the verb underpay; underpay is defined as 'to pay less than what is normal or required' (Merriam-Webster's Collegiate Dictionary 1364 [11th ed 2012]). The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required.

*Vega*, 175 A.D.3d at 1145.

In other words, the Court noted that the dictionary defines underpayment as "to pay what is less than normal" and that the second an employer fails to pay wages in compliance with section 191(1)(a) the employer pays less than what is normal or required. The Court did not treat "less than" and "later than" identically as Defendants claim.

Second, Defendants argue, in a footnote, that the Court incorrectly held that there is an implied private right of action for violation of NYLL § 191(1)(a). Joint MOL, p. 12-13, fn. 8. Notably, such argument buries the lede in that *Vega* expressly held that there is an *explicit* private right of action for violation of NYLL § 191(1)(a); a holding which Defendants do not address. *Vega*, 175 A.D.3d at 1146. As to an implied private right of action, Defendants argue, in sum and substance, that the *Vega* Court's holding that an implied private right of action exists is incorrect as an implied private right of action would not be consistent with the pertinent legislative scheme as NYLL § 218(1) allegedly already provides the remedy for a violation of NYLL § 191(1)(a). Joint MOL, p. 12-13, fn. 8. Initially, Defendants tacitly concede that the first two elements of an implied private right of action, namely (1) that plaintiff was one of the class for whose particular benefit the statute was enacted (a manual worker) and (2) the

recognition of a private right of action would promote the legislative purpose of the statute (protecting workers who are generally dependent upon their wages), are met.  Indeed, nowhere in Defendants' Joint MOL do they contest either of those two points nor could they genuinely do so.  Further, the fact that NYLL § 218(1) exists does not in any way, shape, or form, establish that a private right of action for violation of NYLL § 191(1)(a) would be inconsistent with the pertinent legislative scheme.  Among other things, NYLL § 218(4) explicitly provides that "[t]he civil penalty provided for in this section shall be in addition to and may be imposed concurrently with any other remedy or penalty provided for in this chapter" meaning that it is not intended to foreclose other remedies for violation of NYLL § 191(1)(a) such as those provided by NYLL § 198(1-a).  Moreover, NYLL § 218 covers all provisions of article 6 (payment of wages).  If the Court were to adopt Defendants' argument that NYLL § 218 forecloses remedies other than those contained therein for the violations addressed therein there would be no other remedies sections (such as NYLL § 198(1-a)) since NYLL § 218 covers all of article 6.  Also, NYLL § 218 makes no specific reference to NYLL § 191(1)(a) or frequency of payments nor is there any indication, contrary to Defendants' assertion, that the New York Legislature explicitly designated NYLL § 218 as the remedy for NYLL § 191(1)(a) violations either on its own or to the exclusion of other remedies.  Joint MOL, p. 10.[6]  At bottom, to the extent an explicit private right of action does not exist, which it does, an implied private right of action is warranted.

Third, Defendants argue that the holdings in *Vega* are not binding on this Court.  Joint MOL, p. 13.  In that regard, Defendants are only partially correct.  As set forth above, decisions of an intermediary appellate court are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

---

[6] Interestingly, the notes to NYLL § 218 provide that it was once known and cited as the "unpaid wages prohibition act[.]"  As a matter of equity, Defendants cannot take the position that "late wages" are not unpaid wages and then claim that the unpaid wages prohibition act exclusively governs the payment of "late wages."

Also as set forth above, *Vega* is the only Appellate Division case on point and establishes that Plaintiffs' first cause of action is valid. Defendants' Joint MOL does not contain a single Appellate Division or Court of Appeals case that overturns or even questions the holdings of *Vega* because none exist and, as such, there is no reason to be convinced that the Court of Appeals would rule any differently than the Appellate Division did in *Vega*.

The lower court cases cited by the Defendants are inapposite. Initially, *Hunter* is marked uncorrected and provides that it will not be published in the printed official reports. Moreover, it was decided pre-*Vega,* and turned on the point that, to date, there purportedly had not been any cases which held that a plaintiff had a private right of action under the frequency of pay provision of NYLL § 191(1)(a)(i) where there was no claim of unpaid wages. *Hunter*, 2018 N.Y. Misc. LEXIS 2896, at *5. To reiterate, *Vega* held that there are both explicit and implicit private rights of action for violation of NYLL § 191(1)(a) where a manual worker is paid bi-weekly instead of weekly. Moreover, the *Hunter* Court relied on *Hussain* and *Cuzco v. Orion Builders, Inc.*, 2010 U.S. Dist. LEXIS 51622 (S.D.N.Y. May 26, 2010), both discussed *infra*, the former of which is an inapposite decision and the latter of which actually holds directly contrary to *Hunter* by granting summary judgment on the very cause of action Plaintiffs advance herein. Yet still, *Hunter* has been criticized by *Rojas*. *Rojas*, 2019 N.Y. Misc. LEXIS 5046, at *4-5 (2019).

A case that Defendants rely on heavily is *Phillips v. Max Finkelstein, Inc.*, 115 N.Y.S.3d 866 (Cty. Ct. 2019). Joint MOL, p. 7,11,12. Same is a County Court of New York, Suffolk County case which is neither binding nor persuasive. In *Phillips*, as here, plaintiff was a manual worker who was paid bi-weekly instead of weekly. *Id.* at 867. In *Phillips*, Judge Matthews acknowledged that "[u]nless there exists a ruling on these issues issued out of the Second

Department or any other New York appellate court, this court is bound to follow the law as articulated in *Vega*." *Phillips*, at 868. Judge Matthews then abandoned that mandate and instead employed mental gymnastics to infer from a one page decision in *IKEA U.S. v. Indus. Bd. of Appeals*, 660 N.Y.S.2d 585 (2d Dep't 1997), which does not even mention NYLL § 198, that the Second Department had held that the remedies provided by NYLL § 198(1-a) are not available to a plaintiff for untimely payment of wages under NYLL § 191. *Phillips*, 115 N.Y.3d at 868-70. There was no such holding in *IKEA*.

