**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TONY CACCAVALE, ANTHONY
MANGELLI, and DOUGLAS SORBIE,
individually and on behalf of all others
similarly situated,

              Plaintiffs,

              v.

HEWLETT-PACKARD COMPANY A/K/A
HP INC., HEWLETT PACKARD
ENTERPRISE COMPANY and UNISYS
CORPORATION,

              Defendants.

Civil Action No.: 20-CV-00974 (GRB)(AKT)

---

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THEIR MOTIONS TO DISMISS PLAINTIFFS'**
**FIRST AMENDED COMPLAINT**

---

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07101-0652
(973) 622-4444
Attorneys for Defendants HP Inc. and
Hewlett Packard Enterprise Company


**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, NY 10022
(212) 351-4500
Attorneys for Defendant Unisys Corporation


September 11, 2020

# **TABLE OF CONTENTS**

<u>**Page**</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ..............................................................................................................2

      I.      THE PLAIN LANGUAGE OF, AND LEGISLATIVE INTENT
           UNDERLYING, THE LABOR LAWS MAKE CLEAR THAT
           PLAINTIFFS HAVE NO EXPRESS RIGHT OF ACTION FOR
           LIQUIDATED DAMAGES FOR ALLEGEDLY LATE-PAID WAGES.............2

           A.     Plaintiffs' Interpretation Disregards the Plain Meaning of § 198(1-
                  a) in Favor of Non-Binding Decisions That Do Not Enforce It. .................3

           B.     Plaintiffs' Interpretation Misconstrues Section 218(1). ............................5

           C.     Plaintiffs' Interpretation Would Lead to Inconsistent and
                  Irreconcilable Results...................................................................................9

           D.     Plaintiffs' Interpretation Improperly Relies On the FLSA. .......................11

      II.     THE COURT SHOULD DISREGARD VEGA, SCOTT, AND THEIR
           PROGENY....................................................................................................12

CONCLUSION..........................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Agerbrink v. Model Serv. LLC,
No. 14-CV-7841 (JPO), 2015 WL 3750674 (S.D.N.Y. June 6, 2015) ................................... 13

Belizaire v. RAV Investigative & Sec. Servs. Ltd.,
61 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................................... 11

Brooklyn Sav. Bank v. O'Neil,
324 U.S. 697 (1945) ........................................................................................................ 11, 12

EEOC v. Vamco Sheet Metals, Inc.,
No. 13 Civ. 6088 (JPO), 2014 WL 2619812 (S.D.N.Y. June 5, 2014) ................................. 14

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,
739 F.3d 45 (2d Cir. 2013) ..................................................................................................... 4

Puello v. Bureau of Citizenship & Immigration Servs.,
511 F.3d 324 (2d Cir. 2007) ................................................................................................. 10

Quintanilla v. Kabco Pharms., Inc.,
No. 19-cv-06752 (E.D.N.Y. 2020) .......................................................................................... 4

Scott v. Whole Foods Mkt. Grp., Inc.,
No. 18-CV-0086(SJF)(AKT), 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ....... 3, 4, 13, 14, 17

**STATE CASES**

IKEA U.S. Inc. v. Indust. Bd. of Appeals,
660 N.Y.S.2d 585 (2d Dep't 1997) ......................................................................................... 8

N. Mar. I. v. Canadian Imperial Bank of Commerce,
21 N.Y.3d 55 (2013) ............................................................................................................... 4

Phillips v. Max Finkelstein, Inc.
2020-01643, 2020 WL 1280472, 2020 N.Y. Slip Op. 64854(U) (2d Dep't, Mar. 17,
2020) ........................................................................................................................................ 4

Vega v. CM & Assocs. Constr. Mgmt., LLC,
175 A.D.3d 1144 (1st Dep't 2019) ............................................................................... passim

**FEDERAL STATUTES**

29 U.S.C. § 216(b) ..................................................................................................................... 11

**STATE STATUTES**

N.Y. Gen. Laws, Chapter 32, Article 1 § 11 ..................................................................15

NYLL § 198(1-a) ........................................................................................ passim

NYLL § 191 ................................................................................................. passim

NYLL § 218 ................................................................................................. passim

**OTHER AUTHORITIES**

Gerson v. Comm'r of Labor,
    Docket No. PR 10-361, Resolution of Decision (N.Y. Indust. Bd. of Appeals Nov. 5,
    2014) ...............................................................................................................8

Popermhem v. Comm'r of Labor,
    Docket No. PR 13-153, Corrected and Reissued Resolution of Decision (N.Y. Indust.
    Bd. of Appeals Feb. 5, 2016) ...........................................................................8

Sheng Wang Zhang v. Comm'r of Labor,
    Docket No. PR 12-180, Resolution of Decision (N.Y. Indust. Bd. of Appeals Jul. 13,
    2016) ...............................................................................................................8

Wah Chan Wong v. Comm'r of Labor,
    Docket No. PR 12-090, Resolution of Decision (N.Y. Indust. Bd. of Appeals Oct. 26,
    2016) ...............................................................................................................8

## PRELIMINARY STATEMENT

The question before the Court is whether New York Labor Law ("NYLL") § 198(1-a) permits employees who have been paid all of the wages they earned to nevertheless sue their employers for liquidated damages in the amount of 100% of those wages (or 50%, as Plaintiffs purport to seek here) over a six-year period, simply because they were allegedly paid on a bi-weekly basis in violation of NYLL § 191.[1]  Defendants respectfully submit that the answer is "no":  the plain language of § 198(1-a) only authorizes employees to sue for liquidated damages pertaining to an "underpayment."  An "underpayment" is a payment for less than the amount of wages earned, not a late payment of those wages.

