1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - - X
                                     :
       SILVIA QUINTANILLA,            :   19-CV-06752(PKC)
                                     :
              Plaintiff,              :
                                     :
                                     :   United States Courthouse
         -against-                    :   Brooklyn, New York
                                     :
                                     :
                                     :   June 30, 2020
       KABCO PHARMACEUTICALS,         :   12:00 p.m.
       INC., et al.,                  :
                                     :
              Defendants.             :
     - - - - - - - - - - - - - - - - X

     TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT VIA TELECONFERENCE
                   BEFORE THE HONORABLE PAMELA K. CHEN
                       UNITED STATES DISTRICT JUDGE

                          A P P E A R A N C E S:

     For the Plaintiff:       LAW OFFICE OF PETER A. ROMERO PLLC
                              825 Veterans Highway
                              Hauppauge, New York 11788

                              BY:  PETER ROMERO, ESQ.
                                   DAVID BARNHORN, ESQ.


     For the Defendant:       KAUFMAN DOLOWICH & VOLUCK, LLP
                              135 Crossways Park Drive
                              Suite 201
                              Woodbury, New York 11797

                              BY:  MATTHEW COHEN, ESQ.


     Court Reporter:          DENISE PARISI, RPR, CRR
                              Official Court Reporter
                              Telephone: (718) 613-2605
                              E-mail: DeniseParisi72@gmail.com

     Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
```

1  (All parties present via teleconference.)
2  THE COURTROOM DEPUTY: Civil cause for oral
3  argument, docket 19-CV-6752, Quintanilla versus Kabco
4  Pharmaceuticals, Inc., et al.
5  Before asking the parties to state their appearances
6  for the record, I would like to note the following: Persons
7  granted remote access to proceedings are reminded of the
8  general prohibition against photographing, recording, and
9  rebroadcasting of court proceeding. Violation of these
10  prohibitions may result in sanctions, including removal of
11  court-issued media credentials, restricted entry to future
12  hearings, denial of entry to future hearings, or any other
13  sanctions deemed necessary by the Court.
14  Will the parties please state their appearances for
15  the record starting with the plaintiff.
16  THE COURT: Plaintiff's counsel?
17  MR. BARNHORN: David Barnhorn is here as plaintiff's
18  counsel, as is Mr. Romero, who will be doing the oral
19  argument, who I'm not hearing currently.
20  MR. ROMERO: I apologize. This is Peter Romero. My
21  phone was on mute, Your Honor. I apologize.
22  THE COURT: Okay. Good morning.
23  MR. ROMERO: Good morning.
24  THE COURT: For the defense?
25  MR. COHEN: Good afternoon, Your Honor.

*Proceedings* 3

1           My name is Matthew Cohen.  I'm an attorney from
2   Kaufman, Dolowich, Voluck.  We represent the three defendants.
3           THE COURT:  Okay.  Good afternoon to you, Mr. Cohen.
4           We are here, as the parties are aware, for oral
5   argument on the motion of defendants' to dismiss the New York
6   Labor Law claim under Section 191, which alleges the failure
7   to timely pay, as required by the statute.  And then the
8   second basis of the motion is to dismiss the class allegations
9   under Rule 23, or those allegations purporting to name a class
10  under Rule 23.
11          So I will hear from defendant first, Mr. Cohen,
12  since it's your motion.  I'm obviously familiar with the
13  arguments from your written submission, but if you want to
14  highlight anything on either basis, go ahead.
15          MR. COHEN:  All right.  Thank you, Your Honor.
16          First, plaintiff's frequency-of-pay claim, pursuant
17  to the New York Labor Law, should be dismissed in its
18  entirety.  Significantly, plaintiff does not allege any
19  underpayment of wages and confirms that she was paid on a
20  biweekly basis.  In our opposition to the present motion,
21  plaintiff seeks to completely ignore the two most
22  recently-cited cases in either of the parties' briefs and
23  seeks to overturn Your Honor's own ruling in *Coley vs.*
24  *Vanguard Urban Improvement Association* from 2018.  As Your
25  Honor confirms and correlates, the New York Labor Law seems to

*Proceedings* 4

1  be geared to afford relief for unpaid wages and not for late
2  paid wages.
