# EXHIBIT A

```
------------------------------X Docket#
CACCAVALE, et al., ,              : 20-cv-00974-GRB-AKT
               Plaintiffs,       :
                                 :
    - versus -                   : U.S. Courthouse
                                 : Central Islip, New York
                                 :
HEWLETT-PACKARD COMPANY,         :
          et al.,                : January 12, 2020
               Defendants        : 2:22 PM
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR PROCEEDINGS
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**
(Telephonically)

**For the Plaintiff**:        **Steven Moser, Esq.**
                              **Paul Pagano, Esq.**
                              Moser Law Firm PC
                              5 E Main St
                              Huntington, NY 11743

**For Defendant HP**:         **Kristofor T. Henning, Esq.**
                              **Ilana Sarah Levin**
                              **McCarter & English**
                              **1600 Market Street**
                              **Suite 3900**
                              **Philadelphia, PA 19103**

**For Defendant Unisys**:     **Jeffrey Howard Ruzal, Esq.**
                              **Kenneth Welch DiGia, Esq.**
                              **Epstein Becker & Green, P.C.**
                              **875 Third Avenue**
                              **New York, NY 10022**


**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK:  Calling case 20-cv-974, Caccavale

2     v. Hewlett-Packard Company, et al.

3          Counsel, please state your appearance on the

4     record.

5          MR. MOSER:  Steven Moser for the plaintiffs.

6          Good afternoon, your Honor.

7          THE COURT:  Good afternoon, Mr. Moser.

8          MR. PAGANO:  Also Paul Pagano for the

9     plaintiff.

10         Good afternoon, your Honor.

11         THE COURT:  Afternoon.

12         MR. HENNING:  And your Honor, Kris Henning from

13    McCarter & English for defendants HP Inc., and Hewlett-

14    Packard Enterprise Company.

15         MS. LEVIN:  And this is Ilana Levin from

16    McCarter & English, also for Hewlett-Packard Company and

17    Hewlett-Packard Enterprise Company.

18         MR. RUZAL:  Good afternoon, your Honor.

19         For defendant Unisys Corporation, Jeff Ruzal of

20    Epstein Becker & Green.

21         MR. DIGIA:  And Kenneth DiGia, also of Epstein

22    Becker & Green for Unisys Corporation.

23         THE COURT:  Is that everyone?  Sounds like it.

24    Okay.

25         I note we are here for a pre-motion conference

Proceedings

1  and we are working under the most difficult of

2  circumstances because we are in the throws of the second

3  surge of the pandemic.  So we're doing this by audio

4  conference.

5          In that regard, I did note that each party had

6  multiple counsel.  I would ask you, to the extent

7  possible, to keep the speaker to one per side, just so we

8  can keep things straight, and also say your name when you

9  start speaking.

10          And I want to take this moment to remind

11  counsel of a particular rule in my individuals rules

12  which is this, anyone can make any motion they want,

13  That's not my rule, that's the law, but at a pre-motion

14  conference, I reserve the right to construe some or all

15  of the motion as actually being made based on the pre-

16  motion submissions, and the arguments of counsel.  And I

17  might do that today.  I find that under the present

18  circumstances, in order to try to keep things moving

19  efficiently, it could help.

20          So feel free to argue anything you want to me

21  today and make sure we get a clear record.  So with that

22  in mind, between the two defendants, who would like to

23  start since it's your motions at issue?

24          MR. HENNING:  Your Honor, this is Kris Henning

25  from McCarter & English for HP Inc. and Hewlett-Packard

Transcriptions Plus II, Inc.

Proceedings

1    Enterprise Company.  I'm happy to give a shot, start the

2    group.

3            THE COURT:  Okay.  And you're here for -- to

4    make a 12(b) motion, yes?

5            MR. HENNING:  Yes, your Honor.  A traditional

6    12(b)(6) motion, failure to state a claim.  We have been

7    before your Honor before, so I don't want to assume too

8    much but also don't want to repeat for the Court some

9    prior briefs that all of us have put in.

10            Suffice it to say, the plaintiffs are former

11    employees of HP Inc., Hewlett-Packard Company or --

12    or/and Hewlett-Packard Enterprise Company, and there are

13    two claims asserted in the second amended complaint

14    against those defendants; one is a series of claim sunder

15    Sections 191 and 198 of New York Labor Law and another is

16    Section 195, a wage notice claim.  We'll spend most of

17    our time today, I imagine on the 191, 198 claim.

18            Your Honor, the plaintiffs allege that they are

19    manual workers who were paid biweekly instead of weekly.

20    There's no allegation that they didn't receive the total

21    amount of wages they were supposed to receive.

22            THE COURT:  Right.  So let me ask you -- stop

23    you there for a second.  They were paid biweekly, not

24    weekly.  This is not an overtime claim. This is a

25    straight salary that was paid biweekly, correct?

Proceedings

1          MR. HENNING:  Yes, your Honor.  And I should
2    say as to HP Inc. and Hewlett-Packard Enterprise Company,
3    my clients, there is no FLSA claim asserted in the case.
4          THE COURT:  I mean, I don't need --
5          MR. HENNING:  I will leave --
6          THE COURT:  -- (audio interference) judgmental
7    sense, I -- just so I understand.  I am familiar with
8    this provision of state law that says when it comes to,
9    I'll call it, a physical laborer, you need to pay them on
10   a weekly basis.  So what's the basis for dismissing that
11   claim?
12         MR. HENNING:  Your Honor, at the current stage
13   of things, we will accept that allegation as true, that
14   the plaintiffs are manual workers and further as you say,
15   Section 191 requires manual workers to be paid weekly and
16   not more than seven days after the end of the relevant
17   pay period.
