

**Paul A. Pagano**
Tel: 917.589.1479
paul.pagano@moserlawfirm.com

October 5, 2021

**VIA ECF**
The Honorable A. Kathleen Tomlinson
United States Magistrate Judge
United States District Court
100 Federal Plaza
Central Islip, NY 117222

    Re:    *Caccavale v. Hewlett-Packard Company a/k/a HP Inc., et al.*
            2:20-cv-00974-GRB-AKT (E.D.N.Y.)

Dear Judge Tomlinson:

    This firm represents Plaintiffs in the above referenced matter. On September 1, 2020, the Court So-Ordered the parties' ESI protocol which states that "[t]he Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of ESI." ECF No. 39, p. 4, ¶ 6. On July 13, 2021, the Court directed the parties to further meet and confer in good faith to resolve discovery disputes. Despite the foregoing and Plaintiffs' numerous requests, Hewlett-Packard Company a/k/a HP Inc. ("HPI") and Hewlett Packard Enterprise Company (together "HP") have refused to disclose their ESI consultants or in-house employees who have participated in the collection and production of ESI and have declined to participate in a good faith meet and confer ("M&C") attended by the parties' respective ESI consultants and/or technical employees.

    By this letter we respectfully request that counsel for HP and counsel for Plaintiffs be specifically ordered to meet and confer with the participation of their respective ESI consultants/technical employees within one (1) week. We request that the M&C be ordered by the Court to be held at a time when the parties may contact the Court, if necessary, for guidance.

### RULE 37.3 CERTIFICATION REGARDING GOOD FAITH ATTEMPTS

    Plaintiffs certify that they have, in good faith, attempted to resolve the discovery issues raised in this motion before seeking judicial intervention. Plaintiffs' discovery demands seeking time/payroll data to support their claims for delayed wages were served on March 19, 2021. On May 17, 2021, HP furnished, prior to any discussion about the form of production, 9 Excel spreadsheets (HPI0001788, HPE0004482-4483 and HPE0004485-4490). After subsequent M&Cs, on July 7, 2021, HP produced another Excel spreadsheet (HPE0004503).

    On July 8, 2021, on the eve of Plaintiffs' original deadline to move to compel, 55 minutes before a final M&C, HP produced additional Excel spreadsheets purporting to show the available fields in the PeopleSoft program HP used. We pointed out during the M&C that the file metadata showed that the report had been generated by "Robert Rodriguez" *weeks before.*

On July 21, 2021, HP furnished another Excel spreadsheet. In an effort to arrive at accurate and reasonably useable time/payroll reports, we asked HP for information regarding the nature of its databases and retained an ESI consultant – Belmero, Inc. Based upon HP's representation that it had used PeopleSoft, Belmero put together simple instructions for HP to follow to produce ESI. These instructions were provided to HP on August 31, 2021. On September 17, 2021, HP advised that the instructions did not work because, *inter alia*, HPI was now saving its data on SQL (a fact Plaintiffs learned for the first time that day). HP did not reach out to work through any technical issues at the time they attempted to follow the instructions. On September 17, 2021, Plaintiffs sought clarity from HP regarding Plaintiffs' prior request that there be a M&C attended by the parties' consultants/technical employees.

On September 24, 2021, HP produced another Excel spreadsheet. Later that same morning, the parties had another M&C. During the M&C, HP walked the Plaintiffs through a process of comparing two spreadsheets (a time sheet and a payroll sheet) to determine for a single employee for a single workweek when wages were earned and when they were paid. In HP's opinion, this process only took "2 minutes" and should be repeated for each employee for each workweek the employee worked during the five-year period. Based upon HP's 2-minute estimate, it would take hundreds of hours to perform this process for all 175 class members for each workweek they worked during the five-year period. Putting that aside, when we performed a top-level analysis of the spreadsheets, we found that there was a substantial amount of data in the payroll sheet that did not have corresponding data in the time sheet making HP's proposed process impossible.

