

**Kristofor T. Henning**
Partner
T. 215-979-3846
F. 215-988-4314
khenning@mccarter.com

McCarter & English, LLP
1600 Market Street
Suite 3900
Philadelphia, PA 19103-7501
www.mccarter.com

November 1, 2021

VIA ECF

The Honorable James M. Wicks
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722

**Re: Caccavale, et al. v. HP Inc., et al. (Case No. 20-cv-974)**

Dear Judge Wicks:

Defendants Hewlett Packard Enterprise Company ("HPE") and Hewlett-Packard Company n/k/a HP Inc. ("HP Inc.") respectfully request that the Court deny Plaintiffs' third[1] motion to compel (ECF 141) for the reasons set forth below.

### I. Plaintiffs Are Not Entitled To Additional Payroll/Timekeeping Document Discovery Or Interrogatory Responses.

Plaintiffs' motion asks the Court to direct HPE/HP Inc. to provide further amended responses and additional document production concerning Plaintiffs' document requests 7, 13, and 28/27 and Plaintiffs' interrogatories 4, 6, and 7, without objection. ECF 141-1 at 22. Through those requests, Plaintiffs seek weekly pay totals to support their claim that earnings attributable to the first week of each bi-weekly pay period were paid late for purposes of New York Labor Law § 191(1)(a)(i). ECF 43 at 3 n. 2 (Plaintiffs arguing that they "are entitled to liquidated damages in the amount of half of each paycheck they received during a six year period"). It is clear such weekly totals are the target of Plaintiffs' motion. ECF 141-1 at 15. For the reasons stated below, Plaintiffs' motion to compel further amended responses and document production regarding such payroll and timekeeping topics should be denied.[2]

---

[1] Fourth, including the motion to compel Plaintiffs filed on July 9, 2021 (ECF 88), which Judge Tomlinson rejected on July 13 (ECF 90). That motion raised seven issues directed toward HPE/HP Inc. Through their three motions to compel filed in October 2021, Plaintiffs have raised four of those original issues and three new ones directed toward HPE/HP Inc. It is not clear, therefore, that Plaintiffs have "pared down" their discovery disputes, as Judge Tomlinson directed. ECF 90 at 3.

[2] Plaintiffs purport to move to compel "complete and accurate payroll and time information" in response to three document requests and three interrogatories, which are cited verbatim in their motion. ECF 141-1 at 1-11. Table 1, annexed to this opposition, is a comparison of every element of each of those discovery requests with the documents HPE/HP Inc. have produced, which illustrates the completeness of HPE/HP Inc.'s productions. HPE/HP Inc. shared an earlier version of this table with Plaintiffs shortly after Plaintiffs' original motion to compel was rejected, to address the payroll- and timekeeping-related document requests and interrogatories that had been raised in that motion. The table has been modified here to account for subsequent document productions and to address the slightly different set of document requests and interrogatories raised in the instant motion.

### A. HPE/HP Inc. Provided Weekly Totals When Possible But Cannot Provide Weekly Totals In the Format Plaintiffs Desire For The PeopleSoft Period.

To process payroll during the relevant period, HPE used Oracle's PeopleSoft through September 30, 2017, and then used SAP Global View. HP Inc. used PeopleSoft through October 31, 2015.[3] HPE produced a report from Global View that contains weekly pay totals and, when Plaintiffs complained it was "not useful," HPE explained to Plaintiffs in detail how to identify in the report the weekly totals that they seek. Following that conversation, Plaintiffs conceded to the Court that the report "may be sufficient for" the period it covers. ECF 88 at 29.

HPE/HP Inc. have also produced reports containing PeopleSoft data, but those reports do not contain weekly totals. When PeopleSoft was used to process payroll, it received timekeeping data from another system called Tempus Carta. HPE/HP Inc. have also produced reports containing Tempus Carta data. Tempus Carta maintained daily time data, but only fed such data into PeopleSoft on a bi-weekly basis (not daily or weekly), so that PeopleSoft could run bi-weekly payroll. Put simply,

