UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONY CACCAVALE, ANTHONY MANGELLI, DOUGLAS SORBIE, and JAMES BILLUPS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>     v.<br><br>HEWLETT-PACKARD COMPANY a/k/a HP INC., HEWLETT-PACKARD ENTERPRISE COMPANY and UNISYS CORPORATION,<br><br>       Defendants. | 20-CV-00974 (GRB) (JMW) |

**DEFENDANT UNISYS CORPORATION'S
RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING
STANDING AND REQUESTING LEAVE TO AMEND COMPLAINT,
AND IN ACCORDANCE WITH THE COURT'S MARCH 17, 2022
ORDER TO SHOW CAUSE**

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
(212) 351-4500

*Attorneys for Defendant Unisys Corporation*

FIRM:55657360v11

# TABLE OF CONTENTS

**Page No.**

Preliminary Statement ........................................................................................................ 1

Relevant Factual and Procedural Background ...................................................................... 2

    I.    Sorbie Has Repeatedly Stated He Seeks Only Statutory, Not Actual, Damages. ............... 2

        A.    The Complaint and First Amended Complaint Sought Statutory Relief Without any
            Allegation of Concrete Harm. ...................................................................................... 2

        B.    Sorbie's Rule 26 Initial Disclosures Did Not Identify any Damages Beyond
            Statutory Damages. ...................................................................................................... 2

        C.    The Second Amended Complaint Seeks Only Statutory Damages and Fails to Allege
            that Sorbie Suffered an Actual or Concrete Injury. ...................................................... 3

        D.    Sorbie's Discovery Responses Confirm He Seeks Only Statutory Damages. ............ 4

        E.    The Putative Class Members' Objections, and Opt-in Plaintiffs' Responses, to
            Unisys's Discovery Requests Confirm Only Statutory Damages Are at Issue. ........... 4

        F.    Sorbie's Amended Rule 26 Disclosures Make Clear that Only Statutory, Not Actual,
            Damages are Sought. .................................................................................................... 7

    II.    The Scheduling Order Set a Deadline of March 1, 2022 to Amend the Pleadings. ............. 8

Argument .............................................................................................................................. 9

    I.    The Court Should Dismiss the SAC for Lack of Standing. .................................................. 9

        A.    The SAC Fails to Plausibly Allege an Injury in Fact as Article III Requires. ............ 9

        B.    Sorbie's Arguments in Favor of Standing Are Meritless. ........................................ 12

    II.    Sorbie's Request to Amend His Complaint Should Be Rejected. ...................................... 15

        A.    Sorbie Cannot Satisfy Rule 16 Because He Was Not Diligent in Pursuing the
            Proposed Amendment. ............................................................................................... 16

        B.    Even if Sorbie Could Satisfy Rule 16, His Request for Leave Would Fail Under Rule
            15 Because It Is Futile. ............................................................................................... 17

Conclusion .......................................................................................................................... 20

FIRM:55657360v11

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Adler v. Penn Credit Corp.*,
   No. 19-cv-7084 (KMK), 2022 WL 744031 (S.D.N.Y. Mar. 11, 2022)............................19, 20

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011), *cert. denied* 568 U.S. 1229 (2013)............................................18

*ASARCO Inc. v. Kadish*,
   490 U.S. 605 (1989)..........................................................................................................13

*Biggs v. Wilson*,
   1 F.3d 1537 (9th Cir. 1993) ............................................................................................13

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)..........................................................................................................15

*Brooklyn Savings Bank v. O'Neil*,
   324 U.S. 697 (1945)..........................................................................................................13

*Bush v. Optio Sols., LLC*,
   551 F.Supp.3d 66 (2021) .............................................................................................10, 12

*Campbell v. Portfolio Recovery Assocs., LLC*,
   No. 21-CV-1322 (PKC)(RML), 2022 WL 657225 (E.D.N.Y. Mar. 4, 2022) .................10, 19

*In re Capacitors Antitrust Litig.*,
   154 F.Supp.3d 918 (N.D. Cal. 2015) ...............................................................................14

*Caul v. Petco Animal Supplies, Inc.*,
   2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) .............................................................14, 15

*Ciccone v. Cavalry Portfolio Servs.*,
   No. 21-cv-2428 (JS)(AYS), 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) .........................20

*Dress v. Cap. One Bank (USA), N.A.*,
   No. 1:19-CV-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019),
    *aff'd on other grounds*, 849 F. App'x 55 (4th Cir. 2021) ...............................................15, 19

*Ellis v. Chao*,
   336 F.3d 114 (2d Cir. 2003)..............................................................................................17

*In re FDCPA Mailing Vendor Cases*,
    551 F.Supp.3d 57 (E.D.N.Y. 2021) ...............................................................................10, 12

*Grant v. Global Aircraft Dispatch, Inc.*,
    No. 720074/2019, 2021 WL 6777500 (N.Y. Sup. Ct. Apr. 20, 2021),
    *appeal filed,* N.Y. App. Div., 2d Dep't, Docket No. 2021-03202 .........................................15

*Harry v. Total Gas & Power N. Am., Inc.*,
    889 F.3d 104 (2d Cir. 2018)...................................................................................................9

*Harty v. W. Point Realty, Inc.*,
    --- F.4th ---, No. 20-2672-cv, 2022 WL 815685 (2d Cir. Mar. 18, 2022) ..............9, 11, 15, 18

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)...................................................................................................16

*Hunt v. Interactive Medical Specialists, Inc.*,
    No. 1:19CV13, 2019 WL 6528594 (N.D. West Va. Dec. 4, 2019) ........................................13

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
    850 F. App'x 38 (2d Cir. 2021) .......................................................................................15, 16

*Keller v. Schoharie Cty. Dep't of Soc. Servs.*,
    848 F. App'x 38 (2d Cir. 2021) .............................................................................................17

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018)....................................................................................................17

*Luisi v. Portfolio Recovery Assocs., LLC*,
    No. 21-cv-5725, ECF Doc. 14, at * 1 (E.D.N.Y. Nov. 16, 2021)............................................2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................................9, 10

*Maddox v. Bank of New York Mellon Tr. Co.*,
    19 F.4th 58 (2d Cir. 2021) ............................................................................................ *passim*

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)...................................................................................................17

*Nicholas v. Davis*,
    74 F. App'x 131 (2d Cir. 2003) .............................................................................................16

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)...................................................................................................16

*Rana v. Islam*,
    887 F.3d 118 (2d Cir. 2018)...................................................................................................15

*Rogers v. City of Troy*,
148 F.3d 52 (2d Cir. 1998)...................................................................................13

