## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tony Caccavale, *et al.*,<br><br>                                  Plaintiffs,<br><br>                    -v-<br><br>Hewlett-Packard Company A/K/A HP Inc., *et al.*,<br><br>                                  Defendants. | 2:20-cv-0974<br>(NJC) (ST) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Before the Court is a Motion by Named Plaintiff Douglas Sorbie ("Sorbie" or "Plaintiff")
for preliminary approval of a class and collective action settlement with Defendant Unisys
Corporation ("Unisys"). (Mot., ECF No. 227.) Sorbie brings claims against Unisys for failure to
timely pay regular and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.
§ 201 *et seq.* and the New York Labor Law ("NYLL") §§ 191(1)(a) and 198, on behalf of
himself, a conditionally certified FLSA collective, and a proposed class of service delivery
employees. (Third Am. Compl. ¶¶ 154–71, ECF No. 201; *see also* Cond. Cert. Order, ECF No.
83.) After three years of litigation, Sorbie and Unisys have entered into a proposed Settlement
Agreement and Release ("Proposed Agreement"). The Proposed Agreement purports to settle the
NYLL claims on behalf of a proposed Rule 23 class and the FLSA claims on behalf of the
conditionally certified FLSA collective. The Motion for Preliminary Approval requests that the
Court: (1) grant preliminary approval of the Proposed Agreement and assert jurisdiction over the
enforcement of the Proposed Agreement; (2) find the terms of the Proposed Agreement to be
fair, reasonable, and adequate; (3) "direct the consummation" of the Proposed Agreement's

terms and provisions; (4) preliminarily certify the settlement class under Rule 23(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); (5) "preliminarily certify the . . . collective/modify the existing collective . . . under the FLSA"; (6) approve the form and content of the proposed class and collective action notice and claim form; (7) set a fairness hearing; (8) approve the proposed class action settlement procedure; (9) designate Plaintiff's counsel as class counsel; (10) designate Rust Consulting as the claims administrator; and (11) enjoin all settlement class members from initiating lawsuits asserting claims that fall within the release of liability provisions of the Proposed Agreement. (Mot. at 1–3.)

For the reasons discussed below, Sorbie has failed to provide sufficient information for the Court to conduct either the analysis required to grant preliminary approval of a class action settlement under Rule 23(e) and *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023), or the analysis required to grant preliminary approval of an FLSA collective action settlement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). To the extent the Court can analyze the terms of the Proposed Agreement for compliance with Rule 23, *Moses*, and *Cheeks*, the Proposed Agreement is unfair and unreasonable because it includes provisions that courts in this Circuit have long prohibited. Accordingly, the parties' request for preliminary approval of the Proposed Agreement is denied without prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    Complaint and Allegations

The claims addressed in Sorbie's Motion for Preliminary Approval are a subset of the claims in a large, multi-defendant lawsuit concerning the alleged failure to pay regular and overtime wages according to the timeframes required by the FLSA and NYLL. On February 21, 2020, plaintiffs Tony Caccavale ("Caccavale") and Anthony Mangelli ("Mangelli") filed the

original complaint on behalf of themselves and other similarly situated people against their current and former employers, Hewlett Packard Enterprise Company, Hewlett-Packard Company (collectively, "HP Defendants"), and Unisys. (Compl., ECF No. 1.) That complaint alleged late payment of regular and overtime wages in violation of NYLL §§ 191(1)(a) and 198 and failure to provide notices required by NYLL § 195(1). (Compl.) On May 5, 2020, Caccavale and Mangelli amended the complaint to add Plaintiff Douglas Sorbie, another former Hewlett Packard and Unisys employee. (First Am. Compl., ¶ 1, ECF No. 7.) These plaintiffs filed a second amended complaint on December 17, 2020, which added, among other things, Plaintiff James Billups and a claim by Sorbie against Unisys for failure to timely pay overtime wages under the FLSA. (Second Am. Compl. ¶¶ 129–37, ECF No. 55.)

Plaintiffs filed the Third Amended Complaint—the operative complaint—on January 26, 2023. (Third Am. Compl.) Sorbie brings FLSA and NYLL claims on behalf of himself and other similarly situated people against Unisys. (*Id.*)[1] Sorbie alleges that he was employed as a field service engineer by Unisys from July 2018 through December 2021. (*See id*. ¶¶ 58, 62.) Sorbie contends that during that period, all Unisys field service engineers were paid their regular wages bi-weekly, which was untimely under the NYLL, and were paid their overtime wages bi-weekly, which was untimely under both the FLSA and the NYLL. (*Id.* ¶¶ 154–62.) Sorbie further alleges that Unisys did not pay him his final paycheck of approximately $1,600–$2,000. (*Id.* ¶ 59.) Sorbie brings the NYLL late-paid regular and overtime wages claims on behalf of a proposed class of "[a]ll Field Service Engineers who were/are employed by Unisys in the State of New

---

[1] In the operative complaint, Sorbie alleges that Unisys violated NYLL §§ 191(1)(a) and 198, but does not bring any claims under NYLL § 195. (*See generally* Third Am. Compl.) Sorbie and the other Plaintiffs also bring claims against the HP Defendants under NYLL §§ 191(1)(a) and 198. (*See id*. ¶¶ 138–53.) Those claims are not resolved as part of this Proposed Agreement and are still being litigated.

York at any time from six years prior to the filing of the initial complaint in this matter to the present" (the "NYLL class"). (*Id.* ¶¶ 84(c), 160–61.) Pursuant to 29 U.S.C. § 216(b), Sorbie brings the FLSA late-paid overtime wages claim on behalf of a now conditionally-certified collective of "[a]ll Field Service Engineers in the State of New York who worked/work for Defendant Unisys at any time within the three year period immediately preceding the filing of the initial complaint to present who did not receive their overtime wages timely as required by the FLSA" (the "FLSA collective"). (*Id.* ¶¶ 98(a), 168–69.)

## II.    Litigation and Settlement History

In the three years since the action commenced, the parties have engaged in extensive discovery and pre-trial litigation. (Pagano Decl. ¶ 6, ECF No. 227-1.) Unisys moved to dismiss Plaintiffs' first amended complaint on September 11, 2020. (ECF No. 40.) The Court denied Unisys' motion to dismiss without prejudice and referred the case to mediation. (Elec. Orders, Sept. 14, 2020.) The mediation did not result in a settlement. (Elec. Order, Nov. 12, 2020.) When Plaintiffs filed the second amended complaint in December 2020, Unisys promptly filed a letter motion seeking a pre-motion conference in anticipation of filing a motion to dismiss. (ECF No. 58.) The Court held a pre-motion conference on January 12, 2021, construed Unisys' motion for a pre-motion conference as the motion to dismiss itself, and denied the motion on the merits. (*See* Min. Entry, Jan. 12, 2021, ECF No. 62; Elec. Order, Feb. 2, 2021.) Unisys filed a motion to certify the Court's decision for interlocutory appeal, which the Court denied on February 2, 2021. (ECF No. 65; Elec. Order, Feb. 2, 2021.) In the intervening years, discovery proceeded, and Sorbie and Unisys litigated several motions to compel discovery. (*See* ECF Nos. 85, 87, 129, 134.)

On May 28, 2021, the Court granted the joint motion by Sorbie and Unisys for conditional certification of Sorbie's alleged FLSA collective under 29 U.S.C. § 216(b). (Mot. Certify FLSA Collective, ECF No. 81; Cond. Cert. Order, ECF No. 83.)[2] Between July 19, 2021 and September 14, 2021, individuals opted into the FLSA collective. (ECF Nos. 92–99; 101–26.) To date, Sorbie's proposed class of current and former Unisys employees alleging NYLL violations has not been certified under Rule 23.

In May 2023, Sorbie and Unisys reached the Proposed Agreement, which, if approved, would resolve all individual, class, and collective action claims against Unisys. (Pls.' Mem. Law at 4, ECF No. 227-6.)[3] With the consent of Unisys, on October 16, 2023, Sorbie filed the instant Motion for Preliminary Approval of the Settlement Agreement. (Mot., ECF No. 227.) Sorbie filed the following documents in support of the Motion: (1) a declaration from Sorbie's counsel, Paul Pagano (Pagano Decl., ECF No. 6); (2) a copy of the Third Amended Complaint (ECF No. 227-2); the Proposed Agreement (ECF No. 227-3); (3) a Proposed Notice and Claim Form (Proposed Notice, ECF No. 227-4); (4) a Proposed Preliminary Approval Order (Proposed Order, ECF No. 227-5); and (5) Sorbie's Memorandum in Support of the Motion (Pls.' Mem. Law, ECF No. 227-6).

---

[2] The Order granted conditional certification of the FLSA collective alleged as part of Sorbie's FLSA claim against Unisys in the Second Amended Complaint. (Cond. Cert. Order at 1.) This alleged FLSA collective included: "[a]ll Field Service Engineers in the State of New York who worked/work for Defendant Unisys at any time within the three year period immediately preceding the filing of the initial complaint to present who did not receive their overtime wages timely as required by the FLSA." (Second. Am. Compl. ¶ 99.) Sorbie did not amend or change this definition in the Third Amended Complaint. (*See* Third Am. Compl. ¶ 98.)

[3] Sorbie states in his brief that the parties reached the Proposed Agreement during a settlement conference held on May 1, 2023. (Pls.' Mem. Law at 4.) The docket of this case does not show a court-facilitated settlement conference on or around that date. *See* electronic docket in 2:23-cv-974 (NJC) (ST).

Although Unisys does not oppose the Motion for Preliminary Approval, the HP Defendants—who are not parties to the Proposed Agreement—filed a November 1, 2023 memorandum objecting to references in the Proposed Notice indicating that the Proposed Agreement does not resolve ongoing litigation by Sorbie against the HP Defendants for alleged New York wage and hour law violations. (HP Defs.' Mem. Opp'n, ECF No. 234.) The HP Defendants argued that these references unduly advertise the litigation pending against them. (*Id.*)

On December 13, 2023, the Court held a conference with all parties regarding anticipated motion practice by all Plaintiffs—Caccavale, Mangelli, Sorbie, and Billups—against the HP Defendants. (*See* Min. Entry, Dec. 13, 2023.) The Court heard from the parties about the HP Defendants' objection to the Proposed Notice, though it did not hear argument about the substance of the Motion for Preliminary Approval. (*Id.*) The Court found the references to the HP Defendants in the Proposed Notice to be reasonable, limited in scope, and effective in providing clear notice to putative class and collective members that the Proposed Agreement does not resolve any wage and hour claims that they may have against the HP Defendants, which are still being litigated. (*Id.*)

Following the December 13, 2023 conference, Sorbie filed a letter informing the Court that due to a recent change in Unisys' pay practices, the parties both agree to modify a certain date referenced in the Proposed Agreement and supporting papers. (Pls.' Ltr., Jan. 2, 2024, ECF No. 238.)

