**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
TONY CACCAVALE, ANTHONY MANGELLI,
DOUGLAS SORBIE, and JAMES BILLUPS
Individually and on behalf of all others similarly
situated,

|  |  |
|---|---|
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| -against- | **20-cv-974-NJC-ST** |

HEWLETT-PACKARD COMPANY A/K/A
HP INC., HEWLETT PACKARD ENTERPRISE
COMPANY and UNISYS CORPORATION,

Defendants.
------------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Douglas Sorbie ("Plaintiff" or "Sorbie") sued Unisys Corporation ("Defendant" or "Unisys") (together with Plaintiff, the "Parties") for alleged violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Before the Court is the Parties' joint motion for preliminary approval of a class and collective action settlement (the "Motion").  For the reasons discussed below, this Court respectfully recommends that the District Court GRANT the Motion.

## BACKGROUND

### I.    FACTUAL & PROCEDURAL BACKGROUND

This Court assumes the Parties' familiarity with this case's factual and procedural background.  To summarize, this Motion concerns a subset of claims between a subset of parties in a multi-defendant lawsuit regarding alleged FLSA and NYLL violations.  On February 21, 2020, plaintiffs Tony Caccavale ("Caccavale") and Anthony Mangelli ("Mangelli"), on behalf of themselves and others similarly situated, sued their current and former employers, Hewlett-Packard Company, Hewlett Packard Enterprise Company, and Unisys, for alleged late payment of

regular and overtime wages in violation of NYLL §§ 191 and 198, and alleged failure to provide notices in violation of NYLL § 195. *See* Compl., ECF No. 1. On May 5, 2020, Caccavale and Mangelli amended the complaint to add Sorbie—another former Hewlett Packard and Unisys employee—as a named plaintiff. *See* First. Am. Compl., ECF No. 11. Unisys moved to dismiss the First Amended Complaint, which the Court denied without prejudice upon referring the case to mediation. *See* Docket Order, dated September 14, 2020.

On December 17, 2020, Caccavale, Mangelli, and Sorbie filed a second amended complaint adding James Billups as a named plaintiff. *See* Second Am. Compl., ECF No. 55. The second amended complaint also added Sorbie's claim, on behalf of himself and others, against Unisys for alleged failure to timely pay overtime wages under the FLSA. *See id.* Unisys moved to dismiss the second amended complaint and, upon the Court's denial of the motion, for interlocutory appeal, which the Court also denied. *See* Docket Order, dated February 2, 2021.

Plaintiffs filed the operative complaint—the Third Amended Complaint ("TAC")—on January 26, 2023. *See* Third Am. Compl., ECF No. 201. In the TAC, Sorbie alleges two causes of action against Unisys. *See id.* First, that Unisys violated NYLL §§ 191(1)(a) and 198 by failing to timely pay regular and overtime wages. *See id.* ¶¶ 159–161. Sorbie brings this claim on behalf of himself and a proposed class of "All Field Service Engineers who were/are employed by Unisys in the State of New York at any time from six years prior to the filing of the initial complaint in this matter to the present." *Id.* ¶ 84(c). Second, that Unisys violated the FLSA by failing to timely pay overtime wages. *See id.* ¶¶ 167–169. Sorbie brings this claim on behalf of himself and a conditionally certified collective of "All Field Service Engineers in the State of New York who worked/work for Defendant Unisys at any time within the three-year period immediately preceding the filing of the initial complaint to present who did not receive their overtime wages timely as

required by the FLSA." *Id.* ¶ 98(a).  The Court granted the Parties' joint motion for conditional certification of the FLSA collective on May 28, 2021.  *See* Cond. Cert. Order, ECF No. 83. Including Sorbie, 35 individuals initially opted into the FLSA collective; one individual later withdrew.  Abelove Decl. ¶ 64 n.2, ECF No. 273-1.  The Court has yet to, however, certify Sorbie's proposed class of current and former Unisys employees who allege NYLL violations.

The Parties have since reached a settlement.  On October 16, 2023, Plaintiff moved for preliminary settlement approval.  *See* Mot. for Settlement, ECF No. 227 (the "First Motion").  On March 13, 2024, the Honorable Nusrat J. Choudhury, having identified various issues with Plaintiff's submissions and the original proposed settlement agreement, denied the motion without prejudice. *See generally* Op. & Order, ECF No. 252 (the "March 13 Opinion").  On June 24, 2024, the Parties filed the renewed, instant Motion for preliminary settlement approval, which includes revised submissions and a revised proposed settlement agreement (the "Settlement Agreement"). *See* Mot., ECF No. 273.  On August 14, 2024, Judge Choudhury referred the Motion to this Court for Report & Recommendation.  *See* Docket Order, dated August 14, 2024.

## II.    THE SETTLEMENT AGREEMENT

This Court also assumes the Parties' familiarity with the Settlement Agreement's terms.  To summarize, Unisys will pay $625,000 "in order to fully and finally resolve this Action in its entirety . . . ."  Settlement Agreement § 5. a., ECF No. 273-3.  Unisys will deposit that amount into a Qualified Settlement Fund, which will then be distributed per the Settlement Agreement's distribution plan  *Id.* § 5. b.; *see id.* §§ 7.–9.

The Settlement Agreement concerns several groups.  At the heart of these groups are those who meet the definition of "Service Delivery Employee":

current or former employees of Unisys (including the Named Plaintiffs) who are or were employed at any time by Unisys in New York based on a Unisys-assigned

3

New York work location, during the period February 21, 2014 through October 20, 2023 in one or more of the following positions in the Service Delivery Employee job family: Field Engineer 1, Field Engineer 2, Field Engineer 3, Field Engineer 4, Customer Engineer 2, Customer Engineer 3, Customer Engineer 4, Customer Engineer 5, Customer Engineer 6, Client Infrast Rep 3-Barg Unit, Client Infrast Rep 4-Bar Unit, Client Infrast Rep 5-Barg Unit, UTS Field Svc Associate, UTS Field Svc Tech 1, UTS Field Svc Tech 2, UTS Field Svc Tech 3, UTS Field Svc Tech 4, or UTS Field Svc Tech 5.

*Id.* § 1. ee.  Building off this definition, the Settlement Agreement defines "Settlement Members" as "all Service Delivery Employees."  *Id.* § 1. gg.

From there, the Settlement Agreement defines the "New York State Settlement Class" (hereinafter the "NYLL Class") as "all Settlement Members."  *Id.* § 1. hh.  As the Court has yet to certify the NYLL Class under Federal Rule 23(e) of Civil Procedure, the Parties request that the Court do so now for settlement purposes.  *See* Proposed Order ¶¶ 8, 9, ECF No. 273-3.  The Settlement Agreement next defines the conditionally certified "Federal FLSA Settlement Collective" (hereinafter the "FLSA Collective") as "all Settlement Members limited to the period December 17, 2017 through October 20, 2023."  Settlement Agreement § 1. hh.  The Settlement Agreement defines the NYLL Class and FLSA Collective together as the "Settlement Class/Collective."  Settlement Agreement § 1. hh.

Finally, the Settlement Agreement defines "Participating Settlement Member" as:

a Settlement Member (including, for the avoidance of doubt, the Settlement Class Representative) who does not submit a valid Opt-out in accordance with Section 13(k) and the Notice and who properly submits a Valid Claim Form within the Claim Period, in the manner described by and in compliance with the terms of this Agreement.

*Id.* § 1. w.  Individual Participating Settlement Members will be awarded a distribution amount based on the number of overtime hours they worked relative to the total number of overtime hours worked by all Participating Settlement Members.  *Id.* § 6.

4

Moreover, under the Settlement Agreement, Sorbie would receive a $10,000 incentive award.  *Id.* § 9. a.  As for attorneys' fees:

> Class Counsel shall make, and Unisys agrees not to oppose, an application for Attorneys' Fees that does not exceed thirty-three and one third percent (33 1/3%) of the Gross Settlement Amount of Six Hundred Twenty-Five Thousand Dollars ($625,000.00). This percentage amount shall be calculated after the Lawsuit Costs are deducted from the Gross Settlement Amount.

