## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tony Caccavale, et al.,<br><br>                         Plaintiffs,<br><br>            -v-<br><br>Hewlett-Packard Company A/K/A HP Inc., et al.,<br><br>                         Defendants. | 2:20-cv-974<br>(NJC) (ST) |

## OPINION AND FINAL APPROVAL ORDER
## AS TO CLAIMS AGAINST UNISYS

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is a Joint Motion for Final Approval of Class and Collective Action Settlement, Final Certification of the Settlement Class and Collective, Approval of the Service Award, and Approval of Attorney's Fees and Costs  ("Final Approval Motion") by Named Plaintiff Douglas Sorbie ("Sorbie" or "Plaintiff") and Defendant Unisys Corporation ("Unisys"). (Mot., ECF No. 281.) Sorbie brings claims against Unisys for failure to timely pay regular and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and the New York Labor Law ("NYLL") §§ 191(1)(a) and 198, on behalf of himself, a conditionally certified FLSA collective, and a proposed class of service delivery employees. (Third Am. Compl. ¶¶ 154–71, ECF No. 201; *see also* Preliminary Approval Order, ECF No. 280.)[1] After five years of litigation, Sorbie and Unisys have entered into a proposed Settlement Agreement

---

[1] Sorbie and the other named plaintiffs in this action also bring NYLL and FLSA claims against Hewlett-Packard Company ("Hewlett-Packard") but those claims are not at issue here. (Third Am. Compl. ¶¶ 138–153.)

and Release ("Settlement Agreement," ECF No. 281-4).[2] The Settlement Agreement purports to settle the NYLL claims on behalf of a proposed Rule 23 class (the "New York State Settlement Class") and the FLSA claims on behalf of a conditionally certified FLSA collective (the "Federal FLSA Settlement Collective").[3]

The Motion for Final Approval requests that the Court:

(1) grant final approval of the Settlement Agreement;

(2) grant final certification of the New York State Settlement Class under Rule 23(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.");

(3) determine that the Settlement Class Representative and the Federal FLSA Settlement Collective are "similarly situated" and grant final certification of the Federal FLSA Settlement Collective;

(4) confirm the Court's prior appointment of Plaintiff's counsel as Class Counsel;

(5) confirm the Court's prior appointment of Sorbie as Settlement Class Representative;

(6) confirm the Court's previous appointment of Rust Consulting ("Rust") as the Claims Administrator;

(7) "approve payments to the Settlement Class Representative for a Service Award, Participating Settlement Members, Claims Administrator, and Class Counsel consistent with the terms, conditions, and timing of the Settlement Agreement";

(8) approve the releases and covenants not to sue in the Settlement Agreement;

(9) direct that the Settlement Agreement shall become effective three days after the date on which this order becomes final;

---

[2] The Court's prior opinion preliminarily approving the Settlement Agreement referred to the Settlement Agreement as the "Proposed Agreement." (ECF No. 280.) In this Opinion and Final Approval Order as to Claims Against Unisys ("Opinion and Final Approval Order"), I now refer to the same document as the "Settlement Agreement" because I grant final approval of the agreement.

[3] Unless provided elsewhere, capitalized terms used in this Opinion and Final Approval Order have the meanings set forth in the Settlement Agreement.

(10) direct the Claims Administrator to disburse (a) the first settlement checks to the 92 Participating Settlement Members, Class Counsel's attorney's fees and costs, the service award, and the Claims Administrator's fee within thirty days of the date of any final approval order; and (b) the second settlement checks to the 92 Participating Settlement Members in accordance with the Settlement Agreement; and

(11) dismiss this action with prejudice as against Unisys.

(Mot. at 1–3.)

For the reasons set forth below, I grant the Final Approval Motion in its entirety.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes familiarity with the facts and procedural history as set forth in the Report and Recommendation (the "R&R") issued by Magistrate Judge Steven Tiscione recommending preliminary approval of the settlement and conditional certification of the class and collective, and in the Court's March 21, 2025 Memorandum and Order adopting the R&R (the "Preliminary Approval Order"). (ECF Nos. 277, 280). This Opinion and Final Approval Order provides only a summary of the facts and procedural history relevant to the pending motion by Sorbie and Unisys for final approval of the proposed Class and Collective Action Settlement, final certification of the Settlement Class and Collective, and final approval of Class Counsel's requested attorney's fees and costs. However, it adopts all factual findings made in the R&R (ECF No. 277) and the Preliminary Approval Order (ECF No. 280).

On September 15, 2025, Sorbie and Unisys filed their Final Approval Motion, a memorandum of law supporting final approval (Mem. L. Supp. Final Approval Mot. ("Mem"), ECF No. 281-15), and the following exhibits:

- the declaration of Class Counsel Jason Abelove (the "Abelove Declaration") (Abelove Decl., ECF No. 281-1), a prior declaration submitted by Abelove at the preliminary approval stage (ECF No. 281-2), and contemporaneous billing records recorded by Abelove (ECF No. 281-7);

3

- the declaration of Class Counsel Paul Pagano (the "Pagano Declaration") (Pagano Decl., ECF No. 281-9), contemporaneous billing records from Pagano (ECF No. 281-10), and a retainer agreement between Pagano and the named plaintiffs in this action (ECF No. 281-11);

- the declaration of Senior Project Manager at Rust Consulting, Jennifer Smith (the "Smith Declaration") (Smith Decl., ECF No. 281-13);

- the declaration of Unisys' Counsel Kenneth DiGia (the "DiGia Declaration") (DiGia Decl., ECF No. 281-14);

- the Third Amended Complaint (ECF No. 281-3);

- the Settlement Agreement (ECF No. 281-4);

- a joint factual stipulation (ECF No. 281-5);

- a memorandum of law filed by Sorbie and Unisys in support of preliminary approval (ECF No. 281-6);

- expert invoices submitted in support of Class Counsel's request for costs (ECF No. 281-8); and

- a proposed order approving the settlement, certifying the class and collective, and awarding attorney's fees and costs to Class Counsel, administrative fees to Rust, and an incentive award to Sorbie ("Proposed Final Approval Order," ECF No. 281-12).

As set forth in the documents attached to the Final Approval Motion, following the Court's Preliminary Approval Order, Rust received a list of names and contact information from Unisys for the 295 Settlement Members, distributed the court-approved Notice and Claims Form to the mailing list, and received Claim Forms, opt-outs, and objections to the Settlement Agreement. (Smith Decl. ¶ 3.) In this process, 92, or approximately 31%, of the 295 Settlement Members submitted a Valid Claim Form and became Participating Settlement Members. Smith Decl. ¶¶ 3, 5, 8; Settlement Agreement ¶ 1.w (defining "Participating Settlement Member[s]" to be members who timely submit a Valid Claim Form and "Settlement Members" to mean "all Service Delivery Employees"). No Settlement Member opted out and Rust did not receive any objections from the Settlement Members. (Smith Decl. ¶ 9.)

After receiving these responses, Rust calculated each of the 92 Participating Settlement Members' distribution amounts using the formula and methodology set forth in the Settlement Agreement, assuming that the Court awards the requested $196,666.67 in attorney's fees, $35,000 in litigation costs, $11,600 in administrative costs for Rust, and $10,000 incentive award for Sorbie. (Smith Decl. ¶ 10.) Exhibit A to the Smith Declaration sets out the distribution amounts for each Participating Settlement Member. (Smtih Decl., Ex. A.) Based on Rust's calculations, $50 is the lowest distribution amount for a Participating Settlement Member, while $32,156.34 is the highest amount, and the average distribution is approximately $3,500. (Smith Decl. ¶ 11; *id.*, Ex. A.)

In support of their request for attorney's fees, Class Counsel submitted the declarations and certain contemporaneous billing records of Paul Pagano and Jason Abelove for their work on the claims against Unisys. (Pagano Decl.; Abelove Decl.; ECF Nos. 281-7, 281-10.) Pagano attests that he prosecuted the claims against Unisys in this action: (1) as an associate at Certilman Balin Adler & Hyman, LLP ("Certilman"); (2) as a partner at the Moser Law Firm, P.C. ("Moser"); and (3) as an attorney at his own firm, the Law Office of Paul A. Pagano, P.C. (Pagano Decl. ¶¶ 6–8.)  However, Pagano initially only submitted billing records for his time spent on the Unisys claims while at the Law Office of Paul A. Pagano. (*See* ECF No. 281-10.) As a result, I ordered Plaintiff to submit contemporaneous time records for Pagano's work on the claims against Unisys while at Moser and Certilman by October 11, 2025. (Elec. Orders, Oct. 10, 2025.) On October 11, 2025, Pagano submitted a supplemental declaration (the "Supplemental Pagano Declaration"), along with his contemporaneous billing records for his time spent on both the Unisys and the Hewlett-Packard portions of the litigation. (Supp. Pagano Decl., ECF No. 282; ECF Nos. 282-1, 282-2.)