Judge Matthews' and Defendants' faulty logic is as follows: (1) the Commissioner of Labor brought an administrative action against IKEA on behalf of its employees for violation of NYLL § 191(1)(a); (2) the Commissioner of Labor found that IKEA violated NYLL § 191(1)(a); (3) a fine was levied (according to Defendants, without any support whatsoever, pursuant to NYLL § 218); (4) no liquidated damages were awarded; (5) there was no finding that the wages paid bi-weekly were underpayments under NYLL § 198(1-a); and (6) since NYLL § 198(1-a) uses the word "shall" with respect to awarding liquidated damages and no liquidated damages were awarded that must mean that the Appellate Division Second Department has held that the remedies provided by NYLL § 198(1-a) are not available where the employer has paid all wages in full on a bi-weekly rather than weekly basis. Joint MOL, p. 11-12. Defendants end their discussion of *Phillips* by providing "[i]n other words, and as illustrated by <u>Phillips</u>, the fact that the expert agency tasked with enforcing NYLL §§ 191 and 198 does not believe that the remedy sought here by Plaintiffs exists further demonstrates that it does not, regardless of the holding in <u>Vega</u>." Joint MOL, p. 12.

The problems with the foregoing analysis include, but are by no means limited to: (1) the absence of an explicit finding that there was an underpayment is not the same as an affirmative

finding that defendant's bi-weekly payroll practices did not result in underpayments nor is it indicative of whether the concept of underpayments was even considered by the court; (2) the Court never explained why the fine was issued or why the Department of Labor did not seek liquidated damages; (3) the absence of liquidated damages could be due to something as simple as prosecutorial discretion or the good faith of the employer.  Indeed, according to *Phillips*, the Commissioner made his determination based on, *inter alia*, "the good faith of the employer[.]" Phillips, 115 N.Y.3d at 868.  It is well settled that pursuant to NYLL § 198(1-a) an employer's good faith can prevent the imposition of liquidated damages; (4) Notwithstanding the word "shall" in NYLL § 198, litigants (and as a result Courts) sometimes ignore mandatory language in statutes.  For example, it is common practice for New York State courts to neglect to require the posting of a bond in connection with injunctive relief notwithstanding that CPLR 6312 (b) provides, in pertinent part, "prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court[;]" and (5) the Defendants have not produced any evidence that the Department of Labor has ever said that the remedies provided by NYLL § 198(1-a) are inapplicable to NYLL § 191(1)(a).  Given the huge leaps in logic made by the *Phillips* Court,[7] which Defendants ask this Court to follow, it is unsurprising that *Phillips* has never been cited positively by another case while *Vega* has been cited with approval on both the state and federal court levels.

Plainly stated, *Vega* is the only Appellate Division case[8] in the entire State of New York

---

[7] In addition to *Vega*, Judge Matthews improperly disregarded *Rojas*.  *Phillips*, 115 N.Y.3d at 869.

[8] The Court is respectfully referred to the oral argument held in the Appellate Division in *Vega* which, *inter alia*, shows how adamant the Appellate Division was that there is a private cause of action for violation of NYLL § 191(1)(a) in the event of late payment the remedies for which are provided by NYLL § 198(1-a).  (*See* https://www.youtube.com/watch?v=PMFo34SHY_Q).  Among other things, Judge Peter Moulton was adamant that employees are harmed when they are not paid on time and Judge Cynthia Kern was adamant that the New York State Court of Appeals in *Gottlieb*, discussed above, clearly provides that the remedies in NYLL § 198 are intended to apply to wage claims based on violations of one or more substantive provisions of the labor law and that such holding should guide the Appellate Division's decision to hold that late payment is a violation of NYLL § 191(1)(a)

which deals with the exact issues at bar and it expressly provides that Plaintiffs' cause of action

for violation of NYLL § 191(1)(a) is valid and that Plaintiffs can avail themselves of the

remedies provided by NYLL § 198(1-a).[9]

### III. PERSUASIVE CASE LAW FROM THE EASTERN DISTRICT ESTABLISHES THAT PLAINTIFFS' FIRST CAUSE OF ACTION IS VALID

In *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2019 U.S. Dist.

LEXIS 61726 (E.D.N.Y. Apr. 9, 2019), Judge Sandra J. Feuerstein denied defendant's motion to

dismiss plaintiffs' complaint containing a single cause of action for failure to timely pay wages

pursuant to NYLL § 191(1)(a) and NYLL § 198.

In *Scott*, as here, plaintiffs alleged that they were manual workers and that they were paid

on a bi-weekly rather than weekly basis in violation of NYLL § 191(1)(a). *Scott*, 2019 U.S. Dist.

LEXIS 61726, at *2-3; D.E. 11, p. 11, ¶ 82-88. Also, as here, as a result of defendant's unlawful

actions, the plaintiffs in *Scott* sought liquidated damages, interest, and attorneys' fees. *Scott*,

2019 U.S. Dist. LEXIS 61726 at *3. D.E. 11, p. 11, ¶ 89.

The first issue Judge Feuerstein tackled was whether there was a private right of action

for violations of NYLL § 191. As *Scott* was decided before *Vega*, Judge Feuerstein did not have

*Vega's* holding that a private right of action exists for violation of NYLL § 191(1)(a) to rely on.

However, Judge Feuerstein, *inter alia*, looked to holdings from the Appellate Division and the

New York State Court of Appeals to determine whether plaintiffs could privately assert claims

for violation of NYLL § 191. One such case was *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193,

802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003). In *Bynog*, the issue was whether the plaintiffs were

---

subject to the remedies of NYLL § 198, which the Appellate Division ultimately did.