Instead of permitting employees to pursue private actions for liquidated damages pertaining to allegedly late-paid wages, the New York Legislature decided in NYLL § 218 to authorize the Commissioner of the Department of Labor to seek penalties against an employer who violates § 191.  Section 218 mandates the tailoring of such penalties to the particular circumstances of each employer and each violation—requiring the Commissioner to "give due consideration" to several enumerated factors—instead of creating a windfall of liquidated damages in the amount of 50% or 100% of wages already paid.  The decisions to permit private litigants to pursue liquidated damages for "underpayments" but not late payments, to provide for civil penalties as the sole remedy for late payments, and to require the Commissioner to exercise discretion in assessing such penalties were the New York Legislature's decisions to make when crafting the legislative scheme of the Labor Laws, and should be respected by those courts enforcing it, including this Court.

---

[1] Defendants have accepted as true Plaintiffs' allegation that they were not paid on a weekly basis solely for purposes of their Motions to Dismiss Plaintiffs' FAC.

In their opposition, Plaintiffs try to avoid the plain language of § 198(1-a) and the commonly understood meaning of "underpayment," relegating any argument based on the actual language of the statute (i.e., this Court's starting point in enforcing the statute) to the very end of their brief.  Instead, Plaintiffs predictably rely on the decisions of the First Department in Vega and of those courts that have followed it.  But, those courts' finding of an express right of action for private litigants to pursue liquidated damages for late-paid wages is not faithful to the plain language of § 198(1-a), and their alternative finding of an implied right of action both disturbs the statutory framework by entirely ignoring the enforcement mechanism created by the New York Legislature in § 218, and mischaracterizes the legislative purpose of §§ 191 and 198.  This Court is not bound by, nor should it follow, such decisions; rather, this Court should enforce the express terms of the statute by dismissing Count I of the FAC.

## ARGUMENT

### I.   THE PLAIN LANGUAGE OF, AND LEGISLATIVE INTENT UNDERLYING, THE LABOR LAWS MAKE CLEAR THAT PLAINTIFFS HAVE NO EXPRESS RIGHT OF ACTION FOR LIQUIDATED DAMAGES FOR ALLEGEDLY LATE-PAID WAGES.

Defendants' moving brief sets forth a simple, straightforward, and sensible interpretation of NYLL §§ 191, 198(1-a), and 218:  by using the term "underpayment," § 198(1-a) authorizes liquidated damages for underpaid wages but not for wages that were paid in full, albeit later than required by § 191.  The plain, ordinary meaning and dictionary definition of "underpay" is "to pay less than what is normal or required," and "less than" refers to amount, not timeliness.  Moreover, the plain language of § 198(1-a) equates "underpayment" with "less than the wage to which he or she is entitled" and with "wages found to be due."  The ordinary meaning of both of these phrases, too, is unpaid wages rather than wages that were paid in full but late.  See Defs.' Mov. Br. at 2–7.  Defendants' brief further explained that the remedy for violations of certain

2

wage laws that do not involve an underpayment, such as § 191 violations for the late payment of wages, is provided in NYLL § 218(1), which authorizes the Commissioner of Labor to assess civil penalties.  Id. at 10–12.  As explained further below, § 218(1) requires the amount of such penalties to be tailored based on a number of factors regarding the nature of the employer and of the violation.

In contrast, Plaintiffs' interpretation of § 198(1-a) fails for the following reasons:  (1) it is inconsistent with the plain meaning of the statute's language, including the terms "underpayment," "less than," and "wages found to be due"; (2) it does not account for § 218's provision of civil penalties, rather than liquidated damages, for wage law violations "for a reason other than the employer's failure to pay wages," NYLL § 218(1); (3) it would produce inconsistent and irreconcilable results, as illustrated by comparing three hypothetical violations of § 191; and (4) it wrongly analogizes the NYLL to the FLSA.

### A.    Plaintiffs' Interpretation Disregards the Plain Meaning of § 198(1-a) in Favor of Non-Binding Decisions That Do Not Enforce It.

Plaintiffs dismiss Defendants' "plain language" argument as boiling down to "generic principles of statutory interpretation" and the "unremarkable proposition that statutes should be interpreted according to their plain meaning"—as though these principles may be disregarded. Pls.' Opp'n at 28.  Perhaps that is because the cases Plaintiffs spend the great majority of their brief defending—Vega[2] and Scott[3]—do, in fact, disregard such principles by ignoring the plain meaning of "underpayment" in § 198(1-a) and permitting employees to pursue liquidated damages for late-paid wages.