3  In addition, and correlate, Your Honor held that two
4  weeks is an appropriate standard to use in assessing whether
5  defendants delayed payments to plaintiff adopting the same
6  standards in the present action leading to a dismissal of the
7  frequency-of-payment claim.
8  While plaintiff seeks to rely on the *Vega* decision
9  from the First Department in New York, contrary authorities
10 stemming from courts located within the Second Department,
11 which is the same department that the defendants are located
12 in, as such, this court is not bound by --
13 THE COURT: Mr. Cohen, let me ask you to slow down a
14 bit because, remember, we have a court reporter who is trying
15 to transcribe everything.
16 MR. COHEN: Absolutely. My apologies, Your Honor.
17 So, as such, this Court is not bound by the *Vega*
18 decision.
19 Most recently, two apparent companion cases in the
20 Suffolk County Supreme Court -- *Phillips vs. Max Finkelstein*
21 and *Kruty vs. Max Finkelstein Incorporated* -- were decided
22 over three months after *Vega* in December 2019.
23 THE COURT: Let me pause you again.
24 Just for the court reporter, *Kruty*, K-R-U-T-Y, *vs.*
25 *Max*, like a person's name, *Finkelstein*, separate word.

*Proceedings* 5

1           Okay. Go ahead.

2           MR. COHEN: Thank you, Your Honor.

3           In each of these decisions, the Court agreed with a

4 2018 Queens County Supreme Court decision, *Hunter vs. Planned*

5 *Building Services Incorporated*, which held that no private

6 right of action existed for a frequency of pay violation

7 unless there was nonpayment of wages. As a result,

8 plaintiff's frequency-of-pay claim should be dismissed in its

9 entirety. In addition, plaintiff's class claims should be

10 denied under -- dismissed in their entirety.

11           Plaintiff failed to oppose -- first off, plaintiff

12 failed to oppose defendants' argument that the punitive class,

13 as defined in plaintiff's amended complaint, would require

14 individualized mini hearings to determine membership because

15 such punitive class members are defined by their job duties

16 and not their job title or position. Because this assertion

17 is undisputed, plaintiff's class claim should be dismissed in

18 their entirety.

19           Moreover, whether each punitive class member spent

20 more than 25 percent of his or her time performing physical

21 labor to fit within the definition of "manual labor" would

22 also necessitate such mini trials concerning the

23 frequency-of-pay claim and thus provides another reason for

24 dismissal of the class-wide frequency-of-pay claim.

25           Thank you, Your Honor.

1   THE COURT: Let me ask you one question about your
2 argument on the class allegations.
3   Isn't your motion premature? Because, at this
4 point, I don't have any basis upon which to decide whether or
5 not the class can be defined in the manner that the plaintiffs
6 have done where they name what the actual duties are that
7 qualify as manual labor. The cases that you cite are ones
8 that were at the class certification stage after evidence had
9 been taken during discovery and at the time that the plaintiff
10 sought to have the class certified; and the courts there --
11 including Judge Orenstein from our court -- were looking at
12 actual evidence and issues that had been developed during the
13 course of discovery.
14   Here there's an allegation that a class can be
15 defined by certain duties, and at this point, I don't think I
16 have any basis upon which to find that that can't be done or
17 that that would require mini trials, as you say. In fact, it
18 seems to me the opposite is likely to be true, which is that
19 people occupy positions where they are expected to perform
20 certain duties and that that is something that can be
21 determined readily through some kind of discovery.
22   While I agree with you that the plaintiff hasn't
23 alleged everyone who fits in job description X or Y, it seems
24 to me that what they have alleged is likely going to be
25 readily provable or ascertainable, which is one of the issues,

*Proceedings* 7

of course, addressed with respect to defining a class.

So why would I decide that now, I guess.

MR. COHEN: Well, I certainly understand your argument, Your Honor. You know, our position is that the plaintiff has failed to plead a proper class definition and that by defining it based on job duties, you know, it's our position that, you know, it would be difficult to ascertain. And everybody has different job duties, whether or not they were performing such job duties, it differs from just taking something off of a job description. You actually would have to look into day-to-day activities of what each specific previous class member was doing, so that's why our position was that, just on the definition alone, that they failed to state a proper class definition at the time.