18         Our motion says even assuming that is true, the
19   plaintiffs don't state a claim under the New York Labor
20   Law because Section 198 provides relief only to recovery
21   "underpayment" and it is our interpretation of that
22   statute that underpayment does not include a late
23   payment.  Underpayment, the term commonly used, is --
24   means to be paid less than what is required or normal,
25   not later than some weekly due date.

Proceedings

1          So the upshot of that, your Honor, is even if

2     you assume that the plaintiffs are manual workers for

3     current purposes, the statute does not permit  claim to

4     seek liquidated damages, which is what the plaintiffs

5     seek, for only late paid wages, as opposed to nonpaid or

6     underpaid wages.

7          THE COURT:  Let me make sure I fully understand

8     this because I do know that there are a number of cases

9     that have talked about this, and I've dealt with this a

10    little bit myself, I don't think I have written on it,

11    but are you suggesting to me though this provision of the

12    state law that says if you have a manual labor job, again

13    as you say (audio interference) accept this as true, I'm

14    not saying it is true but the allegation, right, that you

15    have to be paid on a weekly basis.  The allegation is

16    that they weren't.

17         Are they without remedy all together, or are

18    you just trying to get a partial dismissal as to the

19    extent of the damages?

20         MR. HENNING:  No, your Honor.  We're seeking

21    dismissal of the entire claim.  Your question is a good

22    one, our defendants who pay late, accepting for the

23    moment as true, the allegations completely immune from

24    any remedy?  The answer is no, that's not our view of the

25    statutory structure.

Proceedings

1          Section 218 of the New York Labor Law is where

2    you would go for -- to determine what the remedy is for

3    violations of the Labor Law other than violations that

4    allege a failure to pay wages.

5          And so the statute sort of divides into two,

6    198(1)(a) provides a remedy for liquidated damages for an

7    underpayment, that is the failure to pay the required

8    amount of the wages, but a defendant who pays or an

9    employer who pays late, under Section 191, the remedy for

10   that is Section 218 and that's for the Commissioner of

11   the Department of Labor, to fashion a remedy that can

12   take into account the equity that each particular case.

13         So in answer to your Honor's question, it us

14   not the case and it is not our position that employers

15   are free to pay late without recourse.

16         THE COURT:  Okay.  But the recourse, it goes

17   beyond my paygrade.  It goes to someone else, is that

18   fair to say?

19         MR. HENNING:  It -- well, I don't know if it

20   goes beyond your Honor's paygrade but it does go to the

21   Commissioner of the Department of Labor to seek civil

22   penalties in that instance and that's been the --

23         THE COURT:  Okay.

24         MR. HENNING:  -- practice of the New York

25   Industrial Board of Appeals as well, as in the past

Proceedings

1  briefing and would again, should given the chance, a

2  number of decisions from that agency concluding that a

3  timeliness claim under Section 191 is remedied by the

4  Commissioner in Section 218 with civil penalties, as

5  opposed to liquidated damages under Section 198.

6           Now your Honor --

7           THE COURT:  Now, counsel, if I --

8           MR. HENNING:  -- (audio interference) --

9           THE COURT:  -- find myself agreeing with you --

10  if I find myself agreeing with you, I'm not saying I do

11  on this particular school, but let's assume you're right,

12  is that all she wrote, as they say for your client?  Is

13  that the only -- I mean, is that a complete defense for

14  you at this point?

15           MR. HENNING:  On these claims, yes, your Honor.

16  On the 191, 198 claim, a conclusion that 198 does not

17  provide for liquidated damages for a claim based on late

18  paid wages that would, in our view, require dismissal of

19  those counts against our client.

20           There is another count against Hewlett-Packard

21  Enterprise, your Honor, that's the except 195 wage notice

22  claim.

23           THE COURT:  Okay.

24           MR. HENNING:  Our view of that one is that it

25  takes just a bit of an explanation first.  So Hewlett-

Proceedings

1  Packard --

2          THE COURT:  You know what then, hold onto that

3  for one second.  Hold onto that for one second because I

4  want to try to do this while I've got it sort of teed up.

5  So let me go to Mr. Moser.  Mr. Moser, tell me --

6          MR. MOSER:  I'd like to --

7          THE COURT:  -- why aren't these wrong?

8          MR. MOSER:  I'm sorry, Judge.  I'd like Mr.

9  Pagano to handle it.

10          THE COURT:  Okay.

11          MR. MOSER:  I think he's --

12          THE COURT:  Mr. Moser, I've never known you to

13  back down from a fight before, so I am surprised but

14  we'll hear from Mr. Pagano.

15          Mr. Pagano?

16          MR. PAGANO:  I (audio interference) take it

17  that way, your Honor.  We have had some discussions prior

18  to the call and I'm sure that Mr. Moser, as you know, is

19  more than capable of handling it but since I drafted

20  the --

21          THE COURT:  Yes, yes, Mr. Pagano, I'm (audio

22  interference) for your welfare that perhaps he said this

23  isn't our best argument, you do this one in front of

24  Brown.  The only thing I just wanted to see if maybe he's

25  throwing you in front of the judicial bus --

Proceedings

1          MR. PAGANO:  No, no, no.

2          THE COURT:  -- but we'll see.  We'll see.

3          MR. PAGANO:  If anything, Steve is more likely

4     to be a shield than to push me in front of a bus but --

5          THE COURT:  All right.  So tell me why --

6          MR. PAGANO:  -- I think if anything (audio

7     interference).

8          THE COURT:  -- counsel's wrong about this.

9     Tell me why counsel is wrong about this.

10          MR. PAGANO:  Yeah, I think most importantly the

11     Court just said that counsel is wrong about this.  It's

12     my understanding that the decisional framework here,

13     certainly not to tell the Court how to act, but that

14     district courts are bound by decision of the highest

15     level of authority in state courts when apply state law.