On September 28, 2021, we emailed HP our findings and again requested a M&C with the appropriate technical consultants. On September 30, 2021, we had another telephonic M&C with counsel for HP during which we renewed this request. On October 1, 2021, Plaintiffs emailed HP a final request for a M&C regarding ESI. On October 4, 2021, HP responded and, while not taking a position on the Plaintiffs' final request for a M&C, for the *first time* claimed that their time report "ends around July/August 2015 because our clients did not have access to data beyond that time period."

On October 5, 2021, HP advised that it would not hold the requested M&C because: (1) HP offered to provide a 30(b)(6) witness on certain topics; (2) Plaintiffs have not indicated that or why their consultant believes he knows how to obtain the weekly information Plaintiffs seek; (3) HP had "explained to Plaintiffs how to use the Tempus Carta [time] and payroll data [HP has] produced to obtain the weekly totals they seek"; (4) HP has explained that it cannot report weekly totals from PeopleSoft because of the way in which Tempus Carta fed time data into PeopleSoft for payroll processing and "Plaintiffs have not offered, nor could they, any explanation for how their consultant could overcome that issue"; (5) Plaintiffs had "offered no explanation for how their consultant can advise HPI and HPE how to produce reports that would be satisfactory to [Plaintiffs] if [Plaintiffs] believe that the underlying data feeding into the reports is 'inaccurate.'"

Initially, that HP has offered to produce a 30(b)(6) witness does not obviate its responsibility to produce proper documents/reports. Moreover, that HP has told Plaintiffs how to cross-reference certain time and payroll data is irrelevant in light of the fact that such comparison cannot be undertaken given that there is substantial data missing from at least one of the reports

in question and that, even if the data were complete, analyzing it would be unduly time consuming as established above. Finally, the balance of HP's reasons for refusing the M&C all improperly require Plaintiffs' consultant to somehow fix any issues with HP's production before a M&C or presuppose that the issues Plaintiffs raise are unfixable.

## A GOOD FAITH M&C WITH TECHNICAL CONSULTANTS IS NECESSARY

After six months and countless hours of meeting and conferring, the status of Plaintiffs' time/payroll requests is as follows. For the pertinent period of time that HP used PeopleSoft (February 2014-September 30, 2017), HP has failed to produce the time/payroll excel reports necessary to establish and calculate when wages were earned versus when wages were paid. For the period of time that HP utilized SAP Global View, HP has produced a report for which Plaintiffs have raised questions including why the column which pertains to the timeframe certain items were earned has numerous blanks. That vital question has gone unanswered for almost a month having been posed at least as early as September 9, 2021.

It is imperative that Plaintiffs be permitted to engage in a meet and confer with their consultant and his counterpart(s) at HP. Indeed, as counsel, we are necessarily relying on information provided our respective technical experts or consultants, who are retained to assist with the production and use of ESI. Therefore, a M&C with the parties' respective technical consultants and counsel is necessary.[1] *See e.g. Fung-Schwartz v. Cerner Corp.*, No. 17-CV-0233 (VSB) (BCM), 2020 U.S. Dist. LEXIS 160262, at *10 (S.D.N.Y. Sep. 2, 2020)(ordering counsel to "arrange for their respective technical experts or consultants to meet and confer [. . .](with counsel on the line), to discuss how best to export, extract or download" ESI).

## CONCLUSION

Given the foregoing, Plaintiffs respectfully request that: (1) the Court order HP to disclose its ESI consultants or employees with technical knowledge who have assisted in the export and production of database information; (2) counsel for HP and counsel for Plaintiffs be ordered to meet and confer with the participation of their respective ESI consultants/technical employees within one week; and (3) the meet and confer be ordered to be held at a time during which the parties may contact the Court, if necessary, for guidance.

Respectfully submitted,

*Paul Pagano*

Paul A. Pagano

cc: All Counsel of Record (VIA ECF)

---

[1] Such a meeting is in line with the Sedona Principles which provide "Parties should confer early in discovery regarding the preservation and production of electronically stored information when these matters are at issue in the litigation and seek to agree on the scope of each party's rights and responsibilities." The Principles further provide that same are "especially applicable in the context of database discovery because of the complicated technical and logistical questions raised by the storage of information in database systems. [. . .] Sharing technical information also may benefit a responding party by educating the requesting party as to what information exists." 15 Sedona Conf. J. 171, 186 (2014)