---

[3] HP Inc. has objected to discovery for the post-October 31, 2015 period and that issue is presented to the Court in ECF 134 and ECF 135. Plaintiffs have nevertheless sought to argue that issue again in their current motion to compel. ECF 141-1 at 12 n. 5, 20. Plaintiffs complain that HP Inc.'s "position is predicated, in part, on the assertion that HPI and HPE (who are both represented by the same attorneys in this case) are not related entities." ECF 141-1 at 20. As Plaintiffs themselves recognize in their operative complaint, however, effective November 1, 2015, Hewlett-Packard Company separated into two different companies – HPE and HP Inc. ECF 55 (SAC) ¶ 37 (alleging that "[i]n or about November 2015, Hewlett-Packard Company split into **two independent entities** with the creation of HPE and Hewlett-Packard Company being renamed HP Inc.") (emphasis added). Thus, the "assertion" about which Plaintiffs now complain is their own – and it is accurate. Plaintiffs also complain that "the individual who stayed behind [i.e., became employed by HP Inc. instead of HPE] remained in the same title/position, doing the same work, and being paid in the same improper manner." ECF 141-1 at 12 n. 5. But this assertion is not backed up by any allegation in the SAC. In fact, Plaintiffs make *no* allegations in the SAC about anything occurring – or not occurring – at HP Inc. on or after November 1, 2015. Plaintiffs do not allege that any particular HP Inc. employee was a "manual worker" on or after November 1, 2015. Nor do they allege that any alleged "manual workers" at HP Inc. on or after November 1, 2015 were not paid timely. Perhaps most importantly, Plaintiffs also do not claim that any alleged "manual worker" at HP Inc. on or after November 1, 2015 worked in a job that was similar to theirs at Hewlett-Packard Company before November 1, 2015. Contrary to their brand-new claim that there are/were HP Inc. employees performing the same tasks Plaintiffs performed, in their operative complaint Plaintiffs recognized that HP Inc. and HPE are engaged in **different** types of business focused on **different** customers and **different** products. *Compare* SAC ¶ 14 (alleging that "[H]P, *inter alia*, sells printers, laptops and desktop personal computers") *with id.* ¶ 15 (alleging that "[H]PE, *inter alia*, focuses on enterprise hardware products such as servers and networking equipment").

HPE/HP Inc. do not have an objection to producing reports with weekly pay totals (as evidenced by HPE's production of such reports from Global View), but they cannot do so for the PeopleSoft period. However, Plaintiffs can calculate such totals from other data HPE/HP Inc. have produced in response to Plaintiffs' requests. HPE/HP Inc. have explained to Plaintiffs in detail on multiple occasions, including by walking through specific examples, how to calculate the weekly totals they seek by synthesizing the reports of PeopleSoft data (containing bi-weekly payroll data) with the Tempus Carta reports (containing daily time data).[4]

Plaintiffs complain that this process presents them with an "undue burden." *See, e.g.*, ECF 141-1 at 13, 14. The process may be time-consuming,[5] but it can hardly be called "undue" since it is the *only* way of calculating weekly totals. HPE/HP Inc. were under no obligation to explain this process to Plaintiffs' counsel. However, in the interest of cooperation and in an attempt to avoid needless discovery motions filed with the Court, HPE/HP Inc. explained this alternative method for Plaintiffs to calculate such totals because HPE/HP Inc. were aware of it. It is up to Plaintiffs whether they want to engage in this process. Furthermore, Plaintiffs have indicated in the past that they have a damages expert, so he/she could perform this work if Plaintiffs' counsel cannot/will not.

On August 31, 2021, Plaintiffs emailed HPE/HP Inc. with instructions from their consultant on how to generate a report from PeopleSoft, purportedly to show weekly totals. HPE followed those instructions and generated a report but, as Plaintiffs were advised on or before September 17, that report did not contain weekly totals. HP Inc.

---

[4] On March 19, 2021, Plaintiffs served classwide document requests with a request that "[s]canned images be produced in text-searchable .pdf format" and "electronically stored information contained in databases be produced in .csv, .xls or another format supported by Microsoft Excel." On May 17, 2021, the deadline for all parties to serve responses, HPE/HP Inc. produced, among many other documents, payroll reports in Excel format. Plaintiffs complained about the production of those "9 Excel spreadsheets" in the past because, according to them, HPE/HP Inc. produced them "prior to any discussion about the form of production" (ECF 130 at 1), but now, Plaintiffs claim that "[t]he issue is not whether the data was produced in Excel format." ECF 141-1 at 12 n. 4. Instead, Plaintiffs now characterize the issue as whether the produced data "is accurate, complete and readily usable (e.g. has all required data and all in one sheet without having to needlessly cross-reference time and payroll records)." ECF 141-1 at 12 n. 4. Plaintiffs' complaint is simply another form of their request for weekly totals for the PeopleSoft period which, as explained above, HPE/HP Inc. are unable to provide.

[5] Plaintiffs' characterization of HPE/HP Inc.'s "2 minute" estimate requires context. ECF 141-1 at 13. As explained above, HPE/HP Inc. explained to Plaintiffs how to do this work by reference to specific examples during a meet and confer discussion. That is roughly how long it took Plaintiffs' counsel to complete the task HPE/HP Inc. explained to them over the phone for one of those examples. But, that was Plaintiffs' first time doing that exercise – even though they had least some of the data necessary to do it months earlier.

likewise followed those instructions but was unable to generate a report at all because the instructions did not work in its current payroll database. Plaintiffs then began requesting a discussion between their consultant and HPE/HP Inc. employees by which their consultant would ask HPE/HP Inc. employees unidentified questions about the PeopleSoft period. The parties' dispute regarding that request is presented to the Court in ECF 130 (Plaintiffs' motion to compel such discussion between their consultant and HPE/HP Inc. employees) and ECF 131 (HPE/HP Inc.'s opposition thereto).

In this current motion, Plaintiffs offer two reasons for their belief that HPE/HP Inc. is withholding from them weekly totals for the PeopleSoft period, neither of which has merit.