*Rosario v. Icon Burger Acquisition, LLC*,
No. 21-CV-4313 (JS)(ST),
2022 WL 198503 (E.D.N.Y. Jan. 21, 2022) .................................................... *passim*

*Ross v. AXA Equitable Life Ins. Co.*,
680 F. App'x 41 (2d Cir. 2017) .........................................................................14

*Scott v. Whole Foods Mkt. Grp., Inc.*,
18-CV-0086,
2019 WL 1559424 (SJF)(AKT) (E.D.N.Y. Apr. 9, 2019)......................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................9, 10, 13, 20

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ...................................................................................15

*Steel Co. v. Citizens for Better Env.*,
523 U.S. 83 (1998).......................................................................................9

*Taylor v. Fed. Aviation Admin.*,
351 F.Supp.3d 97 (D.D.C. 2018) ....................................................................19

*TransUnion LLC v. Ramirez*,
594 U.S. ---, 141 S.Ct. 2190 (2021)............................................................... *passim*

*Treiber v. Aspen Dental Mgmt., Inc.*,
635 F. App'x 1 (2d Cir. 2016) .........................................................................18

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
175 A.D.3d 1144 (1st Dep't 2019*)* .................................................................7, 13

*Virginia House of Delegates v. Bethune-Hill*,
587 U.S. ---, 139 S. Ct. 1945 (2019)..................................................................9

*Werking v. Andrews*,
526 F. App'x 94 (2d Cir. 2013) .......................................................................16

*Woodworth v. Erie Ins. Co.*,
No. 05-CV-6344 CJS, 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009)....................16

*Yun Hong Hua v. Eight Star Inc.*,
No. 15 CIV. 0275 (BMC), 2015 WL 2354322 (E.D.N.Y. May 15, 2015).............15

iv

*Zlotnick v. Equifax Info. Servs., LLC,*
 --- F. Supp.3d ---, No. 21-CV-7089 (GRB)(JMW),
 2022 WL 351996 (E.D.N.Y. Feb. 3, 2022)................................................................10

**Statutes**

28 U.S.C. § 1332(a), (d)(2) .....................................................................................12

29 U.S.C. § 216 .......................................................................................................15

N.Y. Labor Law § 191 ..............................................................................................7

N.Y. Labor Law § 191(1)(a) ...................................................................................2, 4

N.Y Labor Law § 198(1-a) ........................................................................................7

**Other Authorities**

29 C.F.R. § 778.106 ................................................................................................13

Fed. R. Civ. P. 12(b)(1) ...........................................................................................18

Fed. R. Civ. P. 12(h) .................................................................................................9

Fed. R. Civ. P. 16(b)(4) ...........................................................................................16

Fed. R. Civ. P. 26(a)(1) ..........................................................................................2, 3

## PRELIMINARY STATEMENT

Defendant Unisys Corporation respectfully submits this response to Plaintiffs' Memorandum of Law Regarding Standing and Requesting Leave to Amend Complaint, and in accordance with the Court's March 17, 2022 Order to Show Cause. This matter should be dismissed because the Second Amended Complaint ("SAC") fails to plausibly allege Article III standing for the New York Labor Law and Fair Labor Standards Act claims asserted against Unisys. Plaintiffs plead no "injury in fact" and their numerous discovery responses in which they repeatedly fail to identify any damage beyond a purported "statutory damage" confirm that.

Their request to file a Third Amended Complaint ("TAC") does not change this. Their new conclusory and formulaic allegations of "injury"--that "[a]s a result of the untimely payments, Plaintiff[ ]. . . forewent the opportunity to invest or otherwise use the money to which he was entitled and he was deprived of the time value of his money, including but not limited to, interest"--are not only late, but do not come close to plausibly describing the concrete and particularized actual injury-in-fact required by Article III.[1] (ECF Doc. 176-3 ¶¶ 120, 123, 126, 129.) And, in any event, they are directly contradicted by Plaintiffs' prior verified discovery responses.

Unisys respectfully submits that this case should be dismissed for failure to plausibly allege standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. ---, 141 S.Ct. 2190, 2209–13 (2021);

---

[1] Unisys operated on a two-week pay period starting on Sunday at 12:01 a.m. and ending on the second consecutive Saturday at midnight consisting of two separate workweeks each from Sunday at 12:01 a.m. to the immediately following Saturday at midnight. For regular wages, the pay date for such two-week pay period was the Friday immediately preceding the second Saturday. Using the two-week pay period starting on Sunday at 12:01 a.m. on October 17, 2021 and ending at midnight on Saturday, October 30, 2021, the Unisys employees at issue received a paycheck on Friday, October 29, 2021. This paycheck paid them for regular wages for the workweek starting on Sunday, October 17 and ending Saturday, October 23, and also paid them (early) for the workweek starting Sunday, October 24 and ending Saturday, October 30. Thus, these employees were always paid their regular wages within seven calendar days after the end of the first workweek in the two-week pay period as required by NYLL 191(1)(a), and in fact, were paid one day before the end of the second workweek in the two-week pay period. (*See* ECF Docs. 55 & 73 ¶¶ 66, 82, 134; *see also* ECF Docs. 58, 58-1.) Other items, such as overtime, were paid on the next payday after the end of the applicable pay period, *i.e.*, November 12, 2021 in the above example. (*See* ECF Docs. 55 & 73 ¶¶ 67, 83, 107, 135.)

*Luisi v. Portfolio Recovery Assocs., LLC*, No. 21-cv-5725, ECF Doc. 14, at * 1 (E.D.N.Y. Nov. 16, 2021) (Brown, J.).[2]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I.     Sorbie Has Repeatedly Stated He Seeks Only Statutory, Not Actual, Damages.

#### A.     The Complaint and First Amended Complaint Sought Statutory Relief Without any Allegation of Concrete Harm.

Named Plaintiffs Tony Caccavale and Anthony Mangelli filed this action on February 21, 2020 on behalf of themselves and a putative class of Field Service Engineers employed by Unisys and Defendants Hewlett-Packard Company and Hewlett-Packard Enterprise Company in New York. (ECF Doc. 1 ¶¶ 15, 33, 43, 55, 65.) Plaintiffs alleged that Unisys failed to pay them their wages within one week of earning them, as purportedly required by NYLL § 191(1)(a). (*Id.* ¶¶ 71-80.) They further alleged that "[d]ue to [Unisys'] violations of the NYLL, Plaintiffs and the members of the Class are entitled to recover from [Unisys] liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest." (*Id.* ¶ 78.) As relevant here, they sought no other type of relief.