The Proposed Agreement provides that Unisys, without conceding liability or the merits of Sorbie's claims, would establish a settlement fund of $625,000 to cover payments including: (1) payments to certain members of the proposed Rule 23 class and FLSA collective as redefined

in the Proposed Agreement; (2) an incentive payment to Sorbie; (3) attorneys' fees, costs, and expenses; and (4) the fees and costs of the settlement claims administrator. (Proposed Agreement §§ 2, 5(a).)

A.  The Proposed Settlement Class and Settlement Collective

The Proposed Agreement refers to several distinct but overlapping classes of claimants, each of which is represented by Sorbie and brings claims against Unisys: the "New York State Settlement Class," the "Federal FLSA Settlement Class," the "Settlement Class," and the "Participating Settlement Class." (Proposed Agreement § 1.)

The "New York State Settlement Class" refers to the proposed Rule 23 class for whom Sorbie seeks to serve as Class Representative in bringing claims against Unisys under the NYLL (hereinafter "NYLL Settlement Class"). (*Id.* § 1(hh).) The "Federal FLSA Settlement Class" refers to the conditionally certified collective that Sorbie represents in bringing claims against Unisys under the FLSA, 29 U.S.C. § 216(b) (hereinafter "FLSA Settlement Collective").[4] (*Id.*) The Proposed Agreement defines the members of the proposed NYLL Settlement Class and FLSA Settlement Collective differently than the Third Amended Complaint. The Third Amended Complaint defines both the Rule 23 class and the FLSA collective consisting of "[a]ll Field Service Engineers who were/are employed by Unisys" within the applicable state and federal statutes of limitations. (Third Am. Compl. ¶¶ 84(c), 98(a).) By contrast, the Proposed Agreement redefines both the proposed FLSA collective and proposed NYLL class by identifying Unisys specific positions included within both groups as follows:

---

[4] The Proposed Agreement's use of the term "Federal FLSA Settlement Class" is confusing because Sorbie is not seeking to represent a proposed Rule 23 settlement class in the FLSA claims against Unisys, but instead represents an FLSA collective. For that reason, this opinion refers to the "FLSA Settlement Collective."

current or former employees of Unisys (including the Named Plaintiffs) who are or were employed at any time by Unisys in New York based on a Unisys-assigned New York work location within the applicable federal and state statutes of limitations with a Unisys-assigned work location in the State of New York in the service delivery employee job family in the following positions: Field Engineer 1, Field Engineer 2, Field Engineer 3, Field Engineer 4, Customer Engineer 2, Customer Engineer 3, Customer Engineer 4, Customer Engineer 5, Customer Engineer 6, Client Infrast Rep 3-Barg Unit, Client Infrast Rep 4-Bar Unit, Client Infrast Rep 5-Barg Unit, UTS Field Svc Associate, UTS Field Svc Tech 1, UTS Field Svc Tech 2, UTS Field Svc Tech 3, UTS Field Svc Tech 4, or UTS Field Svc Tech 5.

(Proposed Agreement at 1–2.)

The Proposed Agreement also defines an overarching "Settlement Class," which includes: (1) the entire NYLL Settlement Class; and (2) all members of the FLSA Settlement Collective who, in accordance with the Agreement's procedures, have opt-ed into being part of the FLSA collective and have not opted out of the collective by the date the Court grants final approval of the Proposed Agreement. (*Id.* § 1(hh).) Finally, the Proposed Agreement defines a "Participating Settlement Class." Under the terms of the Proposed Agreement, not every member of the overarching "Settlement Class" would automatically receive a distribution from the settlement fund. (*Id.* § 1(w).) Only members who take some affirmative action would become "Participating Settlement Class Members" and thus receive a distribution. (*Id.*) Under the Proposed Agreement, the individuals who have already opted into the conditionally certified FLSA collective during the course of this litigation would be automatically considered Participating Settlement Class members. (*Id.*; *see e.g.*, ECF Nos. 92–99; 101–26.) If those individuals did not want to be part of the Proposed Agreement, they would have to opt out of the Proposed Agreement. (*Id.* § 1(w).) An eligible individual who had not previously opted into the FLSA collective could still opt into the FLSA Settlement Collective and become a Participating Settlement Class Member by timely returning a claim form. (*Id.*) Should the Court grant

8

preliminary approval of the Proposed Agreement, the claims administrator would then mail notices and claim forms to all members of the Settlement Class. (*Id.* §§ 13(a).) Settlement Class members would then have sixty days to submit a claim form and/or an opt-out notice. (*Id.* §§ 1(f), 13(d), 13(k).)

### B. Attorneys' Fees and Service Awards

Under the Proposed Agreement, Sorbie would petition the Court for a $10,000 service award and his counsel would petition the Court for attorneys' fees, costs, and expenses up to a maximum of thirty-three and one-third percent of the $625,000 settlement fund.[5] (Proposed Agreement §§ 8(a), 9(a)).) Unisys would not oppose either of these motions. (*Id.*) Both the award of attorneys' fees, costs, and expenses and the service award paid to Sorbie would come out of the settlement fund and thus reduce the amount payable to members of the proposed Participating Settlement Class. (*Id.* §§ 8(a), 9(c).)

### C. Payments to Participating Settlement Class Members

The settlement funds remaining after the payment of attorneys' fees, costs, and expenses, claims administrator fees and costs, and Sorbie's incentive payment would be divided among the Participating Settlement Class members on a *pro rata* basis. (Proposed Agreement § 6(a).) Each member of the Participating Settlement Class would receive a check based on the number of overtime hours for which they were not timely compensated ("late-paid overtime hours") as a proportion of the total late-paid overtime hours for the entire Participating Settlement Class. (*Id.*)

The Proposed Agreement provides that within twenty-one days of the Proposed Agreement becoming effective, Unisys shall deposit the entire settlement amount into an

---

[5] Although not set forth in the Proposed Agreement, counsel has indicated that they intend to seek $35,000 for expert fees and notice fees, and one third of the remaining balance of the Settlement Fund as attorneys' fees. (Pagano Decl. ¶ 9.)

interest-bearing account under the control of a claims administrator, who shall mail to each Participating Settlement Class member a check in the amount of their distribution award within thirty days. (*Id.* §§ 5(b), 7(a)). These checks would expire 120 days after the mailing date. (*Id.* § 7(a)). The Proposed Agreement includes a process for lost or destroyed checks (cancelling the previous check and issuing a new check upon a class member's report that a check is lost or destroyed) and checks returned as undeliverable (whereby the claims administrator would re-send the returned check to the forwarding address or otherwise attempt to locate the new address of that class member). (*Id.* §§ 7(a), 13(g).) The Proposed Agreement further provides that a certain amount of the settlement fund would be reserved to correct any errors made in determining a Participating Settlement Class member's distribution amount or failing to identify a putative class member that should have received notice. (*Id.* § 6(d).) If any portion of the settlement fund remains after funds have been proportionally distributed to Participating Class Members, payments of fees, costs, or expenses, it would be distributed to a nonsectarian non-profit charitable organization "selected by the Settlement Class Representative in consultation with Unisys and approved by the Court, or as otherwise directed by the Court." (*Id.*)

### D. Release of Liability

The Proposed Agreement includes several different release of liability provisions. First, Section 14(a) releases claims against Unisys[6] under state and local labor laws by members of the NYLL Settlement Class who have not timely opted out of the Settlement Agreement. Under this

---

[6] Each provision of the Proposed Agreement that releases Unisys from liability also releases "all of [Unisys'] past, present, and future parents, divisions, affiliates, subsidiaries, predecessors, and successors, and all of its and their respective current and former directors, partners, principals, officers, shareholders, members, fiduciaries, trustees, employees, representatives, attorneys, administrators, benefit plans, insurers, reinsurers, and agents, and the assigns of each of them, each in their individual and corporate capacities." (Proposed Agreement § 1(bb) (defining "released parties").)

provision, members of the NYLL Settlement Class and their "respective successors, assigns, heirs, executors, administrators, beneficiaries, legal representatives, trustees, and estates" would release:

> any and all Claims against [Unisys] arising from, relating to or based on any state or local law (both statutory and common law) pertaining to minimum wage, overtime, unreimbursed expenses, interest, liquidated damages, punitive damages, attorneys' fees, costs and expenses, hours of work, record keeping/wage statements, payment of wages and overtime, and/or frequency of pay while employed by [Unisys], including, without limitation, all state and local wage and hour statutory and common law Claims that were asserted or could have been asserted against [Unisys] in this Action, including under the New York State Labor law and its related regulations and wage orders, regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order; *provided, however*, Claims shall not include any Claims that were asserted or could have been asserted under federal law including the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

(Proposed Agreement § 14(a) (emphasis in original).)

Second, Section 14(b) of the Proposed Agreement releases the federal labor law claims by members of the FLSA Settlement Collective and their "respective successors, assigns, heirs, executors, administrators, beneficiaries, legal representatives, trustees, and estates" against Unisys. It applies to:

> any and all Claims against [Unisys] or any of them arising from, relating to, or based on federal law (both statutory and common law) pertaining to minimum wage, overtime, unreimbursed expenses, interest, liquidated damages, punitive damages, attorneys' fees, costs and expenses, hours of work, record keeping/wage statements, payment of wages and overtime, and/or frequency of pay while employed by [Unisys], including, without limitation, all Claims that were asserted or could have been asserted now or in the future against [Unisys] in this Action, including under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and its regulations, regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order.

(*Id.* § 14(b).)

Third, Section 14(c) sets forth a general release of "any and all [c]laims" against Unisys by Participating Settlement Class members. Under this provision, members of the Participating

Settlement Class and their "respective successors, assigns, heirs, executors, administrators,

beneficiaries, legal representatives, trustees, and estates" release Unisys from:

> any and all Claims . . . regarding events that occurred or are alleged to have
> occurred from the beginning of time until the date of the Final Approval Order,
> including but not limited to all Claims regarding employment at or termination of
> employment from Unisys, any contract (express or implied), any claim for
> equitable relief or recovery of punitive, compensatory, or other damages or
> monies (including claims as to taxes), attorneys' fees, any claim for Unisys'
> alleged failure to pay the Settlement Class Representative his last paycheck, any
> tort, and all claims for alleged discrimination based upon factors such as age, race,
> color, sex, sexual orientation, marital status, religion, national origin, handicap,
> disability, genetic information or retaliation, including any Claim, asserted or
> unasserted, which could arise under Title VII of the Civil Rights Act of 1964; the
> Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the
> Older Workers Benefit Protection Act of 1990; the Americans With Disabilities
> Act of 1990; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Genetic
> Information Nondiscrimination Act of 2008; the Family and Medical Leave Act
> of 1993; the Employee Retirement Income Security Act of 1974; the Civil Rights
> Act of 1991; the Worker Adjustment and Retraining Notification ("WARN") Act
> of 1988; the New York State WARN Act; the New York State Human Rights
> Law; the New York City Administrative Code; the New York City Human Rights
> Law; the New York City Earned Safe and Sick Time Act; the New York State
> Labor Law; and any other federal, state or local laws, rules or regulations,
> whether equal employment opportunity laws, rules or regulations or otherwise.