*Id.* § 8. a.  The "Lawsuit Costs" are "litigation expenses and costs incurred in this Action by Class Counsel . . . [and] are estimated to be no more than . . . $35,000.00."  *Id.* § 1. r.  Additionally, the Claims Administrator, Rust Consulting, would receive a fee in an amount no more than $11,600. *See id.* § 11. c.

## DISCUSSION

In denying the First Motion without prejudice, Judge Choudhury granted leave to renew the motion "upon addressing the issues identified" in the March 13 Opinion.  *See* March 13 Op. at 52.  In reviewing the Parties' revised submissions and the revised Settlement Agreement, this Court finds that the Parties have adequately addressed the issues identified in the March 13 Opinion so as to warrant preliminary approval of the Settlement Agreement.  This Court first addresses the requirements for preliminarily approving the Settlement Agreement with respect to the NYLL Class's claims, and then addresses the requirements for preliminarily approving the Settlement Agreement with respect to the FLSA Collective's claims.  For the reasons discussed below, the Settlement Agreement meets the requirements for both.

## I.    NYLL CLASS'S SETTLEMENT

"The judicial role in reviewing a proposed settlement is demanding."  *In re Payment Card Interchange Fee & Merch. Disc. Antitr. Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019).  The court may

only approve a proposed class action settlement if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(a); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

Approving a class action settlement "typically occurs in two stages: (1) preliminary approval—where prior to notice to the class, a court makes a preliminary evaluation of fairness, and (2) final approval—where 'notice of a hearing is given to the class members, and class members and settling parties are provided the opportunity to be heard on the question of final court approval." *Payment Card*, 330 F.R.D. at 27 (cleaned up) (citations omitted).  Here, the Parties are at the preliminary approval stage.  In deciding whether to grant preliminary approval, the Court "must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'"  *Id.* at 28 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)).

## A.  Likely Approval Under Rule 23(e)(2)

"Because Rule 23(e)(2) sets forth the factors that a court must consider when weighing final approval . . . courts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval." *Id.*  However, before its amendment in 2018, Rule 23 did not provide any factors for courts to consider when weighing final approval.  *Id.*  Rather, Rule 23 simply required the settlement to be "fair, reasonable, and adequate."  *Id.*  As such, Courts in this Circuit came to consider the nine factors enumerated *City of Detroit v. Grinnell Corp.* to determine a proposed settlement's fairness. *See* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The nine factors included:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial,

6

(7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted).

The current, amended version of Rule 23(e)(2), however, provides the following factors for the court to consider:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *Payment Card*, 330 F.R.D. at 29 (citing Fed. R. Civ. P. 23 advisory committee's notes to 2018 amendment). "Paragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine 'the relief that the settlement is expected to provide to class members . . . .'" *Id.*

Even with Rule 23's amendment, however, courts evaluate the Rule 23(e)(2) factors in conjunction with the *Grinnell* factors, "which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F4th at 243 ("the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors"). Here, as discussed below, the factors largely weigh in favor of the Settlement Agreement's preliminary approval.

### 1. Adequate Representation

This Court first assesses whether Sorbie and his counsel ("Class Counsel" or "Plaintiff's Counsel") adequately represent the NYLL Class. *See* Fed. R. Civ. P. 23(e)(2)(A). To determine whether a class's representative and counsel adequately represent the class, courts consider whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (citation omitted).

#### a. Adequate Class Representative

A class representative is adequate if he has (1) "an interest in vigorously pursuing" the class's claims, and (2) "no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); *see Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("To ensure that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members."). "Plaintiffs' interests are considered congruent with other class members when plaintiffs and class members have suffered the same injury because they share the same interest in vigorously pursuing the claims of the class." *Cymbalista v. JP Morgan Chase Bank, N.A.*, 20-cv-456 (RPK) (LB), 2021 WL 7906584, *5 (E.D.N.Y. May 25, 2021) (citations and quotations omitted), *report and recommendation adopted*, (E.D.N.Y. Nov. 22, 2021).

The First Motion provided insufficient information about Sorbie and, as such, the Court could not assess whether Sorbie would adequately represent NYLL Class. *See* March 13 Op. at 20. This Motion, however, asserts that Sorbie has "vigorously pursued" the class's claims by, among other things, "assisting in the preparation of [his] complaints and motions, responding to

discovery demands and interrogatories by producing documents and providing information for interrogatory responses, and having numerous calls with Plaintiffs' [C]ounsel to discuss litigation and settlement strategy."  Stipulation Regarding Settlement ¶ 8, ECF 273-6.  Sorbie was also prepared, and still is, to be deposed, and has been integral to this case's settlement, including by participating in mediation and the May 1, 2023, settlement conference.  *See id.*  Sorbie also "procured agreed upon modifications to Unisys' termination agreement for those [Settlement Members] whose employment was terminated by Unisys during the pendency of this litigation." *Id.* ¶ 47.  Indeed, these efforts demonstrate that Sorbie has "vigorously pursued the settlement class's interests."  *See, e.g.*, *Amigon v. Safeway Constr. Enters, LLC*, 20-cv-5222 (PK), 2024 WL 5040436, *4 (E.D.N.Y. Dec. 9, 2024) (finding that the plaintiff vigorously pursued the settlement class's interests where plaintiff assisted with "the preparation of the initial complaint and the amended complaint [and] the factual investigations of the claims," produced documents, provided information used in the damages analysis, attended a deposition, and attended the mediation session).

Plaintiff's Counsel is "unaware of any conflict" between Sorbie and the class and asserts that Sorbie "performed the same/similar work . . . for a similar portion of the workday," for the same employer, in the same assigned work location, during the same time period, was paid in the same manner, and is seeking the same damages as the class.  *See* Abelove Decl. ¶ 24.  Indeed, Sorbie shares the same interests, and seeks the damages as the NYLL Class, demonstrating that he can adequately represent the class's interests, such that this factor weighs in favor of preliminary approval.  *See, e.g.*, *Schutter v. Tarena Int'l, Inc.*, 21-cv-3502 (PKC), 2024 WL 4118465, *5 (E.D.N.Y. Sept. 9, 2024) (finding class representatives adequate where their interests were aligned with those of the class because they shared "the common objective of maximizing their recovery .

9

. . for the same alleged misconduct."); *Cymbalista*, 2021 WL 7906584, at *5 (finding class representatives adequately represented where they suffered the same injury and sought to recover the same damages as all the members of the proposed class); *see Amigon*, 2024 WL 5040436, at *4 (finding that the plaintiff vigorously pursued the settlement class's interests where there was no indication that his interests were antagonistic to other class members).

      b.  Adequate Class Counsel

"Courts find class counsel qualified when they are experienced and knowledgeable in the area of complex class litigations." *Cymbalista*, 2021 WL 7906584, at *5 (citations and quotations omitted). Courts "must pay close attention to the negotiating process, to ensure that . . . counsel have possessed the experience and ability, and have engaged in the discovery[] necessary" to effectively represent the class's interests. *D'Amato*, 236 F.3d at 85 (citations omitted) (upholding finding that class counsel provided adequate representation where District Court had considered "whether plaintiffs' counsel possessed the experience and ability to represent effectively the class's interests"); *see* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("For example, the nature and amount of discovery in this or other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

The First Motion failed to "provide any information about proposed class counsel's previous experience litigating labor law actions or any experience with class or collective actions" such that the Court could not find that class counsel adequately represented the NYLL Class. March 13 Op. at 21. This Motion, however, provides sufficient information for the Court to find that Class Counsel can adequately represent the class.

According to the sworn Abelove Declaration (a different attorney declaration from the one submitted with the First Motion), Class Counsel collectively have 50+ years of trial experience,

60+ years employment litigation experience, and have previously been appointed class counsel in another FLSA NYLL litigation in this Circuit.  *See* Abelove Decl. ¶ 27.  Additionally, Attorney Abelove, who has practiced labor and employment law since 1994, has "tried numerous employment cases" in this District, including one "concerning unpaid salary and commissions." *See id.* ¶ 28.  He is also defense counsel in an employment and labor class action in this District that recently settled.  *See id.*  Attorney Abelove and Attorney Pagano also represent a conditionally certified class and collective in a prompt-payment FLSA case in this Circuit.  *See id.* ¶ 29.