On October 15, 2025, the Court held a Final Approval/Fairness Hearing (the "Final Approval Hearing") to hear from Sorbie and Unisys on their Final Approval Motion and to provide Settlement Members an opportunity to object in court to the Settlement Agreement. At the hearing, Pagano answered the Court's questions on the record. No Settlement Members attended or voiced objections to the Settlement Agreement. (Min Entry, Oct. 15, 2025.)

## DISCUSSION

### I.    Approval of Class Action Settlement of the NYLL Claims

#### A.  Legal Standard

##### i.  *Class Action Settlement*

Where parties seek to settle claims brought by a plaintiff on behalf of a proposed class, the court must review the proposed class action settlement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 117 (2d Cir. 2025).[4] Courts apply a three-step process of review. *See* Fed. R. Civ. P. 23(e)(1)–(2). The court first conducts a preliminary evaluation of the fairness of the proposed settlement agreement to determine whether to give notice of the proposal to all class members. Fed. R. Civ. P. 23(e)(1)(A). The second step consists of providing "notice of a hearing . . . to class members" and holding a hearing to ensure that "class members and settling parties are provided the opportunity to be heard." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (hereinafter "*Payment Card I*"); *see also Whelan v. Diligent Corp.*, 349 F.R.D. 79, 84 (S.D.N.Y. 2025). Where a court has granted preliminary approval and afforded notice of the hearing and an opportunity to be heard to all class members, the court then

---

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

proceeds to the third step—final approval. *See Payment Card I*, 330 F.R.D. at 27.

### 1. Final Approval Standard

"[T]he Court's role in reviewing the proposed settlement 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'" *Whelan*, 349 F.R.D. at 84 (quoting *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)). To approve a settlement before class certification, courts "demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 366 (E.D.N.Y. 2014) (acknowledging the "higher degree of scrutiny" courts apply in reviewing class action settlements reached prior to class certification (citing *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001))).

Prior to its 2018 amendment, Rule 23 did not provide specific factors for courts to consider in determining whether a proposed class action settlement was "fair, reasonable, and adequate" under Rule 23(e)(2). *Payment Card I*, 330 F.R.D. at 28. At that time, courts in the Second Circuit considered both the "negotiating process leading up to the settlement, *i.e.,* procedural fairness, as well as the settlement's substantive terms, *i.e.,* substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). To evaluate the procedural fairness of a proposed class action settlement, courts in this Circuit assessed whether "the settlement resulted from arm's-length negotiations, and [whether] plaintiffs' counsel possessed the necessary experience and ability, and have engaged in the discovery[] necessary to effective representation of the class's interests." *Id.* at 804. Courts evaluating the substantive fairness of a proposed class action settlement also considered the nine factors identified in *City of Detroit v. Grinnell Corporation*:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

In 2018, Congress amended Rule 23(e) to identify four "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Under Rule 23(e)(2), a court must explicitly consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 242 (2d

8

Cir. 2023).

In *Moses v. New York Times Company*, the Second Circuit emphasized that district courts "must consider the four factors outlined in Rule 23(e)(2) holistically" in addition to the *Grinnell* factors when evaluating a proposed class action settlement. *Moses*, 79 F.4th at 243. It clarified that:

> [T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement. But the rule now mandates courts to evaluate factors that may not have been highlighted in our prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements.

*Id*. The Second Circuit also held that courts may no longer presume a settlement to be substantively fair where it arose from an arms-length bargaining process. *Id. Moses* thus confirmed that courts must consider *both* the Rule 23(e) factors and the *Grinnell* factors—to the extent that they differ—in determining whether to approve the proposed settlement of class action claims, as district courts had done following the 2018 amendment of Rule 23(e). *See e.g.*, *Payment Card I*, 330 F.R.D. at 29; *LoCurto v. AT&T Mobility Servs. LLC*, No. 13-cv-4303, 2020 WL 13859604, at *3–4 (S.D.N.Y. June 22, 2020).

Courts have found that Rule 23(e)(2) does not otherwise address the following *Grinnell* factors: the reaction of the class to the settlement (second factor); the stage of the proceedings and the amount of discovery completed (third factor); the ability of the defendants to withstand a greater judgment (seventh factor); the range of reasonableness of the settlement fund in light of the best possible recovery (eighth factor); and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation (ninth factor). *See, e.g.*, *Payment Card I*, 330 F.R.D. at 30 n.22 (discussing the seventh, eighth and ninth *Grinnell* factors); *Amigon v. Safeway Constr. Enters. LLC*, No. 20-cv-5222, 2024 WL 5040436, at *6

(E.D.N.Y. Dec. 9, 2024) (discussing the second, third, seventh, eighth, and ninth *Grinnell*

factors). Accordingly, courts continue to analyze these *Grinnell* factors in combination with the

Rule 23(e)(2) factors in evaluating settlement agreements in class actions brought under Rule

23(b)(3) for damages. *See, e.g.*, *Payment Card I*, 330 F.R.D. at 30.

### 2. Notice Standard

Under Rule 12(e)(1)(B), once a court has determined that it will likely approve a

proposed class settlement and certify a class for the purposes of the settlement, the court "must

direct notice in a reasonable manner to all class members who would be bound by the proposal."

Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires that, for the purposes of notice of a

preliminarily approved settlement agreement, "the court must direct [that] class members [be

provided with] the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

23(c)(2)(B). This notice may be made by mail, electronic means, or other appropriate means and

it

> must clearly and concisely state in plain, easily understood language: (i) the nature of the
> action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so
> desires; (v) that the court will exclude from the class any member who requests
> exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect
> of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Payment Card I*, 330 F.R.D. at 58–59.

"The standard for the adequacy of a settlement notice in a class action under either the

Due Process Clause or the Federal Rules [of Civil Procedure] is measured by reasonableness."

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 719–20 (2d Cir. 2023). "There are

no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule

23(e) requirements; the settlement notice must fairly apprise the prospective members of the

class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* The Second Circuit has found that notice "is adequate if it may be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), *superseded on other grounds by* Fed. R. Civ. P. 23(e)(2).

"Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Payment Card I*, 330 F.R.D. at 58–59 (collecting cases).

Relatedly, Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") imposes an additional notice requirement. The CAFA notice provision states, in relevant part, that Defendants must serve the appropriate state and federal officials a notice of the proposed settlement "not later than 10 days" after the proposed settlement of a class action has been filed in court. 28 U.S.C. § 1715(b). The CAFA requirements apply to "any" class actions brought under Rule 23. *Perez v. Jupada Enters., Inc.*, No. 10-cv-3118, 2012 WL 3042928, at *2 (S.D.N.Y. July 25, 2012); *see also* 28 U.S.C. § 1711(2). CAFA further provides that the Court may not issue an order awarding final approval of a proposed settlement earlier than 90 days after the latest date on which the appropriate federal and state officials were served. *See* 28 U.S.C. § 1715(d).

### i.  Class Certification

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b)

have been satisfied." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020). "This applies even to conditional certification for settlement purposes only." *Payment Card I*, 330 F.R.D. at 50.

"To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s . . . prerequisites of numerosity, commonality, typicality, and adequacy of representation . . . and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability. *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The party seeking class certification must affirmatively demonstrate . . . compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met.").

Assessment of class certification in the settlement context invokes a "responsibility imposed upon [the courts] to exercise independent judgment for the protection of class absentees." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). Under Supreme Court guidance, consideration of problems that would occur in managing the class are

12

relaxed in the settlement context, while the other requirements of Rule 23 must receive undiluted, if not heightened, scrutiny, even where a proposed settlement has been deemed fair, reasonable, and adequate:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) ("In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met. These requirements should not be watered down by virtue of the fact that the settlement is fair or equitable."); *Amchem Prod.*, 521 U.S. at 620 n.16 (disapproving a settlement class in a multi-party asbestos litigation and noting that "[s]ettlement, though a relevant factor, does not inevitably signal that class-action certification should be granted more readily than it would be were the case to be litigated"). Nevertheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Payment Card I*, 330 F.R.D. at 51.

### B. Approval of the Settlement Agreement

For the reasons explained below and in the Preliminary Approval Order and R&R, I approve the Settlement Agreement as fair, reasonable, and adequate.