[9] While Defendants' counsel valiantly and zealously advocate their clients' positions, Defendants' counsel is aware of the impact and import of *Vega* as evidenced by the "*Act Now* Advisory" authored on the subject by Defendant Unisys' counsel. *See* https://www.ebglaw.com/news/recent-appellate-decision-may-make-new-york-employers-vulnerable-to-liquidated-damages-for-violating-new-yorks-frequency-of-pay-requirements/.

employees or independent contractors. *Scott*, 2019 U.S. Dist. LEXIS 61726 at *7. The Appellate Division found that plaintiffs were employees and reinstated their cause of action under NYLL § 191 and the related claim for costs and fees under NYLL § 198. *Id.* The Court of Appeals concluded that plaintiffs were independent contractors rather than employees and as a result dismissed the cause of action pursuant to NYLL § 191 and the related claim under NYLL § 198. *Id.* Judge Feuerstein noted that "[s]ignificantly, neither the Second Department nor the Court of Appeals suggested, let alone held, that the plaintiffs did not have a right to bring a claim under § 191 in the first instance." *Id.*

A second case Judge Feuerstein analyzed was *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 891 N.E.2d 279, 861 N.Y.S.2d 246 (N.Y. Ct. App. 2008). Judge Feuerstein noted that in reaching its determination that executives are employees for purposes of article 6 of the NYLL the Court of Appeals in *Pachter* implicitly assumed that an employee claiming a violation of NYLL § 191 has asserted a substantive violation and is entitled to utilize the remedies set forth in NYLL § 198. *Scott*, 2019 U.S. Dist. LEXIS 61726 at *8.

Judge Feuerstein also noted that numerous courts in the Second Circuit (including the Eastern and Southern Districts of New York) entertained claims made by employees under NYLL § 191. *Scott*, 2019 U.S. Dist. LEXIS 61726 at *8. Such cases include *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (allowing waiter to proceed on § 191 claim) and *Cuzco*, 2010 U.S. Dist. LEXIS 51622, at *11-12 (carpenters paid every two weeks rather than weekly were manual workers "entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191"). *Scott*, 2019 U.S. Dist. LEXIS 61726, at *8. Yet still, Judge Feuerstein considered the holdings of the Court of Appeals in *Gottlieb*. *Scott*, 2019 U.S. Dist. LEXIS 61726, at *5.

16

Turning from the Court's analysis as to whether an explicit private right of action exists, Judge Feuerstein noted that even if there is no explicit private right of action, there is, at the least, an implied private right of action when: (1) the plaintiffs are members of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the statute; and (3) to have a private right of action would be consistent with the legislative scheme.  *Scott*, 2019 U.S. Dist. LEXIS 61726 at *9. Turning to the aforesaid factors, the Court noted that plaintiffs, manual workers, as here, are members of the class designed to benefit from § 191(1)(a).  *Id*.  As to legislative purpose, Judge Feuerstein noted that the general purpose of labor law article 6 is to strengthen and clarify the rights of employees to the payment of wages and more specifically the frequency of payment statute's purpose is to protect the manual worker who is dependent on the wages he receives weekly for his existence.  *Id*.  As to consistency with the legislative scheme, the Court noted that there is nothing in the statutory scheme that suggests a private action is barred and that, "[t]o the contrary, § 198 refers to civil actions brought by the commissioner, the employee, or both" and provides that "[t]he remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other."  *Scott*, 2019 U.S. Dist. LEXIS 61726 at *11.  Ultimately, the Court held that "[t]he discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme."  *Id.*

Having determined that a private right of action, whether explicit or implicit, exists, Judge Feuerstein turned to plaintiffs' claim for violation of NYLL § 191.  More particularly, the Court held that plaintiffs had stated a valid cause of action as plaintiffs alleged that they were manual workers and that they were paid on a bi-weekly basis instead of a weekly basis as

17

required by NYLL § 191(1)(a), which are the exact same allegations Plaintiffs advance herein. *Scott*, 2019 U.S. Dist. LEXIS 61726 at *12; D.E. 11, p. 11, ¶ 82-88.

In *Scott*, as here, the defendant argued that plaintiffs did not have a cause of action for violation of NYLL § 191 as plaintiffs, in sum and substance, were not damaged by bi-weekly rather than weekly payment.  *Scott*, 2019 U.S. Dist. LEXIS 61726 at *12.  With respect to the defendant's argument, Judge Feuerstein noted that "**Plaintiffs' injury comes from not receiving their earned pay weekly, as required by law, and thus it is the very delay that causes damage to that worker. The statute requires no additional evidence of actual damages beyond that delay, and an inquiry into "actual" damages is not made in cases involving violations of § 191.**"  *Scott*, 2019 U.S. Dist. LEXIS 61726 at *12.  Her Honor then referenced several district court cases which supported the Court's holding including *Cuzco* in which manual workers were granted summary judgment on their NYLL § 191(1)(a) claim where they were paid bi-weekly instead of weekly.  *Scott*, 2019 U.S. Dist. LEXIS 61726 at *13.  The Court in *Cuzco* stated

> **In this case, Defendants did not pay wages as often as the law requires, and did not pay wages as early as the law requires. Defendants paid wages every *two* weeks (rather than weekly) and paid these wages no earlier than *two* weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs and members of the certified class are entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191.**

*Cuzco*, 2010 U.S. Dist. LEXIS 51622, at *11-12 (Italics in original, emphasis added.)

Since the decision in *Scott* was issued it has been cited positively by *Perez v. Comhar Grp. L.L.C.*, No. 19-CV-0964 (FB) (JO), 2020 U.S. Dist. LEXIS 41771, at *18 (E.D.N.Y. Mar. 6, 2020).