---

[2] Vega v. CM & Assocs. Constr. Mgmt., LLC, 175 A.D.3d 1144 (1st Dep't 2019).

[3] Scott v. Whole Foods Mkt. Grp., Inc., No. 18-CV-0086(SJF)(AKT), 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019).

But these well-established, well-settled canons are far more weighty than non-binding case law that conflicts with a host of other decisions.  See Defs.' Mov. Br. at 7–12.  If this Court finds that the First Department in Vega misinterpreted the meaning of "underpayment" in § 198(1-a) by treating the phrases "less than" and "later than" as having the same meaning—as the Phillips court found,[4] and as Judge Chen recently implied in Quintanilla when she called the reasoning of Vega "tortured"[5]—then it must reject Vega in favor of interpreting the plain language of the statute according to its commonly understood meaning.  See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 739 F.3d 45, 48–51 (2d Cir. 2013) (disregarding several First Department decisions because they involved a "mistaken application" and incorrect interpretation of the law as set forth by the New York Court of Appeals).  Likewise, this Court must reject Scott for that court's failure to analyze the plain language of the statute at all. See Defs.' Mov. Br. at 9 (citing cases).[6]

Beyond their reliance on Vega and Scott, Plaintiffs' own contrived interpretations of the statutory language fare no better.

First, Plaintiffs' argument that their claim constitutes a "wage claim" for purposes of § 198(1-a), Pls.' Opp'n at 29, fails because it ignores the remaining language of that section. Specifically, the term "wage claim" is explained, within the same sentence of § 198(1-a), to be a

---

[4] Phillips v. Max Finkelstein, Inc. is now on appeal to the Second Department.  See 2020-01643, 2020 WL 1280472, 2020 N.Y. Slip Op. 64854(U) (2d Dep't, Mar. 17, 2020).

[5] See Pagano Decl., Ex. A at 17; Quintanilla v. Kabco Pharms., Inc., No. 19-cv-06752 (E.D.N.Y. 2020).

[6] Plaintiffs suggest that "there is and was no requirement that the Scott Court address how a late payment of wages constitutes an underpayment to trigger the remedies authorized by NYLL § 198(1-a) in order to arrive at [its] valid holdings."  Pls.' Opp'n at 19.  Similarly, Plaintiffs elsewhere comment that "litigants (and as a result Courts) sometimes ignore mandatory language in statutes."  Id. at 14.  To the extent Plaintiffs are suggesting that this Court should ignore the clear language of "underpayment" in § 198(1-a), that contention cannot be taken seriously because it contravenes the fundamental principle of statutory interpretation that the Court's "'starting point is the language itself, giving effect to the plain meaning thereof.'"  N. Mar. I. v. Canadian Imperial Bank of Commerce, 21 N.Y.3d 55, 60 (2013) (citation omitted).

4

claim for ***underpayment of wages***.  See Defs.' Mov. Br. at 5–6.  Gottlieb does not hold otherwise, as Plaintiffs imply, Pls.' Opp'n at 29, or specifically address whether § 198(1-a) provides for a "wage claim" and liquidated damages when there was a late payment but no underpayment; nor could it have, as § 198(1-a) did not contain the term "underpayment" at the time Gottlieb was decided.  See NYLL § 198(1-a) (1993).[7]

Second, Plaintiffs' argument that wages are "due" for purposes of § 198(1-a) the moment they are not paid according to the schedule set by § 191 (as illustrated by the hypothetical Plaintiffs present in their opposition, see Pls.' Opp'n at 1–2, 29–31), also fails because it ignores other language within § 198(1-a), specifically the phrase "found to be."  The meaning of this phrase is clear from reading the entirety of the sentence in which it appears:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, ***the court shall allow*** such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest … and … an additional amount as liquidated damages equal to one hundred percent of the total amount of the ***wages found to be due***…

§ 198(1-a) (emphasis added).  In other words, once an employee prevails in the civil lawsuit, the court orders several remedies, including liquidated damages in the amount of 100% of the "wages found to be due."  The court finds the wages to be due.  The wages are not "found" to be due until the court makes that finding.  It follows, then, that Plaintiffs have no claim for liquidated damages pursuant to § 198(1-a) because the Court cannot find that they are due wages; as Plaintiffs concede, Defendants regularly paid them all wages they earned.

## B.    Plaintiffs' Interpretation Misconstrues Section 218(1).

Plaintiffs argue that, if this Court agrees with Defendants that § 218(1) provides the remedy for violations of § 191 (i.e., civil penalties assessed by the Commissioner, following

---

[7] A copy of the statute is attached to the Saravay Declaration as Exhibit A.

mandatory review of certain factors), that interpretation will foreclose all other remedies in the wage laws.  See Pls.' Opp'n at 11, 20.  That argument is wrong for several reasons.

First, Defendants agree that § 218 does not foreclose other remedies provided by the NYLL; indeed, Plaintiffs accurately quote § 218(4) as stating that "[t]he civil penalty provided for in this section shall be in addition to and may be imposed concurrently with any other remedy or penalty provided for in this chapter."  However, Plaintiffs' argument that liquidated damages for a late payment of wages is "**_provided for_**" in § 198(1-a) is incorrect because the text of that section says no such thing.