THE COURT: Let me ask you, what kind of place is Kabco Pharmaceuticals? Does it produce pharmaceuticals or sell them?

MR. COHEN: Yeah. They manufacture and market supplements -- kind of like vitamins, minerals, food supplements, things like that.

THE COURT: Is it a factory of some sort?

MR. COHEN: Not really a factory. It's actually relatively small. I believe currently, at least during the pandemic, when I recently spoke to them they only had nine employees at the time, so --

1       THE COURT: Nine?

2       MR. COHEN: Yes. So it's a relatively small place.
3 So my understanding how it -- it's like a -- you know, like a
4 manufacturer in the broad sense that you might think of a huge
5 facility, it's more of a smaller area, but they do manufacture
6 and market supplements.

7       THE COURT: So how difficult would it be to figure
8 out if nine or so employees fit within the class definition?

9       MR. COHEN: You would have to have depositions for
10 each of the nine, you know, discovery on each of the nine.
11 You would have to have, you know, separate discovery on each
12 of the few -- person, and those are just the ones that were
13 there, you know, as of when I last spoke -- you know, it
14 remains to be seen what kind of turnover there was and stuff
15 like that --

16       (Court reporter requested clarification.)

17       MR. COHEN: You know, there would have to be
18 separate discovery, you know, at a minimum on each of those
19 nine persons, and to the extent there was any turnover,
20 obviously there would have to be additional discovery on other
21 former employees. So even though it's a relatively small
22 company, which, that alone, might ultimately preclude it from
23 the class later on, you know --

24       THE COURT: Right, based on numerosity.

25       MR. COHEN: Exactly. It's still -- you know, I feel

1   it's unnecessary -- it's unnecessarily burdensome to just,
2   because of a broad definition, that you go into discovery for
3   each specific person.
4           THE COURT:  But even in the case that you cite, the
5   Court recognized the notion, which the plaintiff relies on,
6   that I have the authority to tinker with or narrow a class
7   definition that is too broad once the actual evidence is put
8   forth as to why the definition is too broad or why the class
9   may not be ascertainable, and I think it was in the *Gregory*
10  decision, if I'm not mistaken, that the Court made that
11  observation.  But it was certainly in one of the cases that
12  you cited, either *Calabrese* or *Gregory*.  Why isn't that --
13          MR. COHEN:  I believe it was in *Gregory*, Your Honor.
14          THE COURT:  Okay.
15          So why isn't that the correct approach?  I mean,
16  this would seem to me premature and certainly something that
17  would be unwise, because if, in fact, the class is
18  ascertainable, I've basically precluded any kind of effort to
19  certify it.  I just am not convinced by your argument because
20  I don't have any basis upon which to find what you need me to
21  find; that it's somehow not going to be ascertainable; that
22  there isn't a way to determine without having to depose every
23  single person, as you posit, or go through any lengthy
24  investigation or court processes to see if someone -- an
25  employee -- falls within the definition.  It's hard for me --

*Proceedings* 10

1  it's quite the opposite, as I said, especially when we are
2  talking about a relatively small operation.
3           Now, you mentioned the numerosity question, and I
4  think that might be an issue, although the nine-employee
5  figure is, as you say, during a time of pandemic, so I don't
6  know, but I assume that the number of employees was higher
7  before the pandemic took hold.
8           But, again, I think -- you haven't really satisfied
9  me that this is a proper consideration at this time.  There's
10 nothing inherently difficult, it would seem to me, or
11 unascertainable, based on the definition.  It may be that, at
12 the end of the day, it cannot be easily ascertained without
13 having to do extensive individualized examinations of the
14 proposed class members or the punitive class members, but I
15 don't have any basis right now to make that finding.  That's
16 what I would say.
17          So let me turn now to the plaintiff to respond.
18          You don't need to respond on the class argument.  I
19 think I've resolved that for myself based on what I just said.
20 But go ahead and make whatever arguments you want, Mr. Romero,
21 about the viability of a private right of action for a 191
22 violation.