16          The only case --

17          THE COURT:  Right.

18          MR. PAGANO:  -- we have on point here is Vega,

19     it's the only appellate division decision on case -- on

20     point rather.  And it states explicitly that there are

21     both private, implied, and explicit private rights of

22     action for violations of New York Labor Law 191(1)(a),

23     the remedies of which are New York Labor Law 198,

24     including liquidated damages.

25          Further, Vega considered the exact argument

Proceedings

1  that defendants are advancing and said, and I quote,

2  "Defendant's position that no private right of action

3  exists is dependent on its erroneous assertion that the

4  late payment of wages is not an underpayment of wages."

5          That is the guiding light, from the appellate

6  division to this court with respect to whether or not

7  there's a private right of action but we have more than

8  that.  On the state court level --

9          THE COURT:  Okay.

10          MR. PAGANO:  -- we also have Rojas and Hi-Tech

11  Metals, which finds the same thing and most importantly,

12  several judges in the Eastern District, or perhaps

13  equally as importantly, has considered this issue and

14  found in favor of Vega and in favor of there being a

15  private right of action which include but are not limited

16  to the Kentania (ph.) case in which Judge Chen had

17  originally found against a private right of action, and

18  subsequently had the ability to revisit the issue and

19  said that even though she didn't necessary -- even though

20  she found it to be tortured, some interpretation of it to

21  be tortured, she still nevertheless recognized that she

22  had a duty to follow the state court's guidance, and that

23  -- also said that she found negatively persuasive.

24          And in fact very recently, within the last two

25  months, we've had a decision from Magistrate Judge Steven

Proceedings

1  Locke, a report and recommendation, where he upheld Vega,

2  and referred that to Judge Seybert, who accepted the

3  report and recommendation in full, saying that amongst

4  other things, the cases on which the defendants rely on,

5  including Arciello (ph.), which was decided pre-Vega and

6  for which Judge Spatt did not have the benefit of Vega,

7  was -- she was not persuaded by it, and she disagreed

8  with her coordinate judge.

9         And then the other cases that plaintiffs rely

10 upon are -- you know, the Finkelstein (ph.) case is out

11 of a Suffolk County County Court and basically -- you

12 know, as we've briefed previously, the decision in that

13 case was tortured.  It basically took a look at the IKEA

14 case out of the Second Department and said, we interpret

15 this to stand for the proposition that there's no private

16 right of action.

17        And cases such as Sorto (ph.), (audio

18 interference) discussing with -- between Judge Locke and

19 Judge Seybert said that case, the IKEA case on which the

20 plaintiffs rely and on which the Phillips (ph.) case

21 relied, did not discuss a private right of action.

22        And with respect to the New York Labor Law 218

23 issue, we briefed this before but just to reiterate,

24 there's nowhere upon our read of it, there's nowhere that

25 says New York Labor Law 218 is the exclusive remedy for a

Proceedings

1    violation of 191.

2        In fact, if you look at New York Labor Law

3    218(4), it says that the remedies contained in New York

4    Labor Law 218 are additional and to be posed, you know,

5    along with other remedies.

6        And as far as the Industrial Board of Appeals,

7    you know, opinions are concerned, I'm not sure

8    necessarily how persuasive they are in light of all of

9    the state and federal laws (indiscernible) in the Eastern

10   District of New York but we provided the Court with the

11   case of Spero matter in which liquidated damages were

12   awarded when there was a 191 violation, and they were

13   discussed in the context of the unpaid wage order.

14       So as we see it, your Honor, we respectfully

15   submit that the decisional rubric here is Vega, unless

16   you're convinced that Vega is not -- I'm sorry, unless

17   you're convinced that the Court of Appeals would rule

18   differently, and to our knowledge, every single Eastern

19   District decision that has come out since Vega has found

20   in favor of Vega.

21       THE COURT:  Okay.  Let me go back to counsel

22   for HP for a second.  In light of the decisions in Vega

23   by Judge Locke and by Judge Chen, and understand when it

24   comes to something like Labor Law, Judge Locke knows so

25   much more than I do, why shouldn't I follow those

1 precedents?

2        MR. HENNING:  Good question, your Honor.  There

3 is a split of authority.  There are as Mr. Pagano

4 mentioned, Arciello and a number of cases on our side,

5 Vega is certainly the case that the plaintiffs point to.

6 Here's our view of Vega.  Vega's not binding on this

7 court.  The New York Court of Appeals in the Second

8 Circuit have not spoken on the issue.  Vega is a decision

9 from an intermediate appellate court in New York that is

10 not binding on this court.

11        If the plaintiffs wanted Vega to be binding,

12 they could've sued in the First Department in New York

13 State Court, they didn't do that.  They sit here in front

14 of your Honor in the Eastern District of New York, it's

15 not binding.

16        I'm not here to say it has no role.  As the

17 cases said, many of the cases referred to intermediate

18 appellate decisions as helpful indicators of what the New

19 York Court of Appeals might do.  But the mode of analysis

20 is, we believe, for the Court to conduct a statutory

21 analysis here about what 191 and 198 does and doesn't do,

22 and then can use Vega and these other cases as reference

23 points.  Some call it, you know, data points and decide

24 what the New York Court of Appeals would do.

25        We know what the New York Court of Appeals has

Proceedings

1  told us about statutory interpretation.  It's told us

2  that courts are to interpret statutes in a way that gives

3  effect to their plain meaning, and gives effect to each

4  of their provisions.