***First***, Plaintiffs seem to argue that HPE/HP Inc. must have the data they want in the form they want it because, according to them, the law requires HPE/HP Inc. to maintain it in the form Plaintiffs prefer. ECF 141-1 at 15 & n. 10. Initially, Plaintiffs' characterization of the law cannot change the facts – *i.e.*, that HPE/HP Inc. are unable to provide weekly totals for the PeopleSoft period. In any event, HPE/HP Inc. have complied with all applicable law in all respects, even crediting Plaintiffs' characterization of the law for current purposes only. As explained above, HPE has produced weekly totals for the Global View period and, for the PeopleSoft period, weekly totals exist through a combination of the reports of PeopleSoft data (containing bi-weekly payroll data) with the Tempus Carta reports (containing daily time data).

***Second***, Plaintiffs claim their "[b]elief is supported by Plaintiffs' ESI consultant who, based on even the limited information the HP Defendants have provided regarding their ESI, believes that weekly payroll records could be produced." ECF 141-1 at 15. But, the instructions Plaintiffs' consultant previously provided did not result in a report with the weekly totals Plaintiffs seek from either HPE or HP Inc. and Plaintiffs have specifically declined to provide HPE/HP Inc. with further instructions from their consultant. Neither have Plaintiffs included an affidavit/declaration from their consultant in support of their motion to compel that explains the basis for his apparent belief or describes how HPE/HP Inc. could, in his opinion, obtain weekly totals for the PeopleSoft period. Moreover, the premise of Plaintiffs' motion to compel a discussion between their consultant and HPE/HP Inc. employees is that their consultant needs more information even to determine whether weekly totals are possible for the PeopleSoft period. If Plaintiffs now claim he has sufficient information, then the Court should deny their motion to compel a discussion between Plaintiffs' consultant and HPE/HP Inc. employees.[6]

---

[6] Plaintiffs' position on this issue seems to change depending on which motion to compel they are pursuing. As stated above, Plaintiffs claim their ESI consultant believes weekly totals can

Plaintiffs further argue that HPE/HP Inc. "declined to meet and confer regarding ESI" and "have devoted tremendous effort to resisting discovery" because they are "concern[ed] about the outcome if they are transparent." ECF 141-1 at 18. Such argument is as baseless as it is illogical for multiple reasons.

**First**, as explained above, HPE has produced weekly totals for the Global View period. Clearly, therefore, it has not "devoted tremendous effort to resisting" the production of weekly totals when they are available for production. To the contrary, HPE did more than just produce weekly totals – it explained to Plaintiffs how to analyze the data to locate them. Therefore, it is illogical to suggest that HPE/HP Inc. have an objection to producing reports with weekly pay totals. They simply cannot do so in the format Plaintiffs desire for the PeopleSoft period.[7]

**Second**, HPE/HP Inc. have offered Plaintiffs a way to confirm this fact for themselves in one of the most transparent ways litigation affords – a deposition. Plaintiffs served Rule 30(b)(6) deposition notices on August 23, 2021, which included, among many others, the topic of payroll databases. On October 4, 2021, HPE/HP Inc. advised Plaintiffs that they would make a witness(es) available to testify about, among other topics, whether reports comparable to those produced from the PeopleSoft period can be generated to display weekly totals. *See* ECF 140 at 31-32. In other words, rather than "resisting" discovery about whether weekly totals are available for production for the PeopleSoft period, HPE/HP Inc. offered a Rule 30(b)(6) deposition witness(es) on that very topic. Plaintiffs refused that offer and instead claimed that HPE/HP Inc. "should have the necessary good faith meet and confers and produce complete, accurate, and reasonably useable reports in advance of the depositions. . . ." But, following the parties' meet and confer discussions, during which HPE/HP Inc. repeatedly explained to Plaintiffs why they cannot produce weekly totals for the PeopleSoft period, they filed this motion.

**Third**, HPE/HP Inc. have explained to Plaintiffs in detail on multiple occasions, including by walking through specific examples, how to calculate the weekly totals

---

be produced for the PeopleSoft period. But in another part of their instant motion to compel, Plaintiffs seem to repeat the position from their prior motion to compel that the discussion they seek is necessary, in their view, to determine whether weekly totals are even available for the PeopleSoft period. ECF 141-3 at 3 (¶ 13) ("If the HP Defendants would [hold a meet and confer with an ESI consultant] either the appropriate records would be produced or Plaintiffs would be satisfied that same do not exist."). In any event, given Plaintiffs' statement, if the Court grants Plaintiffs' motion to compel a discussion between their consultant and HPE/HP Inc. employees over HPE/HP Inc.'s objection, it should delay ruling on Plaintiffs' present motion because, according to Plaintiffs, that discussion could convince them that the weekly totals they seek here "do not exist."