Plaintiffs amended their Complaint on April 27, 2020 to add Sorbie as a named Plaintiff. (ECF Doc. 7.)[3] Their theory of liability and alleged damages remained substantively unchanged. (*Id.* ¶¶ 81–91.)

#### B.     Sorbie's Rule 26 Initial Disclosures Did Not Identify any Damages Beyond Statutory Damages.

On July 7, 2020, Plaintiffs served their Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1). (Ex. A.)[4] Plaintiffs referred to their damages solely as "late wages/liquidated damages, .

---

[2] Unisys incorporates by reference all applicable factual and legal arguments made by the other Defendants herein.

[3] Plaintiffs filed a corrected First Amended Complaint ("FAC") on May 5, 2020, but the pertinent allegations are identical to the allegations set forth in the original FAC. (*Compare* ECF Doc. 7, *with* ECF Doc. 11.)

[4] Exhibits referenced herein are attached to the March 29, 2022 Declaration of Kenneth W. DiGia ("DiGia Decl.").

. . interest, and attorneys' fees and costs." (*Id.* at p.3.) These disclosures failed to identify any actual injury to Sorbie based on the alleged late payment of wages, and identified no other type of damage Plaintiffs allegedly suffered.[5] (*See id.*)

**C.     The Second Amended Complaint Seeks Only Statutory Damages and Fails to Allege that Sorbie Suffered an Actual or Concrete Injury.**

On December 17, 2020, Plaintiffs filed their SAC, this time to add named Plaintiff James Billups and to assert a claim against Unisys under the FLSA for untimely payment of overtime wages on behalf of Sorbie and a putative collective.[6] (ECF Doc. 55 ¶¶ 1, 99–112, 138–46.) Under the SAC, as relevant here, the only relief Sorbie seeks against Unisys for its alleged violation of the NYLL's timeliness requirement is "liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest." (*Id.* ¶ 137.) He seeks nearly identical relief on his claim that Unisys violated the FLSA's so-called prompt-payment requirement, specifically, "liquidated damages, interest, attorneys' fees, costs, and other compensation pursuant to the FLSA." (*Id.* ¶ 146.) Finally, the SAC's Prayer for Relief again confirms that the *only* relief Sorbie seeks against Unisys is not intended to compensate him for any harm he actually suffered but rather consists solely of statutory damages in the form of "liquidated damages, interest, and attorneys' fees, costs and disbursements." (*Id.* at Prayer for Relief, ¶¶ (f)–(g); *see also* Prayer for Relief, ¶¶ (i), (k)-(m).)

---

[5] Although there are four named Plaintiffs, only one, Sorbie, is in fact asserting claims against Unisys. Caccavale, Mangelli, and Billups signed agreements waiving all claims against Unisys when their employment ended in March 2019. (ECF Doc. 55 ¶¶ 54, 56, 60; ECF Docs. 29 & 31.) Plaintiffs' counsel confirmed that, in light of this, they were willing to withdraw their claims against Unisys. (See ECF Doc. 31 at p.2; July 15, 2020 Tr. at 22:4–15; Jan. 12, 2021 Tr. at 23–24.) Consistent with this, the two claims asserted against Unisys in the SAC (the Third and Fourth Causes of Action) are captioned as brought by Sorbie. (ECF Doc. 55 at 17–18.) And none of the three other named Plaintiffs opted into the FLSA collective action by the deadline. (ECF Docs. 83, 92–94, 96–99, 101–26, 163; DiGia Decl. ¶ 8.) For ease of reference, Unisys will use the term Plaintiffs, although only Sorbie is asserting claims against Unisys.

[6] There is no allegation of unpaid overtime; rather, the FLSA claim involves only whether overtime was timely paid.

**D.      Sorbie's Discovery Responses Confirm He Seeks Only Statutory Damages.**

Unisys's First Set of Interrogatories asked "[w]ith respect to the claims for damages contained in the Complaint, state the nature, type and amount of damages sought, the complete factual basis and method of calculation of such damages, and the identity of all documents or communications which relate to your claim for damages."  (Ex. B at p.5.) Sorbie's May 2021 verified response focused solely on the alleged delayed payment of wages and identified no other damages:

> . . . Unisys violated NYLL § 191(1)(a) by, among other things, not paying Plaintiff his earned compensation on a weekly basis. Plaintiff calculates his damages for this cause of action (through April 3, 2021) as $118,075.50 in **liquidated damages plus interest and attorneys' fees, costs and disbursements**. The foregoing figure was calculated by taking all of Plaintiff's regular compensation from the beginning of his tenure with Unisys through April 3, 2021, dividing same by half, and adding to same the balance of Plaintiff's compensation, all of which was paid in violation of NYLL § 191(1)(a). . . . Plaintiff calculates his damages for [the FLSA] cause of action (through April 3, 2021) as $8,546.03 **in liquidated damages plus interest and attorneys' fees, costs and disbursements**. The foregoing figure was calculated by adding up all of Plaintiff's overtime from the beginning of his tenure with Unisys through April 3, 2021 since all of it was paid untimely in violation of the FLSA.

(*Id.* (emphasis added).)

**E.      The Putative Class Members' Objections, and Opt-in Plaintiffs' Responses, to Unisys's Discovery Requests Confirm Only Statutory Damages Are at Issue.**

Unisys served interrogatories and document requests on the putative class members. Although objections were asserted by the putative class members on September 10, 2021 in response to each interrogatory and document request, those objections further confirm the absence of any actual injury to Sorbie and the putative class. (Exs. C & D.) On November 24, 29, and 30, 2021, each FLSA opt-in Plaintiff provided substantive responses to the interrogatories and

4

document requests propounded on the putative class members.[7] (Exs. E & F.) They each confirmed

that their damages were based on nothing more than the alleged late payment of wages.

- **Interrogatory No. 1** asked "[w]ith respect to the claims for damages contained in the Complaint, state the nature, type and amount of damages sought, the complete factual basis and method of calculation of such damages, and the identity of all documents or communications which relate to your claim(s) for damages." (Ex. C, Interrogatory No. 1 & Ex. E, Interrogatory No. 1.)

  **Putative Class Member Responses**:

  Plaintiff objected "on the basis that the computation of damages is readily available from the Defendants' own payroll records . . . ." Plaintiff went on to assert that "the information sought is not needed and poses an unnecessary burden on class members. Furthermore, to the extent that the information may be obtained from a review of the Defendant's payroll records (which it can be), the Plaintiffs hereby direct the Defendant to its own payroll database(s)." (Ex. C, Interrogatory No. 1 response.)