(*Id.* § 14(c).)

Fourth, Section 14(d) of the Proposed Agreement releases claims relating to attorneys'

fees, costs, and expenses, stating that once the attorneys' fees, costs, and expenses have been

paid, "Class Counsel and the Settlement Class Representative . . . release . . . any Claim that he

or they may have against [Unisys] for attorneys' fees, expenses, or costs associated with Class

Counsel's representation of the Settlement Class Representative and the Settlement Classes." (*Id.*

§ 14(d).)

Finally, in conjunction with the aforementioned release provisions, the Proposed

Agreement includes a clause setting forth a covenant not to sue. (*Id.* § 15). Under this provision,

Sorbie (the proposed class representative), each member of the NYLL Settlement Class who

does not timely opt-out of the Proposed Agreement, and each member of the FLSA Settlement Collective promise not to sue for any released claim and promise that, if they are made a member of an action bringing one of the released claims, they would opt out of that action. (*Id.*)

       E.   <u>Non-Publicity Provision</u>

The Proposed Agreement includes a partial non-disclosure clause in which Sorbie (as the proposed class representative), Unisys, and counsel for the parties mutually agree not to:

> hold any press conference or issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including, but not limited to, Facebook, Snapchat, Instagram, LinkedIn, and Twitter, (collectively, the "Media") regarding the Action, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same.

(*Id.* § 18(a).)

## III.    Preliminary Approval Submissions

In support of the Motion for Preliminary Approval, Sorbie filed the two-page Pagano declaration, which provides a brief procedural history of the case and description of the basic components of the Proposed Agreement. (Pagano Decl. ¶¶ 1–12). Sorbie also filed a brief in support of the Motion, which argues that: (1) under the so-called *Grinnell* factors,[7] the Proposed Agreement is fair, reasonable, and adequate; (2) the proposed notice to Settlement Class members is appropriate; and (3) the notice plan and award distribution process are appropriate. (Pls.' Mem. Law at 9–14.)[8]

---

[7] The *Grinnell* factors are set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated in part by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).
[8] Sorbie's brief sets forth several facts for which Sorbie does not provide a citation to the record. Although the Court considers these facts in its preliminary approval analysis, the Court will not grant preliminary or final approval of the Proposed Agreement based on unsupported assertions in Sorbie's brief. (*See* Pls.' Mem. Law.)

## DISCUSSION

Sorbie has failed to provide sufficient information for the Court to assess whether to preliminarily approve the Proposed Agreement as a settlement of the NYLL claims brought on behalf of the proposed NYLL Settlement Class under Rule 23 and the FLSA claims brought on behalf of the FLSA Settlement Collective. To the extent the Court has an adequate basis to analyze specific terms of the Proposed Agreement, the Proposed Agreement is unfair and unreasonable because it includes, among other things, an overly broad release of liability provision and an overly broad non-disclosure clause. The Proposed Agreement thus fails to comply with the requirements for preliminary approval of class action settlements under Rule 23(e) and *Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d. Cir. 2023), and the requirements for preliminary approval of FLSA collective action settlements under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Accordingly, the Court denies Sorbie's request for preliminary approval of the Proposed Agreement without prejudice and with leave to renew upon addressing the issues identified in this opinion.

### I.   Class Action Settlement Approval as to the NYLL Claims

#### A.   Legal Standard

Where parties seek to settle claims brought by a plaintiff on behalf of a proposed class, the court must review the proposed class action settlement to ensure it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(a); *Moses*, 79 F.4th at 242. Courts apply a three-step process of review. *See* Fed. R. Civ. P. 23(e)(1), (2). The court first conducts a preliminary evaluation of the fairness of the proposed settlement agreement to determine whether to give notice of the proposal to all class members. Fed. R. Civ. P. 23(e)(1)(A). The second step consists of providing "notice of a hearing . . .  to class members" and holding a hearing to ensure that "class members

14

and settling parties are provided the opportunity to be heard[.]" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (hereinafter "*Payment Card*") (brackets and quotation marks omitted). The court turns to the third step—final approval—only if the Court has granted preliminary approval and afforded notice of the hearing and an opportunity to be heard. *See id*.

### i.    Preliminary Approval Standard

During the preliminary approval stage, the court must analyze whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P.  23(e)(1)(B)(i–ii). "The judicial role in reviewing a proposed settlement is demanding . . . because the adversariness of litigation is often lost after the agreement to settle." *Payment Card,* 330 F.R.D. at 27 (citing *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)). To approve a settlement before class certification, courts "demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 366 (E.D.N.Y. 2014) (acknowledging the "higher degree of scrutiny" courts apply in reviewing class action settlements reached prior to class certification) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

A district court cannot grant preliminary approval of a class action settlement unless it is "likely to be able" to grant final approval under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1); *see Payment Card*, 330 F.R.D. at 28 ("[C]ourts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval."). Prior to its 2018 amendment, Rule 23 did not provide specific

15

factors for courts to consider in determining whether a proposed class action settlement was "fair, reasonable and adequate" under Rule 23(e)(2). At that time, courts in the Second Circuit considered both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quotation marks and brackets omitted). To evaluate the procedural fairness of a proposed class action settlement, courts in this Circuit assessed whether "the settlement resulted from arm's-length negotiations, and [whether] plaintiffs' counsel possessed the necessary experience and ability, and have engaged in the discovery[] necessary to effective representation of the class's interests." *Id.* at 804 (quotation marks and brackets omitted). Courts evaluating the substantive fairness of a proposed class action settlement also considered the nine factors in *City of Detroit v. Grinnell Corporation*:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

In 2018, Congress amended Rule 23(e) to identify four "primary procedural considerations and substantive qualities that should always matter to the decision whether to

16

approve [a settlement] proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018

amendment. Under Rule 23(e)(2), a court must explicitly consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The first two factors are procedural in nature and the latter two guide

the substantive review of a proposed settlement." *Moses*, 79 F.4th at 242.

In *Moses v. New York Times Company*, the Second Circuit emphasized that district courts

"must consider the four factors outlined in Rule 23(e)(2) holistically" in addition to the *Grinnell*

factors when evaluating a proposed class action settlement. *Moses*, 79 F.4th at 243. It clarified

that:

> [T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement. But the rule now mandates courts to evaluate factors that may not have been highlighted in our prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements.

*Id.* The Second Circuit also held that courts may no longer presume a settlement to be

substantively fair where it arose from an arms-length bargaining process. *Id.* at 243. Courts thus

consider both the Rule 23(e) factors and the *Grinnell* factors—to the extent that they differ—in

determining whether to approve the proposed settlement of class action claims. *See e.g.*, *Payment

Card*, 330 F.R.D. at 29; *LoCurto v. AT&T Mobility Servs. LLC*, No. 13 CIV. 4303 (AT), 2020

WL 13859604, at *3 (S.D.N.Y. June 22, 2020). Courts have found that Rule 23(e)(2) does not

otherwise address the following *Grinnell* factors: the ability of the defendants to withstand a

greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See, e.g.*, *Payment Card*, 330 F.R.D. at 30 n.22. Accordingly, courts continue to analyze these factors in combination with the Rule 23(e)(2) factors. *See id.*

In order to grant a motion for preliminary approval of a class settlement, a court must also find that it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This requires a district court to analyze, even at the preliminary stage, whether the requirements for class certification under Rule 23(a) and (b) of the Federal Rules of Criminal Procedure are satisfied. *See e.g., Calibuso*, 299 F.R.D. at 365–66 (E.D.N.Y. 2014); *Mills v. Cap. One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *3 (S.D.N.Y. Sept. 30, 2015); *Payment Card*, 330 F.R.D. at 50.

B. Analysis

The Court does not grant preliminary approval of the Proposed Agreement as a settlement of Sorbie's NYLL claims on behalf of himself and the NYLL Settlement Class for two overarching reasons. First, Sorbie's Motion for Preliminary Approval and supporting documents fail to show that the Proposed Agreement is procedurally or substantively fair, reasonable, or adequate in light of the Rule 23(e)(2) factors and *Grinnell*, 495 F.2d at 463. Second, the Court finds that, based on the current record, it is not likely to certify the proposed NYLL Settlement Class under Rules 23(a) and 23(b). Accordingly, the Court does not analyze the parties' proposed notice forms and notice procedures in this Memorandum and Order.

**i.    Procedural and Substantive Fairness Under Rule 23(e)(2) and *Grinnell***

Based on the current record, and considering the factors set forth in Rule 23(e)(2) and *Grinnell,* the Court finds that the Proposed Agreement is not fair, reasonable, and adequate.

While several of the Rule 23(e) and *Grinnell* factors may weigh in favor of preliminary approval, Sorbie's submissions fall far short of what is required at this stage to show that other critical factors support preliminary approval. Although Sorbie's brief discusses the *Grinnell* factors, it fails to address how the Proposed Agreement satisfies any of the factors set forth in Rule 23(e)(2) or the Second Circuit's decision in *Moses.* (Pls.' Mem. Law at 9–12.) The only supporting documentation provided by Sorbie is a brief, two-page attorney affidavit that does not provide any sworn facts about, among other things, the adequacy of class counsel and the class representative or the class representative's contributions to the class. (*See generally*, Pagano Decl.) Even if Sorbie had submitted sufficient information, the Proposed Agreement contains an overly broad release of liability provision, which would release claims untethered to the factual predicate for this action. As result, the Proposed Agreement is unfair, unreasonable, and fails to provide adequate relief for the class.