As such, Class Counsel collectively possess the experience and ability to adequately represent the proposed class here, such that this factor weighs in favor of preliminary approval. *See, e.g.*, *Amigon*, 2024 WL 5040436, at *4 (finding class counsel's "extensive experience litigating and settling wage and hour cases and other employment cases" weighed in favor of preliminary approval); *Schutter*, 2024 WL 4118465, at *5 (finding class counsel adequate where class counsel had "successfully litigated dozens of class actions in recent decades, some in this District."); *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, 20-cv-5917 (TAM), 2023 WL 5511513, *6 (E.D.N.Y. Aug. 24, 2023) (considering counsel's previous appointment as class counsel in other cases in determining that class counsel provided adequate representation); *see also D'Amato*, 236 F.3d at 85 (upholding finding that class counsel provided adequate representation where plaintiffs' counsel were "extremely experienced" and involved in other litigations of similar subject matter).

Moreover, Class Counsel have engaged in extensive discovery efforts throughout the litigation.  *See* Abelove Decl. ¶ 30.  Class Counsel have also "overcome motions to dismiss, a judicial order to show cause with respect to standing, and a request for interlocutory appeal."  *Id*. Indeed, these facts also show that Class Counsel can adequately represent the proposed class such

that this factor weighs in favor of approval.  *See, e.g.*, *Amigon*, 2023 WL 5040436, at \*4 (finding that plaintiff's counsel's expenditure of "significant time identifying, investigating, and pursuing discovery of relevant information and settlement in this case in an effort to identify and properly prosecute the claims on behalf of the affected individuals" weighed in favor of preliminary approval); *Villa v. Highbury Concrete Inc.*, 17-cv-984 (PK), 2022 WL 19073649, \*3 (E.D.N.Y. Nov. 25, 2022) ("Plaintiff's Counsel . . . have ably conducted the litigation . . . [they] have engaged in discovery, motion practice, and settlement discussions."); *Northern Dynasty Minerals*, 2023 WL 5511513, at \*6 (considering counsel's "thorough investigation . . . into the underlying facts and applicable law" as well as their "extensive" "efforts to investigate and substantiate alleged violations" in finding adequate representation).

### 2. Arm's-Length Negotiations

In deciding whether a proposed settlement agreement is fair, the court must also consider whether the parties negotiated the proposed settlement at arm's length.  Fed. R. Civ. P. 23(e)(2)(B). However, the court may not presume a settlement agreement's fairness based solely on its arm's-length negotiation.  *Moses*, 79 F.4th at 243.

Judge Choudhury originally found that the Parties had already engaged in three years of litigation (including a motion to dismiss and a request for interlocutory appeal), discovery (including some expert discovery), and settlement negotiations (including an attempt at mediation).  *See* March 13 Op. at 21.  Judge Choudhury further found that the record did not indicate any bad faith or collusion.  *See id.*  Judge Choudhury concluded that this factor likely weighed in favor of preliminary approval.  *See id.*  This Court concurs and finds that this factor likely weighs in favor of preliminary approval of the Settlement Agreement here.

### 3.  Adequate Relief for the Class

The Court next assesses whether relief for the class is adequate, considering:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i–iv).  "The Court also considers the proposed release from liability as an additional factor under this section, as it affects the determination of the fairness, reasonableness, and adequacy of class relief."  *Payment Card*, 330 F.R.D. at 36.

### a.  Costs, Risks, and Delay of Trial and Appeal

The "costs, risks, and delay" factor implicates several *Grinnell* factors, which the guides the Court's assessment of whether this Rule 23(e)(2) factor will likely weigh in favor of granting final approval.  *Payment Card*, 330 F.R.D. at 36.  Those *Grinnell* factors are: "(i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial."  *Id.*  In sum, the Court must assess whether the proposed settlement would result "in substantial and tangible present recovery, without the attendant risk and delay of trial."  *Id.*

### i.   Litigation's Complexity, Expense, and Likely Duration

"[C]lass action suits in general have a well-deserved reputation as being the most complex."  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (citations and quotations omitted).  Given a class action suit's complexity, "it is reasonable to assume" that, without a settlement, continued litigation will require "extensive time and expense."  *Garland v. Cohen & Krassner*, 8-cv-4626 (KAM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011).

Judge Choudhury originally found that this factor would have weighed in favor of preliminary approval if Sorbie had properly established certain facts through a sworn statement. *See* March 13 Op. at 23.  This time, Sorbie has done so.  *See generally* Abelove Decl.

Absent settlement, the Parties will need to conduct further discovery, including Plaintiff conducting two Rule 30(b)(6) depositions of Unisys, and Unisys conducting 37 depositions of the named plaintiffs and the members of the collective.  *Id.* ¶ 40.  The estimated total fees and costs of these depositions is over $750,000, as each attorney would have to devote approximately 390 hours to working on, and preparing for, the depositions.  *Id.*  The attorneys would incur an estimated additional several hundred thousand dollars in fees were the Parties to proceed to summary judgment or trial, which would first involve litigation over class certification.  *Id.* ¶ 41.  There would also be "costly" and "significant out of pocket expenses" were the Parties to conduct expert discovery.  *Id.* ¶ 42.  All in, the Parties expect to incur over $1.5 million in fees and costs to continue litigating this matter.  *Id.*

Unquestionably, continued litigation would be complex and result in the significant expenditure of time, money, and other resources.  As such, this factor weighs in favor of preliminary approval.  *See Villa*, 2022 WL 19073649, at *4 (finding this factor weighed in favor of preliminary approval where additional litigation "would require both sides to expend considerable time and resources."); *Payment Card*, 330 F.R.D. at 36 ("Because of the complexity and difficulty of the issues in this case, it requires, and would continue to require, costly counsel and experts, and a wealth of time.  This subfactor will likely weigh in favor of granting final approval.").

ii.    *Risks of Establishing Liability*

"In considering the risks of establishing liability, the court 'need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'"  *Mikhlin v. Oasmia Pharm. AB*, 19-cv-4349 (NGG), 2021 WL 1259559, *5 (E.D.N.Y. Jan. 6, 2021) (*citing In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).   The Court need not "adjudicate the disputed issues or decide unsettled questions" to assess such risks.  *Glob. Crossing Sec.*, 222 F.R.D. at 459.

Judge Choudhury originally found that there was sufficient risk of establishing liability such that this favor likely weighed in favor of preliminary approval.  *See* March 13 Op. at 25.  This remains true.  Indeed, the "fact-intensive nature of FLSA and NYLL claims" lend themselves to "risk in proving liability . . . ."  *Villa*, 2022 WL 19073649, at *4.

The Motion describes five risks to establishing liability: (1) whether there is even a cause of action for violations of NYLL § 191(1)(a); (2) the possibility that Plaintiff and the proposed class members were not "manual workers"; (3) possible legislative action that would alter NYLL § 191(1)(a); (4) the possibility that the Court will find that Unisys acted in good faith, thereby reducing or eliminating liquidated damages; and (5) the possibility that Unisys successfully argues that liquidated damages are inappropriate, thus reducing the overall damages award.  *See* Mem. Supp. at 21–22, ECF No. 273-3; Abelove Decl. 43–47.  Without reaching the merits of these arguments—which vary in likelihood—there is enough risk in establishing liability that this factor likely weighs in favor of preliminary approval.  *See Cymbalista*, 2021 WL 7906584, at *6 ("given the inherent risks and duration of litigation, the certainty of a substantial and speedy recovery in this case weighs in favor of settlement approval."); *id.* at *7 (noting that the possibility of a cause

of action becoming unavailable, and the inherent delay in dispositive motion practice, support approval of a proposed settlement).

       *iii.*    *Risks of Establishing Damages*

In addition to the risks of establishing liability, the Court assesses the risks of establishing damages. *See Payment Card*, 330 F.R.D. at 36. After all, "the history of litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages, or only disappointing damages, at trial, or on appeal." *Sumitomo Copper*, 189 F.R.D. at 283.

The First Motion did not contain sufficient information for the Court to analyze this factor. *See* March 13 Op. at 25. There, as here, Sobie's arguments regarding the risks of establishing damages generally overlapped with the risks of establishing liability.