13

As set forth in the R&R, in order to grant preliminary approval of a class settlement, the court "must determine whether giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." (R&R at 6 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii))). Because of the "exacting" nature of this inquiry, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2019 WL 6875472, at *15 (E.D.N.Y. Dec. 16, 2019) (hereinafter "*Payment Card II*"), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), the R&R already engaged in a lengthy and robust analysis of the class settlement and class certification factors at the preliminary approval stage, and I adopted the R&R's recommendations as to how each factor may weigh for or against approval at the final approval stage. Because a detailed analysis already exists for many factors that must be considered at the final approval stage and to avoid duplicative analysis, I refer at times to the reasoning set forth in the Preliminary Approval Order and the R&R where that reasoning is supported by Sorbie and Unisys' joint submissions in support of the Final Approval Motion. In general, I adopt the R&R's prior reasoning and provide additional analysis regarding the factors relating to which Sorbie and Unisys have submitted supplemental information.

### i. *Reaction of the Class to the Settlement*

Although not codified in Rule 23(e)(2), courts have long considered the class's reaction to the proposed settlement to be "perhaps the most significant factor to be weighed in considering [a class action settlement's] adequacy." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020). "A favorable reception by the class constitutes 'strong evidence' that a proposed settlement is fair." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y.

14

2013) (quoting *Grinnell*, 495 F.2d at 462). For example, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 118 (2d Cir. 2005).

Here, as Sorbie and Unisys argue, the class's reaction to the Settlement Agreement weighs in favor of final approval. "In a 'claims made' settlement such as this, where class members are required to obtain, fill out, and submit a form before receiving any compensation, response rates of 10% or less are common." *Oladapo v. Smart One Energy, LLC*, No. 14-cv-7117, 2017 WL 5956907, at *13 (S.D.N.Y. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 5956770 (S.D.N.Y. Nov. 30, 2017); *see also* 4 Newberg and Rubenstein on Class Actions § 12:17 (6th ed.) ("Given the small value of most class action claims, it should not be surprising that few class members bother to spend the time filing a claim."); *Espinal v. Victor's Cafe 52nd St., Inc.*, No. 16-cv-8057, 2019 WL 5425475, at *4 (S.D.N.Y. Oct. 23, 2019) ("[I]t is well known that Rule 23 class members participate in the monetary recovery in small percentages if the submission of a claim form is required."); Settlement Agreement ¶ 1.w (defining "Participating Settlement Member[s]" to be members who timely submit a Valid Claim Form). As a result, the "fact that a relatively small number of Class Members submitted claims is not decisive" in assessing the adequacy of the settlement. *Schutter v. Tarena Int'l, Inc.*, No. 21-cv-3502, 2024 WL 4118465, at *10 (E.D.N.Y. Sept. 9, 2024). Instead, "[i]t is the absence of significant exclusions or objections that courts in this Circuit regularly consider, not low response rates," when considering the reaction of the class. *Id.* (quoting *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017)).

Here, 92, or approximately 31%, of the 295 Settlement Members submitted a Valid Claim Form and became Participating Settlement Members. Smith Decl. ¶¶ 3, 5, 8; *see also*

*Chambery v. Tuxedo Junction Inc.*, No. 12-cv-6539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (finding a 37% claims rate "unusually high" in a claims-made settlement). No Settlement Member opted out, and the third-party Claims Administrator did not receive any objections from Settlement Members. (Smith Decl. ¶ 9.) As a result, the reaction of the class to the settlement weighs in favor of final approval of the settlement. *See Schutter*, 2024 WL 4118465, at *10 (finding that the reaction of the settlement members weighed in favor of approval where there was a 19% response rate because of "the low number of exclusion and no objections"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56 (E.D.N.Y. 2010) (finding the class reaction to settlement favorable where less than 1% of the several hundred class members objected and seven members opted out); *see also Payment Card II*, 2019 WL 6875472, at *16 (collecting cases in which courts have granted class settlements where the percentage of objections and exclusions was low).

### ii. *Adequate Representation*

To determine whether "the class representatives and class counsel have adequately represented the class" under Rule 23(e)(2)(A), courts consider "whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Rosenfeld v. Lenich*, No. 18-cv-6720, 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021) (citing *Cordes & Co. Fin. Servs. v. AG. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). For the reasons set forth in the R&R, which I adopted in the Preliminary Approval Order, and because no Settlement Member has objected to final approval on the basis of inadequate representation, Sorbie is an adequate class representative and Class Counsel are adequate to represent the proposed class. (R&R at 8–12.) On the latter issue, I note that I denied the first preliminary approval motion filed by Sorbie and

Unisys without prejudice and with leave to renew because of numerous deficiencies in the motion papers and the original proposed settlement agreement. (*See* ECF No. 252.) However, Sorbie and Unisys subsequently corrected those deficiencies (*see* R&R) and, notwithstanding those issues, Class Counsel have demonstrated that they have previously litigated hybrid NYLL/FLSA class and collective actions (*see infra* Discussion § I.B.iv.2.b (discussing Class Counsel's experience for purposes of assessing attorney's fees).). Therefore, the adequate representation factor weighs in favor of final approval. For the same reasons, I also confirm the Court's prior appointment of Abelove and Pagano to represent the Settlement Class and of Sorbie as Settlement Class Representative.[5]

### iii.  *Arms-Length Negotiations*

Both the R&R, which I adopted in the Preliminary Approval Order, and the March 13, 2024 Order, which denied preliminary approval without prejudice, found that this factor likely weighed in favor of preliminary approval. (R&R at 12; ECF No. 252 at 21.) For the reasons given in those Orders, and because no Settlement Member has objected to final approval for lack of arms-length negotiations between counsel for Sorbie and Unisys, this factor weighs in favor of final approval.

---

[5] In the Preliminary Approval Order, I included Anthony J. LoPresti ("LoPretsi") of the Law Offices of Anthony J. LoPresti and Yale Pollack ("Pollack") of the Law Offices of Yale Pollack, P.C. as Class Counsel. Sorbie and Unisys have not submitted any information regarding the experience of LoPretsi and Pollack in class litigation or their role in pursuing or settling the claims against Unisys in this action. Pagano stated on the record at the Final Approval Hearing that LoPretsi and Pollack had only assisted in an "adjunct" or "support" capacity. (Final Approval Hr'g Tr. 4:14–24.) Pagano also stated that he and Abelove would be handling the administration of the Settlement Agreement going forward. (*Id.* 5:3–12.) Therefore, although Sorbie and Unisys submitted a proposed final approval order identifying LoPretsi and Pollack as Class Counsel, I approve only Abelove and Pagano as Class Counsel. (*See* ECF No. 281-12.)

### iv.  Adequate Relief for the Class

I next consider whether relief for the class is adequate under Rule 23(e)(2), taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). The first factor—costs, risks, and delay of trial and appeal—subsumes four *Grinnell* factors, which I consider below. I also consider the proposed release of liability in the Settlement Agreement under this section because it "affects the determination of the fairness, reasonableness, and adequacy of class relief." *Payment Card I*, 330 F.R.D. at 36; *see also Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18-cv-4747, 2020 WL 9814083, at *9 (E.D.N.Y. Oct. 19, 2020).

### 1.  Costs, Risks, and Delay of Trial and Appeal

In assessing the costs, risks, and delay of trial and appeal, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card I*, 330 F.R.D. at 36 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). As set forth in the R&R, this assessment "implicates several *Grinnell* factors," including: "(i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." R&R at 13 (quoting *Payment Card I*, 330 F.R.D. at 36); *see also Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-cv-456, 2021 WL 7906584, at *6 (E.D.N.Y. May 25, 2021). Accordingly, courts "use[] these *Grinnell* factors to guide [the] assessment" of costs, risks and delay under Rule 23(e)(2)(A). *Payment Card I*, 330 F.R.D. at 36.

18

For the reasons provided in the R&R, which were adopted in the Preliminary Approval Order, and because no Settlement Member has objected to final approval of the Settlement Agreement on the ground that the costs, risks, and delay of trial and appeal are sufficiently low, each of these factors weighs in favor of final approval. (R&R at 13–17.)

### 2. Attorney's Fees and Costs

"[W]hen reviewing the substantive fairness of a proposed settlement, the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem." *Moses*, 79 F.4th at 244; *see also* Fed. R. Civ. P. 23(e)(2)(c)(iii). Here, the Court preliminarily approved the Settlement Agreement because Class Counsel requested fees totaling, at most, 33.33% of the Gross Settlement Fund minus litigation costs—a percentage that has been approved as reasonable under Rule 23(e) in the settlement of comparable putative class action lawsuits. (*See* R&R at 19–20.) Under the Settlement Agreement, Sorbie and Unisys agree that no later than thirty days before the Final Approval Hearing, Class Counsel will "make, and Unisys agrees not to oppose, an application for Attorneys' Fees that does not exceed thirty-three and one third percent (33 1/3%) of the Gross Settlement Amount . . . after the Lawsuit Costs are deducted." (Settlement Agreement ¶ 8.a.) In the memorandum supporting the motion for preliminary settlement approval, Sorbie and Unisys propose that Class Counsel would apply for attorney's fees "[c]onsistent with the Settlement Agreement . . . [i]n a motion for final approval." (ECF No. 273-7 at 10.) Alongside their motion for final settlement approval, Sorbie and Unisys submit a proposed Final Settlement Approval Order that seeks the maximum allowable attorney's fees under the Settlement Agreement. (*See* ECF No. 281-12.) Specifically, out of the $625,000 Gross Settlement Amount, they request:

- "fair and reasonable attorneys' fees" for Class Counsel "in the amount of one-third of the Gross Settlement Amount minus Lawsuit Costs[,] resulting in an award of $196,666.67" (*id.* ¶ 27);

- "[l]awsuit [c]osts in the amount of $35,000.00 to Class Counsel" (*id.* ¶ 26); and

- "reasonable costs in administering the Settlement" to the Claims Administrator "in the amount of up to $11,600.00" (*id.* ¶ 28).