Defendants' attempts to distinguish *Scott* are unsuccessful.  First, Defendants argue that *Scott* purportedly makes no attempt to explain how a late payment of wages could constitute an "underpayment" to trigger the remedies authorized by NYLL § 198(1-a) and that the *Scott* Court's purported failure to do so constitutes a failure to analyze the plain language of the statute suggesting that this Court should reject *Scott*.  Joint MOL, p. 9.  Initially, there is and was no requirement that the *Scott* Court address how a late payment of wages constitutes an underpayment to trigger the remedies authorized by NYLL § 198(1-a) in order to arrive at the *Scott* Court's above-described valid holdings.  Further, the fact that the aforesaid issue is not explicitly addressed in the *Scott* Court's decision does not mean that it was not considered nor does it mean that the *Scott* Court did not consider the plain managing of the pertinent statutes.  Indeed, the *Scott* Court specifically excerpts and analyzes both NYLL § 191(1)(a) and NYLL § 198(1-a) in reaching its conclusions that there is a private right of action for violation of NYLL § 191(1)(a) and that the remedies for such violation are provided by NYLL § 198(1-a).  *Scott*, 2019 U.S. Dist. LEXIS 61726 at *4-13.

Second, Defendants argue that the *Scott* Court was incorrect in finding that there is an implied private right of action since an implied private right of action would purportedly not be consistent with the pertinent legislative scheme.  Joint MOL, p. 9-11.  Defendants argument tacitly concedes the first two prongs of an implied private right of action, *to wit*, that plaintiffs are members of the class for whose particular benefit the statute was enacted (manual workers) and that recognition of a private right of action would promote the legislative purpose of the statute (with respect to labor law article 6, strengthening and clarifying the rights of employees to the payment of wages and with respect to the frequency of payment statute, protecting the manual worker who is dependent on the wages he receives weekly for his existence).  As to the

19

third prong, Defendants argue that a private right of action would be inconsistent with the

pertinent legislative scheme because the legislature has already decided that NYLL § 218(1) is

the proper remedy for a violation of NYLL § 191.  Joint MOL, p. 10-11.  As discussed above in

the context of *Vega*, the fact that NYLL § 218(1) exists does not establish that a private right of

action would be inconsistent with the legislative scheme.  Among other things, NYLL § 218(4),

explicitly provides that "[t]he civil penalty provided for in this section shall be in addition to and

may be imposed concurrently with any other remedy or penalty provided for in this chapter"

meaning that it is not intended to bar other remedies for violation of NYLL § 191(1)(a) such as

those provided by NYLL § 198(1-a).  Moreover, NYLL § 218 covers all provisions of article 6

(payment of wages).  If the Court were to adopt Defendants' argument that NYLL § 218 bars

remedies other than those contained therein for the violations addressed therein there would be

no other remedies sections (such as NYLL § 198(1-a)) since NYLL § 218 covers all of article 6.

Also, NYLL § 218 makes no specific reference to NYLL § 191(1)(a) or frequency of payments

nor is there any indication, contrary to Defendants' assertion, that the New York Legislature

explicitly designated NYLL § 218 as the remedy for NYLL § 191(1)(a) violations either on its

own or to the exclusion of other remedies.  Defendants' argument, in sum and substance, that the

New York Legislature deliberately chose NYLL § 218 as the enforcement mechanism for NYLL

§ 191(1)(a) claims to the exclusion of NYLL § 198(1-a) is unsupported.[10]  Joint MOL, p. 10.

---

[10] Relatedly, Defendants argue, in sum and substance, that because in some instances the legislature purportedly chose to only have State based enforcement mechanisms, as opposed to private enforcement mechanisms, the legislature has done so here.  Joint MOL, p. 10-11, fn. 7.  Even assuming *arguendo* that the examples Defendants cite are examples of the legislature choosing to consciously foreclose a private remedy, the examples have no bearing on remedies for violation of NYLL § 191(1)(a).  Initially, unlike NYLL § 191(1)(a), NYLL § 162, concerning meal breaks, is not a part of article 6.  To reiterate *Gottlieb* and *Vega* have provided that NYLL § 198 provides the remedies for violations of article 6.  *Vega*, 175 A.D.3d at 1145.  Further, with respect to providing annual wage notices, the absence of a private remedy was considered a quirk and the requirement of providing an annual notice has since been abolished.  *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461 (WHP) (JLC), 2014 U.S. Dist. LEXIS 120422, at *32 (S.D.N.Y. Aug. 26, 2014) ("Oddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to

None of the federal cases Defendants cite overcome the holdings of *Scott* (or *Vega*). First, *Arciello v. Cnty. of Nassau*, 2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. Sept. 20, 2019) was decided prior to the widespread dissemination of the decision in *Vega* as *Vega* was decided only 10 days before *Arciello*.

Second, Judge Spatt's decision to dismiss plaintiffs' NYLL § 191 claim was based on his position that "[a]lthough there is no mandatory authority opposing the Plaintiffs' position [namely that NYLL § 198 provides a remedy for the failure to timely pay overtime wages], the absence of persuasive authority in their favor undermines their position." *Arciello*, 2019 U.S. Dist. LEXIS 161167, at *22. There is now authority that holds that the remedies provided by NYLL § 198 are available in instances of untimely payment, namely *Vega* and *Scott*.

Third, the cases upon which Judge Spatt's comments on NYLL § 198 were based, and on which Defendants rely in their brief, were all decided pre-*Vega* and are inapposite. One such case is *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336 (S.D.N.Y. 2014). In *Belizaire*, decided approximately 5 years pre-*Vega*, the Court noted that under the FLSA late wages are considered to be a form of unpaid wages and that where wages have been paid late, as opposed to not at all, courts have construed Section 216(a) to mean that liquidated damages should be awarded "as reasonable compensation for harm occasioned by, in particular, the delay component of the defendant's unlawful pay practices [.]" *Belizaire*, 61 F. Supp. 3d at 360. Indeed, in *Belizaire*, plaintiff was awarded liquidated damages for late payment under the FLSA.

---

furnish the annual notice in following years."); NYLL § 195. Finally, as to violations of NYLL § 198-b, the legislature provided a specific remedy in the particular statute, namely "[a] violation of the provisions of [NYLL § 198-b] shall constitute a misdemeanor." NYLL § 198-b(5). No specific remedy is provided within NYLL § 191 itself. Indeed, the case Defendants' cite in support of their argument, *Konkur v. Utica Acad. of Sci. Charter Sch.*, 181 A.D.3d 1271 (4th Dep't 2020) has two notable holdings: (1) "we offer no opinion with respect to whether other provisions [meaning provisions other than NYLL § 198-b] within article 6 of the Labor Law afford private rights of action[;]" and (2) the legislature specifically crafted an enforcement mechanism for violation of NYLL § 198-b, namely a misdemeanor offense. *Konkur*, 181 A.D.3d at 1272.