Second, Plaintiffs inaccurately argue that Defendants believe "§ 218 forecloses remedies other than those contained therein" and therefore § 198(1-a) should not exist.  Pls.' Opp'n at 11.  But, Defendants do not contend that § 218 bars all remedies other than its own; Defendants simply argue that § 218(1) is the designated remedy for, as it says, violations of the wage laws "for a reason other than the employer's failure to pay wages"—for example, § 191 violations.[8]

Third, Plaintiffs' contention that § 218 makes "no specific reference to" § 191 or frequency of payments, Pls.' Opp'n at 11, is equally true of § 198(1-a), which says nothing about § 191 or late-paid wages.  The meaningful difference between those sections, however, is that § 198(1-a) expressly limits the recovery of liquidated damages to actions involving an "underpayment," whereas § 218(1) broadly authorizes the Commissioner's assessment of civil penalties for violations of the wage laws "for a reason other than the employer's failure to pay wages"—a catchall category encompassing violations of § 191.

Lastly, Plaintiffs' contention that there is no "indication" that the New York Legislature intended § 218(1) as the remedy for § 191 violations "either on its own or to the exclusion of

---

[8] This language underscores why a private cause of action for violations of § 191 should not be implied into § 198(1-a).  See Defs.' Mov. Br. at 9–11; see also infra Argument, Section II.

other remedies," Pls.' Opp'n at 11, is refuted not only by a close reading of § 218(1), but also by

the recurrent interpretation of the expert administrative entities tasked with enforcing the Labor

Laws, both of which distinguish between violations involving unpaid wages and violations

"other than the employer's failure to pay wages."  The first part of § 218(1) provides, in relevant

part:

> If the commissioner determines that an employer has violated a
> provision of article six (payment of wages)[9] [or other employment-
> related laws], the commissioner shall issue to the employer an
> order directing compliance therewith…. In addition to directing
> ***payment of wages, benefits or wage supplements found to be due,***
> ***and liquidated damages in the amount of one hundred percent of***
> ***unpaid wages,*** such order, if issued to an employer who previously
> has been found in violation of those provisions, rules or regulations,
> or to an employer whose violation is willful or egregious, shall
> direct payment to the commissioner of an additional sum as a ***civil***
> ***penalty*** in an amount not to exceed ***double the total amount of***
> ***wages, benefits, or wage supplements found to be due***… In no
> case shall the order direct payment of an amount less than the total
> wages, benefits or wage supplements found by the commissioner
> to be due, plus the liquidated damages in the amount of one
> hundred percent of ***unpaid wages***, the appropriate civil penalty,
> and interest at the rate of interest then in effect, as prescribed by
> the superintendent of financial services pursuant to section
> fourteen-a of the banking law per annum from the date of the
> ***underpayment*** to the date of the payment.

NYLL § 218(1) (emphasis added).  The next sentence of the same subsection continues:

> Where the violation is for a reason ***other than the employer's***
> ***failure to pay wages, benefits or wage supplements found to be***
> ***due***, the order shall direct payment to the commissioner of a ***civil***
> ***penalty*** in an amount not to exceed ***one thousand dollars for a***
> ***first violation, two thousand dollars for a second violation or***
> ***three thousand dollars for a third or subsequent violation***….

Id. (emphasis added).  Consistent with § 198(1-a), the Legislature in § 218(1) first equated wages

"found to be due," "unpaid wages," and "underpayment," and provided for liquidated damages

up to 100% of the "unpaid wages" and a civil penalty not to exceed double the wages "found to

---

[9] Article Six of the New York Labor Law contains Sections 191 and 198.

be due." Id.  The Legislature then distinguished between, on the one hand, that type of violation,

and on the other hand, violations of Article 6 "other than … failure to pay wages," which can

result in a civil penalty in amounts up to $1,000, $2,000, or $3,000.[10]

The Commissioner of Labor and the State's Industrial Board of Appeals (which reviews

orders issued by the Commissioner) have recognized, over and over, that violations of § 191's

pay frequency requirement fall within the statutory category of a violation "other than . . .  failure

to pay wages."  See, e.g., NYSDOL Comm'r Order against IKEA U.S., Inc. dated Oct. 7, 1994

(assessing civil penalty pursuant to § 218 for violations of § 191(1)(a))[11]; Wah Chan Wong v.

Comm'r of Labor, Docket No. PR 12-090, Resolution of Decision, at 13 (N.Y. Indust. Bd. of

Appeals Oct. 26, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Sheng Wang

Zhang v. Comm'r of Labor, Docket No. PR 12-180, Resolution of Decision, at 13 (N.Y. Indust.