23          MR. ROMERO:  Sure, Your Honor.  Thank you.
24          The authorities on which the defendants rely -- and
25 I realize that at a deference to you, they refer to the --

1       THE COURT:  I won't be insulted.  Go ahead.
2       MR. ROMERO:  They refer to the *Coley* case several
3  times, but, you know, to put that decision in context, Your
4  Honor, it was in the context of a default judgment; and having
5  looked at the underlying papers that had been submitted prior
6  to that decision in the case --
7       THE COURT:  Let me interrupt you.  Hang on.  Let me
8  interrupt you, only because I remember that case very, very
9  well, and I took a look at the decision again before today, so
10 you don't need to remind me of the context; I'm absolutely
11 familiar with that.
12      What I do want to know a little bit more is the main
13 argument that the defense can make -- and I'm not feeling
14 bound by *Coley*, so let me just say that.  My view of *Coley*
15 was -- it was a decision I rendered under the circumstances
16 that everybody is familiar with from the decision itself;
17 namely, a default judgment and where there was a FLSA failure
18 to timely pay claim made that resulted in liquidated damages,
19 so that is marginally relevant in my mind.  More relevant is
20 the timing of it.  I issued that decision in 2018, and since
21 then, there has been this First Department case, *Vega vs. CM &*
22 *Associates Construction Management, LLC*, which you properly
23 rely on.  It's a September 2019 decision -- again, by the
24 First Department -- which directly addresses the question
25 presented here; namely, is there a private right of action for

*Proceedings* 12

1  liquidated damages under New York Labor Law Section 191 based
2  on this frequency payment issue, i.e., the failure to pay
3  manual laborers on a weekly basis.
4  　　　　So, to me, that's the strongest argument; and the
5  only question is whether or not the courts in the *Finkelstein*
6  cases -- the two of them -- properly decided that a Second
7  Department decision -- this *Ikea* case -- indicates the Court
8  of Appeals would not follow the First Department decision in
9  *Vega*, or that the other two cases out of Queens Supreme Court
10 should be some kind of guidance as to what the proper rule is.
11 　　　　MR. ROMERO:  Sure.  So -- yes, Your Honor, timing is
12 everything.  The *Coley* was decided prior to *Vega* and prior to
13 *Scott*, as well as all the other authorities, or most of the
14 other authorities cited in the defendants' motion were decided
15 before those two cases.  As Your Honor noted, the -- and we
16 pointed out in our letter brief, the only appellate division
17 case in New York to directly address the issue of whether or
18 not there's standing -- a private right of action under labor
19 law 191 is the *Vega* case.  The two companion cases that were
20 decided by the same judge in *Kruty* and *Phillips vs.*
21 *Finkelstein* in Supreme Suffolk did not seem to care for the
22 result in *Vega* but did not indicate in any way why *Vega* was
23 wrongly decided.  *Vega*, you know, was very cogent, as is *Scott*
24 *vs. Whole Foods*; they lay out the rationale why there should
25 be a private right of action under 191.  The Court in Suffolk

1  County didn't say why *Vega* or *Scott* were wrongly decided; they
2  simply referred to this *Ikea* case cited by the Appellate
3  Division, Second Department, that did not directly address the
4  issue of whether or not there's a private right of action
5  under 191.
6        So I think there's two bases not to follow the
7  decision in Supreme Suffolk: One, there's no cogent
8  explanation as to why *Vega* and *Scott* are wrong; and, two, they
9  rely on an appellate division case that didn't decide what
10 they say it decided.
11       THE COURT: Well, ironically, actually, I will say
12 in *Kruty* -- one of the companion cases -- they do cite *Coley;*
13 and the other cases that I relied on in *Coley* -- which is
14 spelled C-O-L-E-Y -- *Belizaire*, B-E-L-I-Z-A-I-R-E, and
15 *Hussain*, H-U-S-S-A-I-N; so if you are looking for a,
16 quote/unquote, reason, I think that that is perhaps the reason
17 they say it's proper to reject *Vega* because, in fact, there
18 are federal court decisions -- mine among them -- that rule
19 otherwise.
20       But I agree with you that the holding in *Kruty* and
21 the other *Finkelstein* case seems to be based on the notion
22 that you're not bound to follow appellate authority if you
23 have reason to believe that the Court of Appeals will not
24 endorse that view and that the judge in Suffolk County thought
25 that *Ikea* provided that indication; namely, that *Vega* got it

wrong. That's at least how I read the *Finkelstein* decisions.

And so I understand that you're saying that that might explain why they don't follow *Vega*, but I think you go a step further to say that they don't explain why *Vega* is wrong on the merits or the substance of it.