5        Our view is our interpretation does that, and

6  Vega does not.  So to put it simply, your Honor, our view

7  is Vega is wrong, and because it's wrong, the Court is

8  not required to predict that the New York Court of

9  Appeals would follow an incorrect decision.

10        In a couple of respects, the Vega court

11  acknowledges the term "underpayment" is really the

12  linchpin of what we're talking about here but then says a

13  late payment can be an underpayment because according to

14  the Court in Vega, at the time payment is due, if it's

15  not made, it's a nonpayment, and therefore, late payment

16  equals underpayment.

17        A few thing about that, number one, there's no

18  explanation in the decision as to why a snapshot in time

19  of many months or years before the lawsuit was filed is

20  the right place to look.  I mean, we can't simply ignore

21  other facts that came after that simply because they're

22  not good for the plaintiff.

23        That would also obliterate the idea of a late

24  payment.  It would make every late payment a nonpayment

25  and that's contrary to our common sense experience.

Proceedings

1      So Vega also says nothing about Section 218, so

2  it does not reject that portion of the argument we're

3  making here about an implied right of action.  It says

4  nothing about 218, either does Scott.

5      So we -- our view of the world, your Honor, is

6  the New York Court of Appeals has said interpret the

7  statute to give effect to its plain meaning, ours does

8  that.  There's no support in any New York Court of

9  Appeals decision we've seen, certainly none pointed out

10  in Vega that interprets the term under to mean timing, as

11  opposed to amounts.  Number two, neither is there any New

12  York Court of Appeals authority that said in interpreting

13  the statute you should take a -- or any statute, you

14  should take a snapshot in time and ignore facts that

15  occur later but before the litigation is filed.

16      I think the cases that Mr. Pagano referenced

17  make this point.  The post-Vega cases do things what I

18  think is in reverse.  Instead of doing the statutory

19  analysis in deciding what's the right answer, and then

20  looking at other case law as guide, the simply defer to

21  Vega and treat Vega as if it came from the New York Court

22  of Appeals or the Second Circuit in which case it's not

23  permitted to be examined.  Here, of course, it is.

24      Take Kintenea, for instance, as Mr. Pagano

25  said, Judge Chen candidly said the reasoning in Vega is

Proceedings

1   tortured but that she was going to follow it.

2          Your Honor, to me, tortured means wrong and I

3   don't know how to read that other than concluding -- the

4   decision is wrong, but I'm going to follow it.  That puts

5   Vega in the shoes of a decision from the New York Court

6   of Appeals or the Second Circuit but that's not where it

7   comes from.  It comes from the New York Intermediate

8   Appellate Court is not required, and I would say

9   shouldn't be followed once you conclude that it's

10  tortured.

11         The Spero Industrial Board of Appeals decision

12  Mr. Pagano referenced is a nonpayment case, not a late

13  payment case, so it doesn't stand for the proposition

14  they assert here.

15         And Sorto, Sorto is consistent, I think, with

16  the other post-Vega decision.  Judge Seybert there

17  doesn't really do the statutory analysis to determine

18  what 198(1) does and doesn't do, but rather sort of

19  engages in an identification of cases, identifies of

20  course, Vega, RCCL and the Max Finkelstein cases we cite,

21  and simply defers to Vega.

22         So that's a long way of saying --

23         THE COURT:  Hold on a second.  Are you

24  suggesting --

25         MR. HENNING:  -- (audio interference).

Proceedings

1          THE COURT:  -- are you suggesting on that case,

2    on Sorto, are you suggesting it's Judge Seybert's

3    analysis or Judge Locke's analysis that you're disputing?

4          MR. HENNING:  Well, Judge Seybert adopted the

5    report and recommendation.

6          THE COURT:  Right.

7          MR. HENNING:  And so the -- Judge Seybert's

8    analysis in that opinion, as I read it, sort of

9    identifies the cases on both sides and we concede there

10   are cases on both sides, and defers to Vega because it's

11   a First Department Appellate Division case.

12          One last word on that.  The IKEA case that we

13   cited in our prior papers in our letter, I believe, comes

14   from the Second Department, and we believe IKEA is to be

15   read supporting our interpretation of 191, 198.  There's

16   an Industrial Board of Appeals decision that is the sort

17   of starting point of IKEA, that concludes a 191 violation

18   but doesn't provide for liquidated damages.

19          The Industrial Board of Appeals would've had to

20   have imposed liquidated damages if it were a non -- if a

21   late payment were an underpayment, and it didn't.

22          One last thing, your Honor, by asking you to do

23   the analysis, statutory analysis that's required by the

24   New York Court of Appeals in the Second Circuit, and not

25   blindly defer to Vega, I don't think we're asking you to

Proceedings

1    go out on a limb, we cited a Lychee (ph.) case in some

2    prior papers where the Second Circuit was -- showed no

3    hesitation to disregard a New York Appellate Division

4    decision that it thought was wrong.

5         There were other examples inside the Eastern

6    District of New York, as well, just two or three to

7    consider.  New York -- City of New York v. Golden Feather

8    Smoke Shop comes from Judge Amon, 2009, 2009 W.L. 2612345

9    says, "New York Appellate Division decisions are

10   "helpful" indicators of how New York Court of Appeals

11   might rule, but predicated that the New York Court of

12   Appeals would reject an appellate division decision there

13   called Cayuga (ph.) because among other reasons, it

14   wasn't faithful to the plain language of the statute.

15        Likewise, Stevens v. Webb from the Eastern

16   District of New York, Judge Matsumoto, 2014, 2014 W.L.

17   1154246, rejects an appellate division decision called

18   Cunningham, and the quote there I think is particularly

19   on point here.  Therefore, the Court of Appeals prior

20   precedence and the relevant statute's legislative history

21   provide persuasive data that the state's highest court

22   would not rule in accord with Cunningham.