[7] No further discussion about "appropriate parameters for querying" any data can change this fact. *Cf.* ECF 141-1 at 12.

they seek by synthesizing the reports of PeopleSoft data (containing bi-weekly payroll data) with the Tempus Carta reports (containing daily time data). HPE/HP Inc. were under no obligation to explain to Plaintiffs how to use the discovery they have received but, in the interest of cooperation and in an effort to avoid needless discovery motions filed with the Court, they did.

***Fourth***, in addition to providing step-by-step instructions to arrive at weekly pay totals for the PeopleSoft period, HPE/HP Inc. have answered ***numerous*** questions about the payroll and timekeeping records posed by Plaintiffs over the course of ***months***. Each time one set of questions was answered, Plaintiffs returned with another set. And each time, HPE/HP Inc. provided answers when readily available and undertook to investigate those that were not. Plaintiffs tell the Court about one particular set of responses sent "[o]n October 26, 2021 at 5:02 p.m., *to wit*, the evening before this motion was due." ECF 141-1 at 15. Plaintiffs attempt to negatively characterize HPE/HP Inc.'s email, but they neglect to tell the Court that (1) this email was in response to follow-up questions Plaintiffs raised on October 21 (*i.e.*, three business days earlier), (2) this email was part of a lengthy back-and-forth between the parties whereby Plaintiffs posed many questions and HPE/HP Inc. responded to them as the answers became available, and (3) the entire purpose of answering Plaintiffs' unending questions is obviously to make a motion to compel unnecessary.[8]

Ultimately, HPE/HP Inc. have done the opposite of "resisting discovery" and "declin[ing] to meet and confer regarding ESI," and the Court should deny Plaintiffs' motion.

### B. HPE/HP Inc. Have Addressed Plaintiffs' Remaining Complaints About Produced Payroll/Timekeeping Records.

Aside from their primary complaint that HPE/HP Inc. have not produced weekly pay totals from the PeopleSoft period that HPE/HP Inc. do not have, Plaintiffs have lodged a host of other disjointed complaints about HPE/HP Inc.'s produced payroll and timekeeping records.

Those complaints seek explanations of the discovery Plaintiffs have received, not additional discovery. Therefore, they are not the proper subject of a motion to compel.

In addition, HPE/HP Inc. first offered a Rule 30(b)(6) deposition witness(es) on many of those items. Plaintiffs rejected that offer and insisted that answers be provided

---

[8] Plaintiffs claim, *inter alia*, that HPE/HP Inc.'s e-mail response to their questions directed to counsel for HPE/HP Inc. "[u]nderscores . . . the need for a meet and confer with Plaintiffs' ESI consultant and his counterpart(s) at the HP Defendants . . . ." ECF 141-1 at 15. But Plaintiffs' counsel directed their questions to counsel for HPE/HP Inc., a seemingly clear indication that they expected a response from HPE/HP Inc.'s counsel to them – not from any HPE/HP Inc. employee to their consultant.

during the meet and confer process in order to avoid a motion to compel. HPE/HP Inc. then addressed every single one of these items during the meet and confer process, either by providing a response or agreeing to investigate possible answers. Plaintiffs nevertheless raise them in their motion to compel – so HPE/HP Inc. describe below the status of each for the Court.

**For HP Inc. documents (*see* ECF 141-1 at 13):**

- "HPI 1788 contains only regular and overtime earnings"
    - Plaintiffs requested that HP Inc.'s payroll report be redone to include compensation components in addition to regular and overtime earnings for the first time on October 12, 2021 (more than 5 months after the document was produced). HP Inc. pointed out that Plaintiffs' document requests asked only for regular and overtime data and twice asked Plaintiffs why they believed other forms of compensation would be relevant and responsive, considering the SAC references only regular and overtime wages (SAC ¶¶ 1, 3, 36, 51, 81, 118, 126). Plaintiffs never responded.

- "34% of the records in the pay data don't have corresponding information in the time data"
    - HP Inc. twice told Plaintiffs that simply stating "34% of the records" was insufficient to allow it to investigate, but advised (within 4 business days of receiving the question) that Tempus Carta data is unavailable for HP Inc. between July/August 2015 and October 31, 2015. On October 21, Plaintiffs finally provided "samples" of missing time entries. As Plaintiffs were advised on October 26, HPE/HP Inc. is in the process of investigating those examples.

- "With respect to the time data, approximately 6% of the entries total more than 40 hours of regular time in a week"
    - HP Inc. provided a response to Plaintiffs on October 21 and answered a follow-up question on October 26 (which would have been apparent to Plaintiffs had they carefully reviewed the original response).

- "Approximately 8% of the entries of the total hours in the time data do not match the total hours in the payroll data"
    - HP Inc. provided a response to Plaintiffs on October 21 and answered a follow-up question on October 26.

**For HPE documents (*see* ECF 141-1 at 14):**

- "There is no indication as to when the payments are made"
    - HPE advised Plaintiffs how to determine pay dates from the produced payroll reports on May 17, July 21, and once again on October 4.

        When Plaintiffs continued to complain about this issue, HPE advised they would look into whether it was possible to provide a list of pay dates. HPE also advised Plaintiffs on May 17 and July 21 that they could refer to produced paystubs of the named Plaintiffs, which reflect pay dates for the Relevant Time Period.