  Plaintiff concluded by asserting that "[t]he request is not proportional to the needs of the case considering . . . the availability of the information requested from a more convenient source, namely, Defendant Unisys's business records." Plaintiffs said nothing about any other source of damages. (*Id.*)

  **Opt in Plaintiff Responses:**

  After interposing a variety of objections, each opt-in Plaintiff stated: "Collective Member objects to Interrogatory No. 1 on the basis that the computation of damages is readily available from the Defendants' own payroll records. . . ." Each opt-in Plaintiff further asserted that "to the extent that the information may be obtained from a review of the Defendant's payroll (which it can), Collective Member hereby directs the Defendant to its own payroll database(s) and record(s)." Based on those records, each opt-in Plaintiff then calculated the amount he or she claimed was owed by Unisys based on the amount of wages claimed to have been paid late.[8] (Ex. E, Interrogatory No. 1 response.)

- **Document Request No. 3** sought "[a]ll documents, including pay statement/stubs obtained by you, upon which the amount of any alleged claim of unpaid wages, including overtime and/or any other alleged damages, including liquidated damages, is

---

[7] There were then 33 opt-in Plaintiffs, not counting named Plaintiff Sorbie. (ECF Docs. 92–94, 96-99, 101–126.) Twenty-eight responded. Five did not. (DiGia Decl., ¶ 9.)

[8] The response quoted is from Adam Dunn's November 26, 2021 Verified Responses to Defendant Unisys Corp.'s Interrogatories. The responses from the other opt-in Plaintiffs are identical in this regard and are all likewise verified. (DiGia Decl., ¶¶ 12, 13.) Those verifications state that each responding opt-in Plaintiff had read the answers to the interrogatories and "declare[d] under penalty of perjury" that his interrogatory responses were "true and correct." (*See, e.g.*, Ex. E at last page.)

or may be based, including all documents underlying any purported summary or calculation of claimed damages." (Ex. D at pp.6-7.)

**Putative Class Member Responses**:

Plaintiff objected on the basis that "[t]he request is unduly burdensome to class members, as the Defendant is in possession of the records it seeks." (Ex. D at pp.6-7.)

- **Document Request No. 16** sought "[a]ll documents demonstrating how, if at all, you were damaged by any alleged failure to pay wages within a certain frequency." (Ex. D at pp.12–13; Ex. F, Request No. 16.)

  **Putative Class Member Responses**:

  Plaintiff objected on the basis that "[t]he request is irrelevant, as the damages sought are statutory damages, attorneys' fees and costs imposed by law." (Ex. D at pp.12–13.)

  **Opt in Plaintiff Responses:**

  Each opt-in Plaintiff objected and did not produce any documents asserting instead that: "[t]he request is improper. The damages sought are statutory damages required by law and no inquiry beyond that is necessary." (Ex. F, Request No. 16 response.)

- **Document Request No. 38** sought "[a]ll documents concerning the allegation in Paragraph 110 of the Complaint alleging 'Defendant Unisys' conduct was and is willful and in bad faith and has caused significant damages to Plaintiffs and the Late Paid Overtime Collective.'" (Ex. D at pp. 27-28; Ex. F, Request No. 38.)

  **Putative Class Member Responses**:

  Plaintiff objected on a variety of grounds and asserted (again): "[t]he request is improper because the Plaintiffs are seeking statutory damages." (Ex. D at pp.27–28.)

  **Opt in Plaintiff Responses:**

  Each opt-in Plaintiff asserted that "[t]he request is improper because the Plaintiffs are seeking statutory damages." (Ex. F, Request No. 38 response.) While each opt-in Plaintiff produced certain documents in response to this Request, those documents are limited to several New York Wage Theft Prevention Act forms, which reflect, among other things, Unisys's regular payday, and Unisys paystubs, thus confirming the statutory nature of the damages they seek. (DiGia Decl., ¶ 15.)

**F.      Sorbie's Amended Rule 26 Disclosures Make Clear that Only Statutory, Not Actual, Damages are Sought.**

In Sorbie's Amended Rule 26 Disclosures served on January 18, 2022, he again confirmed that the only damages he, the putative class members, and the collective members seek are statutory:

> Plaintiff Douglas Sorbie individually and on behalf of similarly situated individuals asserted claims against Unisys Corporation for violation of NYLL 191(1)(a) and the prompt payment requirement of the Fair Labor Standards Act. . . . . In connection with such violations Plaintiff Sorbie and the putative class members are entitled to ***any remaining underpayment of wages,[9] liquidated damages in the amount of all underpaid wages, prejudgment interest, and attorneys' fees, costs and disbursements***. Plaintiff Sorbie and the class members calculate their underpayment by looking at the amount of wages there were due on a given day and determining whether same were paid. Plaintiff Sorbie and the putative class members are entitled to liquidated damages in an amount that is equivalent to Unisys' underpayment of wages. Plaintiff Sorbie and the class members calculate their pre-judgment interest as 9% per annum running from the date of each underpayment. Plaintiffs and the class members calculate their attorneys' fees, costs, and disbursements as the amount of same incurred in connection with the prosecution of this matter.
>
> Plaintiff Sorbie also asserted claims on behalf of himself and similarly situated individuals for violation of the prompt payment requirement of the FLSA. In particular, Plaintiff Sorbie and the 34 members of the collective allege that Unisys failed to timely pay them their overtime pay. In connection with such violations Plaintiff Sorbie and the members of the collective are entitled to ***any remaining underpayment of overtime, liquidated damages in the amount of all late paid overtime, prejudgment interest, and attorneys' fees, costs and disbursements***. Plaintiff Sorbie and the collective members calculate their underpayment by looking at the

---

[9] Although these disclosures refer to "underpayment of wages," the SAC does not contain a claim for nonpayment or underpayment of wages, nor could it. (*See generally* SAC.) This case has always been about the timing, rather than the amount, of wages paid to Sorbie and the members of the putative class and collective. (As discussed above, regular wages were always paid within seven calendar days of the end of the workweek in which such wages were earned.) The term "underpayment" is simply a term of art used by Sorbie to bolster the viability of his claim that the late payment of overtime wages in full somehow constitutes an "underpayment" so as to fit within the statutory language of NYLL §§ 191 and 198(1-a). *See, e.g.*, *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1145 (1st Dep't 2019*)* ("[T]he term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1) but pays all wages due before the commencement of an action.").

amount of wages there were due on a given day and determining whether same were paid. Plaintiff Sorbie and the collective members are entitled to liquidated damages in the amount Unisys paid late in violation of the prompt payment requirement of the FLSA. Plaintiff Sorbie and the collective members calculate their pre-judgment interest as the maximum legal amount permitted by the Court in its discretion. Plaintiffs and the collective members calculate their attorneys' fees, costs, and disbursements as the amount of same incurred in connection with the prosecution of this matter.