### a. *Adequate Representation*

To determine whether "the class representatives and class counsel have adequately represented the class" under Rule 23(e)(2)(A), courts consider "whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Rosenfeld v. Lenich*, No. 18CV6720NGGPK, 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021) (citing *Cordes & Co. Fin. Servs. v. AG. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

### (1) Adequate Class Representatives

In addition to the requirements of Rule 23(a)(4) and Rule 23(e)(2)(A), "[t]he Due Process Clause . . . requires that the named plaintiff at all times adequately represent the interests of absent class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

827 F.3d 223, 231 (2d Cir. 2016) (hereinafter "*Payment Card II*") (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)). Courts conduct a two-fold inquiry into the adequacy of the proposed class representative, who must "[have] an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Regarding the antagonistic interests inquiry, courts seek to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The parties have not provided the Court any information about Sorbie—the sole named representative for the class claims against Unisys. (*See generally*, Pagano Decl.; Pls.' Mem. Law.) Accordingly, the Court is unable to evaluate whether Sorbie will adequately represent the proposed NYLL Settlement Class as Rule 23 requires.

### (2) Adequate Class Counsel

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that . . . plaintiff's counsel have possessed the experience and ability, and have engaged in the discovery[] necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("[T]he nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base . . . ."). A court may determine that class counsel is adequate based on findings concerning counsel's experience, involvement in other similar litigation, and knowledge in the area of complex class actions. *See D'Amato*, 236 F.3d at 85–86 (upholding district court's adequacy of class counsel finding based on these factors).

The Pagano declaration does not provide any information about proposed class counsel's previous experience litigating labor law actions or any experience with class or collective actions. If anything, at this stage, counsel's failure to address the requirements for preliminary approval of a Rule 23 class settlement—which include the statutory requirements under Rule 23(e), the standards established by the Second Circuit in *Moses*, and sworn affidavits setting forth necessary facts—weigh against finding at this time that class counsel will adequately represent the class.

b. *Arms-Length Negotiations*

A court must consider whether "the proposal was negotiated at arm's length" in assessing the fairness of a proposed class action settlement. Fed. R. Civ. P. 23(e)(2)(B). It is legal error, however, for a district court to "*presume*[] that [a] proposed settlement [is] fair, reasonable, and adequate because it was reached in an arms length negotiation," even where "the arms-length quality of the negotiations remain[s] a factor in favor of approving the settlement." *Moses*, 79 F.4th at 243.

Here, before reaching the Proposed Agreement, the parties engaged in three years of litigation, written discovery, and settlement discussions. The parties litigated a motion to dismiss and the question of whether to certify the Court's denial of the motion for interlocutory appeal. (ECF Nos. 40, 58, 65.) The parties also conducted discovery, including some expert discovery, and litigated motions to compel certain discovery. (*See* ECF Nos. 85, 87, 129, 134; Pls.' Mem. Law at 11.) Lastly, the parties have engaged in negotiation discussions, including one attempt at mediation early in the case. (*See* Elec. Order, Nov. 12, 2020.) Further, there is no indication in the record of bad faith or collusion. Accordingly, this factor likely weighs in favor of preliminary approval of the Proposed Agreement.

c.  *Adequate Relief for the Class*

A court must also consider whether relief for the class is adequate under Rule 23(e)(2),

taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including
> the method of processing class-member claims, if required;
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). Because a proposed settlement agreement's provision setting forth a

release of liability "affects the determination of the fairness, reasonableness, and adequacy of

class relief," the Court will consider the proposed release of liability under this section. *Payment

Card*, 330 F.R.D. at 36; *see also Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No.

18CV4747DLISMG, 2020 WL 9814083, at *9 (E.D.N.Y. Oct. 19, 2020).

### *(1) Costs, Risks, and Delay of Trial and Appeal*

In assessing the costs, risks, and delay of trial and appeal, "courts may need to forecast

the likely range of possible classwide recoveries and the likelihood of success in obtaining such

results." *Payment Card*, 330 F.R.D. at 36 (citing Fed. R. Civ. P. advisory committee's note to

2018 amendment). "This assessment implicates several *Grinnell* factors, including: (i) the

complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability;

(iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the

trial." *Id.* (citing *Grinnell*, 495 F.2d at 463); *see also Cymbalista v. JPMorgan Chase Bank, N.A.*,

No. 20 CV 456 (RPK)(LB), 2021 WL 7906584, at *6 (E.D.N.Y. May 25, 2021). Accordingly,

courts "use[] these *Grinnell* factors to guide [the] assessment" of costs, risks and delay under

Rule 23(e)(2)(A). *Payment Card*, 330 F.R.D. at 36.

(A) Complexity, Expense, and Likely Duration of the Litigation

"Courts favor settlement when litigation is likely to be complex, expensive, or drawn out." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). The expense and likely duration of the litigation in this case weigh in favor of preliminary approval of the Proposed Agreement. Courts have found that the "fact-intensive nature of FLSA and NYLL claims" lends itself to expensive and lengthy litigation. *See, e.g.*, *Villa v. Highbury Concrete Inc.*, No. 17-CV-984 (PK), 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022).

This case has involved several years of pre-trial litigation and numerous discovery disputes.[9] According to Sorbie's brief, if the case were to continue, "Plaintiff would seek to conduct several 30(b)(6) depositions of Unisys Corp. as well as fact depositions" and "Unisys has expressed an intent to take the depositions of each of the over 30 collective members who have opted-in [sic]." (Pls.' Mem. Law at 10.) Neither Sorbie's brief nor the Pagano declaration provide information about how costly it would be to proceed with these depositions. The "parties would also conduct further expert discovery, and engage in class certification, collective decertification, and summary judgment motion practice." (*Id.*) While these facts are addressed only in Sorbie's brief, such facts would weigh in favor of preliminary approval under this *Grinnell* factor, if properly established by sworn statements.

(B) The Risks of Establishing Liability

A court considering the risks of establishing liability "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Payment*, 330 F.R.D. at 37 (quotation marks omitted). Unisys previously filed a motion to dismiss in this case arguing that there is no private right of action to challenge violations of NYLL § 191(1)(a),

---

[9] *See supra*, Section II for a review of the litigation history in this case.

notwithstanding decisions of the Second Circuit and New York courts holding that there is such a right. (ECF Nos. 40, 58.) Sorbie asserts that a risk of establishing liability in this case is "the possibility that the courts reverse" that current "decisional law." (Pls.' Mem. Law at 12.) Without deciding the merits of this argument, the Court recognizes that Sorbie has weighed this risk in deciding to reach a settlement. Indeed, were this case to continue, Unisys would likely continue to advance the same argument given recent decisions addressing the existence of a private right of action to enforce NYLL § 191. *Compare Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144 (2019) (finding that NYLL § 198(1-a) "expressly provides a private right of action for a violation of [NYLL] § 191" where wages have been paid on a biweekly basis rather than a weekly basis), *with Grant v. Glob. Aircraft Dispatch, Inc.*, No. 2021-03202, 2024 WL 172900 (N.Y. App. Div. Jan. 17, 2024) (declining to follow the reasoning in *Vega* and holding that NYLL § 198 "does *not* expressly provide for a private right of action to recover liquidated damages . . . where a manual worker is paid all of his or her wages biweekly, rather than weekly, in violation of [NYLL] § 191(1)(a).") (emphasis added).

Plaintiff argues that another risk of establishing liability is the "possibility that there is a determination that the pertinent Unisys employees were not manual workers." (Pls.' Mem. Law at 12.) Plaintiff's theory of liability under the NYLL hinges on the determination that Sorbie and members of the proposed class are manual workers. *See* NYLL § 191(1)(a) (applying only to "manual worker[s]"); *see also* Third Am. Compl. ¶¶ 66, 73. Further litigation between Sorbie and Unisys could yield evidence against Sorbie's allegations that he and other field service engineers were manual workers within the meaning of the NYLL, and the Court or a jury could make an adverse determination on this issue that would preclude judgment in Sorbie's favor.

Lastly, Sorbie argues that a risk of establishing liability is "an intervening change in statute." (Pls.' Mem. Law at 11–12). This risk exists in any litigation and Sorbie has offered the Court no reason to believe that this particular risk is anything other than speculative. Accordingly, the Court does not give any weight to this purported risk. Nevertheless, while the Court makes no finding as to how any of the three risks identified by Sorbie would ultimately affect Sorbie's NYLL claims against Unisys, it finds there is sufficient risk of establishing liability that this factor likely weighs in favor of granting preliminary approval.

### (C) The Risks of Establishing Damages

Another *Grinnell* factor that courts consider in assessing the costs, risks, and delay of trial and appeal concerns "the risks of establishing damages." *In re Payment Card*, 330 F.R.D. at 36 (citing *Grinnell*, 495 F.2d at 463). Sorbie does not address the possible risks of establishing damages in this case separate from evaluating the risks of litigation, and Sorbie's supporting submissions do not provide any relevant information that would help the Court assess this risk. Accordingly, the Court does not have sufficient information to analyze this factor.

### (D) The Risks of Maintaining the Class Through Trial

The risks of maintaining a class through trial, while "present in every class action . . . nevertheless weigh[] in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated." *Payment Card*, 330 F.R.D. at 39–40 (quotation marks and brackets omitted). Here, the Court has not certified a class under Rule 23 and Unisys, by the terms of the Proposed Agreement, consents to conditional certification of the NYLL Settlement Class "[s]olely" for the purpose of settling Sorbie's NYLL claims. (Proposed Agreement § 4.) Notably, "Unisys does not waive, and instead expressly reserves, its right to challenge the propriety of collective treatment and/or class certification . . . in the event that the

Court" rejects the Proposed Agreement. (*Id.* § 3(j).) Even if this action were to return to litigation and the Court were to grant a class certification motion, Unisys could move for decertification before any final judgment. *See* Fed. R. Civ. P. 23(1)(c). As a result, the Court finds that the *Grinnell* factor concerning the risks of maintaining the class through trial likely weighs in favor of granting preliminary approval. *See Payment Card*, 330 F.R.D. at 40 (finding that this factor likely weighs in favor of preliminary approval where defendants would likely move for decertification given that they had agreed to certification of a settlement class "for settlement purposes only").

### (2) *Effectiveness of Distributing Relief to the Class*

To assess whether the settlement of a putative class action affords adequate relief for the proposed class, courts must also examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "While the plan of allocation must be fair and adequate, it need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 321 (S.D.N.Y. 2019) (quotation marks omitted). "[A] plan of allocation need not be perfect." *Payment Card*, 330 F.R.D. at 40 (citing *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases)).