However, Sorbie now identifies at least one risk to establishing damages unique from the risks of establishing liability: namely, that expert discovery has still not occurred and, as such, Unisys has not yet provided Sorbie with expert evidence rebutting Sorbie's expert's damages' calculations. *See* Abelove Decl. ¶ 48. "Damages at trial inevitably . . . involve a 'battle of the experts.'" *Sumitomo Copper*, 189 F.R.D. at 283. "[I]t is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors." *Id.* (citation omitted). Although Sorbie does not yet know what Unisys's expert's damages calculation will be, there are risks to establishing damages where multiple expert opinions are at play. *See Payment Card*, 330 F.R.D. at 39 (noting that when parties have submitted competing expert reports on damages, "damages would likely be heavily contested."). Accordingly, this factor weighs in favor preliminary approval.

iv.    *Risks of Maintaining the Class*

The risks of maintaining a class through trial weigh in favor of settlement where the defendant would likely oppose class certification were the case to be litigated.  *Payment Card*, 330 F.R.D. at 39–40.  Judge Choudhury found that this factor likely weighed in favor of preliminary approval, as the class had not yet been certified, and Unisys had consented to class certification for settlement purposes only.  *See* March 13 Op. at 26.  This remains true, as Plaintiff has still not moved for class certification, and Unisys only agreed to class certification for settlement purposes.  Abelove Decl. ¶¶ 51, 53.  Were litigation to continue, Unisys would oppose Plaintiff's attempts to seek certification, and attempt to decertify and class before final judgment.  *Id.* ¶ 52; Stipulation Regarding Settlement ¶ 24.  This factor therefore weighs in favor or preliminary approval.  *See Payment Card*, 330 F.R.D. at 40 ("there is no guarantee that the class could be certified if the parties proceeded with the litigation, and Defendants have indicated that they are only consenting to class certification for the purposes of settlement."); *see also Villa*, 2022 WL 19073649, at *4 (acknowledging risk that defendants could move to decertify class).

b.    Effectiveness of Proposed Distribution Method

The Court must evaluate "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  The allocation formula must be fair and adequate, but "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005) (citing *Maley v. Del Glob. Techs. Corp.*, 186 F.Supp.2d 358, 367 (S.D.N.Y.2002)).  It "need not be perfect." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 5-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007).

Judge Choudhury found that the original proposed settlement agreement's distribution plan likely met the Rule 23(e)(2)(c)(ii) standard—as it was similar to other court-approved plans. *See* March 13 Op. at 27. However, the original distribution plan was problematic in at least one respect. Under the plan, any residual settlement funds would be distributed to an unspecified, nonsectarian non-profit charitable organization "selected by the Settlement Class Representative in consultation with [] Unisys and approved by the Court, or as otherwise directed by the Court." *Id.* The plan thus failed to "indicate whether the charitable organization that would receive any remaining settlement funds would have a mission or engage in work related to the purpose of the lawsuit." *Id.* The current Settlement Agreement, however, addresses this issue.

The donation of residual settlement funds is referred to as a "cy pres" designation. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ("Cy Pres means 'as near as possible' and 'courts have utilized Cy Pes distributions where . . . there are unclaimed funds.") (citations omitted). In the class action settlement context, *cy pres* awards may be made when, for example, distribution of the remaining funds to the class is infeasible, and the designees reasonably approximate the class's interests. *See In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 852–53 (S.D.N.Y. 2016). Indeed, "[t]he permissibility of distributions pursuant to *cy pres* principles is well-established so long as class members benefit, even if indirectly, from the distribution." *Reyes v. Summit Health Mgmt., LLC*, 22-cv-9916 (VSB), 2024 WL 472841, *5 (S.D.N.Y. Feb. 6, 2024). As such, courts require some showing that proposed *cy pres* recipients reasonably approximate the class's interests. *See, e.g.*, *Marin v. Apple-Metro, Inc.*, 12-cv-5274 (CLP), 2024 WL 4363629, *11 (E.D.N.Y. Mar. 29, 2024) (seeking justification as to why a selected *cy pres* recipient reasonably approximates the interests of the class).

The current Settlement Agreement designates the National Institute for Workers' Rights, a nonprofit, as the recipient of any remaining settlement funds following the distribution and the payment of costs, fees, and expenses.  Settlement Agreement § 7. e.  According to their website, the organization "aspire[s] to a future in which all workers are treated with dignity and respect, and if their rights are violated, workers can get swift justice."  Abelove Decl. ¶ 57.  Such a nonprofit sufficiently approximates the NYLL Class's interests such that it is an acceptable *cy pres* designee, and such that the distribution plan likely weighs in favor of preliminary approval.  *See Villa*, 2022 WL 19073649, at *8 (preliminarily approving NYLL class action settlement where *cy pres* designee was "a charity dedicated to employee rights").

c.  <u>Proposed Attorneys' Fees Award</u>

Courts must account for "the terms of any proposed award of attorney's fees."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  "This review provides a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check."  *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019).  "[W]hen reviewing the substantive fairness of a proposed settlement, 'the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement' in tandem."  *Moses*, 79 F.4th at 244 (citing *Fresno Cnty. Emps.' Ret. Ass'n*, 925 F.3d at 72).

Under the Settlement Agreement, Class Counsel will seek first reimbursement of their expenses, and in attorneys' fees one third of the remaining settlement fund, not exceeding one third of Unisys's $625,000 payment.  Judge Choudhury found that the proposed amount in attorneys' fees "appear[ed] to be reasonable."  March 13 Op. at 29.  This Court concurs as, indeed, "[c]ourts in this District have approved fees as high as 33.5% from comparable class settlement funds, finding that they are well within the applicable range of reasonable percentage fund awards."  *In*

*re GSE Bonds Antitr. Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019).  As such, this factor likely weighs in favor of preliminary approval.

        d.   <u>Agreement Under Rule 23(e)(3)</u>

The Court must also consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(c)(iv), which includes "any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  "Rule 23(e)(3) is aimed at revealing 'undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others,' namely, the representative plaintiffs or their attorneys."  *Northern Dynasty Minerals*, 2023 WL 5511513, at *9 (citing Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment).  Here, the Parties are unaware of any agreement that would require disclosure under Rule 23(e)(3).  Stipulation Regarding Settlement ¶ 43.  "Therefore, this factor 'has no bearing on the preliminary approval analysis.'"  *Cymbalista*, 2021 WL 7906584, at *9 (citing *GSE Bonds*, 414 F. Supp. 3d at 696).

        e.   <u>Release of Liability</u>

"[C]lass action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."  *Payment Card*, 330 F.R.D. at 42.  "[R]eleases cannot be boundless," *id.* at 43, and "[c]ourts have denied preliminary approval where releases from liability are . . . overly broad."  *Id.* at 42.  Releases are further "limited by . . . adequacy of representation doctrines."  *Id.* at 42 (citations and quotations omitted).

The Settlement Agreement contains several release provisions.  *See* Settlement Agreement § 14.  NYLL Class members (who have not timely opted out) agree to discharge Unisys:

> from any and all Claims . . . relating to or based on any state or local law . . .
> pertaining in any way to wages or hours worked, including minimum wage,

> overtime, unreimbursed expenses, interest, liquidated damages, punitive damages, attorneys' fees, costs and expenses, hours of work, record keeping/wage statements, payment of wages and overtime, and/or frequency of pay while employed by [Unisys], including . . . all state and local wage and hour . . . Claims that were asserted or could have been asserted against [Unisys] in this Action, including under the New York State Labor law and its related regulations and wage orders, regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order.

*Id.* § 14. a.  As this release is limited to claims arising from the same factual predicate as this case's claims, it is likely permissible.  Although Judge Choudhury could not assess the permissibility of a similar release contained in the original proposed settlement agreement due to Plaintiff's failure to provide sufficient information regarding the adequacy of Plaintiff's and Class Counsel's representation, this Motion remedies that issue.  *See* March 13 Op. at 30–31.

Additionally, Class Counsel and Sorbie agree to "release, acquit, and forever discharge any Claim that he or they may have against [Unisys] for attorneys' fees, expenses, or costs associated with Class Counsel's representation of the Settlement Class Representative and the Settlement Class/Collective."  Settlement Agreement § 14. C.  As Judge Choudhury found,  "[t]his provision is likely permissible because it would only release claims for attorneys' fees, costs, and expenses that arise out of the 'identical factual predicate as the settled conduct.'"  March 13 Op. at 31 (citing *Payment Card*, 330 F.R.D. at 42)).