I consider the fairness of each request separately. For the reasons discussed below, this factor weighs in favor of final approval.

a.  Legal Standard

In the context of a final approval of a class action settlement, the purpose of assessing the substantive fairness of any requested attorney's fees is to "provide[] a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check." *Moses*, 79 F.4th at 244. To satisfy Rule 23(e), Fed. R. Civ. P., the district court must therefore "compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and . . . consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 119. "The Second Circuit has not yet provided guidance regarding the permissible allocation between the class and class counsel" under Rule 23(e). *Hasemann v. Gerber Products Co.*, No. 15-cv-2995, 2025 WL 2773748, at *4 (E.D.N.Y. Sept. 29, 2025). However, in cases where attorney's fees come out of the same common fund as the class recovery—so called "common fund" cases—district courts in this Circuit routinely employ the same standards used to evaluate the reasonableness of attorney's fees under Rule 23(h), Fed. R. Civ. P., when evaluating the adequacy of a settlement under Rule 23(e) in light of the amount of proposed attorney's fees. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp.

3d 686, 695 (S.D.N.Y. 2019); *Robertson v. Trinity Packaging Corp.*, No. 19-cv-659, 2025 WL 2224586, at *13 (W.D.N.Y. Aug. 5, 2025).[6]

      Rule 23(h) permits district courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under Rule 23(h), district courts have discretion to choose between the "lodestar" and the "percentage of the fund method" for assessing the reasonableness of attorney's fees, although the trend in the Second Circuit is towards the latter method. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019). Under a lodestar analysis, courts "calculate[] a given attorney['s] fee by multiplying an attorney's reasonable hourly rate by the number of hours that the attorney spent on the case." *Fresno*, 925 F.3d at 67 n.2. Under the percentage of the fund approach, courts consider the requested fees as a percentage of the settlement funds and will routinely approve "fees as high as 33.5% from comparable class settlement funds" under Rules 23(e) and 23(h). *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695; *Trinity Packaging Corp.*, 2025 WL 2224586, at *13. However, even when a court employs the percentage of the fund approach, the Second Circuit encourages district courts to "use the lodestar as a 'baseline' against which to cross-check a percentage fee" before finding the percentage fee reasonable. *Fresno*, 925 F.3d at 72 ("Fee

---

[6] At least one court has "not read *Kurtz* as requiring district courts, in evaluating the fairness of an FLSA settlement, to 'examine how recovery is apportioned between class members and class counsel'" because the Second Circuit has held that in "most FLSA cases, it does not make sense to limit fees to 33% of the total settlement." *Marin v. 310 Bowery Grp. LLC*, No. 24-cv-1340, 2025 WL 2267785, at *5 (S.D.N.Y. Aug. 8, 2025) (quoting *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020)). However, because the Settlement Agreement in this class action requires attorney's fees to be deducted from the damages available to class members, I consider the apportionment of recovery between members of the Class and Class Counsel, as discussed below.

requests that deviate wildly from the unenhanced lodestar fee are unlikely to pass this cross-check, and district courts are at liberty to reduce the requested fee within their discretion."). Moreover, the Second Circuit also instructs that when determining "a reasonable common fund fee," courts,

> should be guided by the traditional criteria . . . (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations

*Goldberger*, 209 F.3d at 50; *see, e.g.*, *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (conducting a lodestar analysis cross-check and applying the *Goldberger* factors in considering final approval of a settlement agreement).

More recently, in *Kurtz*, the Second Circuit held that, although the analysis required by Rule 23(e) "may overlap" with the determination of whether attorney's fees are reasonable under Rule 23(h), the two analyses are distinct. *Kurtz*, 142 F.4th at 121. "Whereas Rule 23(h) asks whether fees are reasonably calculated and genuinely earned . . . Rule 23(e) safeguards the fairness of a settlement for the class by posing a comparative inquiry: does the proportion of the total recovery allocated to attorney's fees compared to the proportion of the total recovery allocated to the class raise any questions about the *adequacy of class relief*?" *Id.* (emphasis in original). For this reason, a Rule 23(h) analysis ordinarily "cannot suffice" to determine whether Rule 23(e) is satisfied. *Id.* However, in *Kurtz*, the class settlement "segregate[ed] [] the [attorney's] fee funds from the class recovery funds." *Id.* at 120. In such cases, attorney's fees come directly out of the defendant's pocket, rather than out of the class's recovery, and courts determine the reasonableness of the attorney's fees under Rule 23(h) "with the *defendant*'s perspective in mind." *Fresno*, 925 F.3d at 70 (emphasis in original). By contrast, in common fund cases, courts employing the percentage of the fund method determine the reasonableness of

22

attorney's fees under Rule 23(h) "from the *plaintiff*'s perspective." *Id.* (emphasis in original). In these cases, courts conducting the Rule 23(h) analysis "compare the proportion of the total recovery going to attorney's fees with the proportion going to the class." *Kurtz*, 142 F.4th at 119. Consequently, *Kurtz* did not change the approach taken to assess the fairness of a class settlement in common fund cases, including this action.

b. Attorney's Fees

Class Counsel's request for $196,666.67 in attorney's fees satisfies the percentage of the fund test because the requested fee corresponds to 33.33% of the Gross Settlement Amount remaining after payment of the requested litigation costs, and this percentage is consistent with fees sought in similar cases. Mem. at 11; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695; *Trinity Packaging Corp.*, 2025 WL 2224586, at *13. However, I also cross-check the requested fees with a lodestar analysis. Class Counsel submitted several documents to support that inquiry. (Mem. at 11; Pagano Decl.)

First, Class Counsel submitted the declaration of Paul Pagano (the "Pagano Declaration"), in which Pagano attests that he prosecuted this action: (1) as an associate at Certilman; (2) as a partner at Moser; and (3) as an attorney at his own firm, the Law Office of Paul A. Pagano, P.C. (Pagano Decl. ¶¶ 6–8.) Pagano submitted billing records showing that he worked 107.1 hours on the Unisys portion of the litigation at an hourly rate of $500 while at the Law Office of Paul A. Pagano. (ECF No. 281-10 at 11–12; Pagano Decl. ¶ 10.) He also attests that he spent "approximately 200 hours on the Unisys (as opposed to HP) portion of this litigation" while serving as a partner at Moser. (Pagano Decl. ¶ 9.) Initially, Pagano did not submit any contemporaneous time records for his work at Certilman or Moser, so the Court ordered Pagano to submit these records. (Elec. Orders, Oct. 10, 2025.) Pagano did so in his

supplemental declaration, but the records attached to that declaration do not distinguish between Pagano's hours worked on the claims against Unisys and those against Hewlett-Packard. (*See* ECF Nos. 282-1, 282-2.) As a result, Pagano attests that the 200-hour estimate in the initial Pagano Declaration is given "merely to provide the Court with additional context" and that Class Counsel's lodestar analysis is "based solely on the work [Pagano] performed through the Pagano Firm and Mr. Abelove's work." (Supp. Pagano Decl. ¶¶ 5–6.) Thus, I do not factor Pagano's hours while working on this action at Certilman or Moser into the lodestar calculation and only consider those hours for limited purposes, as discussed below.

Class Counsel also submitted the declaration of Jason Abelove, in which he attests that he became involved in the matter in mid-February 2022. (Abelove Decl. ¶ 6.) Abelove submitted billing records recording 64.10 hours of work at an hourly rate of $500 as an attorney at his own firm, the Law Offices of Jason L. Abelove, P.C. (ECF No. 281-7 at 3; Abelove Decl. ¶ 7.)

All together, these records equate to a lodestar of $85,600 in attorney's fees supported by contemporaneous billing records. Accordingly, the request for $196,666.67 in attorney's fees corresponds to the application of a multiplier of approximately 2.3 to the lodestar. I consider the appropriateness of Class Counsel's hourly rate, the hours billed, and the multiplier, and conclude that the requested fees are fair and reasonable under Rule 23(e) and (h).