*Id.*  With respect to late payments under the NYLL, the Court in *Belizaire*, in a footnote, merely provided "The NYLL does not ***appear*** to provide a similar remedy. While it also contains a liquidated damages provision, it ***seems*** that the provision is geared to afford relief for unpaid wages, not for late-paid wages."  *Id.* at 360 n.22 (emphasis added).  Simply put, the *Belizaire* Court, in all likelihood satisfied that the plaintiff was receiving liquidated damages under the FLSA, did not genuinely analyze the issue of liquidated damages for late payments under the NYLL.  Had it done so, it would have realized that all of the same principles regarding late payments and liquidated damages under the FLSA apply to the NYLL.  Indeed, NYLL provides *a more stringent* timing mechanism than the FLSA in that, in the case of manual workers, they must be paid weekly, whereas the FLSA merely requires prompt payment.

Another such case is *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 27, 2018) which was decided a year and half pre-*Vega*.  The sum total of the *Coley* Court's analysis of the propriety of awarding liquidated damages for delayed wages under NYLL was to excerpt the equivocal footnote from *Belizaire* discussed above and to cite to *Hussain,* 2012 U.S. Dist. LEXIS 152254, at *3 for the proposition that "The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment".  *Coley*, 2018 U.S. Dist. LEXIS 50787, at *42.[11] The *Coley* Court then proceeded to award the plaintiff liquidated damages for violation of the late payment provision of the FLSA.  *Coley*, 2018 U.S. Dist. LEXIS 50787, at *42-44.  As in *Belizaire*, the *Coley* Court ignored, *inter alia*, the fact that all of the same principles regarding late payments and liquidated damages under the FLSA apply to the NYLL.  Notably, as discussed below, the Hon. Pamela K. Chen USDJ, who decided *Coley*, recently revisited her

---

[11] The inapposite nature of *Hussain* is discussed *infra*.

decision in *Coley* and opted to follow the holdings of *Vega* and *Scott*.

As to *Hussain*, decided 7 years pre-*Vega*, the sum total of its analysis on the pertinent issues is "[t]he NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment[.]" *Hussain,* 2012 U.S. Dist. LEXIS 152254 at *8. Said incorrect holding is expressly refuted by, *inter alia*, *Vega* and *Scott*.

In sum, the federal case law on point, and particularly that from the Eastern District, establishes that Plaintiffs' cause of action for violation of NYLL § 191 is valid.

## IV.    CASELAW ON WHICH DEFENDANTS RELY HAS BEEN OVERTURNED IN FAVOR OF *VEGA* AND *SCOTT*

*Coley*, distinguished above, on which Defendants rely in their Joint MOL, and on which Judge Spatt relied in *Arciello*, was decided by the Hon. Pamela K. Chen USDJ in 2018. Joint MOL, p. 8.  In June of this year, the Hon. Pamela K. Chen USDJ had the opportunity to revisit the issue of whether there is a private right of action for violation of NYLL § 191(1)(a) in *Quintanilla v. Kabco Pharmaceuticals, Inc. et al*, Eastern District Docket No: 19-cv-06752-PKC-CLP.  During oral argument on defendants' motion to dismiss plaintiff's NYLL § 191(1)(a) claim the Hon. Pamela K. Chen USDJ stated the following:

> **My view of *Coley* was--it was a decision I rendered under the circumstances that everybody is familiar with from the decision itself; namely, a default judgment and where there was a FLSA failure to timely pay claim made that resulted in liquidated damages, so that is marginally relevant in my mind. More relevant is the timing of it.  I issued that decision in 2018, and since then, there has been this First Department case, *Vega vs. CM & Associates Construction Management, LLC,* which [plaintiff] properly rel[ies] on.  It's a September 2019 decision-- again, by the First Department--which directly addresses the question presented here; namely, is there a private right of action for liquidated damages under New York Labor Law Section 191 based on this frequency payment issue, i.e., the failure to pay manual laborers on a weekly basis.**

> So, to me, that's the strongest argument; and the only question is

whether or not the Courts in the *Finkelstein* cases--the two of
them—properly decided that a Second Department decision--this
*Ikea* case--indicates the Court of Appeals would not follow the
First Department decision in *Vega*, or that the other two cases out
of Queens Supreme Court should be some kind of guidance as to
what the proper rule is.[12]

\*     \*     \*     \*     \*     \*     \*     \*     \*

…I agree with [plaintiff] that the holding in *Kruty* and the other
*Finkelstein* case seems to be based on the notion that you're not
bound to follow appellate authority if you have reason to believe
that the Court of Appeals will not endorse that view and that the
judge in Suffolk County thought that *Ikea* provided that indication;
namely, that *Vega* got it wrong.  That's at least how I read the
*Finkelstein* decisions.

*See* concurrently submitted Pagano Declaration ("Pagano Dec."), Exhibit 1, p. 11-14 (Emphasis

Added).