Bd. of Appeals Jul. 13, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a));

Popermhem v. Comm'r of Labor, Docket No. PR 13-153, Corrected and Reissued Resolution of

Decision, at 12–13 (N.Y. Indust. Bd. of Appeals Feb. 5, 2016) (affirming $1,000 civil penalty for

violation of § 191(1)(a)); Gerson v. Comm'r of Labor, Docket No. PR 10-361, Resolution of

Decision, at 8 (N.Y. Indust. Bd. of Appeals Nov. 5, 2014) (affirming $1,000 civil penalty for

violation of § 191(1)(d), a pay frequency requirement pertaining to "clerical and other

worker[s]").[12]  In other words, every single one of these decisions treated the § 191 violation as

one "other than the employer's failure to pay wages" and assessed a civil penalty pursuant to

---

[10] This distinction further supports the conclusion that the terms "underpayment" and "wages found to be due" in § 198(1-a) do **not** encompass late-paid wages.

[11] This is the order issued by the Commissioner against IKEA that led to the decision in IKEA U.S. Inc. v. Indust. Bd. of Appeals, 660 N.Y.S.2d 585 (2d Dep't 1997), which is discussed in Defendants' moving brief and Plaintiffs' opposition.  This order specifically states that the penalty was assessed "by the authority of Section[] … 218 of the Labor Law," precisely as Defendants explained in their brief, Defs.' Mov. Br. at 11–12, but which Plaintiffs dismissed as "without any support whatsoever."  See Pls.' Opp'n at 13.

[12] Copies of the decisions cited in this paragraph are attached to the Saravay Declaration as Exhibits B–F.

§ 218(1) consistent with that category of violations.  Not one of them imposed liquidated damages—pursuant to §§ 191, 198(1-a), 218, or any other provision of the Labor Laws—for the § 191 violation.  Thus, consistent with the plain language of these statutes, the Commissioner of Labor and the Industrial Board of Appeals routinely interpret § 218, rather than § 198(1-a), as the remedy for violations of § 191's pay frequency requirements.[13]

### C.   Plaintiffs' Interpretation Would Lead to Inconsistent and Irreconcilable Results.

A comparison of three hypothetical violations of § 191(1)(a)(i) illustrates that § 218(1)'s civil penalty remedy was tailored by the Legislature to fit violations of the wage laws like the one alleged by Plaintiffs, whereas application of § 198(1-a)'s liquidated damages remedy would produce inconsistent and irreconcilable results:

- Scenario 1:  For one year, an employer pays its manual workers bi-weekly, such that each payday is more than seven calendar days after the end of the first week of earned wages.  According to Plaintiffs' interpretation of § 198(1-a), those employees could claim liquidated damages equal to *half* of their total paychecks for one year.  See Pls.' Opp'n at 3 n.2.

- Scenario 2:  For one year, an employer pays its manual workers weekly, but each payday is eight calendar days after the end of the week of earned wages, rather than seven as required by § 191.  According to Plaintiffs' interpretation of § 198(1-a), those employees could claim liquidated damages equal to their *total* paychecks for one year—double the liquidated damages available in Scenario 1—even though they were paid on a weekly basis, i.e. more frequently than the employees were paid in Scenario 1.

- Scenario 3:  For one year, an employer stops paying its manual workers entirely, and then pays its employees those wages on the first day of the following year.  According to Plaintiffs' interpretation of § 198(1-a), those employees could claim liquidated damages equal to their *total* paychecks for one year— the same measure of liquidated damages available to the

---

[13] The Department of Labor's FAQs and opinion letter cited by Plaintiffs simply state that § 191 requires the payment of wages in full and on time.  See Pls.' Opp'n at 31–32 nn.15–16.  They do not in any way indicate a belief by the DOL that § 198(1-a) provides private litigants a cause of action and claim for liquidated damages for late payment of wages.

employees in Scenario 2—even though the wages were paid much later.

The Legislature's provision in § 218(1) of the remedy for § 191 violations allows for penalties that are sensibly calibrated to the nature of both the employer and the violation. Section 218(1) provides for three tiers of a civil penalty, depending on the number of previous violations, and further instructs:

> [T]he commissioner shall give due consideration to the size of the employer's business, the good faith basis of the employer to believe that its conduct was in compliance with the law, the gravity of the violation, the history of previous violations and, in the case of wages, benefits or supplements violations, the failure to comply with recordkeeping or other non-wage requirements.

In other words, the Commissioner is directed to consider a number of factors and, in his or her discretion, decide on an appropriate civil penalty within a designated range. The Commissioner can adjust the amount of the penalty based on considerations such as the degree of the violation (e.g., how late the payment was), the number of violations, and the good faith basis of the employer to believe that its conduct was in compliance with the law. For example, as relating to Scenarios 2 and 3, presented above, the Commissioner could apply § 218(1) to assess a smaller penalty in Scenario 2 (e.g., if it found that the employer was unaware that it was not in compliance, and the violation was not severe because employees were paid regularly and in full, one day late) than in Scenario 3 (e.g., because the employer knew that withholding wages for a year was not permissible, and violation was severe because employees did not receive their pay for a much longer time, up to a full year).