MR. ROMERO: I guess that's what I meant to be -- to state it a little bit more articulately than I did previously. In -- (Teleconference interruption.) -- explain why the rationale in *Vega* or Scott are wrong.

THE COURT: Right.

MR. ROMERO: And to the extent that -- to the extent that the supreme Suffolk case relies on the federal cases that have been cited prior to *Vega* and Scott, that's simply not logical.

THE COURT: All right.

So, folks, I am prepared to rule at this time. I don't find these issues require a written decision; the case law is somewhat limited and the issues are relatively straightforward.

As I've forecast, I'm not going to dismiss the class allegations. I think to do so would be premature at best. As I said earlier, I don't have any basis upon which to decide at this time that determining who meets the class definition set forth by plaintiff would require individualized determinations, thereby making the class unascertainable or

*Proceedings* 15

1 requiring mini hearings to do so.  That question will likely
2 come up -- or could come up again -- at the point that
3 plaintiff seeks to have the class certified, but at that
4 point, I will actually have some record evidence upon which to
5 rule on that argument if that argument is raised again, so I'm
6 not going to dismiss the class allegations.
7         Regarding the New York Labor Law claim -- and I'm
8 going to assume here, especially based on what Mr. Cohen
9 said -- that there is no companion Fair Labor Standard Act
10 frequency payment claim -- to use the shorthand -- because of
11 perhaps a deficiency in the enterprise aspect or element in
12 this case, given what appears to be a relatively small
13 employer.  Be that as it may, right now, what I have in front
14 of me is a case that alleges ADA -- an ADA claim -- as well as
15 this New York Labor Law claim but does not allege a FLSA
16 claim, which doesn't matter, because obviously I just need to
17 decide whether or not there is a private right of action for a
18 frequency payment claim under Section 191.
19         As I said before, though I found in *Coley*, or at
20 least -- I'm not going to say it's dicta exactly, because I
21 did say and cited cases that had found that there wasn't such
22 a claim for liquidated damages under New York Labor Law for
23 the failure to observe the weekly payment requirement of
24 New York Labor Law under 191, so I would say that it's dicta
25 only in the sense that that ruling did not affect the outcome

Denise Parisi, RPR, CRR
Official Court Reporter

*Proceedings* 16

1  or wasn't dispositive of the outcome; namely, the assessment
2  of liquidated damages because of the FLSA claim that permitted
3  me to award liquidated damages based on the failure to timely
4  pay.
5       I do want to correct one statement you said,
6  Mr. Cohen, which is that although I did say that two weeks
7  defined, in some sense, a reasonable payment schedule, that
8  was for purposes of the Fair Labor Standard Act claim.
9  New York Labor Law, as everyone knows, specifically requires,
10 as a matter of statutory law, payment on a weekly basis for
11 manual laborers, so the finding that I made about a two-week
12 payment schedule is irrelevant to the New York Labor Law claim
13 here.
14       But as I eluded to earlier, I am revisiting my *Coley*
15 decision in light of the *Vega* decision, which is out of the
16 First Department and squarely addresses the issue raised here,
17 and does find, very emphatically, that there is both and
18 express and implied private right of action that allows an
19 employee to get liquidated damages for failure to timely pay,
20 for failure to meet the one-week payment schedule, even where
21 the plaintiff is not alleging that they did not receive their
22 full pay; and the *Vega* decision goes to great lengths to
23 explain that underpayment includes the failure to pay under
24 the terms provided for.  And if the terms, as required by
25 statute, are a weekly payment, then that would qualify as

*Denise Parisi, RPR, CRR*
Official Court Reporter

1  underpayment if the employer fails to meet that weekly payment
2  requirement.
3          I will say, candidly, I find the reasoning in *Vega* a
4  little bit -- it's going to sound too harsh -- a little
5  tortured; but, nonetheless, it is an appellate decision on an
6  issue of New York statutory law interpretation, and as the
7  *Finkelstein* cases acknowledged, as a general matter, I, as
8  well as the state courts, are bound to follow appellate court
9  decisions unless I'm convinced -- or unless there is
10 substantial evidence or reason to believe that the Court of
11 Appeals would find otherwise; and so, therefore, I have
12 considered that issue, and I have considered the *Finkelstein*
13 decisions that reached the conclusion that *Vega* doesn't need
14 to be followed because of the *Ikea* decision out of the Second
15 Department -- that reasoning from the *Finkelstein* decisions I
16 disagree with -- and I agree with the plaintiff that *Ikea*
17 didn't address that issue, and I think it's quite difficult to
18 read into *Ikea* any ruling at all on this precise issue,
19 whether there is a private right of action under 191.