23        We say same for here for Vega.  The New York

24   Court of Appeals prior precedence are that the plain

25   language of the statute must be enforced and to do that,

Proceedings

1  underpayment doesn't mean late payment.

2       THE COURT:  Okay.  So let me ask you a

3  fascinating question because you're really  doing a great

4  job, at least everyone is, it's an interesting issue

5  obviously, it's a hot issue, right, because there are all

6  these decisions, is there anything sort of percolating

7  from a litigation standpoint, either at the Court of

8  Appeals or at the Second Circuit that right resolve this

9  for us?

10       MR. HENNING:  Your Honor, good question.  We

11  keep looking.  We're not aware of the case before the New

12  York Court of Appeals or the Second Circuit in the

13  pipeline.  There is the Max Finkelstein (ph.) cases that

14  we cite to the Court is on appeal to the Second

15  Department in the New York Appellate Division, but I'm

16  not aware, at least on our side, of anything in the

17  pipeline to the New York Court of Appeals or the Second

18  Circuit.  I don't think Vega was appealed to the New York

19  Court of Appeals, so it ended there.

20       THE COURT:  Got it.  I was hoping that the

21  cavalry was rushing in but no luck.  Okay.  That's all

22  right.  Okay.  I think I've got my hands around this

23  issue, and let me just put it on the record while I have

24  it.

25       So it's a very interesting question.  I've come

Proceedings

1  across this question in a slightly different context, or

2  at least I've had some cases involving the statute about

3  late payment for manual labor is an interesting issue,

4  counsel's done a very good job with this, under very

5  difficult conditions.

6          As I said at the beginning, I do reserve the

7  right to deem a motion made based on the filings to date,

8  and I'm going to do that with this portion of the motion,

9  and that's for the following reasons.  While I appreciate

10 HP's counsel's invitation for me to do the statutory

11 analysis in light of the absence of binding authority,

12 look at the reasoning of Vega to a certain extent, but

13 more importantly, the decisions by Judge Chen and Judge

14 Locke, both of whom are incredibly hardworking, dedicated

15 prudent jurists who have great familiarity with these

16 issues, I am persuaded by those opinions taken together

17 that right now, I am going to side with them.  In other

18 words, I am going to find that there is a remedy and

19 therefore, I'm going to deny the motion to dismiss.

20         Obviously, to the extent that discovery shows

21 something different, and counsel had raised the issue

22 about whether or not these individuals were really manual

23 laborers and so forth, everything is on -- you know, is

24 open and should there be a decision from another binding

25 court, I'm always eager to hear from you again.  So I'll

Proceedings

1  close the door but not forever on this, so we can always

2  deal with this later.

3          So that's how I am going to rule on that

4  portion of the motion.  Now counsel for HP, do you have -

5  - you had another piece that you wanted to tell me about

6  or that was it?

7          MR. HENNING:  Your Honor, there is a second

8  count against HP, a wage notice claim but if the case

9  will proceed on the 191, 198 I don't think the scope of

10 discovery will be very different.  I don't think the

11 additional count adds to the scope of discovery in the

12 case, so probably better to raise that later as well.

13         THE COURT:  Counsel, let me say, thank you for

14 that.  All right?  In other words, as advocates we really

15 get sort of -- so bent on fighting a fight, that

16 sometimes it's better to say oh, let's put that fight

17 over for another day, so I greatly appreciate that.  I

18 think this is a wise decision.  So we'll put that off for

19 today, all right?

20         Which brings me to counsel for Unisys.  You

21 have a motion as well, correct?

22         MR. RUZAL:  That's correct, your Honor, and

23 this is Jeff Ruzal from Epstein Becker & Green speaking

24 for defendant Unisys.

25         THE COURT:  Excellent.  Now this may not be

Proceedings

1 your whole motion, and I'm trying to keep all these

2 papers in front of me.  In the virtual world it's harder,

3 because sometimes the window is closed and so forth.

4          But there's one part of your motion that

5 troubles me from the outset and maybe you can correct me

6 if I'm wrong, or maybe we have to do something a little

7 bit different but part of your motion at least, is

8 dependent on these releases that were purportedly signed

9 by two of the three plaintiffs, if I have that right.

10          MR. RUZAL:  Yes, your Honor.

11          THE COURT:  Okay.  My question is, can we

12 review that issue on the 12(b)(6) motion?  In other

13 words, doesn't that necessarily involve papers that are

14 outside the four corners of the complaint?

15          MR. RUZAL:  Well, your Honor, it's my

16 understanding first off that Mr. Pagano in his moving

17 papers, or at least in his moving papers with respect to

18 the first series of the parties' attempt to move to

19 dismiss, that there was the agreement that Mr. Pagano

20 would withdraw such claims from those -- this individual.

21 So I don't know that there's further --

22          THE COURT:  (Audio interference) done.

23          MR. RUZAL:  -- scrutiny (audio interference)

24          THE COURT:  Because it's done, yes?

25          MR. MOSER:  This is (audio interference), your

1 Honor.  Mr. Ruzal is correct.  The FLSA claims that

2 plaintiffs were discussing is only on behalf of Mr.

3 Sorbie, and similarly situated individuals which don't

4 include any of the other named plaintiffs, including Mr.

5 Billups who was added by virtue of the second amended

6 complaint.

7          THE COURT:  Got it.  Thank you.  Sorry, I

8 missed that part.  Okay.  Good.  I would've converted it

9 to a 12(c) motion anyway, but I just wanted to get that

10 straight at the beginning, so thank you.

11          All right.  Back to counsel for Unisys, tell me

12 what else you would like to discuss today.