- "There is no indication of the hours worked in the pay data and therefore there is no way to cross-check the hours in the time data against the pay data"
    - On October 21, HPE advised Plaintiffs they didn't believe "further discovery burden on HPE is necessary for Plaintiffs to 'cross-check' information they already have." Nevertheless, in the interest of cooperation, HPE agreed to look into whether it had the capability of regenerating its payroll reports to include number of hours worked.
- "Some class members are in some documents but not in others when they seemingly should be"
    - This complaint is too vague to elicit a meaningful response, but to the extent Plaintiffs refer to the question they posed about a certain Global View report not having data about every putative class member, HPE advised Plaintiffs on September 9 that the Global View report covers only the period of October 2017 through 2018 (as Plaintiffs should have already understood).
- "Negative entries for, *inter alia*, regular and overtime hours"
    - Plaintiffs did not clarify their question on this issue until October 21. HPE is looking into possible explanations.
- "More than 19 hours worked in a day"
    - HPE explained this item on October 21 and Plaintiffs have not asked follow-up questions.
- "More than 24 hours worked in a day"
    - Plaintiffs did not clarify their question on this issue until October 21. HPE is looking into possible explanations.

Finally, for the very first time since discovery was produced on May 17, 2021, Plaintiffs complain that HPE produced discovery for certain putative class members while HP Inc. produced discovery for other putative class members, when Plaintiffs defined the putative class members otherwise. ECF 141-1 at 12. Although Plaintiffs do not seek any affirmative relief on this issue, the record should be made clear: Plaintiffs' discovery requests served on March 19 defined "HPE Employees" as "individuals employed in New York in one or more of the following job titles during the Relevant Time Period…." and defined "HPI Employees" in ***exactly the same way***. As HPE/HP Inc. pointed out in their discovery responses on May 17, Plaintiffs' definition ***did not specify the entity that employed such individuals***. Further,

HPE/HP Inc. each stated for which employees it would produce documents and respond to interrogatories. HPE/HP Inc. further clarified those categories in amended responses served on June 25. The two categories were determined based on which employees HPE/HP Inc. considered to be HPE-affiliated and which were not. Plaintiffs have not explained how any of this was improper – nor could they.

## II. Plaintiffs Are Not Entitled To Discovery About Individuals Not Employed In The State Of New York.

Plaintiffs' motion also asks the Court to direct HPE/HP Inc. "to amend their interrogatories and document production to include all class members who performed work in New York." ECF 141-1 at 22. The Court should also deny this request because individuals who had work locations/addresses outside of New York were not "employed in" the State of New York.[9]

Plaintiffs' putative class(es) are defined to include only (among other limitations) individuals who were or are "***employed . . . in the State of New York***." SAC ¶¶ 85 (a) & (b) (emphasis added). Given that limitation, HPE/HP Inc. have limited their discovery to (among other parameters) individuals who had a work location/address in New York. The below screenshots[10] are examples showing as much in discovery produced to Plaintiffs on May 17, 2021.

For HPE:

| | |
|---|---|
| Supervisory Organization | GSD AMS Supporting Functions (Robin Diner (00051752)) |
| Position Title | Field Technical Support |
| Location | NYD01 - HP Chelsea, New York (NYD01) (inactive) |

For HP Inc.:

| Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - Line 1 | Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - Line 2 | Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - Line 3 | Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - City | Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - State/Province | Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - Country Code | Work Address in Relevant Position During 2/21/14 - 10/31/15 Time Period - Postal Code |
|---|---|---|---|---|---|---|
| | 556 west 22nd street | | New York | New York | USA | 10011 |

As a result, if they reviewed the documents they received in discovery, Plaintiffs knew *months ago* that HPE/HP Inc. did not produce discovery about individuals who had

---

[9] This issue was also addressed, in part, in HPE/HP Inc.'s motion for a protective order. *See* ECF 140 at 11-12.

[10] The partial screenshots reflecting limited portions of produced documents should not be construed as a waiver of the confidentiality designations assigned by HPE and HP Inc. to their produced documents.

a work location/address outside of New York. This was not new information they learned "for the first time on October 18, 2021." ECF 141-1 at 21.

Plaintiffs, however, have now taken the position that their putative class(es) includes individuals who, unlike any of the named Plaintiffs, had a work location/address outside of New York – but who ever (even one time for one hour) worked in New York at some point from February 21, 2014 to the present. Plaintiffs' position is contrary to both the common sense and legal interpretations of what it means to be "employed . . . in the State of New York."