(Ex. G at pp. 7–8 (emphasis added); *see also id.* at p. 9.) All told, Sorbie, the putative class members, and every responding opt-in Plaintiff have repeatedly in three separate Complaints (and confirmed in numerous discovery devices) failed to identify any factual assertion "from which the Court could plausibly conclude that Plaintiff actually suffered the sort of harm that would entitle him to relief" or that they "forewent the opportunity to invest or otherwise use the money to which he was legally entitled." *See Rosario v. Icon Burger Acquisition, LLC*, No. 21-CV-4313 (JS)(ST), 2022 WL 198503, at \*3 (E.D.N.Y. Jan. 21, 2022).

## II.    The Scheduling Order Set a Deadline of March 1, 2022 to Amend the Pleadings.

On November 23, 2021, the parties appeared before Magistrate Judge Wicks. The Court asked if Plaintiffs intended to further amend the pleadings. (Nov. 23, 2021 Tr. at p. 123.) Plaintiffs' counsel responded "[a]t this point, we don't unless something drastic happens in discovery and we find something, you know." (*Id.*) The Court set a December 31, 2021 deadline to amend the pleadings. (*Id.*) Sorbie requested an extension of that deadline on December 29, 2021. (ECF Doc. 161.) The Court extended the deadline to March 1, 2022. (Text Order (Jan. 3, 2022).)[10]

---

[10] That deadline was extended again to March 15, 2022, but only for the limited purpose of "amend[ing] the Complaint in regard to Daniel Johnson." (ECF Doc. 169.) The relevant deadline is March 1.

**ARGUMENT**

I.    **The Court Should Dismiss the SAC for Lack of Standing.**

    A.  **The SAC Fails to Plausibly Allege an Injury in Fact as Article III Requires.**

        "For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision."[11] *Harty v. W. Point Realty, Inc.*, --- F.4th ---, No. 20-2672-cv, 2022 WL 815685, at *3 (2d Cir. Mar. 18, 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Because these elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," the plaintiff must support "each element . . . in the same way as any other matter on which [he] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also TransUnion*, 141 S.Ct. at 2207–08 ("[T]he plaintiffs bear the burden of demonstrating that they have standing."). Thus, a plaintiff's complaint "must 'plead enough facts to make it plausible that [he] did indeed suffer the sort of injury that would entitle [him] to relief.'" *Maddox v. Bank of New York Mellon Tr. Co.*, 19 F.4th 58, 65–66 (2d Cir. 2021) (quoting *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (named plaintiff in class action must show injury).

        "[T]he '[f]irst and foremost' of standing's three elements" is the injury-in-fact requirement. *Spokeo*, 578 U.S. at 338–39 (quoting *Steel Co. v. Citizens for Better Env.*, 523 U.S. 83, 103 (1998)). To satisfy this requirement, a plaintiff must establish a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal

---

[11] "As a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. ---, 139 S. Ct. 1945, 1951 (2019); *see also* Fed. R. Civ. P. 12(h).

quotation marks and citations omitted). To be "particularized," "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. And to be "concrete," the injury "must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340.

In *Spokeo*, the Supreme Court rejected the proposition "that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341. It further found that a "bare procedural violation" of a statute that "result[s] in no harm" is insufficient to satisfy the injury-in-fact element of standing. *Id.* at 342. It elaborated on these principles in *TransUnion*:

> For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court . . . Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.

141 S.Ct. at 2205 (internal quotation marks and citations omitted), *quoted in In re FDCPA Mailing Vendor Cases*, 551 F.Supp.3d 57, 62 (E.D.N.Y. 2021) (Brown, J.); *Campbell v. Portfolio Recovery Assocs., LLC*, No. 21-CV-1322 (PKC)(RML), 2022 WL 657225, at *1 (E.D.N.Y. Mar. 4, 2022) ("[A] mere request for damages, based on a procedural statutory violation and without factual allegations that confer standing, is not enough."); *Zlotnick v. Equifax Info. Servs., LLC*, --- F. Supp.3d ---, No. 21-CV-7089 (GRB)(JMW), 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (Brown, J.) ("In 2021, the Supreme Court . . . again emphasized that the absence of any allegation of a concrete harm forecloses federal standing." (citing *TransUnion*, 141 S.Ct. at 2200)); *Bush v.*

*Optio Sols., LLC*, 551 F.Supp.3d 66, 70 (2021) (Brown, J.) ("Furthermore, 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.' . . . The Court determined that 'bare procedural violation[s], divorced from any concrete harm . . . do[ ] not suffice for Article III standing.'" (quoting *TransUnion*, 141 S.Ct. at 2207–08, 2213)).

The SAC alleges nothing more than bare procedural violations devoid of any concrete, actual harm. Rather, under the SAC, Sorbie seeks to recover only statutory amounts under the NYLL and FLSA, such as liquidated damages, attorneys' fees and costs, and pre-and post-judgment interest, based solely on the alleged late payment of wages. (*See* ECF Doc 55 ¶¶ 137, 146; *see also id.*, at Prayer for Relief ¶¶ (f)–(g), (i), (k), (m).) This is insufficient to satisfy Article III's injury-in-fact requirement.

In *TransUnion*, the Supreme Court held that class members whose credit reports contained potentially derogatory information lacked standing to pursue "statutory damages" under the Fair Credit Reporting Act because the defendant did not disseminate their credit reports to anyone, and therefore, they never suffered a concrete harm. 141 S.Ct. at 2209–13.

Applying *TransUnion*, the Second Circuit held in *Maddox* that plaintiffs failed to allege standing where they sought to recover a "cash penalty" for a bank's failure to record a mortgage satisfaction within the time required by New York's real-property laws without plausibly alleging that they suffered any concrete harm. 19 F.4th at 64.

Similarly, in *Harty*, the Second Circuit recently held that a plaintiff's allegation that a hotel's website discriminated against disabled individuals in violation of the Americans with Disabilities Act was insufficient for standing purposes because he "asserted no plans to visit [the hotel] or the surrounding area" and thus could not "allege that his ability to travel was hampered by [the hotel's] website in a way that caused him concrete harm." 2022 WL 815685, at *4.