According to the Proposed Agreement, each Participating Settlement Class member would receive a check based on the number of overtime hours for which each individual member worked and was not timely compensated as a proportion of the Participating Settlement Class's total untimely compensated overtime hours. (Proposed Agreement §§ 6(a), 7(e).) The Proposed Agreement provides that within thirty days of the Proposed Agreement becoming effective, the

claims administrator shall mail to each class member a check in the amount of their distribution award from the account in which Unisys has deposited the settlement sum. (*Id.* §§ 5(b), 7(a)). These checks would expire 120 days after the date they have been mailed, but the Proposed Agreement includes a process for lost or destroyed checks and checks returned undeliverable to help ensure that all Participating Settlement Class members receive their distribution. (*See id.* §§ 7(a), 13(g).) The Proposed Agreement further provides that a certain amount of the settlement fund shall be reserved to correct any errors made in determining a Participating Settlement Class member's distribution amount or failing to identify a putative Settlement Class member who should have received notice. (*Id.* § 6(d)). Any portion of the settlement fund that remains after funds have been used to pay fees, costs, and expenses, and have been proportionally distributed to Participating Settlement Class members, shall be distributed to a nonsectarian non-profit charitable organization "selected by the Settlement Class Representative in consultation with the Unisys and approved by the Court, or as otherwise directed by the Court." (*Id.* §7(e).)

While the Court cannot yet assess the experience and competency of class counsel based on the instant submissions, the parties' plan of distribution is similar to others approved by this Court and thus likely meets the Rule 23(e)(2)(c)(ii) standard. *See e.g.*, *Johnson*, 333 F.R.D. at 321 (indicating approval for a process by which checks would be mailed to each class member based on their proportion of damages incurred by the entire class). The Court recognizes, however, that the Proposed Agreement does not indicate whether the charitable organization that would receive any remaining settlement funds would have a mission or engage in work related to the purpose of the lawsuit. *See Reyes v. Buddha-Bar NYC*, No. 08-cv-2494 (DF), 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010) ("Under the *cy pres* doctrine, the best application of unused settlement funds is to donate them to an organization whose purpose is closely related to

the purpose of the lawsuit."); *see also Johnson*, 333 F.R.D. 314, 321–22 (expressing skepticism about the appropriateness of a *cy pres* award where the submissions did not explain how the goals of the chosen charity align with the purpose of the lawsuit); *Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916 (VSB), 2024 WL 472841, at *5 (S.D.N.Y. Feb. 6, 2024) (collecting cases where "courts have increasingly noted concern . . . with the potential for abuse inherent in *cy pres* distributions" in that such distributions "invests courts and litigants with a highly discretionary ability to control the allocation of large sums of money to the possible detriment of class members"). While the Court has final approval over the selection of the charity, Sorbie has provided insufficient information for the Court to determine whether it will likely approve a charity selected by counsel. Sorbie must address this issue in any renewed motion for preliminary approval.

### (3) Attorneys' Fees

"[W]hen reviewing the substantive fairness of a proposed settlement, the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem." *Moses*, 79 F.4th at 244 (quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2)(c)(iii). "This review provides a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check." *Moses*, 79 F.4th at 244 (quotation marks omitted). Indeed, "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23(e)(3) advisory committee's note to the 2018 amendment.

The Proposed Agreement reserves the determination of attorneys' fees, costs, and expenses to the Court. The parties propose that "[i]n a motion for final approval, Class Counsel will submit a request for attorney fees, costs, and expenses, which Unisys will not oppose" and

which "will be deducted from the Settlement Fund." (Pls.' Mem. Law at 6.) These attorneys'

fees "shall not exceed thirty-three and one-third percent" of the settlement fund. (Proposed

Agreement §§ 1(c), 8(a).) Sorbie identifies the amount that proposed class counsel intends to

seek in attorneys' fees, costs, and expenses—$35,000 for expert and notice fees, and one third of

the remaining balance of the settlement fund as attorneys' fees. (Pagano Decl. ¶ 9.) This

provision appears to be reasonable. "Courts in this District have approved fees as high as 33.5%

from comparable class settlement funds, finding that they are well within the applicable range of

reasonable percentage fund awards." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695

(quotation marks omitted); *see also Summit Health Mgmt.*, 2024 WL 472841, at *4 (S.D.N.Y.

Feb. 6, 2024) (approving a motion for preliminary approval of a class action settlement where

the attorneys' fees were "limited to no more than one-third of the total settlement amount" of

$540,000).

### *(4) Agreement under Rule 23(e)(3)*

Rule 23 additionally requires the parties to "file a statement identifying any agreement

made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). A court must consider any such

agreement in assessing whether "the relief provided for the class is adequate" under the proposed

settlement agreement. Fed. R. Civ. P. 23(e)(2)(C). The Court need not address this factor, as the

parties have not indicated that they made any agreement in connection with the proposal.

### *(5) Release of Liability*

It is "well-established . . . that class action releases may include claims not presented and

even those which could not have been presented as long as the released conduct arises out of the

'identical factual predicate' as the settled conduct." *Payment Card*, 330 F.R.D. at 42 (citing *Wal-*

*Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)) (quotation marks

omitted). Accordingly, "[c]ourts have denied preliminary approval where releases from liability are deemed to be overly broad." *Payment Card*, 330 F.R.D. at 42. For example, in *Karvaly v. eBay, Incorporated*, the court found that:

> a general release that purport[ed] to strip millions of individuals of their rights to sue the defendants upon a wide range of offenses that [had] nothing to do with the misconduct alleged in the present action, for no more consideration than [the defendant's] agreement to make certain superficial changes to its website, is an offense to the principle of due process so egregious as to render the proposed settlement untenable even at this preliminary stage.

245 F.R.D. 71, 88 (E.D.N.Y. 2007). Release of liability provisions in class action settlement agreements are further "limited by . . . adequacy of representation doctrines." *Payment Card II*, 827 F.3d at 236–37 (citing *Wal-Mart Stores*, 396 F.3d at 106) (quotation marks omitted). Courts will not enforce releases where class plaintiffs were inadequately represented at the time the release was negotiated. *Cf. Payment Card II*, 827 F.3d. at 236 ("[M]embers of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present" consistent with "the requirements of due process and full faith and credit." (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)) (quotation marks omitted)); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 109 ("Claims arising from a shared set of facts" that have been explicitly included in a settlement release of liability provision "will not be precluded [in a later action] where class plaintiffs have not adequately represented the interests of class members.").

(A) <u>Release of State and Local Wage and Hour Claims</u>

Under Section 14(a) of the Proposed Agreement, the NYLL Settlement Class would release Unisys from any state and local wage and hour claims. This provision is likely permissible as it would only release claims against Unisys under state and local wage and hour laws, and thus would be limited to claims that arise from the same factual predicate as the claims

in this case. But given that the Court does not have sufficient information to analyze whether counsel or Sorbie (as the class representative) has adequately represented the proposed class at this stage, the Court cannot adequately assess whether this release comports with the requirements of due process necessary to bind class members not party to the litigation. *See Wal-Mart Stores*, 396 F.3d 96; *Payment Card II*, 827 F.3d at 236–37.

### (B) Release of Claims for Attorneys' Fees, Costs, and Expenses

Under Section 14(d) of the Proposed Agreement, proposed class counsel and the proposed class representative would release claims for attorneys' fees, costs, and expenses related to this action once these fees, costs, and expenses have been paid. (Proposed Agreement § 14(d).) This provision is likely permissible because it would only release claims for attorneys' fees, costs, and expenses that arise out of the "'identical factual predicate' as the settled conduct." *Payment Card*, 330 F.R.D. at 42 (citing *Wal-Mart Stores*, 396 F.3d at 107). Further, the Court need not address whether counsel or Sorbie (as the class representative) has adequately represented the proposed class to approve Section 14(d) because this release provision does not bind class members.

### (C) General Release of Claims

Under Section 14(c) of the Proposed Agreement, members of the Participating Settlement Class would release Unisys from claims other than wage and hour claims and claims for attorneys' fees, costs, and expenses. The section covers:

> any and all Claims . . . regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order, including but not limited to all Claims regarding employment at or termination of employment from Unisys, any contract (express or implied), any claim for equitable relief or recovery of punitive, compensatory, or other damages or monies (including claims as to taxes), attorneys' fees, any claim for Unisys' alleged failure to pay the Settlement Class Representative his last paycheck, any tort, and all claims for alleged discrimination based upon factors such as age, race,

color, sex, sexual orientation, marital status, religion, national origin, handicap, disability, genetic information or retaliation, including any Claim, asserted or unasserted, which could arise under Title VII of the Civil Rights Act of 1964; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the Older Workers Benefit Protection Act of 1990; the Americans With Disabilities Act of 1990; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act of 2008; the Family and Medical Leave Act of 1993; the Employee Retirement Income Security Act of 1974; the Civil Rights Act of 1991; the Worker Adjustment and Retraining Notification ("WARN") Act of 1988; the New York State WARN Act; the New York State Human Rights Law; the New York City Administrative Code; the New York City Human Rights Law; the New York City Earned Safe and Sick Time Act; the New York State Labor Law; and any other federal, state or local laws, rules or regulations, whether equal employment opportunity laws, rules or regulations or otherwise.

(Proposed Agreement § 14(c).)

Similar to the release in *Karvaly*, Section 14(c) imposes such a broad, general release of liability that it "render[s] the proposed settlement untenable." 245 F.R.D. at 88. While *some* of the claims released in Section 14(c) may indeed arise out of the "same integral facts" as the alleged violation of New York wage-and-hour laws, the provision also applies to discrimination and tort claims, which do not arise out of the "identical factual predicate" as the claims that the Proposed Agreement seeks to settle. *Payment Card*, 330 F.R.D. at 42 (citing *Wal-Mart* Stores, 396 F.3d at 107)). Because Section 14(c) seeks to strip class members "of their rights to sue" Unisys "upon a wide range of offenses that [have] nothing to do with the misconduct alleged" in this action, it suffers from defects similar to those found in the release rejected in *Karvaly*, 245 F.R.D. at 88. With such a broad release, the Court cannot find the Proposed Agreement to be fair, reasonable, or adequate.

### (D) Covenant Not to Sue

Lastly, Section 15 of the Proposed Agreement seeks to enforce the release of claims set out in Sections 14(a), 14(b), and 14(c) via a covenant not to sue. (Proposed Agreement § 15.) Because this covenant incorporates, and seeks to enforce, the overly broad release in Section

14(c), this provision is impermissible for the same reasons that Section 14(c) is. Further, the Court cannot adequately assess the parts of the covenant relating to Sections 14(a) and (b) for the same reasons it cannot fully assess those provisions individually.

> ### d.  *Equitable Treatment of Class Members*

Before approving a class settlement, "the court must take into account whether the 'proposal treats class members equitably relative to each other.'" *Moses*, 79 F.4th at 244 (citing Fed. R. Civ. P. 23(e)(2)(D)). When analyzing this Rule 23(e)(2) factor, courts may consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Payment Card*, 330 F.R.D. at 47 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment) (quotation marks omitted).