Notably, the original proposed settlement agreement contained a general release of claims. *See* March 13 Op. at 31–32.  That release was overbroad, as it released Unisys from claims *other than* wage and hour claims (and claims for attorneys' fees, costs, and expenses).  *Id.* at 31. Considering such a broad release, Judge Choudhury could not find the original proposed settlement agreement to be fair, reasonable, or adequate.  *See id.* at 32.  However, the Parties have since removed the general release from the Settlement Agreement and, therefore, the general release no longer weighs against preliminary approval.  *See* Stipulation Regarding Settlement ¶¶ 44, 45.

21

The Settlement Agreement also contains an additional "covenant not to sue" that reinforces the releases.[1]  *See* Settlement Agreement § 15.  The provision provides, in part:

> The Settlement Class Representative, New York State Settlement Class Members who do not timely Opt-out of this Settlement, and Federal FLSA Settlement Collective Members who submit a Valid Claim Form and thus become Participating Settlement Members promise not to file a lawsuit in any court, or participate as a party, including, but not limited to, as a class or collective action member in any legal proceedings, in any forum, against [Unisys], for any Claim included and released in the Release(s) in Sections 14(a) through 14(c), above as applicable.

As this provision is also limited to claims arising from the same factual predicate as those of this case, it is likely permissible.

### 4.  Equitable Treatment of Class Members

The Court must consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  Consideration under this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  *Payment Card*, 330 F.R.D. at 47 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

Judge Choudhury found that the original proposed settlement agreement's distribution plan appeared appropriate.  *See* March 13 Op. at 33.  Indeed, the distribution plan involves paying out the legal costs, attorneys' fees, administrator's fee, and incentive award, followed by a *pro rata*

---

[1] The Settlement Agreement also contains a release applicable to the FLSA Collective members (who become Participating Settlement Members).  Settlement Agreement § 14. b.  Under the release, those individuals agree to discharge Unisys from: "any and all Claims . . . relating to, or based on federal law . . . pertaining in any way to wages or hours worked, including minimum wage, overtime, unreimbursed expenses, interest, liquidated damages, punitive damages, attorneys' fees, costs and expenses, hours of work, record keeping/wage statements, payment of wages and overtime, and/or frequency of pay while employed [Unisys], including . . . all Claims that were asserted or could have been asserted now or in the future against [Unisys] in this Action, including under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and its regulations, regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order."  *Id.*

distribution to the Participating Settlement Members.  *See* Settlement Agreement §§ 5–9.  Courts generally approve such proportional distribution plans.  *See, e.g.*, *Payment Card*, 330 F.R.D. at 47; *see Mikhlin*, 2021 WL 1259559, at *8 (collecting cases).

However, the First Motion failed to provide sufficient information regarding Sorbie's role in this litigation for the Court to determine whether Sorbie's $10,000 incentive was appropriate.  March 13 Op. at 34–35.  The First Motion also failed to provide sufficient information to calculate the average Participating Settlement Member's award such that the Court could not determine whether Sorbie's incentive award was excessive in comparison.  *See id.* at 34.  This Motion addresses those issues.

"Incentive awards are not uncommon in class action cases and are within the discretion of the court.  Courts look for the existence of special circumstances when determining whether an award is justified and, if so, in what amount." *Torres v. Toback, Bernstein & Reiss LLP*, 11-cv-1368 (NGG) (VVP), 2014 WL 1330957, *3 (E.D.N.Y. Mar. 31, 2014) (citations and quotation marks omitted).  Such special circumstances may include, for example:

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Id.* (citations omitted).  However, courts must "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Moses*, 79 F.4th at 245.  Incentive awards must be "reasonable and promote equity between class representatives and absent class members." *Id.*

According to the Abelove Declaration, Sorbie "has been vital to the success of this four-year-long litigation." Abelove Decl. ¶ 60.  Sorbie: has been in regular contact with Class Counsel

providing information "vital" to the litigation; assisted Class Counsel in preparing the complaints; provided "vital" documents in response to several sets of document requests; reviewed, and provided insight on, documents that Unisys produced; answered several sets of interrogatories; and was instrumental in achieving the settlement. *Id.* The Abelove Declaration also notes that as the other named Plaintiffs signed releases with Unisys, there would be no action against Unisys but for Sorbie's entering the litigation. *Id.* Finally, through his efforts, Sorbie "procured agreed upon modifications to Unisys' termination agreement for those Settlement Members whose employment was terminated by Unisys during the pendency of this action." *Id.* These facts suggest that Sorbie has "expended time and effort . . . in assisting in the prosecution of the litigation," and that, as such, an incentive award to Sorbie is appropriate. *Torres*, 2014 WL 1330957, at *3.

That said, the Parties cannot yet precisely determine how the $10,000 incentive award will compare to the NYLL Class members' individual recovery amounts. They calculate that:

> If the Court approves the $35,000 in legal costs and 1/3 of the balance as attorney fees as well as authorizes payment to the third-party administrator of $11,600 and the service award of $10,000, the net to be distributed would be $371,733. Given the fact that only those who submit claims will be paid it is impossible to ascertain at this point the amount each person will get. If all 295 New York State Settlement Class Members submitted claims and all worked a comparable amount of overtime each person's recovery would be approximately $1,260.11. Sorbie's service fee award would not be disproportionate to that amount given his efforts on behalf of the New York State Settlement Class Members described herein. The greater likelihood is that approximately 10% of the New York State Settlement Class Members will submit claims. Assuming they each worked a comparable amount of overtime each person's recovery would be approximately $12,601.13, making Sorbie's service award less than each claimant's individual award.

Abelove Decl. ¶ 61.

Based on those estimates—*i.e.* average recovery per NYLL Class member ranging from $1,260.11 to $12,601.13—$10,000 is not so disproportionate or unreasonable, at this juncture, as to preclude approval of the settlement. *See Kindle v. Dejana*, 308 F.Supp.3d 698, 718 (E.D.N.Y.

24

2018) ("Plaintiff did expend significant time and effort in prosecuting this action which ultimately resulted in a favorable settlement for the Plaintiff as well as the class members. Therefore, a reasonable service award is appropriate.  Plaintiff has requested an award of $10,000 and the Court finds this amount to be reasonable under the circumstances."); *id.* (collecting cases approving $10,000 incentive awards); *see also Schutter*, 2024 WL 4118465, at *10 ("while the incentive award . . . is around $5,000 greater than the estimated average class recovery, the Court does not find this difference to be so great as to be unreasonable in light of  Lead Plaintiff . . . having . . . more frequent interactions with counsel for case-related matters."); *Northern Dynasty Minerals*, 2023 WL 5511513, at *9 (finding it unlikely that a requested award of up to $25,000, split between two people, would preclude final settlement approval).

### 5.  Defendant's Ability to Withstand Greater Judgment

"Under the *Grinnell* analysis, the court also considers Defendant['s] ability to withstand a greater judgment than that provided for in the proposed settlement."  *Rosenfeld v. Lenich*, 18-cv-6720 (NGG), 2021 WL 508339, *7 (E.D.N.Y. Feb. 11, 2021).  Such an ability, "standing alone, does not suggest that the settlement is unfair."  *Northern Dynasty Minerals*, 2023 WL 5511513, at *10 (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012)).  To that end, a large corporate defendant that can withstand greater judgment "should not in and of itself undermine an otherwise reasonable settlement agreement."  *Cymbalista*, 2021 WL 7906584, at *10.  A defendant's cooperation "tends to offset the fact that they would be able to withstand a larger judgment."  *GSE Bonds*, 414 F.Supp.3d at 696 (citations omitted).

The First Motion did not analyze this factor, stating merely that the factor was "not currently at issue."  March 13 Op. at 36.  In this Motion, however, the Parties concede that Unisys—with its 2023 FY revenue approximating $2.02 billion—could withstand greater

judgment.  *See* Stipulation Regarding Settlement ¶ 49.  Even so, "this fact alone does not undermine the reasonableness" of the Settlement Agreement.  *GSE Bonds*, 414 F.Supp.3d at 696 (citing *In re Vitamin C Antitr. Litig.*, 6–md–1738 (BMC), 2012 WL 5289514, *6 (E.D.N.Y. Oct. 23, 2012)).