### (i)  *Class Counsel's Hourly Rate*

The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2007). This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *accord Reiter v. MTA N.Y.C.*

24

*Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006). The relevant community is generally the "district in which the court sits." *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

Considering the relevant market, judges in the Eastern District of New York have awarded hourly rates of $450 to $500 for partners, $325 for senior associates, $200 for junior associates, and $100 for legal support in FLSA cases in recent years. *See Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-cv-6242, 2025 WL 968586, at *15 (E.D.N.Y. Mar. 31, 2025) (awarding $450 for partner-level work, $325 for senior associate work, $200 for junior associate work, and $100 for legal support in a FLSA case); *Zhu v. Wanrong Trading Corp.*, No. 18-cv-417, 2024 WL 4351357, at *16 (E.D.N.Y. Sept. 30, 2024) (same); *Canales v. Norwich Serv. Station, Inc.*, No. 20-cv-475, 2021 WL 5759727, at *5 n.4 (E.D.N.Y. Dec. 3, 2021) (awarding $500 per hour rate for "the named partner of the Law Offices of Cory H. Morris"); *Quispe v. Stone & Tile Inc.*, 583 F. Supp. 3d 372, 381 (E.D.N.Y. 2022) (approving a rate of $500 per hour in a FLSA action for a solo practitioner with "over 20 years' litigation experience"). Moreover, the Second Circuit has approved a $550 hourly rate as reasonable for a partner in a FLSA action where the district court found that the attorney had "unique trial skills" even as he lacked prior "experience in wage and hour litigation." *Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011); *Scott v. City of New York*, No. 2-cv-9530, 2009 WL 2610747, at *6 & nn.43–45.

The Second Circuit further directs that courts should compare solo practitioners to attorneys of comparable skill, expertise, and reputation. *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006) ("[I]t would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate."). In a decision issued nearly four years ago, another

judge in this District reasoned that, at that time, courts were awarding $450 an hour at the "high end of the spectrum" for partner-level work in FLSA cases and hourly rates ranging from $300 to $400 to solo practitioners. *See Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-cv-6996, 2021 WL 8316282, at *3 (E.D.N.Y. Nov. 12, 2021).

Applying these standards, the hourly rate of $500 for both Abelove and Pagano is fair and reasonable, although on the high end for the relevant market. Abelove merits an hourly rate equal to partners and experienced solo practitioners because he is a partner at his own firm with approximately thirty years of legal practice and with specific experience in wage and hour litigation under the FLSA and NYLL. (Abelove Decl. ¶ 4–5; ECF No. 281-2 ¶ 27–31.) Indeed, Abelove attests that he has "practiced in the area of Labor and Employment law since 1994" and has served as class counsel on several employment law cases, including one case he co-counseled with Pagano involving an "approximately 2,600-member [FLSA] collective." (ECF No. 281-2 ¶¶ 27–29; Pagano Decl. ¶ 4.) Pagano is a solo practitioner and attests that he has practiced law since 2010 and has handled hybrid NYLL/FLSA class and collective actions in addition to this action. (Pagano Decl. ¶ 4–5; Final Approval Hr'g Tr. 6:10–11 (Pagano stating that he works "on my own").) Pagano thus had approximately ten years of legal experience when this action was filed in February 2020 and has had between twelve and fifteen years of legal experience during the period for which he submitted time records documenting his work on the Unisys portion of this action. (Compl., ECF No. 1; ECF No. 281-10 (including time records for a period spanning February 2022 to September 2025).) Moreover, Pagano stated on the record at the Final Approval Hearing that his practice has been "almost exclusively plaintiff's wage and hour litigation" for the past five years. (Final Approval Hr'g Tr. 6:10–15.) Accordingly, the $500 rate is reasonable for both Abelove and Pagano due to the complexity of class litigation and

26

because this rate is in line with the rate awarded to counsel with similar experience and background in labor and employment actions. *See Scott*, 643 F.3d at 59; *Canales*, 2021 WL 5759727, at *5 n.4; *Quispe*, 583 F. Supp. 3d at 381. Moreover, with respect to Pagano, the requested $500 hourly rate is also reasonable because, for the reasons set forth below, Pagano has submitted a significant underestimate of his actual time billed on the Unisys portion of this action. *See infra* Discussion § I.B.iv.b.ii.

### (ii)   *Class Counsel's Hours Expended*

I also consider whether the hours claimed by the prevailing side were "reasonably expended." *Holick v. Cellular Sales of New York, LLC*, 48 F.4th 101, 106 (2d Cir. 2022). Courts expect counsel to exclude hours that are "excessive, redundant, or otherwise unnecessary" or that result from a case being "overstaffed." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-cv, 2021 WL 5121140, at *2 (2d Cir. Nov. 4, 2021) (summary order) (same). Courts have concluded, on this basis, that "it [is] not appropriate to bill every menial task in the litigation at a partner rate" where work "billed to the lead partner could have been performed by junior associates." *Surdu*, 2018 WL 1474379, at *10. In cases involving solo practitioners, the Second Circuit also permits district courts to calculate the solo practitioner's "reasonable hourly rate using different hourly rates for different tasks" in order to account for the absence of associates at the solo law firm. *McDonald*, 450 F.3d at 99.[7] *But see id.* at 99 (recognizing a case in which the court "decline[d] to parse out attorneys' work based on whether it could have been done by an associate or paralegal, because the attorneys

---

[7] By contrast, courts cannot account for the absence of associate-billed hours by calculating a "blended hourly rate" in which the court calculates the solo practitioner's hourly rate by averaging the hourly rate for a partner and associate. *McDonald*, 450 F.3d at 99.

were solo practitioners" (citing *Weisberg v. Coastal States Gas Corp.*, No. 78-cv-5942, 1982 WL 1311, at *2 n. 1 (S.D.N.Y. Jun.16, 1982))).

Class Counsel bill all 171.2 hours at their $500 per hour rate. I note that some of these hours document work that Class Counsel were required to do in filing a renewed motion for preliminary approval after Sorbie and Unisys's initial motion was found to have numerous deficiencies, including a failure to adhere to the standards set forth in the Second Circuit's 2023 decision in *Moses v. N.Y. Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023). (*See* ECF Nos. 252, 281-10.) Accordingly, some of the time spent by Class Counsel on preparing and filing the renewed motion for preliminary approval could have been saved had the initial motion complied with controlling caselaw. Nevertheless, I will not reduce the number of hours claimed by Class Counsel or calculate fees at a lower hourly rate for some of the claimed hours for two reasons.

First, while some of the tasks recorded in billing records, such as drafting emails and first drafts of documents, could have been done by an associate, Class Counsel's 171.2 hours of work is an underestimate of the actual number of hours worked. For example, although I do not count the 200 hours of work that Pagano attests that he worked on the Unisys claims while at Moser, Pagano has provided some corroboration by submitting contemporaneous billing records from Moser recording that he completed 539.9 hours of work on both the Unisys and Hewlett-Packard portions of the litigation. (Supp. Pagano Decl. ¶¶ 9–10; ECF No. 282-2.)[8] Even if Pagano

---

[8] The Second Circuit "condition[s] attorney's fees on contemporaneous records in all but the 'rarest of cases.'" *Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011). Here, Pagano may not know which hours within the records relate to the Unisys claims, but his attestation that he worked 200 hours at Moser on the Unisys claims is credible because it is made under penalty of perjury and carries the consequence that Pagano can no longer seek fees for 200 of the 539.9 hours documented in the Moser records if Plaintiffs are successful on their claims against Hewlett-Packard. I also find significant that courts in this Circuit have remedied issues in FLSA

substantially overestimates the number of hours dedicated to the Unisys claims at Moser, these hours would still likely make up for hours that an associate could have billed in the period at issue here. Moreover, Sorbie and Unisys argue that the lodestar does not include time finalizing the Final Approval Motion, preparing for and representing the class at the Final Approval Hearing, and administering the Settlement Agreement. (Mem. at 12.) Although I do not consider these additional hours in the lodestar calculation, this context counsels against reducing the requested lodestar.

Second, it was reasonable for Abelove and Pagano to spend 171.2 hours of partner-level time on the litigation and resolution of claims against Unisys in this action considering that this class action has been ongoing since February of 2020 and that Class Counsel "engaged in extensive discovery," successfully opposed Unisys' motion to dismiss, responded to a judicial order to show cause concerning Plaintiffs' standing, and opposed a request for interlocutory appeal. (R&R at 11.)

Accordingly, for all of the aforementioned reasons, the $85,600 lodestar is reasonable.