Subsequent to the foregoing, the Hon. Pamela K. Chen USDJ held as follows:

> **…I am revisiting my *Coley* decision in light of the *Vega*
> decision, which is out of the First Department and squarely
> addresses the issue raised here, and does find, very
> emphatically, that there is both and [sic] express and implied
> private right of action that allows an employee to get liquidated
> damages for failure to timely pay, for failure to meet the one-
> week payment schedule, even where the plaintiff is not alleging
> that they did not receive their full pay; and the *Vega* decision
> goes to great lengths to explain that underpayment includes the
> failure to pay under the terms provided for.  And if the terms,
> as required by statute, are a weekly payment, then that would
> qualify as underpayment if the employer fails to meet that
> weekly payment requirement.**

> **I will say, candidly, I find the reasoning in *Vega* a little bit--it's
> going to sound too harsh--a little tortured; but, nonetheless, it
> is an appellate decision on an issue of New York statutory law
> interpretation, and as the *Finkelstein* cases acknowledged, as a
> general matter, I, as well as the state courts, are bound to
> follow appellate court decision unless I'm convinced--or unless**

---

[12] The *Finkelstein* cases to which the *Quintanilla* Court refer are the *Phillips* case, on which Defendants rely herein,
and a companion case, *Kruty v. Max Finkelstein, Inc.*, 2019 N.Y. Slip Op. 52021(U), 65 Misc. 3d 1236(A), 119
N.Y.S.3d 831 (Cty. Ct. 2019).  The reference to *Ikea* is to the *Ikea* case Defendants rely on herein.

there is substantial evidence or reason to believe that the Court of Appeals would find otherwise; and so, therefore, I have considered that issue, and I have considered the *Finkelstein* decisions that reached the conclusion that *Vega* doesn't need to be followed because of the *Ikea* decision out of the Second Department--that reasoning from the *Finkelstein* decisions I disagree with--and I agree with the plaintiff that *Ikea* didn't address that issue, and I think it's quite difficult to read into *Ikea* any ruling at all on this precise issue, whether there is a private right of action under 191.

The other decision that I think is useful, or helpful, on this issue is Judge Feuerstein's decision in the *Scott* case, which the plaintiff also relies on, and that was issued in April 2019—interestingly, before the *Vega* decision--but in some ways it presages, I think, the relevant question, which is what would the New York Court of Appeals decide on this issue.  And in it, Judge Feuerstein, I think very helpfully, discusses two Court of Appeals' decisions in which 191 actions were the subject of the case, though not the precise issue, about a private right of action, but she notes--and I think it's relevant here—the Court of Appeals, while ruling on the other issue presented in those cases, did not suggest in any way that the private actions brought under 191 were improper in any way and did not decide that those actions should not have been pursued or allowed to be pursued, I should say, and were not viable, and she found that to be some indication to support the view that there is a private right of action under 191.

So I think that that's actually quite helpful in terms of predicting, as I must, how the Court of Appeals might rule, even though, as I said before, she issued her decision--Judge Feuerstein--issued her decision even before the *Vega* decision, but made the--or found very clearly that there is a private right of action.

So for all those reasons, basically, because *Coley* was rendered at a time when I didn't have the benefit of either *Vega* or *Scott*, I am not following my prior decision; I am not dismissing the 191 action.

Pagano Dec., Exhibit 1, p. 16-18 (Emphasis added).

In sum, the Hon. Pamela K. Chen USDJ recognized that, notwithstanding her prior

holding in *Coley*, she was required to follow *Vega* unless she was convinced the New York State

Court of Appeals would hold differently.  Relying on, *inter alia*, *Scott*, and rejecting the very cases Defendants rely on herein (*Philips and Ikea*) she upheld plaintiff's claim for violation of NYLL § 191(1)(a) and denied defendants' motion to dismiss.

**V.    THE NEW YORK STATE COURT OF APPEALS AND THE U.S. SUPREME COURT HAVE HELD THAT UNPAID WAGES MEANS WAGES NOT PAID BY A CERTAIN DATE AND HAVE HELD THAT LIQUIDATED DAMAGES ARE PROPER IN SUCH CIRCUMSTANCES**

Similar to NYLL § 191 and § 198, the FLSA requires the timely payment of wages and in the absence of timely payment allows for the recovery of the unpaid wages, liquidated damages, and attorneys' fees.  Both the New York State Court of Appeals and the U.S. Supreme Court have held (in the context of FLSA claims) that unpaid wages means wages not paid by the due date for said wages.  There is absolutely no reason to treat late wages and the remedies therefore, including liquidated damages, any different under the NYLL than the FLSA.  *Muhammed Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) ("Today the NYLL and FLSA liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries.").[13]

The New York State Court of Appeals in *O'Neil v. Brook. Sav. Bank*, 293 N.Y. 666, 667, 56 N.E.2d 259, 260 (1944), *aff'd*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945), considered whether " an action may not be maintained under section (b) of the [FLSA] by an employee solely for the recovery of liquidated damages when it is admitted that all overtime compensation was voluntarily paid in full by the employer prior to the institution of suit."  Indeed, it is a consideration central to Defendants' instant motions, namely whether Plaintiffs can maintain a claim for liquidated damages where the underlying wages have been ultimately paid in full.  The

---

[13] Case after case holds that the FLSA and the NYLL are effectively the same and applies the same analysis to both. *See, e.g.*, *Guaman v. Krill Contr. Inc.*, No. 14-CV-4242 (FB) (RER), 2015 U.S. Dist. LEXIS 74567, at *16 (E.D.N.Y. May 20, 2015) (analysis of overtime claims under the NYLL is generally the same under the FLSA).

New York State Court of Appeals in *O'Neil* unequivocally ruled that such an action could be

maintained.  *Id.* at 668, 56 N.E.2d 259.

In *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945), the United States Supreme

Court affirmed the New York State Court of Appeals and stated, in pertinent part,

> We have previously held that the liquidated damage provision is
> not penal in its nature but constitutes compensation for the
> retention of a workman's pay which might result in damages too
> obscure and difficult of proof for estimate other than by liquidated
> damages…It constitutes a Congressional recognition that failure to
> pay the statutory minimum on time may be so detrimental to
> maintenance of the minimum standard of living 'necessary for
> health, efficiency and general well-being of workers' and to the
> free flow of commerce, that double payment must be made in the
> event of delay in order to insure restoration of the worker to that
> minimum standard of well-being.