In contrast, under Plaintiffs' interpretation, the ability of private litigants to seek liquidated damages for late-paid wages—in amounts of 50%, or even 100%, of wages already paid to them—would serve as a blunt instrument of enforcement for § 191, mandating results entirely disproportionate with violations, as illustrated by the hypothetical scenarios discussed

above.  But "a statute should be interpreted in a way that avoids absurd results."  <u>Puello v. Bureau of Citizenship & Immigration Servs.</u>, 511 F.3d 324, 330 (2d Cir. 2007) (citation omitted). Because the severity of § 191 violations may vary greatly depending on the nature of both the employer and the violation itself, it is entirely logical that the Legislature designed an adaptable enforcement mechanism in § 218(1), separate and apart from the more stringent enforcement mechanism in § 198(1a), which instead was designed to remedy violations of the Labor Laws that involve unpaid wages.

### D.    Plaintiffs' Interpretation Improperly Relies On the FLSA.

Plaintiffs wrongly contend that there is "no reason" to treat late wages and liquidated damages under the NYLL differently from how they are treated under the Fair Labor Standards Act ("FLSA").  Pls.' Opp'n at 26.  There are multiple such reasons.

First and foremost, the plain language of § 198(1-a) expressly limits the remedy of liquidated damages to "underpayments" of wages, whereas 29 U.S.C. § 216(b), the FLSA's liquidated damages provision, has no such limitation.  Indeed, this difference is precisely why courts have declined to recognize a NYLL § 198(1-a) claim for liquidated damages for late-paid wages at the same time that they have awarded liquidated damages for late-paid wages under the FLSA.  <u>See, e.g.</u>, <u>Belizaire v. RAV Investigative & Sec. Servs. Ltd.</u>, 61 F. Supp. 3d 336, 360 & n.22 (S.D.N.Y. 2014).

Additionally, at the time of the U.S. Supreme Court's decision in <u>Brooklyn Sav. Bank v. O'Neil</u>, and as that Court itself acknowledged, the federal Department of Labor had no authority to bring a civil lawsuit for unpaid wages or "damages arising from delay in payment."  324 U.S. 697, 709 (1945).  Rather, § 216(b) of the FLSA permitted only an employee to bring such a suit.

11

Id.[14]  In the absence of any other remedy to address late-paid wages, the Court interpreted the

FLSA to allow employees to obtain liquidated damages for late payments.  In sharp contrast, the

New York Legislature provided for enforcement actions by the Commissioner and specifically

authorized the Commissioner to assess civil penalties through NYLL § 218(1) for late-paid

wages.  The New York Legislature specifically did ***not*** give similar enforcement authority

regarding late-paid wages to private litigants in § 198(1-a).

These substantial differences in statutory language and structure demonstrate that NYLL

§ 198(1-a) should be interpreted in accordance with its own plain language and the design of the

NYLL, and not in the same manner as the FLSA's liquidated damages provision.[15]

## II.   THE COURT SHOULD DISREGARD VEGA, SCOTT, AND THEIR PROGENY.

There is no dispute that neither the Second Circuit nor the New York Court of Appeals

has decided whether NYLL §§ 191 or 198 authorize Plaintiffs' claim for liquidated damages, and

therefore that there is no binding authority governing the Court's decision on Defendants'

motions to dismiss.  Despite their insistence that Vega must control, Pls.' Opp'n at 5–12,

Plaintiffs cannot overcome the basic principle recited in Defendants' moving brief that the First

Department is an intermediate appellate court, the decisions of which (including Vega) are non-

binding on federal courts.  See Pls.' Opp'n at 5 (citing Phila. Indem. Ins. Co. v. Indian Harbor

---

[14] This was purposeful.  As the O'Neil Court noted, during the legislative debates, one congressman explained that by allowing employees, but not the federal government, to sue, 29 U.S.C. § 216(b) "has the further virtue of minimizing the cost of enforcement by the Government."  324 U.S. at 705 n.16.

[15] On a related note, Plaintiffs grossly exaggerate the relevance of NYLL § 191's predecessor to the Court's decision in O'Neil.  The Court simply cited the pay frequency requirement of the NYLL, among multiple other state laws, to show that "[t]he necessity of prompt payment to workers of wages has long been recognized by Congress as well as by state legislatures."  O'Neil, 324 U.S. at 707 n.20.  That section of the NYLL was not "***the basis*** for recovering liquidated damages" for late paid overtime wages under the FLSA, as Plaintiffs contend, Pls.' Opp'n at 27 (emphasis added)—nor could it be, as NYLL § 191's predecessor says nothing about liquidated damages or any other penalty (or the FLSA, of course).  See NYLL c. 31, § 196 (1930).  (A copy of the statute is attached to the Saravay Declaration as Exhibit G.) And the O'Neil decision certainly does not say anything about whether private litigants can pursue claims for liquidated damages for late-paid wages under ***New York*** law, which is the issue in this case.

12

Ins. Co., 434 F. Supp. 3d 4, 10 (E.D.N.Y. 2020) ("Decisions of a state's intermediate and lower courts are not binding on the federal courts.")); see also Defs.' Mov. Br. at 13.  And, for all of the reasons discussed herein and in Defendants' moving brief, this Court should ***not*** follow Vega, Scott, or the subsequent cases adhering to them cited by Plaintiffs in their opposition.  See Pls.' Opp'n at 9, 18.