20         The other decision that I think is useful, or
21 helpful, on this issue is Judge Feuerstein's decision in the
22 *Scott* case, which the plaintiff also relies on, and that was
23 issued in April 2019 -- interestingly, before the *Vega*
24 decision -- but in some ways it presages, I think, the
25 relevant question, which is what would the New York Court of

1  Appeals decide on this issue. And in it, Judge Feuerstein, I
2  think very helpfully, discusses two Court of Appeals'
3  decisions in which 191 actions were the subject of the case,
4  though not the precise issue, about a private right of action,
5  but she notes -- and I think it's relevant here -- the Court
6  of Appeals, while ruling on the other issue presented in those
7  cases, did not suggest in any way that the private actions
8  brought under 191 were improper in any way and did not decide
9  that those actions should not have been pursued or allowed to
10 be pursued, I should say, and were not viable, and she found
11 that to be some indication to support the view that there is a
12 private right of action under 191.
13         So I think that that's actually quite helpful in
14 terms of predicting, as I must, how the Court of Appeals might
15 rule, even though, as I said before, she issued her
16 decision -- Judge Feuerstein -- issued her decision even
17 before the *Vega* decision, but made the -- or found very
18 clearly that there is a private right of action.
19         So for all those reasons, basically, because *Coley*
20 was rendered at a time when I didn't have the benefit of
21 either *Vega* or *Scott*, I am not following my prior decision; I
22 am not dismissing the 191 action. This issue, too, may arise
23 at a later point in the litigation and certainly may be the
24 subject of further briefing should there be more guidance
25 coming out of the state court at the appellate or higher level

*Proceedings* 19

1 about this precise issue, but at this time, I am not going to
2 dismiss the New York Labor Law Section 191 frequency payment
3 claim.
4     So in toto I've denied the motion to dismiss; the
5 case will proceed to discovery.
6     And I will make another note. Part of my more
7 practical thinking on it as well is that granting dismissal
8 obviously has permanent consequences -- or at least permanent
9 until there's an appeal -- consequences for plaintiff's case;
10 whereas, denying the motion, as I said before, doesn't
11 foreclose the possibility that the issue could be raised at a
12 later time when it's more appropriate -- for example, on the
13 class certifications issues -- and, as I mentioned, maybe when
14 there's more guidance from the state court about this New York
15 Labor Law claim.
16     At the same time, it doesn't -- when I say "it,"
17 letting these claims go forward -- doesn't substantially
18 expand discovery or create what may turn out to be an
19 unnecessary burden. So for those practical reasons as well,
20 I'm not going to dismiss these claims, and I'm going to let
21 them go forward.
22     Let's see. Have you folks had your initial
23 conference yet with Magistrate Pollak?
24     MR. ROMERO: Peter Romero, Your Honor.
25     No, the parties have not.

*Proceedings* 20

1    THE COURT: So once we docket this decision, which
2  will be later today, Judge Pollak will presumably convene an
3  initial conference. I will certainly let her know that the
4  case is going forward so she can go ahead and issue a
5  scheduling order for that to happen.
6        Is there anything else from the plaintiff that I
7  need to address at this time?
8        MR. ROMERO: Not from our perspective, no, Your
9  Honor.
10       Thank you.
11       THE COURT: Okay. Thank you.
12       From you, Mr. Cohen, for the defense?
13       MR. COHEN: Nothing further, Your Honor.
14       Thank you.
15       THE COURT: Okay. All right.
16       Well, thank you, everyone, and please stay safe.
17       MR. ROMERO: Thank you. You too, Your Honor.
18       MR. COHEN: Thank you, Your Honor.
19       (Matter concluded.)
20
21                *   *   *   *   *
22  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
23
24    /s/ Denise Parisi                    July 6, 2020
25    ─────────────────────────            ──────────────
      DENISE PARISI                        DATE