13          MR. RUZAL:  Sure.  Thank you, your Honor.  So

14 just wanting to focus on the new FLSA claim in the second

15 amended complaint, if I may?

16          THE COURT:  Yes, please.

17          MR. RUZAL:  Thank you.  The motion would be

18 again, the 12(b)(6), failure to state a claim and we have

19 a number of reasons that are sort of intertwined as to

20 why we think that plaintiff should not be able to go

21 forward with their FLSA claim, the first of which is

22 simply under Iqbal and Twombly standard -- the second

23 amended complaint simply fails to contain any pleading

24 that plaintiff is entitled to any relief under the FLSA

25 and the first supporting point for that is that the FLSA,

Proceedings

1  nor its implementing regulations, provide for any such

2  relief, for any such claim.

3        If your Honor were to look at the regulations

4  at 29 CFR 778.106, which speaks to time of payment,

5  quoting, "The DOL states that there's no requirement in

6  the act in the FLSA that overtime compensation is to be

7  paid weekly."

8        The time of payment is not something that the

9  FLSA concerns itself with and while the DOJ has provided

10  guidance, or guidelines with respect to the prompt

11  payment of overtime, the regulations state that when the

12  correct amount of overtime compensation cannot be

13  determined until sometime after the regular pay period,

14  the requirements of the FLSA will be satisfied if the

15  employer pays the excess overtime compensation soon after

16  the regular pay period as is practical.

17        And so here, your Honor, we find ourselves

18  where plaintiff Sorbie had been paid his compensation one

19  day before the pay period ends, meaning that there could

20  be no way that overtime could even be calculated within

21  the same pay period because it had already been paid and

22  --

23        THE COURT:  Right.

24        MR. RUZAL:  -- because they pay on a current

25  biweekly basis, the overtime is paid within the next

Proceedings

1  available paycheck and so for these reasons, again, one,

2  the FLSA does not set forth with respect to time of

3  payment, and then going with the DOJ's interpretive

4  guidance about paying as -- you know, what is reasonable

5  and practical, we believe that Unisys does that and this

6  is gleaned, I should add, your Honor, by the pay stubs

7  itself.  This is not a matter where we would need some

8  ancillary evidence to prove this out.

9         So for those two reasons, we simply believe

10  that there's no basis for Mr. Pagano and plaintiff to go

11  forward with this FLSA claim.

12         THE COURT:  Okay.  Hang on.  This sort of

13  dovetails with the first question I asked you on the

14  other claim, assuring not to be a viable issue anyway,

15  how does this fall into a 12(b)(6)?

16         MR. RUZAL:  So there would be no relief that

17  the FLSA would provide for the late payment of wages.

18         THE COURT:  Right, but once you say to me, not

19  so much the late payment -- well, that's one issue,

20  right, is there remedy for the late payment but if it's

21  paid within that reasonable time, when I hear that, don't

22  I automatically here well, that's going to be a factual

23  issue?

24         MR. RUZAL:  If we're talking, your Honor, about

25  the interpretation of what's reasonable and what's not, I

Proceedings

1    agree 100 percent but that's not what defendant Unisys is

2    -- the basis of its motion.  The basis of its motion are

3    twofold; one, the plaintiffs' claim in its second amended

4    complaint, states that Unisys had the ability to pay

5    plaintiffs' overtime compensation on the regular pay date

6    for the period of time in which -- for such workweek

7    ends.            That simply not factually accurate.  That,

8    you know, plaintiff Sorbie was paid before the pay period

9    was ended, therefore there was no overtime compensation

10   that could be paid.  That's not a question of

11   interpreting what's reasonable and what's not.  That's

12   just a statement of it would be an impossibility that

13   overtime could be paid within that pay period, and that's

14   what the complaint states and there really is no (audio

15   interference) --

16            THE COURT:  But counsel, when you say to me

17   that's not factually accurate, you know, isn't there some

18   part of your brain that's going to be I think that's a

19   summary judgment motion?

20            MR. RUZAL:  Perhaps if we were to provide your

21   Honor, for example, some outside evidence that described

22   Unisys' payroll structure and the basis upon which it

23   formulates its decision to pay overtime or not.  I'm just

24   stating, your Honor, that the complaint itself makes an

25   unsupported allegation and we don't believe that without

Proceedings

1  that support, the claim could move forward.  That's the

2  first part.

3          The second part --

4          THE COURT:  Okay.

5          MR. RUZAL:  -- is that the FLSA, your Honor,

6  simply does not provide for that relief, and we think

7  that likewise is a valid reason to make this motion at

8  this stage of the litigation.

9          THE COURT:  Okay.  Let's just talk about that

10  part for a second, just -- do I have the whole picture,

11  is there also a parallel state claim with that or no?

12          MR. RUZAL:  Well, yes, your Honor, there is the

13  191 and 198 claim that was also brought against defendant

14  Unisys and --

15          THE COURT:  Right.

16          MR. RUZAL:  -- our -- look, our argument was

17  fully aligned with that of the HP defendants, which Mr.

18  Henning had made on the record.

19          THE COURT:  Right.

20          MR. RUZAL:  And there was (audio

21  interference) --

22          THE COURT:  But I just want to make sure I have

23  the point, the point adequately sharpened.

24          MR. RUZAL:  All right.

25          THE COURT:  The point is that while there might

Proceedings

1  be relief under the state law for that, there isn't under

2  the FLSA, yes?

3        MR. RUZAL:  That's right, your Honor, and it's

4  not really -- I mean, it's an analog loosely speaking,

5  but it's a different issue than the New York Labor Law.