In *In re Allen*, 100 N.Y.2d 282 (N.Y. 2003), in the context of a claim for unemployment insurance under the NYLL, the Court found that a teleworker physically present in Florida for most of her employment with a company based in New York was not employed in New York even though she traveled to New York for work for one two-week period. *See id.* at 287-88 ("Because claimant was regularly physically present in Florida when she worked for her employer in New York, her work was localized in one state – Florida."); *id.* at 287 (explaining that goal of NYLL unemployment insurance provision was "to bring within the scope of the New York act those employees who work both in New York and one or more other States **when the most substantial contacts of the employment are in New York**" (emphasis added)); *id.* at 288 (explaining that "uniform definition of 'employment' adopted by New York" includes purpose of allocating "employment of an individual . . . to one State and not divided among the several States in which he might perform services. . .").[11] Plaintiffs' position, on the other hand, would have the effect of allocating employment to multiple states. Thus, New York law rejects Plaintiffs' attempt to bring into this case (and, therefore, to the discovery process) individuals with work locations/addresses outside of New York who worked – even just one time for one hour – in New York.[12]

---

[11] It would be illogical to apply a different test for analyzing the location of an individual's employment for claims under a different part of the same statute (the NYLL).

[12] During the parties' meet and confer discussions, Plaintiffs did not attempt to identify any specific number of hours of work required to be performed in New York for individuals with a work location/address outside of New York in order to, in Plaintiffs' view, make them "employed in" New York for purposes of discovery. Instead, as explained above, Plaintiffs have taken the position that even one work trip into New York for one hour is sufficient. Therefore, because Plaintiffs have treated all individuals with work locations/addresses outside of New York who ever worked in New York (even one time for one hour) the same for current purposes (regardless of how much work they performed in New York), so have HPE/HP Inc. for purposes of this motion. Should Plaintiffs change their position, HPE/HP Inc. reserve the right to argue, among other things, that the individualized inquiries required to assess whether any given individual performed enough work in New York to be deemed "employed in" New York preclude class certification.

Plaintiffs' allegation in support of Rule 23(a)'s typicality requirement that they "and all of the members of the Classes work, or have worked, in the State of New York for HP, HPE, and/or Unisys" does not change this result. ECF 141-1 at 21 (quoting SAC ¶ 90). The relevant limitation on Plaintiffs' putative classes is that the putative members must be/have been "employed in the State of New York" – not merely that they worked in New York. ECF 55 (SAC) ¶¶ 85(a) & (b). In fact, Plaintiffs' reference to this allegation supports HPE/HP Inc.'s position: Plaintiffs' use of both phrases in their operative complaint means the phrase "work, or have worked" in ¶ 90 of the SAC must mean something different than the phrase "employed . . . in the State of New York" in ¶¶ 85(a) & (b). And the use of both phrases was a conscious decision on Plaintiffs' part: Both the original Complaint and the SAC used "work, or have worked, in the State of New York," but the original Complaint defined the putative classes as those "employed by Defendants" while the SAC added "employed by [each Defendant] in the State of New York." *Compare* ECF 1 (Complaint) ¶¶ 60, 64 *with* ECF 55 (SAC) ¶¶ 85, 90. Plaintiffs' discovery position, however, improperly treats the two phrases as identical when they are not.

Plaintiffs' cited authority does not help them. In *Hammell v. Banque Paribas*, 1993 U.S. Dist. LEXIS 14755 (S.D.N.Y. Oct. 22, 1993), the plaintiff sought to rely on the NYLL in support of a claim for attorney's fees after prevailing on a claim for an unpaid bonus. *Cf.* ECF 141-1 at 21. The court rejected the plaintiff's use of NYLL because the bonus at issue was earned through work performed outside of the United States. Nothing about *Hammell* supports Plaintiffs' view that an individual with a work location/address outside of New York who works in New York even one time for one hour is/was "employed in" New York for purposes of discovery.[13]

For all of these reasons, Plaintiffs' request for amended interrogatory responses and document production regarding persons with work locations/addresses outside of New York should be denied.

### III. Plaintiffs Are Not Entitled To Discovery of "Records Of Earnings By State."

Plaintiffs' motion makes a passing reference to "need[ing] records showing the timing and amount of wages earned in New York and other states." ECF 141-1 at 11; *see also* ECF 141 at 2 (Plaintiffs' "executive summary" purporting to seek "[r]ecords of earnings by state"). Initially, Plaintiffs have not identified particular discovery requests that they claim sought such records, and HPE/HP Inc. are not aware of any discovery request that sought such records. Therefore, the Court should deny this portion of Plaintiffs' motion for this reason alone. In addition, however, the Court

---

[13] HPE/HP Inc. incorporate by reference commonly applicable arguments made by co-defendant Unisys Corporation.

should deny it for the simple reason that HPE/HP Inc. do not take the legal position that Plaintiffs claim justifies the discovery they seek.