11

Finally in *Rosario*, the plaintiff sought "liquidated damages, interest, and attorneys' fees" because of the defendant's alleged failure "to pay him weekly as required by the NYLL," just as Sorbie does here. *See* 2022 WL 198503, at *1, *3. And like Sorbie's SAC, the plaintiff's complaint did not allege that he "forewent the opportunity to invest or otherwise use the money to which he was legally entitled." *See id.* at *3. Based on the absence of such allegations, and as required by *TransUnion* and *Maddox*, the court held that "Plaintiff's barebones Amended Complaint contain[ed] no facts from which the Court could plausibly conclude that Plaintiff actually suffered the sort of harm that would entitle him to relief" and did not satisfy Article III's injury-in-fact requirement *Id.* at *3. As this case involves substantially the same claims and allegations as *Rosario*, this Court should follow that decision and dismiss Sorbie's claims against Unisys.[12]

**B.      Sorbie's Arguments in Favor of Standing Are Meritless.**

First, Sorbie ostensibly argues that the Court should apply a different standing analysis to his FLSA claim. (ECF Doc. 175 at 9–10.) In support of that argument, he contends that "*Rosario* says nothing about FLSA claims."[13] (*Id.* at 10.) Article III requires a plaintiff to establish standing, regardless of whether he asserts a state or federal cause of action. *See Maddox*, 19 F.4th at 64 ("We need not decide whether state legislatures have the same power Congress enjoys to recognize or create legally protectable [sic] interests whose invasion gives rise to Article III standing; *TransUnion* determined that Congress itself enjoys no such power."); *In re FDCPA Mailing*

---

[12] Plaintiffs' assertions "that they have been damaged by Defendants' actions, that they lack the financial resources to recover the damages for Defendants' underpayment of their wages, that they are entitled to interest" are conclusory and lack factual support.  (ECF Doc. 175 at 1-5, 7-8.) Additionally, lacking financial support to pursue statutory damages is not harm; it is a circumstance addressed by the NYLL's and FLSA's fee-shifting provisions. Finally, Plaintiffs' claim they were "damaged" in certain amounts (which just so happen to be the minimum jurisdictional amounts under 28 U.S.C. § 1332(a), (d)(2)) does not explain *how* they were supposedly damaged, as required for standing.

[13] In *Rosario*, the plaintiff did not assert an FLSA claim. *See* No. 2:21-CV-04313, ECF Doc. 10 (First Amended Class Action Complaint) (Sept. 30, 2021).

*Vendor Cases*, 551 F.Supp.3d at 66 (dismissing claims brought under federal statute for lack of Article III standing).

Sorbie cites *Brooklyn Savings Bank v. O'Neil* for why Congress authorized the recovery of liquidated damages under the FLSA. *See* 324 U.S. 697, 707 (1945). However, Sorbie does not—and cannot—show that Congress's decision to make liquidated damages available provides him with standing. *See TransUnion*, 141 S.Ct. at 2206 ("An uninjured plaintiff who sues [in the absence of concrete harm] is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." (quoting *Spokeo*, 578 U.S. at 345 (Thomas, J., concurring))). Thus, Sorbie's FLSA claims are subject to the same analysis as his NYLL claims and, like those claims, should be dismissed under *TransUnion*, *Rosario*, and others.[14]

Sorbie then cites *Vega* to fend off dismissal.[15] *Vega* does not apply here. It did not address, and was not required to address, the requirements of Article III. *See generally Vega*, 175 A.D.3d 1144; *see also Maddox*, 19 F.4th at 66 n. 4 ("'[S]tate courts are not bound to adhere to federal standing requirements.'" (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989))).

---

[14] *Hunt v. Interactive Medical Specialists, Inc.,* No. 1:19CV13, 2019 WL 6528594 (N.D. West Va. Dec. 4, 2019) is distinguishable because it dealt with the alleged late payment of minimum wages, not overtime amounts which is at issue regarding Unisys. Courts have construed the FLSA as requiring the payment of minimum wages "on the employee's regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993). Payment of overtime under the FLSA is different. *See* 29 C.F.R. § 778.106 ("Payment [of overtime] may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.") Moreover, in *Hunt*, a decision which predates *TransUnion*, the parties did not dispute the existence of an injury in fact. 2019 WL 6528594, at *1. The same is true of *Rogers v. City of Troy*, 148 F.3d 52 (2d Cir. 1998) in which there was no challenge to Article III standing.

[15] While Sorbie cites *Vega* for the proposition that "the purpose of the frequency of payment statute is 'to protect the manual worker who [is] dependent on the 'wages' he receive[s] weekly for his existence,'" he ignores the fact that his regular wages were always paid within seven calendar days of the end of the workweek in which they were earned, thus further diluting any purported claim of damage. (ECF Doc. 175 at 8.) Nor does *Scott v. Whole Foods Mkt. Grp., Inc.*, 18-CV-0086, 2019 WL 1559424 (SJF)(AKT) (E.D.N.Y. Apr. 9, 2019) mandate a different result. That decision predated *TransUnion* and did not address Article III standing.

13

Finally, Sorbie relies on *Caul v. Petco Animal Supplies, Inc.*, which held that plaintiffs had standing to pursue liquidated damages under the NYLL for alleged late payments. *See* No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021). Respectfully, *Caul* is unpersuasive because it misconstrues both the requirements of Article III and a plaintiff's burden to plead facts plausibly suggesting that he satisfies those requirements.

As a preliminary matter, the holding in *Caul* is based on the premise that the NYLL, as a state law, is entitled to a more lenient standing analysis than federal laws. *See id.* at *4 ("Sections 191 and 198 are state enactments, not federal ones. Defendants point to no authority for the proposition that state causes of action should be construed narrowly to ensure that federal courts can adjudicate them."). The Second Circuit rejected that notion both before and after *Caul*, holding that a state enactment can alter constitutional minima no more than a federal law can. *See Maddox*, 19 F.4th at 62–66 (applying *TransUnion* to claims brought under New York's real-property laws and dismissing them for lack of standing); *Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41, 44 (2d Cir. 2017) (rejecting argument that violation of New York's insurance law was "sufficient, by itself, to constitute injury in fact" under Article III).[16]

Moreover, *Caul* allowed a claim to proceed beyond the pleadings stage without a plausible allegation of harm. Rather, it assumed that a "[t]emporary deprivation of money" (a legal violation) was sufficient to establish injury-in-fact without an allegation of how that legal violation impacted the plaintiff, if at all. *See Caul*, 2021 WL 4407856, at *4. In that regard, Unisys respectfully submits that it is inconsistent with binding precedent requiring plaintiffs to plausibly allege a