As an initial matter, the Proposed Agreement sets forth a distribution scheme by which attorneys' fees and Sorbie's incentive award are first paid, then the remaining settlement funds are distributed *pro rata* among class members. (*See* Settlement § 6(a).) Courts generally approve these kinds of proportional distributions schemes. *See e.g., Payment Card*, 330 F.R.D. at 47 (finding that a "*pro rata* distribution scheme is sufficiently equitable").

While the general distribution procedure appears appropriate, the Court must evaluate any incentive awards, especially those that would diminish payments to individual class members, as part of its "overall evaluation of the fairness of the settlement." *Moses*, 79 F.4th at 246. As part of this analysis, courts "must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Id.* at 245. Courts must "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (citing 5 Newberg and

Rubenstein on Class Actions § 17:4); *see, e.g., Ayers v. SGS Control Services, Inc.*, No. 03CIV.9078(RMB), 2008 WL 4185813, at *6 (S.D.N.Y. 2008) (denying incentive award where the plaintiff failed to establish that he suffered "a risk or inconvenience not shared by the other class members . . . of such a magnitude to merit an incentive award"), *aff'd in part and remanded on other grounds*, 353 F. App'x 466, 467 (2d Cir. 2009) (quotation marks omitted); *Kurtz*, 2024 WL 184375, at *9 (finding reasonable incentive awards of $10,000 and $5,000 to the two named plaintiffs where, among other things, there was significant information in the record about what each named plaintiff had done during the course of eight years of litigation).

The Proposed Agreement here provides that "in return for services rendered to the Settlement Class Members, Sorbie will petition the Court to receive . . . ($10,000.00) as a Service Award." (Proposed Agreement § 9(a).) This award would be "in addition to the payment(s) that Named Plaintiff Sorbie shall receive as a Participating Settlement Class member" and "shall reduce . . . the amount of the Gross Settlement Amount payable to the Settlement Class Members." (*Id.* § 9(c).) In his declaration, Pagano generally attests that "Plaintiffs seek a $10,000 service fee award for Plaintiff Sorbie who has been actively involved in the prosecution of this case for over 3 years," but does not provide any information about what actions Sorbie actually took to advance this litigation. (Pagano Decl. ¶ 10.) Nor is there a sworn statement from Sorbie himself describing his role in prosecuting the NYLL and FLSA claims against Unisys. Sorbie's brief asserts that Sorbie generally assisted with the preparation of the complaints, production of documents, and response to interrogatories. (Pls.' Mem. Law at 6.) Without factual support in the record describing Sorbie's actions to advance the litigation and represent the proposed classes, the Court is not likely to be able to find that a $10,000 award is appropriate. This is especially critical because payment of Sorbie's award will reduce the awards

provided to other Participating Settlement Class members. *See Moses*, 79 F.4th at 245; *cf. Kurtz*, 2024 WL 184375, at *9 (finding that one of the special circumstances permitting a $10,000 incentive award was that "the award would be paid directly by defendants, not at the 'expense of the Class'"). Notably, the record lacks sufficient information to calculate the average Participating Settlement Class member's award, which would place the incentive award for Sorbie in context and assist the court in determining whether the award is appropriate or excessive.[10]

### e. *Ability of Defendants to Withstand a Greater Judgment*

In addition to the Rule 23(e) factors, courts must also consider several factors under *Grinnell. See Payment Card*, 330 F.R.D. at 29; *LoCurto*, 2020 WL 13859604, at *3. The first factor is "the ability of the defendants to withstand a greater judgment." *McReynolds*, 588 F.3d at 804 (citing *Grinnell*, 495 F.2d at 463); *see e.g.*, *Johnson, LLP*, 333 F.R.D. at 323. "[W]hen a defendant is a large corporation its capacity to withstand a greater judgment should not in and of itself undermine an otherwise reasonable settlement agreement." *Cymbalista*, 2021 WL 7906584, at *10; *accord D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-03334 (JMW), 2023 WL 4838156, at *7 (E.D.N.Y. July 28, 2023) ("This factor alone does not indicate an unfair settlement."). "[A] defendant's cooperation tends to offset the fact that they would be able to withstand a larger judgment." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696 (quotation marks omitted).

Here, there is no evidence that Unisys could not withstand a greater judgment, and the parties have not addressed whether Unisys "cooperated" in a manner analogous to defendants in

---

[10] The Court cannot calculate the average class member's award because Sorbie's submissions do not address the projected number of proposed class members or the projected number of total late-paid overtime hours for the entire class.

other cases[11] as Plaintiff merely states that this *Grinnell* factor is "not currently at issue," (Pls.' Mem. Law at 12.). *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 697 (discussing defendant's "cooperation" in providing evidence to plaintiff, which helped various claims withstand a motion to dismiss and added "significant value" to the settlement agreement). Without more information, this factor weighs against preliminary approval of the Proposed Agreement but is not enough by itself to deny approval. *See id.* at 696.

### f.   Range of Reasonableness of the Settlement

Under *Grinnell*, a court also considers both "[t]he range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Payment Card*, 330 F.R.D. at 47–48. These "two *Grinnell* factors [] are often combined for the purposes of analysis." *Id.* at 48. "The range of reasonableness for a settlement is a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *8 (E.D.N.Y. Jan. 6, 2021) (citing *Wal-Mart Stores*, 396 F.3d at 119) (quotation marks omitted).

Unisys has agreed to settle Sorbie's NYLL claims brought on behalf of himself and the proposed NYLL Settlement Class, as well as his claims brought on behalf of the FLSA collective, for $625,000.00. (Proposed Agreement § 5(a)). In his brief, Sorbie asserts that "[b]ased on Plaintiff's expert damages calculations to date, the best-case scenario for the class'

---

[11] Although Unisys is not opposing Sorbie's Motion for Preliminary Approval, it has not joined the Motion.

recovery of damages is approximately $3.8 million dollars on its NYLL § 191(1)(a) claims." (Pls.' Mem. Law at 12.)

In light of Sorbie's calculations and representations, the settlement sum of $625,000 is approximately sixteen percent of the best-possible award of $3.8 million. Courts have found settlement amounts to be reasonable when they reflect a similar percentage of the best possible recovery. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 697 (finding reasonable a settlement where plaintiffs "represent[ed] that the proposed settlement of $15 million represents 13% to 17% of plaintiffs' best possible recovery.") Indeed, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Payment Card*, 330 F.R.D. at 48 (citing *Grinnell*, 495 F.2d at 455).

Sorbie does not, however, explain how he or his expert arrived at $3.8 million as the best possible award for the NYLL Settlement Class or provide supporting documentation. Nor does Sorbie indicate whether Unisys disputes this figure, and if so, why. Without more information, the Court is unable to determine whether the settlement sum is within the range of reasonableness. *See Johnson*, 333 F.R.D. at 323 (finding that this factor does not support approval where "there is no way that the Court can verify the truth of [the parties'] representation [as to the maximum recovery] without supporting documentation").

       g.   <u>Reaction of the Class to the Settlement</u>

A fourth *Grinnell* factor not otherwise codified in Rule 23(e)(2) is the class's reaction to the proposed settlement. *See McReynolds*, 588 F.3d at 804 (citing *Grinnell,* 495 F.2d at 463). Courts have long considered this factor to be "perhaps the most significant factor to be weighed in considering [a class action settlement's] adequacy." *In re Facebook, Inc., IPO Sec. &*

*Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (quotation marks omitted), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020). Courts do not typically consider this factor at the preliminary approval stage because notice has not yet been provided to the class. *Mikhlin*, 2021 WL 1259559, at *4 n.2.

The composition of the proposed NYLL Settlement Class in this case overlaps with the proposed FLSA Settlement Collective because they both involve a defined group of service delivery employees employed by Unisys during some overlapping time periods. (*See* Proposed Agreement at 1–2.) While the FLSA collective alleged in the Third Amended Complaint has been conditionally certified and notice of the action has been issued to at least some members of the proposed Settlement Class (*see* Cond. Cert. Order), Sorbie has not provided information about the size of the proposed Settlement Class or how many of members of the proposed Settlement Class received notice of the Proposed Agreement. Accordingly, while the Court has not received any objection to the Proposed Agreement to date, the Court is unable to assess whether this factor weighs in favor or against preliminary approval of the Proposed Agreement at this stage. *See Rodriguez v. CPI Aerostructures, Inc.*, No. 20CV982ENVCLP, 2023 WL 2184496, at *15 (E.D.N.Y. Feb. 16, 2023) ("The Court could not address the reaction of the Class to the settlement during the preliminary approval stage . . . .").

### ii.    Likeliness of Class Certification

When deciding whether to grant preliminary approval of a class action settlement, a district court must assess whether it would "likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Accordingly, the Court must assess the proposed class to determine whether it will be likely to find:

(1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to

the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class.').

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (citing Fed. R. Civ. P. 23(a)); *see also Johnson*, 333 F.R.D. 314. Here, where Sorbie has pled a proposed class under Rule 23(b)(3) (Third Am. Compl. ¶ 94), the Court must also assess whether the class meets the requirements of that rule. *See Am. Int'l Grp.*, 689 F.3d at 238.

Sorbie has not provided any information about the proposed NYLL Settlement Class from which the Court can assess the likelihood of class certification. Neither Sorbie's brief in support of the Motion for Preliminary Approval nor the Pagano declaration address whether the proposed Settlement Class—or any other of the proposed classes identified in the Proposed Agreement—met the Rule 23(a) and 23(b) requirements. While Sorbie has provided a proposed order for this Court to sign which includes some unsupported "facts" about the proposed NYLL Settlement Class, none of those facts are supported by an affidavit, sworn declaration, or other evidence in the record. [12]

Without facts about the proposed class established by evidence in the record or a stipulation between Sorbie and Unisys, the Court cannot analyze the likelihood that it would certify the proposed Settlement Class as required by Rule 23(e)(1), and thus cannot preliminarily approve the Proposed Agreement. *See Johnson*, 333 F.R.D. at 323–24 (denying a motion for preliminary approval of a class action settlement where the court could not find that it would likely be able to certify the settlement class).

---

[12] The proposed order states that there are at least 292 Settlement Class Members but does not provide a supporting citation to a stipulation by the parties or any evidence in the record. (Proposed Order ¶ 11.)

## II.    FLSA Collective Action Settlement Approval

### A.  Legal Standard

A stipulation of dismissal settling an FLSA claim with prejudice under Rule 41(a), Fed.