The First Motion also made no assertions with respect to Unisys's cooperation.  *See* March 13 Op. at 35–36.  Judge Choudhury even noted that while Unisys did not oppose the First Motion, it did not join it either.  *Id.* at 36 n.11.  This time, however, Unisys joins the Motion, and the Parties stipulate that Unisys "cooperated in this settlement by assisting with the drafting and preparation of the initial settlement agreement and motion papers, assisting with the drafting and preparation of the revised settlement agreement and motion papers, and joining in the instant motion." Stipulation Regarding Settlement ¶ 50.  As such, even if this factor does not weigh strongly in favor of preliminary approval, it does not, by itself, defeat preliminary approval.  *See GSE Bonds*, 414 F. Supp. 3d at 696.

### 6.  Settlement's Range of Reasonableness

Under *Grinnell*, the Court also considers both the "range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Payment Card*, 330 F.R.D. at 47–48.  These two factors "are often combined for the purposes of analysis." *Id.* at 48. "The range of reasonableness for a settlement is a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Mikhlin*, 2021 WL 1259559, at *8 (citations and quotations omitted).  A proposed settlement that is only a "fraction of the potential recovery does not, in and of itself,

mean that the proposed settlement is grossly inadequate and should be disapproved." *Payment Card*, 330 F.R.D. at 48 (citing *Grinnell*, 495 F.2d at 455).

Unisys has agreed to settle the NYLL Class's and FLSA Collective's claims for $625,000. Settlement Agreement § 5. a.  Sorbie's expert estimates that the NYLL Class's damages could amount, best-case scenario, to $3.8 million.  This places the settlement amount at approximately 16.5% of the NYLL Class's best possible award.  While Judge Choudhury found that Sorbie's estimated percentage was in line with percentages that other courts have found reasonable, *see, e.g.*, *GSE Bonds*, 414 F.Supp.3d at 697, Judge Choudhury could not determine whether the settlement amount was within the range of reasonableness due to Sorbie's failure to explain how he or his expert arrived at the $3.8 million number.  March 13 Op. at 37.  Sorbie had also failed to indicate whether Unisys disputed the $3.8 million number.  *Id.*  Here, Sorbie addresses those problems.

As explained in the Abelove Declaration, Plaintiff's expert arrived at $3.8 million by reviewing "data provided by Unisys for the New York State Settlement Class Members, including name, employee ID, employee position, earnings codes, hours worked, earnings, pay period beginning date, pay period ending date, and check date." Abelove Decl. ¶ 67.  As also explained, Unisys does not dispute this number.  *See* Stipulation Regarding Settlement ¶ 53.  Per the joint Stipulation Regarding Settlement, the "Parties agree that $625,000, representing approximately 16.5% of Plaintiff's expert calculations is a fair resolution given all factors including the incredible cost of continuing the litigation." *Id.*  As such, this factor weighs in favor of preliminary approval.

### 7.  Class's Reaction to the Settlement

The Court also considers the class's reaction to the proposed settlement. *See Grinnell*, 495 F.2d at 463.  Generally, this factor "cannot be considered until after notice has been provided."

*Mikhlin*, 2021 WL 1259559, at *4 n.2.  As such, courts do not usually consider this factor at the preliminary approval stage.  *See, e.g.*, *id.*; *Northern Dynasty Minerals*, 2023 WL 5511513, at *9 n.10 ("The second *Grinnell* factor, 'the class's reaction to the settlement,' cannot be assessed at this time.").  Such is the case here.

Even so, to "put the Court at ease," Mem. Supp. at 29, Plaintiff's counsel notes that "the four lead Plaintiffs are all pleased with the resolution of the matter and have expressed their support of and intent to participate in the settlement."  Abelove Decl. ¶ 63.  Plaintiff's counsel also notes, somewhat vaguely, that the settlement was "well received" with an unspecified number of the FLSA Collective members who, indeed, overlap with the NYLL Class.  *Id.* ¶ 64.  Surely, this bodes well for the Settlement Agreement.  However, as Plaintiff can only cite positive sentiments from a handful of the 295 people in the NYLL Class, this Court declines to address this factor at this time.  *See Rosenfeld*, 2021 WL 508339, at *4 n.2 (declining to consider this factor at the preliminary approval stage).

## B.  Likely Class Certification

To preliminarily approve a class action settlement, the Court must also find that it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  The Court can only certify a class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements "are known as numerosity, commonality, typicality, and adequate representation."  *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023).  There is also "an implied requirement of ascertainability."  *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d

Cir. 2015) (citations and quotations omitted).  Additionally, for the Court to certify the class, the plaintiff must also "establish (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)) (further citations omitted); *see* Fed. R. Civ. P. 23(b)(3).

The First Motion failed to provide sufficient information about the NYLL Class, leaving the Court unable assess the likelihood of class certification.  This Motion, however, remedies that issue.  Accordingly, as discussed below, the Court will likely be able to certify the NYLL Class.

### 1. Numerosity

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Court presumes numerosity where there are 40 class members.  *Amigon*, 2024 WL 5040436, at *7 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *Northern Dynasty Minerals*, 2023 WL 5511513, at *11 ("As a general rule, when a class consists of forty or more members, numerosity is presumed.").  Here, the Parties agree that the NYLL Class is 295 people.  Stipulation Regarding Settlement ¶ 58.  As this number well exceeds 40, joinder of 295 people is "presumptively impractical," and the Court will likely find numerosity at the final approval stage.  *Amigon*, 2024 WL 5040436, at *7 (finding that a class of approximately 91 individuals meets the numerosity requirement).

### 2. Commonality

"Commonality requires a showing that common issues of fact or law affect all class members."  *Northern Dynasty Minerals*, 2023 WL 5511513, at *12 (citing *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010)).  Commonality exists where the class members have

suffered the same injury. *Id.*; *Cymbalista*, 2021 WL 7906584, at *11. "Class members' claims do

not have to be identical but 'there must be issues whose resolution will affect all or a significant

number of the putative class members.'" *Cymbalista*, 2021 WL 7906584, at *11 (citing *Johnson*,

780 F.3d at 137). "In other words, the relevant inquiry is whether a classwide proceeding is

capable of generating common *answers* apt to drive the resolution of the litigation." *Jacob v.

Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (citations and quotations omitted). "In wage

cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants

had a common policy or practice of unlawful labor practices." *Rosario v. Valentine Ave. Disc.

Store, Co.*, 10-cv-5255, 2013 WL 2395288, *5 (E.D.N.Y. May 31, 2013), *report and

recommendation adopted*, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013).

 Here, Sorbie argues, and Unisys does not dispute, that there are three questions common

to every member of the NYLL Class: "(1) whether the Settlement Members are manual workers;

(2) were they paid weekly and within seven calendar days of the end of the work week in which

wages were earned; and (3) what are the damages for violation of NYLL § 191(1)(a)." Mem.

Supp. at 31; Stipulation Regarding Settlement ¶ 60. However, the common question that the

NYLL Class really members share, for purposes of the commonality requirement, is whether

Unisys had "a common unlawful policy resulting in wage and hour violations of such a nature that

'determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke.'" *Zhang v. Wen Mei, Inc.*, 14-cv-1647 (JS)(SIL), 2017 WL 8813132,

*16 (E.D.N.Y. Dec. 28, 2017), *report and recommendation adopted*, 2018 WL 878988 (E.D.N.Y.

Feb. 14, 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Indeed, the

NYLL Class allegedly suffered "common violations of law—*i.e.*, the failure to properly classify

and compensate employees—[which] resulted in the proposed [NYLL Class] receiving . . . legally

inadequate compensation," and their claims "aris[ing] under the same statutes." *Veldez v. Michpat & Fam, LLC*, 20-cv-2570 (AMD) (SIL), 2022 WL 1085465, *8 (E.D.N.Y. Jan. 6, 2022), *report and recommendation adopted*, 2022 WL 950450 (E.D.N.Y. Mar. 30, 2022). The Court will likely find that this meets commonality. *See id.*; *Zhang*, 2017 WL 8813132, at *16.