### *(iii)   Application of a Multiplier*

Sorbie and Unisys argue that the requested attorney's fees are fair because they claim that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar." (Mem. at 12 (quoting *Ramos v DNC Food Serv. Corp.*, 2022 WL 576300, at *2 (S.D.N.Y. Feb. 25, 2022).)[9]

---

cases in which fee requests included hours worked on a mix of successful and unsuccessful claims by reducing the requested hours by a percentage. *See, e.g.*, *Piccolo v. Top Shelf Prods., Inc.*, 541 F. Supp. 3d 256, 262–63 (E.D.N.Y. 2021).

[9] Although the contention that courts "regularly" award multipliers of up to eight times the lodestar "has made its way into many court 'decisions' in [the Second Circuit] via proposed orders drafted by plaintiffs' attorneys," several judges of this Circuit have found the support for

Contrary to that contention, there is "little consensus" in the Second Circuit on the "appropriate range for lodestar multipliers." *Fujiwara*, 58 F. Supp. 3d at 438. While some courts have described 2.09 as "the lower end of the range of multipliers awarded by courts within the Second Circuit," other courts have held that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases," reasoning that "as a rule, post-*Goldberger* courts have generally refused multipliers as high as 2.03." *Id.* (collecting cases); *see also id.* ("The lodestar is worthless as a 'cross check' on the percentage recovery method when there is so little agreement as to what constitutes a reasonable multiplier. Guidance from the Court of Appeals would be welcome, but of course there is rarely an appeal from a decision such as this.").

Here, Class Counsel seek a multiplier of 2.3, which is fair and reasonable because it is "a multiplier near 2." *Fujiwara*, 58 F. Supp. 3d at 437. The requested multiplier is also supported by the six *Goldberger* factors. As explained above, Class Counsel spent significant hours over several years on this action (factor one) and the litigation involved the complexities of class litigation as well as overcoming a motion to dismiss and an order to show cause regarding standing (factor two). *See Goldberger*, 209 F.3d at 50. The R&R already found that there were a number of risks to finding liability, damages, and maintaining the class (factors three and six). *Id.*; R&R at 15–17. Finally, the quality of the representation and the reasonableness of the fee in

---

"such lofty multipliers" to be "weak." *Fujiwara*, 58 F. Supp. 3d at 437; *see also Surdu*, 2018 WL 1474379, at *11; *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 315 (E.D.N.Y. 2015). There is some empirical support for that critique. As Judge Pauley of the Southern District of New York found in *Fujiwara*, the Ninth Circuit "surveyed class action settlements, and while it did find some outliers," it concluded that "83% of the settlements it surveyed had multipliers within the 1.0–4.0 range." *Fujiwara*, 58 F. Supp. 3d at 437 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052–54 (9th Cir.2002)).

relation to the settlement is demonstrated by the analysis above relating to the fee of 33.33% of the Gross Settlement Fund after deduction of litigation costs, the experience of Class Counsel, and the adequacy of the representation (factors four and five). *See supra* Discussion §§ I.B.ii, iv.2; *Goldberger*, 209 F.3d at 50. Accordingly, the 2.3 multiplier is fair and reasonable and, accordingly, the requested attorney's fees weigh in favor of final approval.

### c.   Costs and Administrative Fees

Attorneys may be compensated for "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). To establish that the requested costs are reasonable, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Id.* Likewise, the claims administrator may be paid a reasonable fee from the settlement fund for administration of the settlement. *See Ying*, 2025 WL 968586, at *17.

The Abelove Declaration attests that Class Counsel incurred "approximately $72,000 in out-of-pocket expenses on expert calculations to MSG Consultants . . . . $35,000.00 related to work on Unisys, with the balance relating to [Hewlett-Packard]." (Abelove Decl. ¶ 9.)[10] In support of their request for costs, Class Counsel submit invoices from Mark S. Gottlieb, CPA, PC documenting $72,109.32 in expert fees incurred in relation to the prosecution of claims

---

[10] In the Abelove Declaration submitted in support of preliminary approval, Abelove attests that the $35,000 in costs included both expert fees and "notice fees." (ECF No. 281–2 ¶ 9.) However, Class Counsel did not submit any documentation showing the payment of notice fees, and Pagano stated on the record at the Final Approval Hearing that Class Counsel is not seeking reimbursement of costs beyond expert fees. (Final Approval Hr'g Tr. 3:19–23.) As a result, I consider only the request for reimbursement of expert fees.

31

against both Unisys and Hewlett-Packard. (*See* ECF No. 281-8.)[11] The invoices do not distinguish between expert expenses related to the claims against Unisys as opposed to the claims against Hewlett-Packard. (*See id.*) Nevertheless, the request for $35,000 in expert fees is reasonable because it reflects less than half of the documented expert fees and is therefore a fair approximation of the expert fees required to conduct damages calculations relating to the claims against Unisys. Other courts have also approved litigation expenses for expert fees in the NYLL/FLSA class action settlement context. *See Intal v. Erie Agustin, M.D. Primary Care, P.C.*, No. 18-cv-03196, 2022 WL 892084, at *4 (E.D.N.Y. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL 889041 (E.D.N.Y. Mar. 25, 2022) (granting reimbursement of costs for experts' fees in a hybrid NYLL/FLSA class action settlement); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (same in a FLSA class action settlement).[12] Accordingly, Class Counsel's request for $35,000 in litigation costs is fair and reasonable because it is supported by Class Counsel's expenditures on expert fees.

     In support of the Claims Administrator's request for administrative fees, Sorbie and Unisys submit the Smith Declaration, which attests that Rust's fee is $11,600. (Smith Decl.

---

[11] Class Counsel's total expenditures on expert fees is calculated by aggregating the budget lines for "professional services rendered" on the invoices submitted in support of final approval. Some invoices also include a budget line for "[t]otal amount of this bill" in order to account for interest on unpaid fees. Where that is the case, I have calculated costs using the "[t]otal amount of this bill" rather than the amount provided on that specific bill for "professional services rendered." (*See* ECF No. 281-9.)

[12] In *Gortat v. Capala Bros.*, 795 F.3d 292 (2d Cir. 2015), the Second Circuit held that the FLSA does not "authorize district courts to award costs reimbursing plaintiffs for expert fees." *Id.* at 296. However, *Gortat* concerned litigation expenses awarded to a plaintiff under the FLSA's fee-shifting provision, and it does not limit the types of "out of pocket expenses" for which class counsel may be reimbursed under the terms of a settlement of FLSA class action claims resulting from arms-length negotiations. *See Fisher*, 948 F.3d at 600.

¶ 12.) These fees reimburse Rust for, among other things: receiving contact information for the 295 Settlement Members; distributing the approved notices, receiving valid claim forms, opt-outs, and objections; keeping counsel appraised of the submitted forms; and calculating the distribution amounts. (*Id.* ¶ 3.) The fee of $11,600 for providing notice to 295 Settlement Members and handling submitted claims is reasonable, and courts have approved of similar administrator fees in the settlement of other class actions. *See Ying*, 2025 WL 968586, at *17 ($9,000 for 55 class members); *Zhu*, 2024 WL 4351357, at *18 ($9,275 for approximately 240 class members). Accordingly, the request to reimburse Class Counsel for $35,000 in litigation costs and to compensate the Claims Administrator for $11,600 in costs weighs in favor of final approval.

### 3.  Remaining Factors

Three remaining factors concern the adequacy of relief for the class: (1) the effectiveness of the method for distributing relief to the class; (2) the fairness of any release of liability; and (3) whether there exists any agreement required to be identified under Rule 23(e)(3). For the reasons given in the R&R, which I adopted in the Preliminary Approval Order, and because no Settlement Member has objected to final approval on the basis of any of these three factors, the first two factors weigh in favor of final approval and the third factor "has no bearing" on final approval. (*See* R&R at 17–22.)

### v.  *Equitable Treatment of Class Members*

Before approving a proposed class settlement, "the court must take into account whether the 'proposal treats class members equitably relative to each other.'" *Moses*, 79 F.4th at 244 (citing Fed. R. Civ. P. 23(e)(2)(D)). When analyzing this Rule 23(e)(2) factor, courts may consider "whether the apportionment of relief among class members takes appropriate account of

differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Payment Card I*, 330 F.R.D. at 47 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). For the reasons given in the R&R, which were adopted in the Preliminary Approval Order, the distribution plan is appropriate. (R&R at 22–23.) However, the R&R left for final approval the determination of whether Sorbie's incentive award is appropriate.