It cannot be overstated that the U.S. Supreme Court in *Brooklyn Savings Bank* justified its

ruling that an employee can sue for liquidated damages even though the underlying wages were

paid but paid late by relying on the prompt payment requirement in NYLL, providing, in

pertinent part:

> **The necessity of prompt payment to workers of wages has long
> been recognized by Congress as well as by state legislatures.
> Numerous statutory provisions have been adopted to insure
> prompt payment. See for example**, 33 U. S. C. § 914 (e) and (f);
> 46 U. S. C. § 596; Wis. Rev. Stat. 1941, § 103.39; **N. Y. Labor
> Law, c. 31, § 196**; Calif. Labor Code, 1937, §§ 204, 205, 219.
>
> As to the importance to the worker of receiving prompt payment,
> see Labor Laws and their Administration, 1936 Bull. No. 629, U.S.
> Dept. of Labor, Bureau of Labor Statistics, p. 139.

*Brook. Sav. Bank*, 324 U.S. at 707 n.20, 65 S. Ct. 895, 89 L. Ed. 1296 (emphasis added).

**NYLL § 196, on which the U.S. Supreme Court relied, was the predecessor to NYLL**

**§ 191(1)(a) that is at the center of this litigation**.  Simply put, if NYLL Article 6 can be the

basis for recovering liquidated damages under a federal statute on wages that were paid but paid

after the due date, it certainly can be the basis for recovering liquidated damages under NYLL Article 6 itself for wages that were paid but paid after the due date set by the statute itself.  The U.S. Supreme Court in *Brooklyn Savings Bank* noted the need to ensure on time payment and to avoid delays in the payment of wages as the reason for allowing recovery of liquidated damages where the underlying wages were paid late.  This reasoning is even more pertinent in the instant matter because unlike the FLSA, which does not specifically regulate the timing or frequency of payment, NYLL Article 6 was specifically enacted by the legislature to set a deadline for the payment of wages (in the case of manual workers, weekly).

Guidance from the U.S. Supreme Court and the New York State Court of Appeals establishes that Plaintiffs have a valid cause of action for violation of NYLL § 191(1)(a) and that they are entitled to the remedies provided by NYLL § 198(1-a), including, but not limited to, liquidated damages.  Moreover, said guidance strongly indicates to this Court that the New York State Court of Appeals would whole heartedly support the holdings set forth in *Vega* and that there is no reason to be convinced that the Court of Appeals would hold differently than *Vega*.

## VI.    THE PLAIN LANGUAGE OF NYLL § 198 AUTHORIZES EMPLOYEES TO BRING A CLAIM FOR "LATE PAID WAGES"

Defendants dedicate nearly half of the argument section of their brief to their argument that the plain language of NYLL § 198 authorizes employees to bring a claim only for "underpaid wages" and not "late paid wages."  Joint MOL, p. 2-7.  While said argument contains citations to numerous cases, with the exception of the cases cited in footnotes 3 and 4, distinguished herein, all of the cases set forth generic principles of statutory interpretation and, in sum and substance, stand for the unremarkable proposition that statutes should be interpreted according to their plain meaning.  Joint MOL, p. 2-7.  None of the cases Defendants cite overturn, or even address, *Vega* or *Scott* nor do they address NYLL § 191 or § 198.  The entire

section is simply Defendants presenting their interpretation of NYLL § 198, without meaningful

legal support, and then coming to their predetermined conclusion.

As to the substance of Defendants' argument, it is incorrect.  The third sentence of NYLL

§ 198(1-a) authorizes civil lawsuits by employees or the commissioner and provides:

> In any action instituted in the courts upon a <u>wage claim</u> by an
> employee or the commissioner in which the employee prevails, the
> court shall allow such employee to recover <u>the full amount of any
> underpayment</u>, all reasonable attorney's fees, prejudgment interest
> as required under the civil practice law and rules, and, unless the
> employer proves a good faith basis to believe that its
> underpayment of wages was in compliance with the law, an
> additional amount as liquidated damages equal to one hundred
> percent of the total amount of the wages found to be due, except
> such liquidated damages may be up to three hundred percent of the
> total amount of the wages found to be due for a willful violation of
> section one hundred ninety-four of this article.

Emphasis Added.

Returning to the hypothetical set forth in the preliminary statement, assume that Unisys

was required by NYLL § 191(1)(a) to pay Plaintiff Sorbie $2,500 in wages no later than August

26, 2020, but paid him those wages on August 31, 2020.  On August 27, 2020, Plaintiff Sorbie

would have a "wage claim" due to Unisys' violation of NYLL § 191(1)(a).  To reiterate, the

Court of Appeals in *Gottlieb* and the Appellate Division First Department in *Vega* held that

violations of the wage payment law, article 6 of the labor law, are wage claims.  *Gottlieb*, 82

N.Y.2d at 459, 463, 605 N.Y.S.2d 213, 626 N.E.2d 29; *Vega*, 175 A.D.3d at 1145.  On August

27, 2020, Plaintiff Sorbie could bring an action in court to recover: (1) the $2,500 underpayment;

(2) his reasonable attorneys' fees; (3) prejudgment interest; and (4) $2,500 in liquidated damages

unless Unisys could prove good faith compliance (which it cannot given that it continues to

violate NYLL § 191(1)(a)).  To reiterate, the Court in *Vega*, examined the dictionary definition

of the word underpay and held that

> The word underpayment is the noun for the verb underpay;
> underpay is defined as 'to pay less than what is normal or required'
> (Merriam-Webster's Collegiate Dictionary 1364 [11th ed 2012]).
> The moment that an employer fails to pay wages in compliance
> with section 191(1)(a), the employer pays less than what is
> required.

*Vega*, 175 A.D.3d at 1145.

When Unisys pays Plaintiff Sorbie on August 31, 2020, it rectifies the underpayment portion of Plaintiff Sorbie's damages, but it does not vitiate Plaintiff Sorbie's rights to reasonable attorneys' fees, interest, and liquidated damages.