First, as Defendants argued in their opening brief, both Vega and Scott failed to engage with the straightforward language of § 198(1-a), and thus had no basis for holding that the statute provided an express right of action for Plaintiffs' claim.  Defs.' Mov. Br. at 8–12.  Plaintiffs do not seriously dispute that Scott failed to analyze the plain language of § 198(a-1), whatsoever, see Pls.' Opp'n at 19, and that alone is reason to reject the opinion.  See supra at 4–5 & n.6.  Nor do Plaintiffs engage with Defendants' argument that the Vega court's superficial analysis of the statutory language is dispelled by a careful reading of the statute and an interpretation of its plain language according to its ordinary meaning.  To the contrary, Plaintiffs concede that there is tension between the Vega court's reading and the language of the statute itself, quoting at length Judge Chen's recent opinion in which she recognized that "the reasoning in Vega is . . . 'tortured.'"  Pls.' Opp'n at 24–25 (quoting Quintanilla).  As stated, this Court is not bound to, nor should it, follow a "tortured" reading of the statute, but rather it should engage in a plain language analysis, which will not support the existence of an express right of action.  See supra Argument, Section I.

Second, as Defendants further argued in their moving brief, Vega and Scott also should be rejected because they incorrectly found an implied right of action for liquidated damages for an alleged late payment of wages.  See Defs.' Mov. Br. at 9–11.  Focusing on the "most critical"

13

factor of the implied right of action analysis,[16] <u>Agerbrink v. Model Serv. LLC</u>, No. 14-CV-7841 (JPO), 2015 WL 3750674, at *3 n.5 (S.D.N.Y. June 6, 2015), Defendants explained that creating such a right of action would not be "'consistent with the legislative scheme'" because the New York Legislature designated NYLL § 218(1) as the enforcement mechanism for late payment of wages.  <u>EEOC v. Vamco Sheet Metals, Inc.</u>, No. 13 Civ. 6088 (JPO), 2014 WL 2619812, at *7 (S.D.N.Y. June 5, 2014) (quoting <u>Maraia v. Orange Reg'l Med. Ctr.</u>, 882 N.Y.S.2d 287, 289-90 (2d Dep't 2009)); <u>see</u> Defs.' Mov. Br. at 10–11; <u>supra</u> at 6–10.  <u>Vega</u> and <u>Scott</u> ***did not mention § 218(1) at all***, let alone analyze whether creation of an implied right in § 198(a-1) for private litigants to pursue liquidated damages for late-paid wages would be consistent with § 218(1). This is a primary reason to reject those opinions' findings that a right of action should be implied.

Further, to the extent Plaintiffs rely on <u>Vega</u>'s passing reference to the "legislative history" of § 198 to rehabilitate that opinion's implied right analysis, Pls.' Opp'n at 7–8, the First Department's two-sentence "analysis" of one amendment to the statute, buried in a footnote of the opinion, is too superficial to carry any weight with this Court.  Moreover, <u>Vega</u> misconstrues the legislative history associated with both §§ 191 and 198, which instead demonstrates that the Legislature never intended to confer a private right of action for liquidated damages to redress an alleged pay frequency violation.

A weekly pay requirement was first enacted in the New York Law in 1890.  That law stated:

> Every manufacturing … [and] mercantile … corporation … shall pay weekly, each and every employee engaged in its business, the wages earned by such employee within six days of the date of such payment…. Any corporation violating any of the provisions of this act shall be liable to a penalty not exceeding

---

[16] Despite Plaintiffs' assertion that Defendants "tacitly concede[] the first two prongs of an implied private right of action," Pls.' Opp'n at 19, they do not.  Rather, Defendants focused on the inconsistency of an implied right with § 218(1) because neither <u>Vega</u> nor <u>Scott</u> considered that provision of the Labor Laws, and the Court should reject their implied right analyses on that basis alone.

> fifty dollars and not less than ten dollars for each violation, to be paid to the
> people of the state and which may be recovered in a civil action; provided an
> action for such violation is commenced within thirty days from the date thereof.
> The factory inspectors of this state, their assistants or deputies may bring an
> action in the name of the people of the state as plaintiff against any corporation
> which neglects to comply with the provisions of this act for a period of two weeks,
> after having been notified in writing by such inspectors, assistants or deputies,
> that such action will be brought.

Session Law 1890, Ch. 388 §§ 1–2.[17]  Thus, from the beginning, the remedy for violation of the

weekly pay requirement was that a corporation would pay a penalty to the state.  The Legislature

authorized the government actors tasked with enforcing the weekly pay provision, the factory

inspectors, to seek those penalties.  That same conceptual regulatory scheme has existed since

that first law was enacted, and it still exists today.

On May 13, 1897, the weekly pay requirement was codified in the Labor Laws, with

similar provisions.  N.Y. Gen. Laws, Ch. 32, Art. 1 § 11.[18]  That version of the law specifically

stated:

> Penalty for violation of preceding sections.—If a corporation or joint stock
> association, its lessee or other person carrying on the business thereof, shall fail to
> pay the wages of an employee as provided in this article, it shall forfeit to the
> people of the state the sum of fifty dollars for each such failure, to be recovered
> by the factory inspector in his name of office in a civil action; but an action shall
> not be maintained therefor, unless the factory inspector shall have given to the
> employer at least ten days' written notice, that such an action will be brought if
> the wages due are not sooner paid as provided in this article.