6        THE COURT:  Right.

7        MR. RUZAL:  Yes.

8        THE COURT:  Okay.  Well, done.

9        MR. PAGANO:  May I, your Honor?

10        THE COURT:  All right.  Good.  Yes, please.

11        MR. PAGANO:  So obviously, some of this I agree

12  with Mr. Ruzal about and the mass majority of it we can

13  disagree about but the FLSA --

14        THE COURT:  Let's take it from the top.

15        MR. PAGANO:  -- (audio interference).

16        THE COURT:  Let's start with the question, do

17  you have authority that suggests that the FLSA does

18  provide for this kind of relief?

19        MR. PAGANO:  Yes, I mean -- yes, there is --

20  while the -- I'm sorry, I was about to get into that.

21  The FLSA requires prompt payment but it doesn't state

22  explicitly what prompt payment is.  So what the courts

23  have done is they have relied in part on the Department

24  of Labor guidelines.  What the Department of Labor

25  guidelines say is threefold.

Proceedings

1    The first is, and this is the general rule, is

2  that overtime compensation is to be paid in a particular

3  workweek that you would receive your regular pay.  If and

4  only if you cannot achieve that by virtue of the fact

5  that you can't do the calculation timely, or you can't

6  pay it timely, then it can be paid later but in no event,

7  later than the next pay period.

8    So what we have alleged in our complaint, your

9  Honor, is exactly that.  We say that -- and I can give

10  you the paragraph citations in the second amended

11  complaint, and I'm sure your Honor doesn't want them at

12  this moment, but I can --

13    THE COURT:  I don't, but thank you.

14    MR. PAGANO:  -- it provides -- the complaint

15  mirrors exactly the regulations that -- the Department of

16  Labor regulations that courts have relied on.  They claim

17  that Mr. Sorbie earned overtime in a particular week.

18  They claim that because he entered his overtime on every

19  Friday, that the defendants could have -- not just

20  overtime, his regular time every Friday, the defendants

21  could have paid him in a timely manner, and that they

22  have not done so, and that is as far as the pleading

23  standard -- we also gave the exact weeks in Mr. -- that

24  Mr. Sorbie was not paid timely and we gave the exact

25  amounts of hours -- or approximate amount of hours, 185,

1  that he was not paid timely.

2          So under any pleading standard including

3  Twombly, I believe that the complaint is more than

4  sufficient for those purposes.

5          The other point that defendants have raised,

6  your Honor, you've already hit exactly on the head, okay?

7  It's a question of fact.  Defendant is sitting here and

8  saying that they could not have paid him sooner, that

9  they could not have paid Mr. Sorbie sooner, and they

10 couldn't have calculated it sooner.  They want us to take

11 that as a given without actually looking at what the

12 facts are, and we would submit to you, your Honor, that

13 by way of example that the way the biweekly pay period

14 works is let's say -- you don't have to use these exact

15 dates but just to give you an example, let's say we're

16 talking about the first two weeks of November, right?  So

17 on the Friday of the first week of November, Mr. Sorbie

18 and the other similarly situated people, go in, they put

19 in their overtime, they put in the regular time, and at

20 that time, the defendants, at least it's our position,

21 and at worst it's a question of fact, have the ability to

22 determine the amount of overtime that he's worked for

23 that period, okay?

24          He then does the same thing on the next Friday,

25 so the second week of November.  That Thursday, he is

Proceedings

1  paid his regular pay in full, and he's paid any overtime

2  for the prior period, meaning the prior two weeks, not

3  that set of two weeks, but the prior two weeks.

4          We believe that the regulations in the case law

5  bear out that that's a violation of the FLSA and at

6  minimum, we feel that it's a question of fact that is not

7  resolvable on a 12(b)(6) motion.

8          THE COURT:  Okay.  So this is very curious to

9  me.  The remedy for a nonprompt payment under your

10  analysis would be what?  In other words, I owed him $85

11  last week in overtime and I waited three weeks to pay it

12  and that's deemed not prompt.

13          MR. PAGANO:  Right.

14          THE COURT:  Is it treble damages, is there some

15  fixed fee or --

16          MR. PAGANO:  It would be comparable to a remedy

17  under the New York Labor Law 191, liquidated damages,

18  attorney's fees, et cetera.

19          THE COURT:  I mean, given the nature of the

20  statute and I have not read the Meadows v. Pleney (ph.)

21  cases, which I am embarrassed to say, I wish I had read

22  that before today, I find it extraordinary that courts

23  could read the statute to include remedies for fees that

24  aren't otherwise in the statute.  How is that?

25          MR. PAGANO:  And this is (audio interference) -

Proceedings

1   -

2            THE COURT:  In other words, how --

3            MR. PAGANO:  I mean, I can't -- I can't speak

4   to why, you know, the judges have decided in the cases

5   that they've decided, other than to point you to the

6   cases that we have articulated and the regulations.

7   That's what the courts have interpreted.  They have

8   required that payments be -- to the extent practicable,

9   be made in the same period, the overtime payments made in

10  the same period as regular pay, and the question as to

11  whether or not Unisys has achieved that as a question of

12  fact.

13           THE COURT:  Wow.  I mean, I understand --

14           MR. MOSER:  And --

15           THE COURT:  Go ahead.

16           MR. MOSER:  If I may, your Honor, the appeals

17  courts have said that nonpayment of wages or late payment

18  of wages can be equally damaging to an employee, so --

19           THE COURT:  I understand but that's not the

20  point, Mr. Moser, right?  When I get a letter from your

21  office which says you know, due to the FLSA silence on

22  the issue, courts have decided this, I find that to be

23  extraordinary and that not -- not as easy as the first

24  issue we dealt with, let me put it that way, right?  It's

25  a little bit trickier.