According to Plaintiffs, this discovery is proper because "Defendants assert that work performed outside of New York is not covered by NYLL § 191(1)(a)." ECF 141 at 2. But Plaintiffs know that is not HPE/HP Inc.'s position. During the parties' meet and confer discussions about Plaintiffs' Rule 30(b)(6) deposition notices, HPE/HP Inc. informed Plaintiffs, in writing, as follows: "Without waiving any rights or other arguments, HPI and HPE agree that they will not argue, for purposes of this litigation, that the NYLL does not apply to work performed by the putative class members, as defined in Plaintiffs' SAC [*i.e.*, individuals currently or formerly "employed in" New York], outside of New York during the relevant time period. . . ." Plaintiffs acknowledge as much, albeit in a footnote in their motion. ECF 141-1 at 11 n. 3. Therefore, Plaintiffs' motion to compel must be denied because HPE/HP Inc. do not take the legal position that Plaintiffs claim justifies the discovery they seek.[14]

Plaintiffs apparently have directed this portion of their motion to compel toward HPE/HP Inc. because HPE/HP Inc. would not stipulate that work performed outside of New York is "deemed" to have occurred in New York for purposes of this litigation. ECF 141-1 at 11 n. 3. There is a simple reason why HPE/HP Inc. did not agree to such a stipulation – it would be inaccurate. Work performed outside of New York is, by definition, not performed inside New York. And, as HPE/HP Inc. previously explained to Plaintiffs, facts concerning whether Plaintiffs/putative class members worked outside of New York remain relevant to the merits and class certification inquiries about whether Plaintiffs/putative class members are "manual workers," including, for instance, whether they drove for a long time during their workday.[15]

HPE/HP Inc. thank the Court for its consideration.

Respectfully submitted,
*/s/ Kristofor T. Henning*
Kristofor T. Henning

cc: All counsel of record (via ECF)

---

[14] Plaintiffs claim that "HP's position on the application of the NYLL changes based upon whether it will reduce potential damages. According to HP, if an individual works almost exclusively in New York but performs one job outside of New York, the work performed outside of New York is not covered by the NYLL." ECF 141 at 2. Given Plaintiffs' acknowledgement of HPE/HP Inc.'s actual position described above (ECF 141-1 at 11 n. 3), that claim is demonstrably inaccurate.

[15] This issue was also addressed, in part, in HPE/HP Inc.'s motion for a protective order. *See* ECF 140 at 11.

**TABLE 1**

| | Plaintiffs' Request | HP Inc.'s Response/Production |
|---|---|---|
| Request No. 7 | Date of payment of wages | HPI0001788 |
| | Dates of work covered by payment of wages | HPI0001788 provides last day of pay period (from which first day of pay period can be calculated) |
| | Name of employee | HPI0001788 provides employee IDs instead of names |
| | Title of employee | HPI0000794 |
| | Gross wages | HPI0001788 |
| | Deductions | HPI0001788 |
| | Allowances, if any, claimed as part of minimum wage | Based on the data produced to Plaintiffs, it does not appear that any named Plaintiff or HPI Employee was paid minimum wage in a relevant position |
| | Net wages | HPI0001788 |
| | Regular hourly rate of pay | HPI0001788 provides regular earnings and number of regular hours worked from which regular rate of pay can be calculated |
| | Overtime rate of pay | HPI0001788 provides overtime earnings and number of overtime hours worked from which overtime rate of pay can be calculated |
| | Number of regular hours worked | HPI0001788 and HPI0003410 |
| | Number of overtime hours worked | HPI0001788 and HPI0003410 |
| Request No. 13 | All elements of No. 7 for Named Plaintiffs | HPI referred to HPE's produced documents because no Plaintiff became an HPI employee |
| Request No. 27 | "Payroll records" including but not limited to "time records" | HPI0001790-3217 are timecards that were in HPI's possession and that reflect daily time recorded in each workweek and HPI0003410 reflects daily recorded work hours |
| Interr. No. 4 | Dates of all paydays | HPI0001788 |
| | First day and last day of pay period | HPI0001788 provides last day of pay period (from which first day of pay period can be calculated) |

| Interr. No. 7 | Date of hire | HPI0000794 |
|---|---|---|
| | Job title(s) and dates on which job title(s) were held | HPI0000794 |
| | Regular rate of pay and dates in effect | HPI0001788 provides regular earnings and number of regular hours worked from which regular rate of pay can be calculated for any given pay period |
| | Job duties/responsibilities | HPI0000784-793 are job descriptions for the relevant job titles and HPI0003409 includes descriptions of tasks performed by the HPI Employees |
| | All employment locations and dates employed there | HPI0000794 |
| | Date of separation from employment | HPI0000794 |
| Interr. No. 6 | All elements of No. 7 for Named Plaintiffs | HPI referred to HPE's produced documents because no Plaintiff became an HPI employee |

| | **Plaintiffs' Request** | **HPE's Response/Production** |
|---|---|---|
| Request No. 7 | Date of payment of wages | For 2014 through Sept. 2017, pay date can be calculated from the last day of pay period provided in HPE0004485-4486, HPE0004489-4490, and HPE0004818-4819; For Oct. 2017 through 2018, HPE0004487-4488 and HPE0004504 provide pay dates; HPE0000299-425, HPE0000537-666, HPE0000788-904, HPE0001051-1284, and HPE0001404-1576, which are Named Plaintiffs' paystubs, also reflect pay dates for the Relevant Time Period |
| | Dates of work covered by payment of wages | For 2014 through Sept. 2017, HPE0004485-4486, HPE0004489-4490, and HPE0004818-4819 provide last |