---

[16] *See also In re Capacitors Antitrust Litig.*, 154 F.Supp.3d 918, 925–26 (N.D. Cal. 2015) ("[E]ven when a plaintiff asserts a state claim . . . , the plaintiff has no ability to pursue that claim in federal court until and unless the plaintiff is found to possess Article III standing for the state claim. It is of no moment that a state statute might purport to expressly give the plaintiff a right to sue; a plaintiff who clearly has standing under a state statute but not under the requirements of Article III cannot proceed with that claim in federal court.").

concrete harm beyond a mere statutory violation. *See Maddox*, 19 F.4th at 65–66; *Harty*, 2022 WL 815685, at *4. As *Rosario* recognized, many courts applying this pleading requirement to late-payment cases have correctly required a plaintiff to allege specific plans to invest allegedly late-paid funds. *See* 2022 WL 198503, at *3 (collecting cases); *cf. also Dress v. Cap. One Bank (USA), N.A.*, No. 1:19-CV-00343, 2019 WL 3451304, at *3 (E.D. Va. July 30, 2019) ("Plaintiff . . . alleges only that she has 'sustained damages as a result of [defendant's]' conduct. Plaintiff . . . never alleges nor implies that she would have invested the $21 to increase its value if it had not been charged as interest."), *aff'd on other grounds*, 849 F. App'x 55 (4th Cir. 2021). For these reasons, Unisys respectfully submits that *Rosario*'s reasoning is more persuasive than *Caul*'s.

## II.   Sorbie's Request to Amend His Complaint Should Be Rejected.

Sorbie requests leave to file a TAC which, he contends, would address Article III's requirements.[17] Where, as here, "a party's motion to amend would require altering a court's scheduling order, the party 'must satisfy *both* Federal Rules of Civil Procedure 15 and 16 to be permitted to amend.'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir.

---

[17] To the extent permission to replead is granted, Unisys reserves the right to move to dismiss the TAC (or any other amended complaint) on any appropriate grounds, including that the TAC fails to state a plausible claim for relief, and to seek limited jurisdictional discovery as to the relevant allegations. *See, e.g., Grant v. Global Aircraft Dispatch, Inc.*, No. 720074/2019, 2021 WL 6777500, at *3 (N.Y. Sup. Ct. Apr. 20, 2021) ("[P]laintiff does not have a private right of action under NYLL § 198(1-a) for a frequency of pay violation of NYLL § 191(1)(a)(i) as there has been no claim for unpaid wages in this action."), *appeal filed,* N.Y. App. Div., 2d Dep't, Docket No. 2021-03202. Also, to the extent Sorbie were to somehow claim foregone interest on each allegedly late overtime payment until that payment was made, clearly a *de minimis* amount, awarding liquidated damages in the amount of 100% of the allegedly late-paid overtime wages serves no purpose other than to punish Unisys. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (recognizing deterrent purpose of liquidated damages under NYLL and FLSA); *Yun Hong Hua v. Eight Star Inc.*, No. 15 CIV. 0275 (BMC), 2015 WL 2354322, at *3 (E.D.N.Y. May 15, 2015) (recognizing punitive nature of liquidated damages under the FLSA and NYLL, particularly where alleged delay in payment is brief); *see also* 29 U.S.C. § 216 (providing for liquidated damages under statutory section entitled "Penalties"). Because such an award is completely out of proportion to any potential harm Sorbie allegedly suffered, it violates the Due Process Clauses of the Fifth and Fourteenth Amendments. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (citation omitted.).

2021) (quoting *Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017)) (emphasis in original). Sorbie cannot. The Court should deny his request.[18]

> ### A. Sorbie Cannot Satisfy Rule 16 Because He Was Not Diligent in Pursuing the Proposed Amendment.

Under Rule 16, "[a] schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). To show good cause, the moving party must show that it acted "diligen[tly]." *Int'l Techs. Mktg.*, 850 F. App'x at 43 (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Thus, a failure to show good cause is fatal to a party's request to modify the scheduling order, even in the absence of prejudice to the non-moving party. *See id.*; *see also, e.g.*, *Woodworth v. Erie Ins. Co.*, No. 05-CV-6344 CJS, 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009) (denying motion to amend in absence of prejudice because plaintiff did not pursue amendment diligently).

Three court opinions undoubtedly put Sorbie on notice of the deficiencies in his SAC long before the March 1, 2022 deadline to seek leave to amend. The Supreme Court decided *TransUnion* on June 25, 2021. *See* 141 S.Ct. 2190. The Second Circuit decided *Maddox* on November 17, 2021. *See* 19 F.4th 58. Judge Seybert issued *Rosario* on January 21, 2022. *See* 2022 WL 198503. Sorbie waited until now, approximately nine months after *TransUnion*, four months after *Maddox*, and two months after *Rosario*, to file his motion. He has offered no explanation therefor. He cannot establish good cause under Rule 16. *See, e.g.*, *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (two month delay warranted denial of motion for leave to amend); *Nicholas v. Davis*, 74 F. App'x 131, 134 (2d Cir. 2003) (three month delay); *Woodworth*, 2009

---

[18] While Sorbie correctly notes that the *Rosario* court allowed the plaintiffs to file an amended complaint addressing Article III's injury-in-fact requirement, this Court should not do so for two reasons. (ECF Doc. 175 at 16.) First, in *Rosario*, the deadline to amend the pleadings had not yet expired when the court permitted the plaintiffs to replead on January 21, 2022. *See* No. 2:21-CV-04313, ECF Doc. 18 (Scheduling Order) (Nov. 22, 2021) (setting deadline of February 16, 2022 to amend pleadings). Second, unlike here where Sorbie, the putative class members, and opt-in Plaintiffs have described their alleged damages in multiple places without *any* reference to concrete harm and now seek to disavow those responses in their TAC, the plaintiffs in *Rosario* apparently had not taken contradictory action foreclosing their ability to plausibly allege concrete harm.

WL 3671930, at *3 (denying motion for leave to amend to address effect of recent decision because plaintiff waited eleven months after decision was issued to file his motion).[19]

**B.      Even if Sorbie Could Satisfy Rule 16, His Request for Leave Would Fail Under Rule 15 Because It Is Futile.**

"'Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend.'" *Keller v. Schoharie Cty. Dep't of Soc. Servs.*, 848 F. App'x 38, 39 (2d Cir. 2021) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "'[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.'" *Kim v. Kimm*, 884 F.3d 98, 105–06 (2d Cir. 2018) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). A proposed amendment is futile where it "could not survive a motion to dismiss." *Keller*, 848 F. App'x at 39. Here, Sorbie's proposed amendment could not withstand such a motion.