R. Civ. P., "require[s] the approval of the district court or the D[epartment of Labor] to take

effect." *Cheeks*, 796 F.3d at 206.[13] In light of the FLSA's underlying remedial purpose "to

prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between

employers and employees," *id.* at 207, courts in this Circuit review a proposed FLSA settlement

to ensure that it reflects a fair and "reasonable compromise of disputed issues rather than a mere

waiver of statutory rights brought about by an employer's overreaching." *Wolinsky v. Scholastic

Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted).

An FLSA collective action is brought by one or more individuals on behalf of a group of

employees. 29 U.S.C. § 216(b). Unlike a Rule 23 class, employees only become members of an

FLSA collective after affirmatively consenting to join—or "opting-in"—to the collective. *Glatt

v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). For a collective action to

proceed, the named plaintiff must be "similarly situated" to the members of the proposed

collective. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515–16 (2d Cir. 2020) (citing 29

U.S.C. § 216(b)).

In the Second Circuit, FLSA collective actions are certified through a "two-step process."

*Scott*, 954 F.3d at 515. At the first step, conditional certification, the court "permits a notice to be

---

[13] Rule 41(a)(1)(A) provides, in relevant part, that "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing . . . (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41. The Court in *Cheeks* found that FLSA is an "applicable federal statute" under Rule 41 which subjects the parties' ability to stipulate to a dismissal to Court approval. *Cheeks*, 796 F.3d at 206.

sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Id.* Second, "with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Id.* The named plaintiff is "similarly situated" to collective members when both "share legal or factual similarities material to the disposition of their [FLSA] claims." *Id.* The FLSA's "similarly situated" requirement is "quite distinct from the much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes." *Id.* at 518 (quotation marks omitted).

### i.    Procedure for Approval of an FLSA Collective Action Settlement

As with class action settlements, courts review FLSA collective action settlements in several stages. *Marichal v. Attending Home Care Servs.*, LLC, 432 F. Supp. 3d 271, 277 (E.D.N.Y. 2020). Courts first conduct a preliminary review of the fairness of the proposed settlement under *Cheeks*, 796 F.3d 199. *Morales v. Rochdale Vill., Inc.*, No. 15-CV-502-SJB, 2019 WL 9197991, at *3 (E.D.N.Y. Dec. 6, 2019). If the court grants preliminary approval, "notice is sent to extant collective members, giving them the opportunity to opt into the settlement, as well as to other employees who have not previously joined to give them an opportunity to opt into the collective and accede to the settlement." *Marichal.*, 432 F. Supp. 3d at 280. Courts then consider a motion for final approval of the proposed collective action settlement and hold a "final fairness hearing" on the motion, "giving all opt-in plaintiffs the opportunity to be heard by the Court." *Id.* At both the preliminary and final stages of approval, "district courts are required to examine the terms of the settlement for its fairness" under *Cheeks*, 796 F.3d 199, and its progeny. *Id.; see also, e.g., Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78,

81 (E.D.N.Y. 2019) (denying preliminary approval where "the proposed settlement ignore[d] the special complexities attendant to approval of a settlement of FLSA claims" under *Cheeks*); *Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-CV-1347, 2018 WL 1633027, at *6 (E.D.N.Y. Mar. 30, 2018) (denying preliminary approval of class and FLSA collective action settlement because the procedure proposed in the settlement agreement made "no sense in the context of *Cheeks*").

In determining whether an FLSA collective action settlement is fair and reasonable under *Cheeks*, courts in the Second Circuit consider the totality of the circumstances, including the factors outlined in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012):

> (1) the plaintiff's range of possible recovery;
> (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and
> (5) the possibility of fraud or collusion.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky,* 900 F. Supp. 2d at 335) (quotation marks omitted). The *Wolinsky* factors are not dispositive. Courts must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, No, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, 2017 WL 3037406 (July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overly broad releases that "would waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206.

Where a proposed settlement is "unreasonable in whole or in part, the court cannot simply rewrite the agreement—it must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. District courts do not have the authority to "simply rewrite[] the agreement by imposing terms on the parties to which they did not agree." *Id.* (citing *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986)).

The standard for approval of an FLSA collective action settlement is "considerably less stringent" than for approval of a Rule 23 class action settlement because the former "does not implicate due process concerns." *Davidson v. Cty. of Nassau*, No. 2:18-CV-1182-JMW, 2023 WL 5200223, at *9 (E.D.N.Y. Aug. 14, 2023) (citation omitted). As a result, some courts have found that "satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." *D'Angelo*, 2023 WL 4838156, at *5 n.1 (citing *Ramos v. Nikodemo Operating Corp.*, No. 16-CV-1052 (KAM) (JO), 2017 WL 11508016, at *5 (E.D.N.Y. Aug. 7, 2017)). Indeed, the *Wolinsky* factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement under Rule 23(e). In both inquiries, the court considers the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement resulted from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion. *Compare Fisher*, 948 F.3d at 600 (identifying the factors that courts must evaluate for preliminary approval of an agreement to settle an FLSA collective action (citing *Wolinsky*, 900 F. Supp. 2d at 335)) *with* Fed. R. Civ. P. 23(e)(2) (setting forth factors that courts must evaluate for preliminary approval of a class action settlement).

B. <u>Analysis</u>

Sorbie's Motion for Preliminary Approval and supporting documents do not address any of the *Cheeks* factors. Based on a review of Sorbie's submissions, including the Proposed Agreement, as well as caselaw governing court approval of agreements to settle FLSA collective actions, the Court denies preliminary approval under *Cheeks* because Sorbie has provided insufficient information about the range of possible recovery and because the Proposed Agreement includes overbroad release of liability and non-disclosure provisions.

### i. **Collective Action Certification**

In this case, Sorbie has already secured conditional certification of an FLSA collective with the consent of Unisys. (*See* Mot. Certify FLSA Collective; Cond. Cert. Order.) As a result, the Court need not address whether Sorbie has established a "modest factual showing" that he and the opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Scott*, 954 F.3d at 515. To the extent that this Court must separately determine whether to conditionally certify the FLSA Settlement Collective, the parties have not provided the Court with any factual showing—not even a "modest" one—from which the Court can conditionally certify the collective. Notably, Sorbie's definition of the FLSA Settlement Collective in the Proposed Agreement is different from the definition of the collective set forth in the Order granting conditional certification, and Sorbie's Motion and supporting submissions do not address the reasons for the modification.

### ii. *Cheeks* **Fairness Review**

The Court is unable to find that the Proposed Agreement is fair and reasonable under *Cheeks* because the parties have not provided sufficient information about Plaintiffs' range of possible recovery and the Proposed Agreement contains several unreasonable provisions: an

overbroad release of liability, an overbroad non-publicity provision, and an "opt-out" mechanism that would bind collective action members to the Proposed Agreement without first obtaining their affirmative consent.

                    *a.* <u>*Wolkinsky Factors*</u>

On the current record, the Court is unable to assess the first *Wolkinsky* factor, the "plaintiff's range of possible recovery." *Wolinsky,* 900 F. Supp. 2d at 335. Just as Sorbie failed to provide the Court with the information needed to assess the range of reasonableness of the settlement sum for compliance with Rule 23(e), Sorbie has failed to provide the Court sufficient information to determine that the settlement sum is within the "range of possible recovery" as required under *Cheeks. See Sanders v. CJS Sols. Grp., LLC*, No. 17 CIV. 3809 (ER), 2018 WL 620492, *4 (S.D.N.Y. Jan. 30, 2018) (denying preliminary approval of FLSA settlement under *Cheeks* where "the parties d[id] not explain what the range of possible recovery for *any* Plaintiff [wa]s, nor do they attach any documentary evidence in support of their statement that $3 million is the highest recovery the settlement class could anticipate"). Here, Sorbie does not provide any documentary evidence and his brief only asserts without support that the "best-case scenario FLSA damages are only a portion of . . . $3.8 million." (Pls.' Mem. at 13.). Further, Sorbie does not provide any information about the range of recovery for the plaintiffs who have already opted in. *See Marichal*, 432 F. Supp. 3d at 283 (finding that the court was "unable to assess the range of recovery" in reviewing an FLSA collective action settlement under *Cheeks* where "the parties only provide[d] information about [the named plaintiff's] range of recovery, . . . without information about the Opt-In Plaintiffs and how they would benefit or not from the settlement").

For the reasons addressed in its Rule 23 analysis, the following *Wolkinsky* factors do weigh in favor of preliminary approval of the Settlement under *Cheeks*: factor two, "the extent to

which the settlement will enable the parties to avoid anticipated burdens and expenses in

establishing their respective claims and defenses"; factor three, "the seriousness of the litigation

risks faced by the parties"; factor four, "whether the settlement agreement is the product of

arm's-length bargaining between experienced counsel"; and factor five, "the possibility of fraud

or collusion." *Fisher*, 948 F.3d at 600 (citing *Wolinsky,* 900 F. Supp. 2d at 335) (quotation marks

omitted).

### b.   *Overbroad Release of Liability*

The release of liability in Section 14(c) sweeps far too broadly to survive the *Cheeks*

analysis. The Second Circuit has noted that settlement agreements with "overbroad releases that

would 'waive practically any possible claim against the defendants, including unknown claims

and claims that have no relationship whatsoever to wage-and-hour issues'" highlight the

"'potential for abuse' in FLSA settlements." *Torres v. Mc Gowan Builders*, No. 18 CV 6099

(RML), 2020 WL 5369056, at *3 (E.D.N.Y. Sept. 8, 2020) (citing *Cheeks*, 796 F.3d at 206).

"[A]n employer is not entitled to use an FLSA claim . . . to leverage a release from liability

unconnected to the FLSA." *Mahalick v. PQ New York Inc.*, No. 14 CIV. 899 WHP, 2015 WL

3400918, at *2 (S.D.N.Y. Apr. 30, 2015) (denying a proposed settlement agreement under FLSA

purporting to release "any and all . . . claims . . . related to any matter . . . which existed on or

prior to the date of the execution of this agreement").

Under the Proposed Agreement, the Participating Settlement Class would release Unisys

from "all Claims . . . regarding events that occurred or are alleged to have occurred from the

beginning of time until the date of the Final Approval Order." (Proposed Agreement §§ 1(hh),

14.) This release "include[s], but is not limited to" all claims regarding employment at Unisys,

any contract claim, any tort, and any discrimination claim "under federal, state, or local laws,

rules or regulations." (*Id.* § 14(c).) These released claims go far beyond claims in the wage-and-hour context, and the Court cannot approve an FLSA settlement with such a wide-sweeping release. *See e.g.*, *Luna v. J.S. Held LLC*, No. 2:21-CV-03072-JMW, 2023 WL 2214012, at *5 (E.D.N.Y. Feb. 24, 2023) (rejecting preliminary approval of an FLSA settlement where the release went "far beyond terminating the instant litigation" by releasing the defendants from "any and all past and present" claims, "including *but not limited to*" claims under the FLSA or NYLL) (emphasis supplied); *Mahalick*, 2015 WL 3400918, at *2; *Sanders*, 2018 WL 620492, at *4 ("[C]ourts in this district have rejected overly broad releases as part of their duty to 'police unequal bargaining power between employees and employers.'") (collecting cases)). Likewise, under *Cheeks*, the Court cannot provide preliminary approval of a Proposed Agreement that includes a covenant not to sue provision that would enforce such a broad release of claims untethered to the facts giving rise to the FLSA claim. (*See* Proposed Agreement § 15.)