### 3. Typicality

Typicality exists where "each class member's claim arises from the same course of events and makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). Typicality's purpose "is to ensure that class representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Floyd v. City of New York*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012) (citation and quotations omitted). As the claims need only "share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002). "The commonality and typicality elements are closely linked." *Cymbalista*, 2021 WL 7906584, at *11. They "often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997)).

Here, Sorbie's and the NYLL Class members' claims "arise out of the same course of events," *In re Platinum & Palladium Commodities Litig.*, 10-cv-3617 (WHP), 2014 WL 3500655 at *9 (S.D.N.Y. July 15, 2024), or, as the Parties describe, "Unisys'[s] overtime pay frequency practices." Settlement Regarding Stipulation ¶ 61; Abelove Decl. ¶ 72. As such, the Court will likely find typicality. *See Payment Card*, 330 F.R.D. at 54 (holding that court will likely find

typicality where class plaintiffs "seek redress for the same types of harms due to the same course of conduct," even though they represent "a diverse array of interests").

### 4.  Adequate Representation

For the reasons discussed in Section I. A. 1., the Court will likely find that Sorbie and Class Counsel have adequately represented the NYLL Class.  *See id.* (applying adequate representation analysis under Rule 23(e)(2)(A) to find that the representative parties will fairly and adequately protect the class's interests under Rule 23(a)(4)).

### 5.  Ascertainability

The Second Circuit recognizes an implied requirement of ascertainability for class certification.  *See Brecher*, 806 F.3d at 24.  In determining ascertainability, the Court considers "whether a proposed class is defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobas Secs.*, 862 F.3d 250, 269 (2d Cir. 2017).  Here, the Court will almost certainly find that the NYLL Class is ascertainable, as it is a defined 295-person group, established by objective criteria, including employer, employment location, employment timeframe, and job position.  *See* Stipulation Regarding Settlement ¶ 58; Settlement Agreement § 1.

### 6.  Rule 23(b)(3) Requirements

Plaintiffs seeking to proceed by class action must meet two additional requirements: predominance and superiority.  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015); *see* Fed. R. Civ. P. 23(b)(3) ("class action may be maintained if . . . questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy.").  "The matters pertinent to these findings include":

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action

Fed. R. Civ. P. 23(b)(3)(A–D). "However, in the settlement context, 'some inquiries essential to litigation of class certification,' including the issue of 'manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof,' are no longer relevant." *Northern Dynasty Minerals*, 2023 WL 5511513, at *13 (cleaned up) (citing *Rosenfeld*, 2021 WL 508339, at *10). Here, Sorbie has likely adequately established predominance and superiority.

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (citations and quotations omitted). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Payment Card*, 330 F.R.D. at 55 (citing *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). However, a plaintiff seeking class certification need not establish that each "element of her claim is susceptible to classwide proof." *Id.* (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)). Rather, a plaintiff need only show that "questions common to the class predominate, and not that those questions will be answered, on the merits, in favor of the class." *Id.* (cleaned up) (citing *Amgen Inc.*, 568 U.S. at 459).

As discussed, Plaintiff raises, and Unisys does not dispute, several questions common to the NYLL Class members' claims, including "whether there is a private right of action for violation of NYLL § 191(1)(a), whether the Settlement Members are manual workers, and whether Unisys' pay practices violated NYLL § 191(1)(a)." Mem. Supp. at 33; Stipulation Regarding Settlement ¶ 63; Abelove Decl. ¶ 74. Indeed, "the same evidence will suffice" for each NYLL Class member's claims against Unisys, including job descriptions and time and payroll records. *Tyson Foods, Inc.*, 136 S.Ct. at 1045; *see* Mem. Supp. at 33. Moreover, the question of whether Unisys's pay practices violated the NYLL will require generalized proof to answer. *See Payment Card*, 330 F.R.D. at 56. The NYLL Class members were similarly situated in multiple ways and suffered damages from the same alleged conduct. As such, the Court will likely find that common questions predominant over individual issues.

b. Superiority

"To satisfy the superiority requirement, the moving party must show that the class action presents economies of 'time, effort and expense, and promotes uniformity of decision.'" *Payment Card*, 330 F.R.D. at 57 (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). "The superiority requirement is designed to avoid repetitious litigation and possibility of inconsistent adjudications." *Id.* (citations and quotations omitted). Where "the courts—absent class certification—would have to litigate numerous lawsuits by hundreds . . . of individual class members, the efficiencies of a class are self-evident." *Mikhlin*, 2021 WL 1259559, at *11. Here, as there are 295 NYLL Class members, "the prospect of individual actions would certainly prove less efficient than a class-wide proceeding." *Northern Dynasty Minerals*, 2023 WL 5511513, *14 . The Court will therefore likely find superiority.

## II.    FLSA COLLECTIVE'S SETTLEMENT

A stipulated dismissal settling FLSA claims requires court approval.[2]  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Courts review, over several steps, a proposed FLSA settlement to ensure that it reflects a fair and "reasonable compromise of disputed issues." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted). First, courts preliminarily review the proposed settlement's fairness under *Cheeks v. Freeport Pancake House*.  *Morales v. Rochdale Vill., Inc.*, 15-cv-502 (SJB), 2019 WL 9197991, *3 (E.D.N.Y. Dec. 6, 2019).  If the court preliminarily approves the settlement, "notice is sent to extant collective members, giving them the opportunity to opt into the settlement, as well as to other employees who have not previously joined to give them an opportunity to opt into the collective and accede to the settlement."  *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020).  Courts then consider final approval of the settlement, and hold a final fairness hearing "giving all opt-in plaintiffs the opportunity to be heard by the Court."  *Id.*  At both stages, the Court must examine the settlement's terms for fairness under *Cheeks*.  *Id.*

To determine whether a settlement is fair, courts consider the totality of the circumstances, including the factors outlined in *Wolinsky v. Scholastic*, no one of which is dispositive:

> (1) the plaintiff's range of possible recovery;
> (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and
> (5) the possibility of fraud or collusion.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky*, 900 F. Supp. 2d at 335) (quotation marks omitted).

---

[2] Or, Department of Labor approval.

Courts must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-cv-3173 (DRH) (SIL), 2017 WL 3037483, *1 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, 2017 WL 3037406 (E.D.N.Y. July 17, 2017). Courts should guard against "highly restrictive confidentiality provisions," overly broad releases that "would waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206.

The standard for approval of an FLSA collective action settlement is "less stringent" than for approval of a Rule 23 class action settlement because the former "does not implicate due process." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). Some courts have found that "satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." *D'Angelo v. Hunter Bus. Sch.*, 21-CV-03334 (JMW)m 2023 WL 4838156, *5 n.1 (E.D.N.Y. July 28, 2023) (citing *Ramos v. Nikodemo Operating Corp.*, 16-cv-1052 (KAM) (JO), 2017 WL 11508016, *5 (E.D.N.Y. Aug. 7, 2017)). To be sure, the *Wolinsky* factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement. In both inquiries, the court considers the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement resulted from arm's-length negotiation, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion.

For the reasons discussed below, the Settlement Agreement is fair and reasonable under *Cheeks*.

A. **Collective Action Certification**

One or more individuals may bring an FLSA collective action on behalf of a group of employees.  29 U.S.C. § 216(b).  Employees only become members of the collective after affirmatively "opting-in."  *Glatt*, 811 F.3d at 540.  For a collective action to proceed, the named plaintiff must be "similarly situated" to the proposed collective's members.  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515–16 (2d Cir. 2020) (citing 29 U.S.C. § 216(b)).

To certify an FLSA collective, there are two steps.  *See id.* at 515.  The first is conditional certification, in which the court "permits notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law."  *Id.*  At the second step, the court "determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs."  *Id.*  The named plaintiff is "similarly situated" to collective members when they "share legal or factual similarities material to the disposition of their [FLSA] claims."  *Id.*  The "similarly situated" requirement is "quite distinct from the much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes."  *Id.* at 518 (quotation marks omitted).

Here, Sorbie has already secured, with Unisys's consent, conditional certification of the FLSA Collective.  *See* Cond. Cert. Order.  As such, the Court need not consider whether Sorbie has established a "modest factual showing" that he and the opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  *Scott*, 954 F.3d at 515.