Courts "must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Moses*, 79 F.4th at 245. Courts must "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (citing 5 Newberg and Rubenstein on Class Actions § 17:4); *see, e.g., Ayers v. SGS Control Services, Inc.*, No. 03-cv-9078, 2008 WL 4185813, at *6 (S.D.N.Y. 2008) (denying incentive award where the plaintiff failed to establish that he suffered "a risk or inconvenience not shared by the other class members . . . of such a magnitude to merit an incentive award"), *aff'd in part and remanded on other grounds*, 353 F. App'x 466, 467 (2d Cir. 2009); *Kurtz*, 2024 WL 184375, at *9 (finding that incentive awards of $10,000 and $5,000 to the two named plaintiffs was reasonable where, among other things, there was significant information in the record about what each named plaintiff had done during the course of eight years of litigation), *vacated and remanded on other grounds*, 142 F.4th 112 (2d Cir. 2025).

The R&R found that Sorbie was "instrumental" in achieving the settlement and therefore, his incentive award was likely appropriate. (R&R at 24.) However, at the preliminary approval stage, Sorbie and Unisys could not "precisely determine how the $10,000 incentive award [would] compare to the NYLL Class members' individual recovery amounts" since the recovery

of each individual Participating Settlement Member would depend on the percentage of people who submitted claim forms. (*Id.* at 24.) As set out above, 92 of 295, or approximately 31% of all the Settlement Members filed claim forms. (Smith Decl. ¶ 8.) Sorbie and Unisys submit a declaration stating that based on the award methodology set out in the Settlement Agreement, the lowest Participating Settlement Member's award is $50, the highest is more than $32,000, and the average is approximately $3,500. (Smith Decl. ¶ 11.) Notwithstanding the incentive award, Sorbie is slated to recover $764.35 as his individual distribution. (Smith Decl., Ex. A at 1.) Sorbie and Unisys argue that Sorbie's incentive award is not disproportionate to the $3,500 average recovery and that "Sorbie should not be punished for achieving a Settlement so favorable that nearly a third of all of those eligible decided to participate driving down the average distribution amount." (Mem. at 13–14.) As Sorbie and Unisys explain, the "31% participation rate is 10-21% higher than anticipated" and had the participation rate "been in line with most class/collective actions, the average award would be higher." (*Id.* at 13.)

The incentive award is proportionate to the awards for individual Participating Settlement Members, especially because the difference between the $10,000 incentive award and the average recovery per Participating Settlement Member would have been even smaller had the response rate been lower than 31%. Sorbie's incentive award is $6,500 more than the average recovery. At least one court has approved a slightly smaller difference of $5,000 between an incentive award and the average recovery for members of the settlement class. *See Schutter v. Tarena Int'l, Inc.*, No. 21-cv-3502, 2024 WL 4118465, at *10 (E.D.N.Y. Sept. 9, 2024) ("[W]hile the incentive award . . . is around $5,000 greater than the estimated average class recovery, the Court does not find this difference to be so great as to be unreasonable in light of Lead Plaintiff [] having . . . frequent interactions with counsel for case-related matters."). Courts

35

also routinely approve of $10,000 incentive awards. *See Kindle v. Dejana*, 308 F. Supp. 3d 698,

718 (E.D.N.Y. 2018) (collecting cases). Considering Sorbie's "instrumental" role in achieving

the settlement, the incentive award is not disproportionate, and this factor weighs in favor of

final approval. (R&R at 24.)

> ### vi.  Ability of Defendants to Withstand a Greater Judgment and Range of Reasonableness of the Settlement

Three *Grinnell* factors remain to be considered: (1) Defendants' ability to withstand a

greater judgment than what is provided in the proposed settlement (factor seven); (2) the range of

reasonableness of the settlement in light of the best possible recovery (factor eight); and (3) the

range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation (factor nine). (R&R at 25–27.) For the reasons given in the R&R, which I

adopted in the Preliminary Approval Order, and because no Settlement Member has objected to

final approval on the basis of any of these three factors, *Grinnell* factor seven does "not weigh

strongly in favor of [final] approval, [but also] does not, by itself, defeat [final] approval" and

factors eight and nine weigh in favor of final approval. (*Id.*)

> ### vii.  Notice

Finally, the notice requirements under Rule 23(e)(1), Fed. R. Civ. P., and Section 1715(b)

of CAFA are satisfied. Rule 23(e)(1)(B) provides that the Court "direct notice in a reasonable

manner to all class members who would be bound by a proposed settlement, voluntary dismissal,

or compromise." Fed. R. Civ. P. 23(e)(1)(B). Smith attests that Rust directed notice according to

the Settlement Agreement. (Smith Decl. ¶¶ 3–8.) This process included mailing by First Class

mail the Notice, Claim Form, and postage paid envelope addressed to Rust to all 295 Settlement

Members at the addresses that Unisys provided to Rust. (*Id.* ¶ 6.) Rust then performed 20 address

traces for notices that were returned as undeliverable. (*Id.* ¶ 7.) For the reasons set forth in the Preliminary Approval Order, the notice requirements of Rule 23(e)(1) are satisfied.

Relatedly, Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") imposes an additional notice requirement. The CAFA notice provision states, in relevant part, that Defendants must serve the appropriate state and federal officials a notice of the proposed settlement "no later than 10 days" after the proposed settlement of a class action has been filed in court. *See* 28 U.S.C. § 1715(b). The requirements under CAFA apply to "any" class actions brought under Rule 23. *Perez v. Jupada Enters., Inc.*, No. 10-cv-3118, 2012 WL 3042928, at *2 (S.D.N.Y. July 25, 2012); *see also* 28 U.S.C. § 1711(2). CAFA further provides that the Court may not issue an order awarding final approval of a proposed settlement earlier than 90 days after the latest date on which the appropriate federal and state officials were served. *See* 28 U.S.C. § 1715(d).

Unisys properly complied with the notice provision in CAFA Section 1715(b). Counsel for Unisys attests that Unisys served the appropriate federal and state officials with the notice and all documents required by Section 1715 on October 26, 2023—ten days after filing the Motion for Preliminary Approval—and again on July 1, 2024—seven days after filing the renewed Joint Motion for Preliminary Approval. (DiGia Decl. ¶¶ 3–7.) Accordingly, Unisys complied with the requirement that it serve the appropriate state and federal officials a notice of the Settlement Agreement "no later than 10 days" after the proposed settlement of a class action was filed in this Court. *See* 28 U.S.C. § 1715(b).

For all of the aforementioned reasons, all but two of the Rule 23(e) and *Grinnell* factors weigh in favor of final settlement approval while only two factors are neutral, and Sorbie and

Unisys provided proper notice under Rule 23(e)(1) and CAFA Section 1715(b). Accordingly, I grant final approval of the Settlement Agreement.

### C. Approval of the Settlement Class

For the reasons set out in the R&R, which I adopted in the Preliminary Approval Order, the Settlement Class satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and the implied requirement of ascertainability. (R&R at 28–32.) Likewise, I also find that questions of law or fact common to class members predominate and that a class action is superior to other methods of adjudicating the action for the reasons set forth in the R&R and adopted in the Preliminary Approval Order. (R&R at 29, 33–34.) I therefore grant certification of the Settlement Class.

## II.   Approval of Collective Action Settlement of the FLSA Claims

A stipulation of dismissal settling an FLSA claim with prejudice under Rule 41(a), Fed. R. Civ. P., "require[s] the approval of the district court or the D[epartment of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). In light of the FLSA's underlying remedial purpose "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees," *id.* at 207, courts in the Second Circuit review a proposed FLSA settlement to ensure that it reflects a fair and "reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

In determining whether an FLSA collective action settlement is fair and reasonable under *Cheeks*, courts in the Second Circuit consider the totality of the circumstances, including the factors outlined in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012):

(1) the plaintiff's range of possible recovery;
(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
(3) the seriousness of the litigation risks faced by the parties;
(4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and
(5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky,* 900 F. Supp. 2d at 335). The *Wolinsky* factors are not dispositive. Courts must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, No, 14-cv-3173, 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017), *report and recommendation adopted*, 2017 WL 3037406 (July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overly broad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206.

Where a proposed settlement is "unreasonable in whole or in part, the court cannot simply rewrite the agreement—it must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. District courts do not have the authority to "simply rewrite[] the agreement by imposing terms on the parties to which they did not agree." *Id.* (citing *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986)).

The standard for approval of an FLSA collective action settlement is "considerably less stringent" than for approval of a Rule 23 class action settlement because the former "does not implicate due process concerns." *Davidson v. Cty. of Nassau*, No. 2:18-cv-1182, 2023 WL 5200223, at *9 (E.D.N.Y. Aug. 14, 2023). As a result, "satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action]

settlement." *D'Angelo v. Hunter Business Sch., Inc.*, No. 21-cv-3334, 2023 WL 4838156, at *5 n.1 (E.D.N.Y. July 28, 2023) (citing *Ramos v. Nikodemo Operating Corp.*, No. 16-cv-1052, 2017 WL 11508016, at *5 (E.D.N.Y. Aug. 7, 2017)); *Flores v. CGI Inc.*, 2022 WL 13804077, at *9 (S.D.N.Y. Oct. 21, 2022); *ProSource Techs., LLC*, No. 14-cv-2502, 2016 WL 1555128 at *9 (E.D.N.Y. Apr. 11, 2016). Indeed, the *Wolinsky* factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement under Rule 23(e). In both inquiries, the court considers the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement resulted from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion. *Compare Fisher*, 948 F.3d at 600 (identifying the factors that courts must evaluate for preliminary approval of an agreement to settle an FLSA collective action (citing *Wolinsky,* 900 F. Supp. 2d at 335)), *with* Fed. R. Civ. P. 23(e)(2) (setting forth factors that courts must evaluate for preliminary approval of a class action settlement).