Against the weight of the foregoing, Defendants argue: (1) that since Plaintiffs do not seek to recover an underpayment there is no valid cause of action (Joint MOL, p. 4-5); (2) that since the first sentence of NYLL § 198(1-a) says "[o]n behalf of any employee paid less than the wage to which he or she is entitled...the commissioner shall assess against the employer the full amount of any such underpayment" that underpayment cannot mean late payment (Joint MOL, p. 4-5); (3) that the phrases "underpayment of wages" and "wages found to be due"[14] have the same meaning and as such underpayment must not be a late payment (Joint MOL, p. 5); (4) that since Plaintiffs purportedly do not allege any difference between the amount of wages they were paid and the amount of wages they were owed, Plaintiffs do not seek a remedy for an "underpayment" pursuant to NYLL § 198(1-a)(Joint MOL, p. 6); and (5) that the New York Legislature chose to permit a claim under NYLL § 198 only for an "underpayment," not a late payment (Joint MOL, p. 6).

All of the Defendants' aforesaid arguments can be distilled down to the position that a

---

[14] Relatedly, Defendants argue that Plaintiffs are not entitled to liquidated damages because NYLL § 198(1-a) provides that the liquidated damages to be awarded are "equal to one hundred percent of the total amount of the wages found to be due" and as there are purportedly no wages due there cannot be any liquidated damages that are owed. *See e.g.* D.E. 29, p. 2. Defendants' argument ignores that the time that wages are "due" is weekly in accordance with NYLL § 191(1)(a).

late payment is not an underpayment.  Initially, the Appellate Division in *Vega* thoroughly rejected that exact position providing "Defendant's position that no private right of action exists is dependent on its erroneous assertion that the late payment of wages is not an underpayment of wages." *Vega*, 175 A.D.3d at 1146.  Moreover, Defendants' position is illogical. Returning to our hypothetical, on August 26, 2020, Unisys owed Plaintiff Sorbie $2,500.  When Unisys failed to pay Plaintiff Sorbie, there was an <u>underpayment</u> of wages that were <u>due</u>.  Defendants offer no alternative definition of the term "found to be due" because they cannot genuinely do so. Defendants' argument would suggest that the term "found to be due" would mean at the summary judgment phase or at trial.  Such a meaning would be illogical because, *inter alia*, that could lead to a situation in which wages are supposed to be paid on a given date in accordance with NYLL § 191(1)(a), a plaintiff institutes a litigation almost 6 years later, the case lasts three years, and just before the Judge or jury renders a decision/verdict the Defendant pays the underpaid amount according to Defendants thereby vitiating plaintiff's entire claim (for underpaid wages, liquidated damages, interest, and attorneys fees') since there are now no wages "found to be due." *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993) (unless there is a due date by which wages become unpaid, imposing liability for both unpaid wages and liquidated damages would be meaningless).  Simply stated, there must be a date by which wages are due and that date is provided by NYLL § 191(1)(a).  Indeed, the Department of Labor has provided: (1) that "Section 191 of the Labor law requires the timely payment *in full* for all hours worked at an employee's agreed-upon rate of pay[;]"[15] and (2) "[T]he Department of Labor interprets Labor Law § 191(a)(i)…to mean that manual workers must be paid *all* wages due and

---

[15] https://www.labor.ny.gov/legal/counsel/pdf/frequency-of-pay-frequently-asked-questions.pdf, p. 4.

owing…on a weekly basis."[16]  Further, Defendants' statement that the New York Legislature[17] chose to permit a claim under NYLL § 198 only for an "underpayment," not a late payment is unsupported.[18]

In sum, even if one were to ignore *Vega* and *Scott* which have each reviewed the pertinent statutes and determined that Plaintiff's cause of action for violation of NYLL § 191(1)(a) with remedies provided by NYLL § 198(1-a)[19] is valid, an interpretation of the plain language of said statutes supports the same conclusion.

## CONCLUSION

Defendants' motions to dismiss should be denied in their entirety.

Dated:  Huntington, New York
        August 26, 2020

                                MOSER LAW FIRM, P.C.

                        By: *Paul Pagano*
                            _____
                            Paul A. Pagano, Esq.
                            Steven J. Moser, Esq.

---

[16] DOL Opinion Letter, RO-08-0061, Dated December 4, 2008, p. 2, https://labor.ny.gov/legal/counsel/pdf/Employment%20Classification/RO-08-0061%20-%20Manual%20Workers.doc.pdf.

[17] At fn. 3 of Defendants' Joint MOL they argue, in sum and substance, that since the New York Legislature has made changes to the NYLL since the decision in *Hussain* (which held that the NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment and which has been distinguished above) and has allegedly not implemented a private right of action for violation of NYLL § 191, the absence of an amendment granting a private right of action means that the New York Legislature is not inclined to create a private right of action.  Joint MOL, p. 6, fn. 3.  Defendants' argument is incorrect.  Initially, since a private right of action already exists there is no need to implement a private right of action.  Further, even assuming *arguendo* that a private right of action doesn't exist, the fact that *Hussain*, one of countless cases in New York every year, exists and that unrelated legislation has been passed does not mean that the New York Legislature made a deliberate decision not to implement a private right of action for violation of NYLL § 191.

[18] At fn. 4 of Defendants' Joint MOL, they cite to *McGrath v. City of Somerville*, 419 F. Supp. 3d 233 (D. Mass. 2019) which interpreted the Massachusetts Wage Act, and *N. Marion Sch. Dist. # 15 v. Acstar Ins. Co.*, 205 Or. App. 484 (2006) which interpreted Oregon's prevailing wage law, for the proposition that courts construing wage payment laws from other states have determined that unpaid or underpaid wages are not the same as late wages. Joint MOL, p. 6, fn. 4.  How non-New York Courts interpret unrelated statutes is irrelevant.

[19] At fn. 5 of Defendants' Joint MOL, they argue that if one were to replace "underpayment" with "late payment" in NYLL § 198(1-a) it would become illogical.  Joint MOL, p. 7, fn. 5.  It wouldn't.  It would only be illogical to Defendants because they appear to believe late payment is inconsequential.