Id. (emphasis added).  Again, in that iteration of the law, the penalty provision was a payment to

the state.  Significantly, the statute used similar language to the present day version, i.e., that an

action can be brought only "if the wages due are not sooner paid."  Id.  The weekly pay

---

[17] A copy of this statute is attached to the Saravay Declaration as Exhibit H.

[18] A copy of this statute is attached to the Saravay Declaration as Exhibit I.

requirement was re-codified in 1966 as § 191, and again, as with the prior statutes, a private right

of action was not provided.  See Session Law 1966, Ch. 548 § 191.[19]

      Section 198 of the NYLL was first enacted in 1966.  In its original form, it was fairly

barebones as compared with the modern version.  It stated:

> § 198. Costs, remedies. 1. In any action instituted upon a wage claim by an
> employee or the commissioner in which the employee prevails, the court may
> allow such employee in addition to ordinary costs, a reasonable sum, not
> exceeding fifty dollars for expenses which may be taxed as costs. No assignee of
> a wage claim, except the commissioner, shall be benefited by this provision.
> 2. The remedies provided by this article may be enforced simultaneously or
> consecutively so far as not inconsistent with each other.

Since then, § 198 has been amended seven separate times.  Through every amendment, the

Legislature has never added language authorizing a private litigant to bring suit for a violation of

§ 191 or otherwise pursue liquidated damages for the late payment of wages.  See L.1967, c. 294,

§ 5; L.1967, c. 310, § 1; L.1997, c. 605, § 4, eff. Nov. 16, 1997; L.2009, c. 372, § 1, eff. Nov. 24,

2009; L.2010, c. 564, § 7, eff. April 9, 2011; L.2014, c. 537, §§ 2, 5, eff. Feb. 27, 2015; L.2015,

c. 2, § 3, eff. Feb. 27, 2015; L.2015, c. 362, § 2, eff. Jan. 19, 2016.[20]

      In 2010, the Legislature passed the Wage Theft Prevention Act ("WTPA"), which in part

amended § 198(1-a) to address the problem of "wage theft" by employers.  Specifically, § 198(1-

a) was amended to allow a prevailing employee to recover liquidated damages reflecting "the full

amount of any underpayment," increased from the previously authorized amount of 25% of any

underpayment. N.Y. Bill Jacket, 2010 S.B. 8380, Ch. 564.[21]  The Commissioner of Labor

supported the passage of the WTPA because of the harm that "wage theft" caused throughout the

economy.  Specifically, the Commissioner characterized the WTPA as "increas[ing] penalties for

---

[19] A copy of this statute is attached to the Saravay Declaration as Exhibit J.

[20] A copy of these amendments is attached to the Saravay Declaration as Exhibit K.

[21] A copy of this is attached to the Saravay Declaration as Exhibit L.

violation of various provisions of the Labor Law intended to protect workers from ***nonpayment and underpayment*** of wages." Id. at Mem. of Comm'r to the Governor, Dec. 10, 2010 (emphasis added). In other words, the Commissioner of Labor recognized that certain provisions of the NYLL are intended to address violations involving "nonpayment and underpayment," while others are intended to address other types of violations that do not involve nonpayment or underpayment. Further, the Commissioner stated that the WTPA was intended to penalize employers that (i) paid employees less than the minimum wage or their agreed-upon wage; (ii) created a competitive disadvantage for law-abiding employers by reducing the cost of their own business; and (iii) hurt the state and local economy by reducing wages that would otherwise "make their way into the economy and generate income and sales taxes." Id. at Mem. of Comm'r to the Governor, Dec. 10, 2010. Again, this history confirms that the Legislature designed the enhanced penalties in § 198(a-1) to deter the non-payment of wages, ***not*** the routine payment of wages on a bi-weekly pay schedule, as Plaintiffs allege here.

In sum, given the absence of any evidence whatsoever that the Legislature has ever intended to create a private right of action to pursue liquidated damages for allegedly late-paid wages, the First Department in Vega wrongly inferred that the legislative purpose of §§ 191 and 198(1-a) would be furthered by finding an implied right. In combination with the Vega and Scott courts' failures to consider § 218(1), their misapprehension of the legislative purpose of these statutes is another reason to reject their holdings regarding the creation of an implied right of action.

Based on all of these deficiencies in Vega and Scott—their disregard of the statutes' plain language, their incomplete implied right of action analysis, and Vega's inaccurate view of the statutes' legislative history—this Court should reject them and their progeny.

17

## **CONCLUSION**

The Court should dismiss Plaintiffs' First Amended Complaint against all Defendants.


Respectfully submitted,

McCARTER & ENGLISH, LLP
Attorneys for Defendants HP Inc. and HPE


By: */s/ Adam N. Saravay*_____


EPSTEIN BECKER & GREEN, P.C.
Attorneys for Defendant Unisys Corporation


By: */s/ Jeffrey H. Ruzal*_____

18