Proceedings

1    Okay.  What I am going to do then is I'm going
2  to ask counsel -- well, let me throw this out there for
3  both sides, if I give you the opportunity to brief this,
4  is there more authority I should be looking at other than
5  what's in your letters?
6    MR. PAGANO:  I'm sorry, I didn't hear the end
7  of what your Honor said.
8    THE COURT:  I'm sorry.  I said if I give you
9  time to brief this issue, right, the issue about whether
10  or not -- okay, let me say this, I believe the question
11  of whether they could've paid more promptly, or if they
12  had the capacity, or they should have, (indiscernible)
13  factual issues, I'm not going to rule on that on a motion
14  to dismiss.
15    The only issue I'm interested is whether there
16  is actually this remedy under the statute.  So if I give
17  you more time to brief that narrow issue, is there more
18  authority you would like to add, or is everything out
19  there in your letters?
20    MR. PAGANO:  From the plaintiffs' side, I would
21  say that we would submit additional authority.
22    THE COURT:  Okay.  Counsel from Unisys, you
23  feel the same way?
24    MR. RUZAL:  Yes, yes, your Honor, we'd like the
25  opportunity to further brief the piece specifically on

Proceedings

1 remedy.

2          THE COURT:  Right, that's the one issue I'm

3 interested in, does the statute provide for this remedy?

4 Because that, I do believe is appropriate for resolution

5 on a 12(b)(6) and if you get me your brief, I'll dig into

6 it.  So how long would you like to do that?

7          MR. RUZAL:  Your Honor, if we may have 30 days.

8          THE COURT:  You know, it's a pandemic, it's

9 like a national emergency, so absolutely.  30 days is

10 fine with me.  How about plaintiffs' will respond to

11 that, how much time would you like?

12          MR. PAGANO:  Well, we'll take three weeks to be

13 fine.

14          THE COURT:  Okay.  Good, three weeks?  And any

15 brief reply, and I mean very brief reply, I'm probably

16 not going to need much, a page or two, you could do a

17 week after that.  Does that sound good?

18          MR. RUZAL:  Yes, your Honor, thank you.

19          THE COURT:  Sure.  So you'll submit all of

20 those materials together for me in about 60 days, and

21 we'll dig into it.  It sounds like a very interesting

22 issue.

23          Now having recognized that I am not going to

24 dismiss this on the basis of what I deem to be the

25 intertwined factual issues, but potentially only on this

Proceedings

1   one issue, are there other issues we need to talk about

2   today, or did I get everything?

3          MR. DIGIA:  This is Kenneth DiGia for Unisys,

4   your Honor, and I know you indicated you didn't want

5   multiple people speaking, I was wondering if I could just

6   make one point as it related to one point.

7          THE COURT:  Sure.  No, absolutely.  Everyone's

8   doing great today.  I just didn't want you interrupting

9   each other, so that's great.  Thank you.

10          MR. DIGIA:  Okay, thank you.  I would like to

11   point out that plaintiffs' complaint is a little unclear

12   as to whether they are seeking relief for payment of

13   regular wages from Unisys under 191, 198, and we heard

14   everything your Honor said on that, but I would like to

15   make the point that given the way Unisys makes its

16   payments, it always pays those regular wages within seven

17   days of the end of the work week.

18          So even though it pays biweekly, since it pays

19   early, it always pays it within seven days of the end of

20   the work week.

21          THE COURT:  Okay.  So let's look at that --

22          MR. DIGIA:  And that there would be no claim

23   under 191 for those wages against Unisys --

24          THE COURT:  Right, but that --

25          MR. DIGIA:  -- understanding what the Court

Proceedings

1   said.

2          THE COURT:  That to me again, falls squarely

3   into the area of something that has to be done on a

4   summary judgment motion.  Now that doesn't mean we have

5   to have 15 years of extended fishing voyages before we

6   get there.  If we want to sort of tee this up for more

7   limited motion, I'm happy to do that with you, you know,

8   giving over whatever discovery you need on those points,

9   but I am going to right now, let counsel work that out

10  because so far it sounds to me like you're working

11  together quite reasonably and I don't want to interfere

12  with that dynamic.

13         So I would urge you to meet and confer on that

14  issue and get back to me as to whether or not you could

15  resolve it, or if you want to try to tee it up for kind

16  of an expedite summary judgment on that point.  That

17  sound fair?

18         MR. DIGIA:  Yes, your Honor.

19         THE COURT:  Okay.  It's a good point.  Thank

20  you.

21         Anything else anyone wants to bring up today?

22  All right, not hearing anything -- well, go ahead, sir.

23         MR. PAGANO:  No, I was just going to say I

24  think that there's some discovery issues that the parties

25  will have to work with Magistrate Tomlinson in light of

1  your Honor's rulings but I am sure we can figure that out

2  on our own.

3        THE COURT:  And you are so fortunate, I might

4  add, to have Magistrate Judge Tomlinson because I was a

5  magistrate for many years, and she's much better than I

6  was at it.  She's just -- you're very -- great.  So, I am

7  sure that will be satisfactory.

8        I have a few other things for the parties,

9  which are please wear a mask, wash your hands, stay safe.

10  I'm hoping we're coming to the end of this terrible

11  period of our history and we'll have vaccines soon, I

12  hope, so stay well in the meantime, all right?

13        IN UNISON:  Thank you, your Honor.

14        THE COURT:  All right.  Thank you.  Everyone

15  did a fine job today.  Thank you for your help.  All

16  right?  Be well.

17                    (Matter Concluded)

18                         -o0o-

19

20

21

22

23

24

25

# C  E  R  T  I  F  I  C  A  T  E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **13th** day of **January** 2021.

Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.