|  |  |  |
|---|---|---|
|  |  | day of pay period (from which first day of pay period can be calculated); For Oct. 2017 through 2018, HPE0004504 provides first date of workweek and last date of pay period, and dates of work can also be calculated from pay date provided in HPE0004487-4488 and HPE0004504; HPE0000299-425, HPE0000537-666, HPE0000788-904, HPE0001051-1284, and HPE0001404-1576, which are Named Plaintiffs' paystubs, also reflect pay period dates for the Relevant Time Period |
|  | Name of employee | HPE0004485-4490, HPE0004504, and HPE0004818-4819 provide employee IDs instead of names |
|  | Title of employee | HPE0001647-2781 |
|  | Gross wages | HPE0004485-4490, HPE0004504, and HPE0004818-4819 |
|  | Deductions | HPE0004485-4490 HPE0004504, and HPE0004818-4819 |
|  | Allowances, if any, claimed as part of minimum wage | Based on the data produced to Plaintiffs, it does not appear that any named Plaintiff or HPE Employee was paid minimum wage in a relevant position |
|  | Net wages | HPE0004485-4490, and HPE0004818-4819 |
|  | Regular hourly rate of pay | HPE0004504, HPE0004482-4483, and HPE0004820 provide recorded regular work hours and HPE0004485-4490 and HPE0004818-4819 provide regular earnings from which regular rate can be calculated |
|  | Overtime rate of pay | HPE0004504, HPE0004482-4483, and HPE0004820 provide |

| | | |
|---|---|---|
| | | recorded overtime work hours and HPE0004485-4490 and HPE0004818-4819 provide overtime earnings from which overtime rate can be calculated |
| | Number of regular hours worked | HPE0004482-4483, HPE0004504, and HPE0004820 |
| | Number of overtime hours worked | HPE0004482-4483, HPE0004504, and HPE0004820 |
| Request No. 13 | All elements of No. 7 for Named Plaintiffs | HPE0000272-294, HPE0000514-536, HPE0000745-787, and HPE0001383-1403 are Named Plaintiffs' Workday profiles that include their job titles; all other elements of No. 7 are provided in HPE0000299-425, HPE0000537-666, HPE0000788-904, HPE0001051-1284, HPE0001404-1576, HPE0004504, and HPE0004821 which are Named Plaintiffs' paystubs and payroll summary reports |
| Request No. 28 | "Payroll records" including but not limited to "time records" | HPE0004482-4483 and HPE0004820 reflect daily recorded work hours and HPE0004504 includes weekly work hours for Oct. 2017 through 2018 |
| Interr. No. 4 | Dates of all paydays | For 2014 through Sept. 2017, pay date can be calculated from the last day of pay period provided in HPE0004485-4486, HPE0004489-4490, and HPE0004818-4819; For Oct. 2017 through 2018, HPE0004487-4488 and HPE0004504 provide pay dates; HPE0000299-425, HPE0000537-666, HPE0000788-904, HPE0001051-1284, and HPE0001404-1576, which are |

| | | |
|---|---|---|
| | | Named Plaintiffs' paystubs, also reflect pay dates for the Relevant Time Period |
| | First day and last day of pay period | For 2014 through Sept. 2017, HPE0004485-4486, HPE0004489-4490, and HPE0004818-4819 provide last day of pay period (from which first day of pay period can be calculated); For Oct. 2017 through 2018, HPE0004504 provides first date of workweek and last date of pay period, and dates of work can also be calculated from pay date provided in HPE0004487-4488 and HPE0004504; HPE0000299-425, HPE0000537-666, HPE0000788-904, HPE0001051-1284, and HPE0001404-1576, which are Named Plaintiffs' paystubs, also reflect pay period dates for the Relevant Time Period |
| Interr. No. 7 | Date of hire | HPE0001647-2781 |
| | Job title(s) and dates on which job title(s) were held | HPE0001647-2781 |
| | Regular rate of pay and dates in effect | HPE0004504, HPE0004482-4483, and HPE0004820 provide recorded regular work hours and HPE0004485-4490 and HPE0004818-4819 provide regular earnings from which regular rate can be calculated for any given pay period |
| | Job duties/responsibilities | HPE0001637-1646 are job descriptions for the relevant job titles and HPE0004484 and HPE0004817 includes descriptions of tasks performed by the HPE Employees |
| | All employment locations and dates employed there | HPE0001647-2781 |

|  | Date of separation from employment | HPE0001647-2781 |
|---|---|---|
| Interr. No. 6 | All elements of No. 7 for Named Plaintiffs | HPE0000272-294, HPE0000299-425, HPE0000514-666, HPE0000745-905, HPE0001051-1286, HPE0001383-1578, HPE0001583, and HPE0004504 are Workday profiles, paystubs, time reports, payroll summary, and service call data reports for Named Plaintiffs that, together with HPE's description of their job duties, collectively contain all elements of No. 6 |