First, as Unisys demonstrated above, the discovery devices, which include sworn answers to interrogatories, unequivocally establish that Plaintiffs seek only statutory damages and did not suffer any concrete harm (such as foregoing specific plans to invest their paychecks during an alleged one-week delay in payment of overtime wages). Any allegation that they suffered a concrete harm is not only implausible, but false. *See Maddox*, 19 F.4th at 66 (rejecting standing argument based on "implausible" assertion in plaintiff's affidavit). Sorbie's proposed amendment

---

[19] At minimum, Sorbie's request to amend the SAC to add the allegation that "Unisys did not pay Plaintiff Sorbie his final paycheck in the amount of approximately $1,600-$2,000" should be denied.  (ECF Doc. 176-3 ¶ 59; *see also id*., ¶¶ 129, 162, Prayer for Relief, ¶ (f).) First, it is demonstrably false. Sorbie's termination of employment and his last day on Unisys's payroll was December 23, 2021.  (Ex. H.) On that day, December 23, 2021, he was paid for the pay period December 12, 2021 through December 25, 2021. (DiGia Decl. ¶ 18: *see also* Ex. I.) Second, even if Sorbie had in fact not been paid, he certainly would have been aware of that well in advance of the March 1, 2022 deadline to amend his pleadings. This is nothing more than another after-the-fact (erroneous) assertion designed to create standing with respect to his claim for untimely payment of wages. That, however, would not work. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 141 S. Ct. at 2208 (collecting cases).

could not survive a Rule 12(b)(1) motion to dismiss for lack of standing and is futile. *See Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 4 (2d Cir. 2016) (finding amendment futile where plaintiffs failed "to show how amendment could have demonstrated a cognizable injury sufficient to support Article III standing").

Second, even if the TAC's allegations of harm did not contradict numerous prior statements, the TAC fails to allege a plausible injury-in-fact on its face, nor does it plausibly allege a remedy that would redress the newly claimed injury. All Sorbie has alleged is that he "forwent the opportunity to invest or otherwise use the money to which he was entitled and he was deprived of the time value of his money, including but not limited to, interest." (ECF Doc. 176-3 ¶ 129; *see also id.*, ¶¶ 132, 135.) No additional allegations are provided to detail the nature or extent of this claimed lost "time value of . . . money." He has not identified a specific opportunity to invest that he passed up, the type of investment he planned to make (e.g., invest in equities or purchase debt instruments), the rate of return he expected, or the financial institution, fund, or vehicle, if any, with which he planned to invest. He has not sought to quantify this amount in any way. Indeed, Sorbie's claim of damage is even more attenuated because Sorbie was always paid his regular wages timely and for that matter was always paid all his wages. He does not allege that there was some opportunity available to him that he forewent because he allegedly received his *overtime* wages later than he claims required, assuming he even worked overtime hours *and* was owed overtime wages at the time the alleged investment opportunity presented itself. Bald, conclusory allegations of harm are insufficient to plausibly allege standing. *See Harty*, 2022 WL 815685, at *4; *Maddox*, 19 F.4th at 65; *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not 'credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686, (2009))), *cert.*

*denied* 568 U.S. 1229 (2013); *Campbell*, 2022 WL 657225, at *2 ("[V]ague claims of 'attempts to get financing' and 'negative impact,' without an allegation that such damage resulted in a materialized injury, or a sufficiently imminent and substantial risk of injury, are insufficient to confer standing.").

This is particularly true where, as here, the only purported harm is the lost time value of money. *See, e.g.*, *Adler v. Penn Credit Corp.*, No. 19-cv-7084 (KMK), 2022 WL 744031, at *7, *10 (S.D.N.Y. Mar. 11, 2022) ("District courts in the Second Circuit applying *TransUnion* and *Maddox*, tellingly, demand concrete examples of harm;" accordingly a plaintiff claiming lost use of money-type injuries must allege what "specific plans [he had] to invest his money"); *Dress*, 2019 WL 3451304, at *3 (holding "conclusory allegations that the plaintiff was deprived of the use of" money insufficient "to establish injury in fact even at the motion to dismiss stage"); *Taylor v. Fed. Aviation Admin.*, 351 F.Supp.3d 97, 103 (D.D.C. 2018) (rejecting plaintiff's time-value-of-money theory of standing where he did "not allege *any* facts to suggest that if he had not paid the $5 registration fee[,] he would have invested the $5 in some way to increase its value" and "offer[ed] only generalizations that he was 'deprived ... of [the] use of those funds' and is entitled 'to be compensated for his lost use of funds'" because "[s]uch conclusory proclamations are not the kind of clear allegations of fact necessary to establish an injury in fact, even at the motion to dismiss stage" (citations omitted; emphasis in original)).[20]

As Judge Seybert noted, the Supreme Court's recent *TransUnion* decision "substantially and materially change[s] a district court's analysis of Article III standing in statutory" damages cases like this one, demanding a heightened focus on whether Article III's injury-in-fact

---

[20] While the Second Circuit has not yet determined whether the claimed lost time value of money/interest meets the injury-in-fact requirement for Article III standing, at least where (as here) Plaintiffs were paid in full and not as a result of litigation, the better view is that it does not.

requirements have been satisfied.[21] *Ciccone v. Cavalry Portfolio Servs*., No. 21-cv-2428 (JS)(AYS), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (internal quotation marks omitted). While it may be true "that the late payment of wages can constitute a concrete harm sufficient to confer standing" based on a "lost time value of money" theory of injury, *Rosario*, 2022 WL 198503, at *3, that sort of injury—like any injury generally—must be plead with certainty and particularity, describing in clear terms how the plaintiff was actually affected "in a personal and individual way," *Spokeo*, 578 U.S. at 339, and what "specific plans" he or she had for use of the temporarily deprived funds, *Adler*, 2022 WL 744031, at *10. Neither the SAC nor the TAC meet this requirement.

## CONCLUSION

For the reasons set forth herein, Unisys respectfully requests an Order (i) effectuating the Court's March 17, 2022 Order to Show Cause dismissing this action; (ii) denying Plaintiffs' request to file a Third Amended Complaint; and (iii) for such other and further relief as the Court deems appropriate.

March 29, 2022
New York, New York

Respectfully Submitted,

EPSTEIN BECKER & GREEN, P.C.
*Attorneys for Defendant Unisys Corporation*

By: */s/ Kenneth W. DiGia*
Kenneth W. DiGia
Jeffrey H. Ruzal
Francesco A. DeLuca
875 Third Avenue
New York, New York 10022
(212) 351-4500
KDigia@ebglaw.com

---

[21] Although *Ciccone* addressed consumer law cases, its reasoning is equally applicable here.