Courts have approved broad release provisions in FLSA and NYLL settlements as long as the released claims are limited to "wage and hour issues without encompassing, for example, prospective discrimination or other irrelevant claims." *Farez v. JGR Servs., Inc.*, No. 21-CV-8205 (KMK), 2023 WL 8827576, at *5 (S.D.N.Y. Dec. 21, 2023) (brackets and quotations omitted). Accordingly, the release provisions in Section 14(b) is likely fair and reasonable under *Cheeks*, because this provision only releases federal, state, and local wage and hour claims. (*See* Agreement § 14(b)).

### c. *Non-Publicity Clause*

The Proposed Agreement includes a clause that unduly restricts the parties from communicating with media regarding the action and potential settlement of Sorbie's claims against Unisys.

District courts in the Second Circuit "have taken varying and conflicting approaches to so-called non-publicity or 'no publicity' clauses in FLSA settlements." *Choc v. Corp. #1*, No. 23 CIV. 3886 (GS), 2023 WL 8618746, at *5 (S.D.N.Y. Dec. 12, 2023). Many courts have permitted clauses that limit parties' communication with media regarding an FLSA settlement as long as the restriction is reasonable. *See, e.g.*, *Zorn-Hill v. A2B Taxi LLC*, No. 18-CV-11165 (KMK), 2020 WL 5578357, at *7 (S.D.N.Y. Sept. 17, 2020) (approving a clause that "limit[ed] [p]laintiffs' ability to speak with the media only about the [p]roposed [s]ettlement itself" but still permitted them "to contact the media about . . . their allegations" and to "respond to media inquiries with truthful statements about their experience litigating their case."); *but see Garcia v. Good for Life by 81, Inc.*, No. 17-CV-07228(BCM), 2018 WL 3559171, at *4 (S.D.N.Y. July 12, 2018) (finding impermissible "[p]rovisions that prohibit a party from contacting the media" because they "impermissibly undermine the FLSA's remedial purposes by restricting workers from using the media to 'publicize both the wrongdoing of the employer and the possibility of success more generally'") (quotation marks omitted).

Courts have found overly broad non-publicity provisions "to be incompatible with the FLSA's policy goals." *Choc*, 2023 WL 8618746, at *5. For example, in *Choc*, the court found a non-publicity clause overly broad where it prohibited parties from communicating with the media "regarding 'this Agreement' or 'this Lawsuit in general[]'" as such language would preclude plaintiff "from publicizing even the existence of the settlement or truthful information about this action and his FLSA claims." *Id*. The court found that this restriction "would unduly inhibit the spread of the type of information important to helping workers vindicate their rights under the FLSA." *Id.* Courts have also found a non-publicity provision overly broad where it restricts parties' use of social media in addition to news or print media because such a restriction

"places a substantial burden on [plaintiffs'] ability to openly discuss their experience litigating the lawsuit and entering into the Settlement Agreement." *Burczyk v. Kemper Corp. Servs., Inc.*, No. 15-CV-1483 (SIL), 2017 WL 11511165, at *1 (E.D.N.Y. Mar. 28, 2017); *see also Martinez v. Avalanche Constr. Grp. Inc.*, No. 20-CV-11065 (JLC), 2021 WL 5001415, at *1–2 (S.D.N.Y. Oct. 28, 2021); *Chung v. Brooke's Homecare LLC*, No. 17-CV-2534 (AJN), 2018 WL 2186413, at *2 (S.D.N.Y. May 11, 2018); *but see Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (finding a non-publicity clause reasonable in an FLSA settlement even where it restricted the plaintiffs' discussion of the settlement via social media).

The Proposed Agreement includes a non-publicity clause in which Sorbie, Unisys, and counsel for the parties mutually agree not to "hold any press conference[,]" issue "any press release[,] or post any "verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites . . . regarding the Action, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same." (Proposed Agreement § 18(a).) The clause provides that if Sorbie and his counsel are "contacted by any member of the Media . . . [they] will simply state that the Action has been resolved." (*Id.*)

This provision is unfair and unreasonable for two reasons. First, while the Proposed Agreement may restrict parties from disclosing to the media the contents of the parties' settlement discussions, the Proposed Agreement unduly restricts Sorbie from providing truthful statements about his personal experience litigating the case and about facts that are already publicly available, including the existence and content of the Proposed Agreement and the allegations in the Third Amended Complaint. *Cf. Zorn-Hill*, 2020 WK 5578357, at *7 (approving a provision that limited publicity, but nevertheless permitted plaintiffs to "take affirmative steps

49

to contact the media about matters outside the Proposed Settlement, such as their allegations" and to "respond to media inquiries with "truthful statements about their experience litigating their case"). Second, the non-publicity provision impermissibly restricts Sorbie from using social media to communicate about these issues, including the publicly available allegations of the Third Amended Complaint and the terms of the Proposed Agreement. *See Burczyk*, 2017 WL 11511165, at *1; *Martinez*, 2021 WL 5001415, at *1–2; ; *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 345 (S.D.N.Y. 2016) ("Prohibiting an FLSA plaintiff from speaking truthfully about his experiences, his claims, and the resolution of his lawsuit is in strong tension with the remedial purposes of the FLSA.") (quotation marks omitted); *Chandler v. Total Relocation Servs., LLC*, No. 15 CIV. 6791 (HBP), 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017) (collecting cases requiring that non-disparagement clauses in FLSA settlements permit plaintiffs to make "truthful statements about plaintiffs' experience litigating their case").

### d.  *Opt-Out Procedure*

The Proposed Agreement is also impermissible because it would bind members of the FLSA collective who have not affirmatively assented to the Proposed Agreement.

Unlike the typical class action under Rule 23, once a collective action has been conditionally certified under the FLSA, "a putative member of the collective" must "affirmatively 'opt-in'" to join the lawsuit. *Marichal*, 432 F. Supp. 3d at 278 (citing 29 U.S.C. § 216(b)). Every collective member who opts into the collective action by filing a consent form obtains party status. *Id.*; *Anjum v. J.C. Penney Co.*, No. 13 CV 0460 RJD RER, 2014 WL 5090018, at *12 (E.D.N.Y. Oct. 9, 2014) (finding that a putative collective member "becomes party to the lawsuit through a separate action joined to the original suit . . . on the date written consent [to opt-in] is filed.") (citing 29 U.S.C. § 256(b)); *Waters v. Day & Zimmermann NPS,*

*Inc.*, 23 F.4th 84, 90 (1st Cir.) (collecting cases), *cert. denied*, 142 S. Ct. 2777 (2022); 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2010). In this case, the Court conditionally certified the FLSA collective on May 28, 2021. (Cond. Cert. Order.) Between July 19, 2021 and September 14, 2021, more than thirty people opted to join the conditionally certified FLSA collective by filing consent forms with the court. ("Consent to Join Forms," ECF Nos. 92–94, 96–99, 101–26; *see* Status Rep., ECF No. 127.) Accordingly, each of those individuals who opt-ed into the action became party to the case on the date they filed their consent to join form. *Anjum*, 2014 WL 5090018, at *12.

Because each person who opts-in to an FLSA collective becomes a party to that action, each member's "affirmative assent . . . is required for settlement." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 CIV. 8410 (ER), 2021 WL 4460632, at *8 (S.D.N.Y. Sept. 28, 2021). A collective member's consent to join the action does not serve as that member's consent to settlement; that member must *additionally* consent to any particular settlement. *See Marichal*, 432 F. Supp. 3d at 279 ("[T]he named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff—as a party to the case—is required."). While an FLSA collective member can file a notice opting-out of an FLSA collective, a court may not infer a collective member's consent to a settlement based solely on their failure to opt out of the action itself. *Id*. Accordingly, courts have rejected FLSA settlements that would automatically bind collective members who have opted into the lawsuit without requiring them to separately and affirmatively opt into the settlement, even where the proposed settlement permits a member to affirmatively opt *out* of the settlement. *See e.g.*, *id.*

The Proposed Agreement here includes the same kind of mechanism that the court rejected in *Marichal*, 432 F. Supp. 3d at 279. The Proposed Agreement binds all "Participating

Settlement Class Members," which it defines to include Settlement Class members who have submitted a valid claim form and who do not otherwise timely opt out of the Agreement. (Proposed Agreement § 1(w)). The Agreement provides an exception to the requirement to file a claim form, however, for individuals who previously opted into the action as members of the conditionally certified FLSA collective:

> The Named Plaintiffs and the Settlement Class Members who as of the date of this Agreement have filed timely Consent to Join forms consenting to join the FLSA collective action in this Action *and who do not subsequently Opt-out* in accordance with Section 13(k) and the Notice*, shall all be considered Participating Settlement Class Members and will be deemed to have returned a Valid Claim Form* and will not be required to return a Claim Form to be a Participating Settlement Class Member.

*Id.* (emphasis supplied). As in *Marichal*, this provision runs afoul of the requirement that each party to the action consent to any settlement, because it means that individuals who have opted into the conditionally certified FLSA collective would be *automatically* bound by this Proposed Agreement, whether they agree with the Proposed Agreement or not. While the exception clause does permit anyone to opt out of the settlement agreement, that mechanism alone does not sufficiently ensure that each collective member bound by the Proposed Agreement has affirmatively consented to it before they become bound. *Marichal*, 432 F. Supp. 3d at 281 (rejecting the same mechanism in an FLSA settlement as "inconsistent with the opt-in process required for a collective action").

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff Sorbie's Motion for Preliminary Approval of the Proposed Settlement with Unisys, ECF No. 227, without prejudice and with leave to renew upon addressing the issues identified in this Opinion. Sorbie and Unisys may proceed by either filing a revised, proposed settlement agreement with supporting

submissions or by informing the Court of their intention to abandon settlement negotiations and to continue pursuing this litigation. The parties shall file a joint status report by March 28, 2024.

Dated: Central Islip, New York

March 13, 2024

_____/s Nusrat J. Choudhury_____
NUSRAT J. CHOUDHURY
United States District Judge