Judge Choudhury noted that the definition for the FLSA Collective in the original proposed settlement agreement differed from the definition set forth in the Order granting the collective's conditional certification.  March 13 Op. at 44.  The First Motion also failed to address the reasons

37

for the modification.  *See id.*  This time around, the Settlement Agreement's definition for the FLSA Collective still differs from the one in the Order granting conditional certification, which merely defined the collective as "'similarly situated' individuals who worked or have worked in New York as Field Service Engineers of Defendant Unisys from December 17, 2017 to present." *See* Cond. Cert. Order.  The current definition, as discussed, is more comprehensive.  *See supra* Background § II.

In this Motion, the Parties explain that the definition "has simply been refined due to discovery."  Stipulation Regarding Settlement ¶ 72.  According to the Parties:

> At the time of the pleadings the collective consisted of Field Service Engineers. During the course of discovery Unisys informed the Plaintiff that the Service Delivery Employee job family encompassed Field Service Engineers and that the title of such positions changed over time since February 2014.  At the time of the pleadings the collective concerned those who worked in New York.  During the course of discovery a dispute arose between the Parties with respect to which employees were actually working in New York and, for purposes of settlement, the Parties agreed that those who were designated as New York employees in Unisys' system based on a Unisys assigned New York work location.  Finally, the pertinent time was merely given an end date of October 20, 2023 as Unisys changed its pay practices as of that date.

*Id.* ¶¶ 72, 73.  This explanation seems—as an expected consequence of discovery—reasonable, and otherwise unlikely to prevent preliminary approval of the Settlement Agreement.

## B. *Cheeks* Fairness Review

Judge Choudhury could not find the original proposed settlement agreement fair and reasonable under *Cheeks* because (1) the First Motion failed to provide information about the Plaintiffs' range of possible recovery, and (2) the original proposed settlement agreement contained several unreasonable provisions.  March 13 Op. at 44–45.  This Motion and the revised Settlement Agreement resolve those issues.

The first *Wolinsky* factor is the range of possible recovery. *See* 900 F. Supp. 2d at 335. Indeed, "[a] plaintiff's maximum possible recovery, and the basis for that estimate, is one of the categories of information minimally required in order for the Court to evaluate the bona fides of the dispute." *Luna v. J.S. Held LLC*, 21-cv-3072 (JMW), 2023 WL 2214012, *6 (E.D.N.Y. Feb. 24, 2023). Here, Sorbie asserts, and Unisys does not dispute, that the FLSA Collective's best-case scenario recovery, assuming the opt-in of 217 individuals, is approximately $2.4 million. Stipulation Regarding Settlement ¶ 74. Sorbie further asserts, and Unisys does not dispute, that with respect to the 33 individuals who are currently opted into the collective, their damages would be approximately $1,059,739.79 total, and, assuming they worked roughly the same number of overtime hours, approximately $32,000 each. *Id.*

As with the NYLL Class's best-case scenario, the estimated amount is based on Sorbie's expert's analysis of the data that Unisys provided, including names, employee IDs, employee positions, earnings codes, hours worked, earnings, pay period beginning date, pay period ending date, and check date. Abelove Decl. ¶ 67. As all the FLSA Collective members are also NYLL Class members, and there is no double recovery, the FLSA Collective's damages are a portion of $3.8 million in overall best-case scenario damages. *Id.* ¶¶ 67–68; Stipulation Regarding Settlement ¶ 74. That portion is simply limited due to the three-year statute of limitations applicable to FLSA claims.

The $625,000 represents approximately 26% of the $2.4 million best-case recovery. Abelove Decl. ¶ 69; Stipulation Regarding Settlement ¶ 74. "This recovery is reasonable and consistent with settlements approved in this Circuit where the parties [settle] to avoid the risks and uncertainty associated with litigation." *Li v. HLY Chinese Cuisine Inc.*, 596 F.Supp.3d 439, 448 (E.D.N.Y. 2022) (finding 13.8% recovery of total alleged damages reasonable); *see Naraine v.*

*Washdry Tech Inc.*, --- F.Supp.3d --- , 2024 WL 4242284, *5 (E.D.N.Y. Sept. 19, 2024) (finding approximately 16% recovery of total possible recovery within the acceptable range for this Circuit). This factor thus supports a finding of reasonableness and fairness.

Although the First Motion failed to provide sufficient information for the Court to assess the first *Wolinsky* factor, the Court found that, for the reasons addressed in its Rule 23 analysis, the remaining factors weighed in favor of preliminary approval under *Cheeks*. March 13 Op. at 45–46. As briefly discussed below, this remains true.

The second *Wolinsky* factor is the extent to which the settlement "will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." 900 F. Supp. 2d at 335 (citing *Medley v. Am. Cancer Soc'y*, 10-cv-3214 (BSJ), 2010 WL 3000028, *1 (S.D.N.Y. July 23, 2010)). As discussed, settlement here would allow the parties to forgo additional lengthy and expensive discovery, as well as motions for summary judgment and possibly trial. *See supra* Discussion § I. A. 3. a. i. Indeed, "the settlement averts what could amount to considerable additional expenses and burdens in preparing their defenses and claims and pursuing further discovery." *Huang v. Sunstone Pathology Servs. PC*, 23-cv-5420 (JMW), 2024 WL 3937750, *3 (E.D.N.Y Aug. 26, 2024). As such, this factor supports a finding of reasonableness and fairness.

The third *Wolinsky* factor is "the seriousness of the litigation risks faced by the parties." 900 F. Supp. 2d at 335. As discussed, by settling, Plaintiff avoids litigation risks, including with respect to establishing liability and damages. *See supra* Discussion § I. A. 3. a. ii.–iii. Defendant also avoids the risks of potentially facing over $3.8 million in damages. *See* Stipulation Regarding Settlement ¶ 51. Accordingly, this factor also supports a finding of reasonableness and fairness.

The fourth *Wolinsky* factor is "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" 900 F. Supp. 2d at 335 (citing *Medley*, 2010 WL 3000028, *1). As discussed, the Settlement Agreement is, indeed, a result of arm's-length negotiation between experienced counsel. *See supra* Discussion § I. A. 2. This factor therefore supports a finding of reasonableness and fairness.

The fifth and final *Wolinsky* factor is the possibility of fraud or collusion. *See id.* As Judge Choudhury found, "there is no indication in the record of bad faith or collusion." March 13 Op. at 21. This remains true. As such, this final factor supports a finding of fairness and reasonableness.

Besides the fact that the First Motion failed to provide sufficient information for the Court to assess the first *Wolinsky* factor, the original proposed settlement agreement contained several problematic provisions preventing the Court from finding it fair and reasonable. *See* March 13 Oo. at 46–52. Specifically, the original proposed settlement agreement included an overbroad release of liability, an unduly restrictive non-publicity clause, and an impermissible opt-out procedure binding FLSA Collective members who had not affirmatively assented to the settlement. The current Settlement Agreement remedies those issues. As the Parties explain:

> consistent with the Court's March 13, 2024 opinion, the proposed settlement agreement (a) retains the permissible covenant not to sue and removes the covenant not to sue the Court found to be objectionable; (b) removes the Confidentiality clause in its entirety; (c) removes the opt-out procedure the Court found objectionable with respect to the Federal FLSA Settlement Collective. More particularly, each of the potential members of the Federal FLSA Settlement Collective are given the opportunity to file a Claim Form and become part of the Federal FLSA Settlement Collective. The lead Plaintiffs and those who have already opted-in to the lawsuit now have the opportunity to decide if they want to be part of the Federal FLSA Settlement Collective.

Stipulation Regarding Settlement ¶ 45. Moreover, a review of the Settlement Agreements reveals that it "does not include the typical provisions that preclude approval, including (1) overbroad

releases; (2) highly restrictive confidentiality provisions; (3) non-disparagement provisions that bar truthful statements; and (4) prohibitions on future employment." *Li*, 596 F. Supp. 3d at 450. As such, nothing else in the Settlement Agreements appears to weigh against preliminary approval.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT the Motion and preliminarily approve the Settlement Agreement.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s_____
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
March 14, 2025

42