Here, because the *Grinnell* factors weigh in favor of granting final approval of the settlement, the standard for approval of the Federal FLSA Settlement Collective under *Cheeks* and *Wolinsky* is satisfied. For this reason and for the reasons given in the R&R, which I adopted in full in the Preliminary Approval Order and which have not been the subject of any objection (R&R at 37–41), I approve the FLSA settlement.

## III.    Approval of Class Counsel's Requested Attorney's Fees and Costs

Pursuant to Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" when they are "made by motion under Rule 54(d)(2)." As explained above, Class Counsel seek an award of attorney's fees in the Final Approval Motion. I adopt the legal standards set out in

Discussion § I.B.iv.2.a for assessing the reasonableness of requested attorney's fees and costs under Rule 23(h). For the reasons set forth above, Class Counsel's requested attorney's fees and costs are reasonable under Rule 23(h). *See supra* Discussion § I.B.iv.2.

## FINAL APPROVAL ORDER AS TO CLAIMS AGAINST UNISYS

For the reasons set forth above, I grant the Final Approval Motion in its entirety (ECF No. 281). Accordingly, I order the following:

1.    The Settlement Agreement (ECF No. 281-4) is finally approved under Rule 23(e), Fed. R. Civ. P., *Moses*, 79 F.4th 235, and *Cheeks*, 796 F.3d 199. The Parties shall abide by all the terms of the Settlement Agreement.

2.    The following class (the "New York State Settlement Class") is finally certified for settlement purposes under Rule 23(e)(1)(B), Fed. R. Civ. P.:

> Current or former employees of Unisys (including the Named Plaintiffs) who are or were employed at any time by Unisys in New York based on a Unisys-assigned New York work location, during the period February 21, 2014 through October 20, 2023 in one or more of the following positions in the Service Delivery Employee job family: Field Engineer 1, Field Engineer 2, Field Engineer 3, Field Engineer 4, Customer Engineer 2, Customer Engineer 3, Customer Engineer 4, Customer Engineer 5, Customer Engineer 6, Client Infrast Rep 3-Barg Unit, Client Infrast Rep 4-Bar Unit, Client Infrast Rep 5-Barg Unit, UTS Field Svc Associate, UTS Field Svc Tech 1, UTS Field Svc Tech 2, UTS Field Svc Tech 3, UTS Field Svc Tech 4, or UTS Field Svc Tech 5 (collectively "Service Delivery Employees").

3.    The following collective (the "Federal FLSA Settlement Collective") is finally certified for settlement purposes only under 29 U.S.C. § 216(b):

> Current or former employees of Unisys (including the named Plaintiffs) who are or were employed at any time by Unisys in New York based on a Unisys-assigned New York work location, during the period December 17, 2017 through October 20, 2023 in one or more of the following positions in the Service Delivery Employee job family: Field Engineer 1, Field Engineer 2, Field Engineer 3, Field Engineer 4, Customer Engineer 2, Customer Engineer 3, Customer Engineer 4, Customer Engineer 5,

Customer Engineer 6, Client Infrast Rep 3-Barg Unit, Client Infrast Rep 4-Bar Unit, Client Infrast Rep 5-Barg Unit, UTS Field Svc Associate, UTS Field Svc Tech 1, UTS Field Svc Tech 2, UTS Field Svc Tech 3, UTS Field Svc Tech 4, or UTS Field Svc Tech 5.

4.  The Court confirms its prior appointment of Paul A. Pagano of the Law Office of Paul A. Pagano, P.C. and Jason L. Abelove of the Law Offices of Jason L. Abelove, P.C. as Class Counsel because they meet all of the requirements of Rule 23(g), Fed. R. Civ. P.

5.  The Court confirms its prior appointment of Rust Consulting as a third-party administrator (the "Claims Administrator").

6.  The Court confirms its prior appointment of Douglas Sorbie as Settlement Class Representative.

7.  The Settlement Agreement shall be effective three (3) days after the date on which the Final Approval Order becomes Final. "Final" means (1) if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired; or (2) if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension(s) of time) has expired, in a manner resulting in final judicial approval of this Agreement.

8.  Sorby and Unisys will comply with the following procedure for distributing the Gross Settlement Amount:

    a.  Unisys shall deposit the Gross Settlement Amount with the Claims Administrator within twenty-one days after the Effective Date.

    b.  Out of the $625,000.00 Gross Settlement Amount, the Court awards litigation costs in the amount of $35,000.00 to Class Counsel for their actual

costs and expenses incurred in this Action.

c.  Out of the $625,000.00 Gross Settlement Amount, the Court awards Class Counsel fair and reasonable attorney's fees in the amount of one-third of the Gross Settlement Amount minus litigation costs resulting in an award of $196,666.67, which is awarded pursuant to the terms of the Settlement Agreement.

d.  Out of the $625,000.00 Gross Settlement Amount, the Court awards the Claims Administrator $11,600.00 in reasonable costs in administering the Settlement, which is awarded pursuant to the terms of the Settlement Agreement.

e.  The Court approves the Service Award of $10,000.00 to Settlement Class Representative Douglas Sorbie as described in the Settlement Agreement, to be paid from the Gross Settlement Amount, which is awarded pursuant to the terms of the Settlement Agreement.

f.  The remainder of the Gross Settlement Amount of $371,733.33 shall be distributed by the Claims Administrator pursuant to the Settlement Agreement as follows:

> $321,733.33 shall be distributed as the first distribution to the 92 Participating Settlement Members within thirty (30) days of the Effective Date.
>
> $50,000.00 will be reserved (the "Reserve Settlement Fund") to be used to (i) correct any errors made in the determination of a Participating Settlement Member's Distribution Amount; or (ii) pay disputed claims, including but not limited to claims from putative Settlement Members who are mistakenly not identified as Settlement Members by the Parties for purposes of receiving Notice. Any unused portion of this fund will be distributed to the 92

Participating Settlement Members within 30 days after the Check Cashing Period in accordance with their Overtime Participation Percentage, provided, however, a Participating Settlement Member will not participate in such distribution if he/she already received a payment from the Reserve Settlement Fund. In no event shall any payment paid pursuant to this Reserve Settlement Fund increase Unisys' Gross Settlement Amount under this Settlement.

g.   The Claims Administrator will disburse (i) the first distribution of settlement checks to the 92 Participating Settlement Members, Class Counsel's attorney's fees and litigation costs to Class Counsel, the Service Award to Settlement Class Representative Sorbie, and the Claims Administrator's fee within thirty (30) days of the Effective Date; and (ii) the second distribution of settlement checks to the 92 Participating Settlement Members in accordance with the Settlement Agreement.

h.   The Participating Settlement Members will generally participate in the Settlement in accordance with their proportionate shares.

9.    The releases and covenant not to sue set forth in the Settlement Agreement, including but not limited to Sections 14 and 15 of the Settlement Agreement, together with the definitions in the Settlement Agreement relating thereto, are expressly incorporated herein in all respects and are deemed appropriate and approved.

10.   Without affecting the finality of this Final Approval Order as to Claims Against Unisys, the Court reserves continuing and exclusive jurisdiction over the interpretation and implementation of the Settlement Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of the Settlement Agreement and of the Settlement contemplated thereby.

11.    Any motion to enforce this Final Approval Order as to Claims Against Unisys or the Settlement Agreement, including by way of injunction, may be filed in this Court, and the provisions of the Settlement Agreement and/or this Final Approval Order as to Claims Against Unisys may also be asserted by way of an affirmative defense or counterclaim in response to any action that is asserted to violate the Settlement Agreement.

12.    The Parties having so agreed, good cause appearing, and there being no just reason for delay, it is expressly directed that this Final Approval Order as to Claims Against Unisys be, and hereby is, entered as a final order, and the Parties shall abide by all terms of the Settlement Agreement.

13.    The Action is dismissed with prejudice as against Unisys Corporation pursuant to Fed. R. Civ. P. 41(a).

Dated:  Central Islip, New York
         October 20, 2025

                                    _/s/ Nusrat J. Choudhury___
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge